# IN THE UNITED DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| DEBRA GRAHAM AND KATHLEEN HINDES individually and on behalf of all persons similarly situated as Collective representatives, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. |
| vs. | ) ) | |
| | ) | Honorable Judge Philip G. Reinhard |
| RYAN INTERNATIONAL AIRLINES, INC. | ) ) | |
| | | U.S. District Judge P. Michael Mahoney Magistrate Judge |
| | ) ) ) ) | **JURY TRIAL DEMANDED** **ON ALL COUNTS** |
| Defendant. | ) | |

### PLAINTIFFS' FIRST AMENDED COMPLAINT
### for INDIVIDUAL AND COLLECTIVE ACTION

Plaintiffs, Debra Graham and Kathleen Hindes, individually and on behalf of all others similarly situated, as collective representatives, by and through their undersigned counsel of record, upon personal knowledge as to those allegations in which they so possesses and upon information and belief as to all other matters, pursuant to §216(b) of the Fair Labor Standards Act (hereinafter "FLSA") and the Illinois Minimum Wage and Overtime Wage Law (hereinafter "IMWL") and other state wage laws brings this cause of action against Defendant RYAN INTERNATIONAL AIRLINES, INC., (hereinafter "RYAN" and/or "Defendant"). Further Plaintiffs bring claims of retaliation for having requested payment of overtime wages in violation

of 29 U.S.C. § 215(a)(3)., and the IMWL. Further, Plaintiff Debra Graham (Hereinafter referred to as "Plaintiff Graham") individually brings a claim of violation, retaliation and interference with her rights under the Family Medical Leave Act (FMLA) 29 U.S.C. § 2601 *et seq*. and 5 U.S.C. § 6381 *et seq*.,, . All applicable claims are also made under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.and in so doing states the following:

<u>**NATURE OF THE ACTIONS**</u>

1.      Plaintiffs, Debra Graham and Kathleen Hindes, (Hereinafter referred to as "Individual Plaintiffs") allege individually and other similarly situated current, former and future employees of the Defendant, (Hereinafter references to "Plaintiffs" are inclusive of both Individual Plaintiffs and those employees that are or will be members of the Collective Action) that under both federal and state wage laws are entitled to be paid for all hours worked and to receive overtime pay for all hours worked over forty (40) hours per week.  Plaintiffs allege that during the relevant times described herein Defendant RYAN has established a pattern and practice carried out on a nationwide basis of deliberately misclassifying the Plaintiff's and other Collective Members as "exempt" employees for the purpose of federal and state overtime law in order to save millions of dollars in employee compensation and retirement benefits by requiring Plaintiffs to work in excess of forty (40) hours per week without paying time-and-a-half for all hours worked in excess of forty (40) hours.

2.      Further the Individual Plaintiffs bring claims of retaliation for having requested payment of overtime wages in violation of 29 U.S.C. § 215(a)(3)., and the IMWL.

3.      Further, Plaintiff Graham individually brings a claim of violation, retaliation and interference with her rights under the Family Medical Leave Act (FMLA).

4.    The Collective Action is brought as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 207 and 216(b) to recover unpaid wages for overtime work performed for which Plaintiffs were not paid time-and-a-half and liquidated damages and interest and all other relief due and just.

5.    Plaintiffs, in their claims, request injunctive and declaratory relief, and compensation and credit for all uncompensated work required, suffered, and/or permitted by Ryan, liquidated and/or other damages as permitted by applicable law, restitution and payment of all benefits Defendant obtained from their unlawful business practices, and attorneys' fees and costs.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C 1332 and 1367 because the state law claims are so related to Plaintiffs' federal claims that they form a part of the same case or controversy between the parties and because the action involves a federal statute, 29 U.S.C. 216(b) and 29 U.S.C. 215(1)(3). The Plaintiffs do not bring any claims under any collective bargaining agreement. Further, Plaintiff Graham brings claims pursuant to FMLA.

7.    The Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. 2201 and 2202.

8.    Venue is proper in this District. Ryan does business in Rockford, Illinois and Plaintiffs are residents of the State of Illinois. Ryan is subject to personal jurisdiction in the State of Illinois for the purpose of this lawsuit.

## THE PARTIES

9.    Plaintiff Graham, is a resident of the State of Illinois.

10.    Plaintiff Hindes is a resident of the State of Illinois.

11.    Plaintiffs are both former employees of Defendant Ryan, who, within the applicable period of limitations prior to the commencement of this action, were unlawfully deprived of wages due and owing to them by Defendant.

12.    Plaintiffs' federal FLSA claims are brought as "opt-in" collective action claims pursuant to the FLSA.

13.    Defendant, RYAN WORLDWIDE, INC. ("Ryan") and/or Ryan International Airlines (Ryan) is a 14 CFR Part 121 Domestic, Flag and Supplemental Air Carrier based in Rockford, Illinois.

## COLLECTIVE ACTION ALLEGATIONS

### The FLSA Collective Action

14.    Plaintiffs bring their claims, and on behalf of similarly situated persons, for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA (29 U.S.C. § 216(b)), on behalf of all employees of Ryan who were, are, or will be employed by Ryan during the period of three (3) years prior to the date of commencement of this action through the date of judgment in this action, who were improperly classified as "exempt" employees and who were not compensated at one-and-one-half times the regular rate of pay for all work performed in excess of forty (40) hours per work week.

15.     FLSA violation claims are brought and maintained as an "opt-in" collective action pursuant to § 16(b) of FLSA, 29 U.S.C. § 216(b), for all FLSA claims asserted by the Plaintiffs.

16.     Defendant is liable for improperly compensating Plaintiffs and FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are numerous similarly situated current and former employees of Ryan who have been misclassified as exempt and denied the overtime premium in violation of the FLSA. These current, former and future employees would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

## STATEMENT OF FACTS REGARDING MISCLASSIFICATION CLAIMS

**A.      Ryan's Compensation Practices Require Plaintiffs and Other Exempt employees to Work in Excess of Forty (40) Hours Per Work Week Without Being Paid Time-and-a-Half**

17.     Plaintiff Graham was employed by Ryan as a Payroll Accountant at the Ryan worldwide headquarters in Rockford, Illinois.

18.     Plaintiff Hindes was employed by Ryan as a Manager, HR - Compliance at the Ryan worldwide headquarters in Rockford, Illinois.

19.     It is and was at all relevant times, a policy of Ryan that exempt employees, including Plaintiffs Graham and Hindes, were required to work over 40 hours per week.

20.     Plaintiff Graham was typically scheduled and set tasks requiring work of at least 50-60 hours per week. Plaintiff Graham worked more than 60-70 hours per week every other week.

21.     Plaintiff Hindes was typically scheduled and set tasks requiring work of at least 45-50 hours per week. Plaintiff Hindes often worked more than 10 hours per day and/or up to 60 hours per week.

22.     Plaintiffs and members of the Collective were paid on a fixed salary and classified as "exempt" employees by Defendant.  However, Plaintiffs and members of the Class had nominal, if any, time and responsibility to exempt duties.  The majority of Plaintiffs' duties entailed non-managerial work, none of which involved the exercise of actual authority.

23.     Defendant Ryan required employees to work in excess of forty (40) hours per week without any additional compensation beyond the fixed salary. This requirement was a pattern and practice of Ryan.

24.     Plaintiffs and members of the Collective were scheduled and required to work a minimum of 45 hours per week, but were not compensated at time-and-a-half for hours in excess of forty (40) hours per week.  Nor did the misclassified employees receive adequate employer contributions for FICA and other employer payroll taxes.

25.     Plaintiffs and others similarly situated employees are not "exempt" employees under applicable law.  Plaintiffs had no authority to hire or fire other employees within Ryan or did not have authority to hire, fire, demote, promote, assign, discipline, and/or make any tangible employment decisions for any Ryan employee.  Nor did Plaintiffs have any input regarding staffing, did not participate in or assist in the development, enforcement, and/or implementation

of any Ryan company policies.  Plaintiffs' respective job responsibilities were devoid of any duties pertaining to the management of Ryan.

26.     Plaintiffs non-managerial job responsibilities and workload overwhelmed any executive, administrative or strategic duties and thereby do not constitute an exempt class of Ryan employees.

27.     The Defendant's unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendant' employees.

28.     Upon information and belief, other Ryan employees in other states imposed the same policies upon Plaintiffs.

### RYAN's Actions were Willful, Knowledgeable and/or Had Reckless Disregard for FSLA Regulations

29. RYAN required and permitted Plaintiffs and the FLSA Collective, to work more than 40 hours in a week.  RYAN did not pay Plaintiffs and the FLSA Collective for all of these overtime hours, which should have been paid at the rate of one-and-a-half times the regular rate of pay.

30. Ryan failed to maintain records regarding the Plaintiffs work hours.

31.     Ryan had actual knowledge and/or constructive knowledge of the hours worked by Plaintiffs in excess of forty (40) hours and beyond their "scheduled" hours; at work and at home.

32.     RYAN's unlawful conduct has been uniform, widespread, repeated and consistent and occurs nationwide.

7

33.    RYAN's national corporate management was aware that RYAN's salaried employees, including Plaintiffs and the FLSA Collective, performed work that required overtime pay. RYAN has willfully operated a scheme to deprive these employees of premium overtime by deliberately misclassifying them as exempt and continuing to classify other employees as exempt.

34.    RYAN's conduct, as set forth above, has been willful and in bad faith, and has caused significant damages to the Plaintiff and the FLSA Collective.

35.    All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law and permitted under Federal Law, Illinois Law and other state laws.

36.    All allegations plead herein are plead with personal knowledge as to those allegations to which Plaintiff has such knowledge and based upon "information and belief" as to all other allegations.

## GRAHAM FACTUAL STATEMENTS REGARDING HER WORK DUTIES AND EXEMPT STATUS

37. Plaintiff Graham was employed by Ryan from May 2006 to October 2007.

38. Plaintiff Graham's job duties and responsibilities were principally and overwhelmingly involved inputting of data into the payroll system to result in payment of the Ryan payroll to its employees.

39. 90-100% of Plaintiff Graham's job duties were limited to data entry.

40. Ms. Graham was a 'glorified' data entry clerk.

41. Ms. Graham's primary duty was "manual work" in that she entered data the vast majority of her work time.

42. Plaintiff Graham had little to no actual authority or decision making power and/or exercised no discretion and no independent judgement.

43. Plaintiff Graham's few decisions were not into matters of significance.

44. Rather Plaintiff Graham was repeatedly told by Ryan management officials that she had no decisional power and could make no decisions.

45. What few decisions Plaintiff Graham actually had made were subject to complete review and approval of the Ryan officials.

46. Plaintiff Graham, being an educated and knowledgeable person, independently researched whether she was properly classified.

47. Plaintiff Graham independently examined and reviewed the Federal Department of Labor (DOL) information and specifically examined Regulation "541".

48. Regulation 541 (541) is the DOL explanation of how an employee is classified as exempt and non-exempt.

49. After examining 541 and other regulations, Plaintiff Graham formed a reasonable belief that she was misclassified as exempt and therefore was owed overtime wages.

50. Plaintiff Graham, on a number of occasions, expressed this belief to Defendants.

51. The Defendant rather than considering her opinion began to retaliate against her for stating this belief in violation of FLSA anti-retaliation provisions.

52. The Defendant retaliated in a number of ways including requiring her to report her working time to her supervisor, which the Plaintiff, prior to complaining never was required to do.

53. Ms. Graham repeatedly and vigorously stated that she was misclassified as a salaried and exempt employee and that she was owed overtime wages. Further, she stated this

belief after having reviewed the applicable Federal Department of Labor (DOL) Regulations and comparing these rules to her duties.

54. Ms. Graham was classified as either executive or administrative; as she lacks specific job skills and education required of computer programmer or legal representative or the other specialized classifications.

55. Under 541 Ms. Graham was clearly not an executive classification, as she supervised no employees and had no other Human Resources duties such as hiring firing or disciplining as required under the executive class.

56. Therefore, it is likely Ryan classified her under the administrative classification.

57. It is alleged that Ryan classified Plaintiff Graham under the Administrative Classification.

58. Alternatively, it is alleged that Ryan classified Plaintiff Graham under the Executive Classification.

59. However, upon review the Administrative classification this fails to apply to Ms. Graham.

60. The Administrative classification requires that her "primary duties" include the "exercise of discretion and independent judgment with respect to matters of significance".

61. Here Ryan's error is revealed in that Ms. Graham's primary and overwhelming job duty was to enter data to process payroll.

62. Ms. Graham had no discretion and no independent judgment into matters of significant.

63. If Ms. Graham had decisional authority, it was without the required aspects of

independent and discrete, as all her decisions were substantially reviewed and approval was always required by other management personnel.

64. Further, because 90-100% of her duties were simple, mindless data-entry these non-discretionary duties vastly overwhelmed her other "discretionary" duties, this removes her from the exempt classification and places her in the non-exempt classification.

65. Further, the Defendant on a number of occasions docked Plaintiff Graham's pay due to absences of less than an entire day.

66. Plaintiff Graham worked a partial day and was docked a full days pay for her absence.

67. Under the FLSA classification regulations does not allow partial day docking. "Generally, an employer cannot show that an employee is exempt if the employer docks the employee's pay for partial day absences, violations of rules other than significant safety rules, and other barometers of the quantity or quality of the employee's work. *See* 29 C.F.R. § 541.118. Commonly known as the "no-docking rule,"

68. According to Reg. § 541.602(a), an employee will be considered to be paid on a salary basis as long as the amount of pay the employee regularly receives "is not subject to reduction because of variations in the quality or quantity of the work performed.

69. Exempt status will be denied where an employee can show either (1) an actual practice of making deductions or (2) an employment policy creating a significant likelihood of improper deductions

11

70. The regulations allow deductions to be made "when the employee absents himself from work for a day or more occasioned by sickness or disability...if the deductions are made in accordance with a bona fide plan, policy or practice of providing compensation for lost salary occasioned by other sickness and disability." Reg. § 541.602(b)(2);

71. Further Defendant repeatedly docked Plaintiff Graham sick leave for several hours for medical reasons including:

    a.  5 hour deduction on July 12, 2007;

    b.  3 hour deduction on August 2, 2007;

    **c.**  4 hour deduction on September 1, 2006.

72. These partial day deductions are a violation of the FLSA and/or DOL regulations.

73. 'Deductions may also be made for absences of a **day or more** where the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary due to sickness, where the employee has not yet become eligible to participate in the plan or has exhausted all accrued leave allowed under the plan.' Reg. § 541.602(b)(2).

74. Further, Plaintiffs had deductions for absences, however Plaintiff performed work from home or in other capacities, with the knowledge of Ryan, therefore because the Plaintiffs worked, no deduction should have been made.

75. Further Defendant treated Plaintiff Graham like an hourly employee such as in July and August of 2007 when Ryan demanded a weekly report of her hours worked

## HINDES FACTUAL STATEMENTS REGARDING HER WORK DUTIES AND EXEMPT STATUS

**76.** Plaintiff Hindes was employed by Ryan as a Manager, HR - Compliance position from January 2007 to August 2007.

**77.** Plaintiff Hindes's job duties and responsibilities were principally and overwhelmingly overseeing but not controlling the drug testing program for Ryan employees.

**78.** Ms. Hindes duties were to simply process the tests like she was working on a 'testing assembly line'.  Ms. Hindes had no discretion or judgment in this position.

**79.** 90-100% of Plaintiff Hindes's job duties were limited to data entry and clerical type submissions.

**80.** Ms. Hindes was a 'glorified' quality control employee without the discretion typically found in this type of position.

**81.** Ms. Hindes's primary duty was "manual work" in that she entered data and completed paperwork the vast majority of her work time.

**82.** Plaintiff Hindes had little to no actual authority or decision making power and/or exercised no discretion and no independent judgement.

**83.** Plaintiff Hindes's few decisions were not into matters of significance

**84.** Plaintiff Hindes had little to no actual authority or decision making power.

**85.** Rather Plaintiff Hindes was repeatedly told by Ryan management officials that she had no decisional power and could make no decisions.

**86.** What few decisions Plaintiff Hindes actually had made were subject to complete review and approval of the Ryan officials.

87. Plaintiff Hindes, being an educated and knowledgeable person, independently researched whether she was properly classified.

88. Plaintiff Hindes independently examined and reviewed the Federal Department of Labor (DOL) information and specifically examined Regulation "541".

89. Regulation 541 (541) is the DOL explanation of how an employee is classified as exempt and non-exempt.

90. After examining 541 and other regulations, Plaintiff Hindes formed a reasonable belief that she was misclassified as exempt and therefore was owed overtime wages.

91. Plaintiff Hindes, on a number of occasions, expressed this belief to Defendants.

92. The Defendant rather than considering her opinion began to retaliate against her for stating this belief in violation of FLSA anti-retaliation provisions.

93. The Defendant retaliated in a number of ways including requiring her to report her working time to her supervisor, which the Plaintiff, prior to complaining, never was required to do.

94. Ms. Hindes repeatedly and vigorously stated that she was misclassified as a salaried and exempt employee and that she was owed overtime wages. Further, she stated this belief after having reviewed the applicable Federal Department of Labor (DOL) Regulations and comparing these rules to her duties.

95. Ms. Hindes was classified as either executive or administrative; as she lacks specific job skills and education required of computer programmer or legal representative or the other specialized classifications.

**96.** Under 541 Ms. Hindes was clearly not an executive classification, as she supervised no employees and had no other Human Resources duties such as hiring firing or disciplining as required under the executive class.

**97.** Therefore, it is likely Ryan classified her under the administrative classification.

**98.** It is alleged that Ryan classified Plaintiff Graham under the Administrative Classification.

**99.** Alternatively, it is alleged that Ryan classified Plaintiff Graham under the Executive Classification

**100.** However, upon review Administrative classification also fails to apply to Ms. Hindes.

**101.** The Administrative classification requires that her "primary duties" include the "exercise of discretion and independent judgment with respect to matters of significance".

**102.** Here Ryan's error is revealed in that Ms. Hindes's primary and overwhelming job duty was to enter data to process of drug tests, but not making any independent decisions involving the testing process, results or its effects.

**103.** Ms. Hindes had no discretion and no independent judgment into matters of significant.

**104.** If Ms. Hindes had decisional authority, it was without the required aspects of independence and discretion, as all her decisions were substantially reviewed and approval was always required by other management personnel.

**105.** Further, because 90-100% of her duties were simple, mindless data-entry and/or processing of drug tests, these non-discretionary duties vastly overwhelmed her other

"discretionary" duties, this removes her from the exempt classification and places her in the non-exempt classification.

106.    Further, the Defendant on a number of occasions docked Plaintiff Hindes pay due to absences of less than an entire day.

107.    Plaintiff Hindes worked a partial day and was docked a full days pay for her absence.

108.    Under the FLSA classification regulations does not allow partial day docking. "Generally, an employer cannot show that an employee is exempt if the employer docks the employee's pay for partial day absences, violations of rules other than significant safety rules, and other barometers of the quantity or quality of the employee's work.  *See* 29 C.F.R. §  541.118.  Commonly known as the "no-docking rule,"

109.    According to Reg. § 541.602(a), an employee will be considered to be paid on a salary basis as long as the amount of pay the employee regularly receives "is not subject to reduction because of variations in the quality or quantity of the work performed.

110.    Exempt status will be denied where an employee can show either (1) an actual practice of making deductions or (2) an employment policy creating a significant likelihood of improper deductions

111.    The regulations allow deductions to be made "when the employee absents himself from work for a day or more occasioned by sickness or disability...if the deductions are made in accordance with a bona fide plan, policy or practice of providing

compensation for lost salary occasioned by other sickness and disability." Reg. §

541.602(b)(2);

112.    Ms. Hindes repeatedly and vigorously stated that she was misclassified as salaried

and exempt employee and that she was owed overtime wages. She stated this position

from a position of authority having served as an employee in the Human Resources

Department. Further, she stated this belief after having reviewed the applicable

Federal Department of Labor (DOL) Regulations and comparing these rules to her

duties.

113.    Additionally evidence of Ryan's misclassification of Ms. Hindes is demonstrated

by Ryan's re-classification her position from exempt to hourly after Ms. Hindes was

terminated for pretexual reasons related to her FLSA complaints.

114.    This 'remedial' action is an admission indicating that the prior employee (Hindes)

should have been likewise an hourly employee.

115.    Ms. Hindes holds this belief based on information and belief.

## STATEMENT OF FACTS REGARDING SIMILARLY SITUATED
## EMPLOYEES

116.    In their positions within the HR department, while the Plaintiffs' lacked authority,

but were privy to many facts which demonstrate that Ryan had a uniformed policy of

misclassifying employees to save money on overtime wages,.

117.    Both Plaintiffs were aware of many other employees similarly situated in that

these other employees also believed they were misclassified and owed overtime

wages.

118.    These other employees, which the Plaintiffs have personal knowledge of, include:

17

a.  A group of employees with the title of Maintenance Controllers whose job duties were entirely non-exempt, involving assisting mechanics repair airplanes "downline" and whose work hours were greater than 40 hours per week.

   i.   One of these Maintenance Controllers, Bill Kinsley, noted he was not properly classified and demanded payment of owed overtime.

   ii.  Ryan agreed he was misclassified, reclassified him, and paid owed wages.

   iii. However, Ryan did not reclassify or pay owed wages to the other 4-6 Maintenance Controllers.

b.  A second Ryan employee "Diane K", located in the Travel Department, was also paid overtime wages in the amount of $9,000.00, but was not reclassified despite her non-exempt duties.

c.   Vicki Draheim was misclassified as exempt and her status was changed to non-exempt.

d.  A third Ryan "Exempt" Employee, Matt Hawkins, also was paid 16 hours of overtime for overtime he worked on September 27, 2006 and January 9, 2007.

e.  base coordinators being classified as exempt would be questionable Eecially with what there responsibilites are and what is asked of them.  For example, asked to clean mold from planes.  Working extreme amounts of hours without OT pay.

f.    Plaintiffs are also aware that like themselves, other salaried employees have been docked in violation of the "no docking rule" and have been docked for partial day absences.

## STATEMENT OF FACTS REGARDING FLSA RETALIATION CLAIMS

119.    Both Plaintiffs expressed beliefs that they were misclassified and owed overtime wages

120.    Rather than discuss and review the expression of beliefs, Ryan reacted to the requests for proper pay by hostile and retaliatory actions.

121.    Hostility towards the Plaintiffs' overtime demands was clearly evidenced by Ryan's demand for an exact time record for all hours worked in July and August of 2007.

122.    Retaliation against claims for overtime is prohibited and the FLSA also has been found to protect employees who complain to their employers about wage and hour violations.

123.    An internal complaint to the employer satisfies § 215(a)(3)). raising an internal complaint to an employer is a protected activity and falls within the meaning of "filed any complaint" as required by § 215(a)(3)

124.    The conduct that the employee complains about need not be an actual violation of the FLSA; the employee's good faith belief is sufficient.

125.    The retaliation for the FLSA claims of the Plaintiffs culminated in the termination of both Plaintiffs.

**126.**    The Plaintiffs' stated the claims for overtime in good faith and full belief as to the overtime claims as true and correct.

**127.**    Ryan made the employment decisions to terminate based on forbidden motives; retaliation and/or other forbidden grounds and did so without due deliberation and objectivity.

**128.**    Plaintiffs' official jobs did not involve or entail FLSA reviews of their positions and other employees, rather the Plaintiff's were admonished to not question payment of overtime to supposed "Exempt" employees and stated claims for overtime pay by lodging personal complaints.

**129.**    Similarly situated employees to the Plaintiffs who did not complain of overtime claims were not treated adversely.

**130.**    Adverse treatment of the Plaintiffs' was perpetrated for pretexual reasons.


## STATEMENT OF FACTS REGARDING PLAINTIFF GRAHAM'S FMLA CLAIMS


**131.**    Plaintiff Graham was an employee of Defendant from approximately May of 2006 through October of 2007.

**132.**    Defendant was an employer of Plaintiff as defined by the FMLA.

**133.**    Plaintiff was an employee of Defendant as defined by the FMLA.

**134.**    At the time of her termination, Plaintiff was employed by Defendant in the position of Payroll Accountant.

**135.**    Plaintiff was a qualified, competent, and dedicated employee that was performing

all of her job duties in a reasonable and acceptable manner during all relevant times

herein.

**136.**    Plaintiff performed all of her job duties in a manner that met the Defendant's

legitimate expectations.

137.    On or about July of 2007 Plaintiff suffered a significant health condition which

required ongoing medical treatment and even required surgical procedures to correct.

138.    In August of 2007, Plaintiff informed Defendant that her serious medical

condition required her to take medical leave and she requested all necessary

paperwork and completed all requirements for taking FMLA leave.

139.    In September 2007 Defendant granted Plaintiff's request for FMLA leave.

140.    However, the Defendant  failed to properly date the start of the FMLA leave.

141.    Rather the Defendant  "backdated" the leave to begin September 14, 2007 rather

than when the application was made, or when the doctors forms were returned or

when she was absent from work.

142.    The Defendant backdated the leave as a means to escape FMLA claims such as is

being brought here.

143.    The Defendant backdated the leave starting on September 14, 2007 despite the

Plaintiff's absence from work for medical reasons since August 17, 2007 and

Plaintiff's intermittent absences from work since early July 2007.

144.    On or about October of 2007, the day the Plaintiff returned from FMLA,

Defendant terminated Plaintiff in retaliation for taking medically necessary FMLA

leave.

145.    Plaintiff had an outstanding work history and was never subjected to disciplinary action until after she exercised her right to take medical leave.  There was no legitimate non-discriminatory/non-retaliatory basis for Plaintiff's termination.

146.    Plaintiff has suffered severe damages as a direct and proximate result of Defendant's unlawful conduct as described herein, including, but not limited to, the following: loss of employment, lost wages, loss of benefits, and other damages.

147.    Ms. Graham's termination was motivated by her having taken Family Medical Leave.

148.    This is clearly evidenced by the Ryan's having begun a job search for her replacement while Ms. Graham was on Leave.

149.    Further, this will be evidenced by the broadcast via email of Ms. Graham's "departure" from Ryan while she was on FMLA.

150.    Further, Ryan having attempted to limit Ms. Graham's FMLA rights and attempts to alleviate its interference by "backdating" Ms. Graham's leave start date.

151.    Further by Ryan's communications with Ms. Graham's health care workers.

152.    Further, by Ryan's threats to Ms. Graham while she is on FMLA concerning pending discipline for "attendance and performance issues".

153.    Finally, for having terminated Ms. Graham the very day she returned from FMLA.

154.    All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law.

155.    All allegations and claims alleged herein are stated upon personal information and knowledge; those not so known are stated based upon information and belief.

FMLA CLAIMS ASSERTED BY

PLAINTIFF DEBRA GRAHAM

### FIRST CLAIM FOR RELIEF
*Retaliation In Violation of FMLA*

156.    Plaintiff re-alleges and incorporates all paragraphs of this complaint as if fully set

forth herein.

157.    Plaintiff suffers from a serious medical condition that requires medical treatment

and a medically mandated period of recovery.

158.    Plaintiff was an eligible employee under the FMLA, insomuch as she had been

employed for at least 12 months and had worked at least 1,250 hours for Defendants

within the 12-month period immediately preceding her request for FMLA leave and

retaliatory termination by Defendant.  See 29 U.S.C. §2611 (2).

159.    Defendant is a covered employer under the FMLA, insomuch as it is engaged in

commerce or in an industry or activity affecting commerce and employed 50 or more

employees for each working day during each of 20 or more calendar workweeks in

the current or preceding year.  29 U.S.C. § 2611(4).

160.    Plaintiff was entitled to leave under FMLA, *see 29 U.S.C. § 2612 (a)(1).*

161.    Plaintiff properly notified Defendants of her need to take FMLA leave, obtained

the necessary medical certifications, insisted on exercising her right to take FMLA,

and otherwise fulfilled all of her obligations for taking medical leave.

162.    Plaintiff fully informed Defendants of the nature and scope of her serious medical

condition and she went through all of the proper avenues to get approval for her

requested leave to recover from the injury.

163.    Plaintiff was entitled to twelve (12) weeks of leave as provided pursuant to the FMLA, because she was a qualifying employee, as alleged above, and she had not taken any other FMLA leave.

164.    Defendants violated the FMLA by terminating Plaintiff's employment upon notice of her intent to take leave and/or attempts to gain coverage under FMLA and/or Plaintiff's beginning to take time off as allowed under FMLA and/or immediately after having taken FMLA.

165.    There was no legitimate non-discriminatory or non-retaliatory basis for Defendants' termination of Plaintiff.

166.    Defendants' violations were knowing, willful, malicious, and with reckless disregard for the effect on Plaintiff.

167.    There exists a causal link between Plaintiff availing herself of FMLA rights and the subsequent harassment, retaliation, termination and or ouster from employment suffered by Plaintiff.

168.    Said discriminatory, unlawful and willful conduct is in direct violation of FMLA 29 U.S.C. § 2615(a)(2).

## SECOND CLAIM FOR RELIEF

### *Interference with Plaintiff's Substantive Rights Under FMLA*

169.    Plaintiff re-alleges and incorporates all paragraphs of this complaint as if fully set forth herein.

170.    Plaintiff was employed by Defendants.

171.    Plaintiff's had worked for Defendants more than 1250 hours within the twelve

month period preceding their requests for FMLA leave..

172.    Defendants employ more than 50 employees.

173.    Plaintiff provided notice to Defendants regarding a need for FMLA leave so as to

obtain medical care for herself.

174.    Defendants intentionally interfered and burdened Plaintiff in the exercise of her

substantive statutory rights as an eligible employee under 29 U.S.C. § 2615(a)(1).

Specifically, but not limited to the following conduct.

a) Ascribing discipline to Plaintiff for attempting to take time off on FMLA

leave:

c) Failing to take notice of Plaintiff's requests for FMLA leave:

d) Failing to provide information, forms, assistance or other aid in Plaintiff's

application for FMLA;

e) Making unreasonable and demands for approval of FMLA;

f) By failing to comply with FMLA requirements;

g) Monetarily punishing the Plaintiff for taking FMLA leave;

h) Threatening Plaintiff with discipline while on FMLA leave;

i) Threatening Plaintiff with termination while on FMLA leave;

j) Disciplining Plaintiff while on FMLA leave;

k) Harassing Plaintiff while on FMLA leave;

l) Terminating Plaintiff while on FMLA leave.

175.    Plaintiff was entitled to FMLA leave and Defendants unlawfully, intentionally and willfully, interfered with and burdened Plaintiff's exercise of said entitlement.

176.    There exists a causal link between Plaintiff availing herself of FMLA rights and the subsequent harassment, retaliation, termination and or ouster from employment suffered by Plaintiff.

177.    Said discriminatory, unlawful and willful conduct is in direct violation of FMLA 29 U.S.C. § 2615(a)(2).

178.    As a result of Defendants discriminatory actions Plaintiffs have suffered harm and injury damage to their good reputation, extreme mental anguish, painful embarrassment among her friends and co-workers, disruption of their personal life, financial injury, physical harm, lost benefits, lost wages and the loss of enjoyment of the ordinary pleasures of everyday life.

179.    Defendant's FMLA policies seek to limit the rights of its employees by imposing those internal policies which that are more restrictive than the provisions of the FMLA, upon the employees.

180.    Such actions have deliberately and willfully interfered with the FMLA rights of the Plaintiffs.

181.    Such actions were retaliatory, taken in an effort to prevent and discourage employees from availing themselves of their FMLA protected rights.

182.    Defendant's actions intentionally, willfully, created a situation in which Plaintiffs and each of them, were forced to chose between medical care, and/or caring for a family member and losing their jobs or chances for advancement. Such willful,

intentional actions are in direct violation of the FMLA and effectively undercut the intent of the Act.

183.    Such action by the Defendant substantially interfered with Plaintiff's substantive rights under the FMLA.

184.    Discipline and termination imposed by the Defendant upon the Plaintiff was without basis and was pretextual.

185.    Plaintiff's could not be on FMLA leave caring for themselves and/or family members and continue to perform the duties of employees in daily attendance.

186.    Plaintiffs would not have suffered such action/conduct at the hands of Defendant but for availing themselves of rights guaranteed under the FMLA.

187.    Defendant's actions taken under such circumstances interfered with, and unduly burdened the Plaintiff's exercise of rights guaranteed them under the FMLA.

188.    The Defendant's actions were intentionally, willfully and maliciously, designed to have a chilling effect and deter employees from availing themselves of the benefits guaranteed under the FMLA.

189.    Defendant employs a system to administer employee FMLA which is designed to cause delay, confusion, and consternation among its employees

190.    The system employed by the Defendant to administer employees FMLA has built into it inherent delays, rigidly enforced deadlines not required and in fact specifically excluded from the FMLA statute itself.

191.    Defendant's FMLA policies seek to limit the rights of its employees by imposing those internal policies which that are more restrictive than the provisions of the FMLA, upon the employees.

<h2 style="text-align:center"><b>THIRD CLAIM FOR RELIEF<br>INTERFERENCE: FAILURE TO PROVIDE<br>NOTICE OF FMLA RIGHTS</b></h2>

192.　　Plaintiff re-alleges and incorporates all paragraphs of this complaint as if fully set forth herein

193.　　The allegations more particularly described in all paragraphs in this Complaint, constitute intentional adverse action against Plaintiff Graham in response to her attempt to take medical leave for her own serious health condition.  Defendant failed to provide written notice to Plaintiff Graham of her specific rights, expectations and requirements under the FMLA.  This failure resulted in prejudice to Plaintiff Graham when she was terminated.  29 U.S.C. § 2615(a)(1).

<h2 style="text-align:center"><b>FOURTH CLAIM FOR RELIEF<br>RETALIATION: TERMINATION FOR UTILIZING<br>FMLA PROTECTED LEAVE</b></h2>

194.　　Plaintiff re-alleges and incorporates all paragraphs of this complaint as if fully set forth herein

195.　　The allegations more particularly described in all paragraphs in this Complaint, constitutes intentional adverse action against Plaintiff Graham in response to her utilization of medical leave for her own health condition.  Defendant's termination of Plaintiff Graham employment was in retaliation for exercising her FMLA rights, in violation of the FMLA.  29 U.S.C. § 2615(a)(2).

<h2 style="text-align:center"><b>PRAYERS FOR RELIEF FOR ALL FMLA CLAIMS AND SPECIFICALLY<br>FIRST, SECOND, THIRD AND FOURTH CLAIMS</b></h2>

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

A.  Statutory damages for lost wages, benefits and other compensation, plus all accrued interest on such sum at the statutory rate, pursuant to 29 U.S.C.A. § 2617 (a)(1)(A)(i) and (ii);

B.  Monetary damages to compensate Plaintiff for all future lost salary and benefits;

C.  Additional liquidated damages equal in the amount of the above requested amounts in Prayers A and B , pursuant to 29 U.S.C.A. § 2617 (a)(1)(B) and/or 29 U.S.C. § 2617(a)(1)(A)(iii);

D.  Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to 29 U.S.C.A. § 2617 (a)(1)(B);

E.  Judgment declaring that the actions of the defendant described herein have violated the plaintiff's rights under 29 U.S.C. §§ 2614(a)(1), 2614(a)(2), and 2615(a);

F.  Judgment against the defendant awarding plaintiff's costs, disbursements, prejudgment interest lost and/or incurred by reason of the violation.

G.  Judgment against defendant, awarding damages for any wages, salary, employment benefits and other compensation;

H.  Injunctive and declaratory relief with regard to Defendants' unlawful FMLA policies and to force Defendants to cease in enforcing said policies against the hundreds of  other persons employed by them.

I.  Damages which satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and this Court deem just under the circumstances;

J.      Attorneys fees, interest on said attorney's fees, expert witness fees; and

K.      Any and all other such relief as this Court deems just and equitable.

ALL OTHER CLAIMS ASSERTED BY

PLAINTIFFS DEBRA GRAHAM AND KATHLEEN HINDES

**F I F T H   C L A I M   F O R   R E L I E F**

**For violations of Illinois Wage and Hour Laws**

196.    Plaintiffs reallege and incorporate by reference all the paragraphs contained
        within this complaint, as if fully set forth herein.

197.    IMWL **820 ILCS 105/4a** defines "exempt" employees as any employee:

        a.  Any employee employed in a bona fide executive,
            administrative or professional capacity, including any radio or
            television announcer, news editor, or chief engineer, as
            defined by or covered by the Federal Fair Labor Standards Act
            of 1938 and the rules adopted under that Act, as both exist on

March 30, 2003, but compensated at the amount of salary specified in subsections (a) and (b) of Section 541.600 of Title 29 of the Code of Federal Regulations as proposed in the Federal Register on March 31, 2003 or a greater amount of salary as may be adopted by the United States Department of Labor. For bona fide executive, administrative, and professional employees of not-for-profit corporations, the Director may, by regulation, adopt a weekly wage rate standard lower than that provided for executive, administrative, and professional employees covered under the Fair Labor Standards Act of 1938, as now or hereafter amended..

198.    IMWL allows for actions to be brought for five (5) years under oral contract and ten (10) years for written contract. (Hereinafter referred to as the "IMWL claim period".

199.    During the IMWL claim period, Defendant classified Plaintiffs as "exempt" employees

200.    During the IMWL claim period, Plaintiffs never performed the duties which would qualify Plaintiffs as "exempt" employees pursuant to **820 ILCS 105/4a**.

201.    Defendant derived benefits by classifying Plaintiffs as "exempt" employees in that they failed to pay Plaintiffs time-and-a-half for all hours worked in excess of forty (40) hours per pay period.  Nor did the misclassified employees receive adequate employer contributions for FICA and other employer payroll taxes.

202.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial.

203.    Plaintiffs, on behalf of themselves, do not waive any right to penalties under Illinois Wage and Hour Law.

## PRAYER FOR RELIEF

WHEREFORE, PlaintiffS pray for the following relief:

B.    Unpaid wages and liquidated damages pursuant to IWPCA and the supporting Illinois Department of Labor regulations;

C.    Liquidated damages in accordance with the IWPCA in the amount of 10 days of wages.

D.    Unpaid regular wages, spread-of-hours premiums, and overtime wages pursuant to the IWPCA;

E.    Consequential damages;

F.    An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

I.    Additional compensation/penalty due to the Plaintiffs in accordance with Section 14(b) of the IWPCA in the amount of 1% per day (up to an amount to twice the sum of unpaid wages) due under the IWPCA for the delay in payment of due wages;

J.    Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq* and supporting Illinois Department of Labor regulations;

K.    Attorneys' fees in accordance with all applicable laws, Illinois Law and pursuant to 705 ILCS 225/1; the Illinois Attorneys Fees in Wage Actions Act.

L.      and costs of this action; and

M.      Such other relief as this Court shall deem just and proper

## SIXTH CLAIM FOR RELIEF

### ASSERTED BY

### PLAINTIFFS DEBRA GRAHAM AND KATHLEEN HINDES

**and/or Similarly Situated Ryan
Employees
As Members of the Opt-In
Collective Action in accordance
with 29 U.S.C. § 201 et seq.**

204.    Plaintiffs reallege and incorporate by reference all paragraphs contained in this

complaint, as if fully set forth herein.

205.    At all relevant times, Defendant Ryan has been, and continues to be, an

"employer" engaged in interstate commerce and/or in the production of goods for

commerce within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times,

Defendant has employed, and continues to employ, "employee[s]," including the

Plaintiffs, and each of the members of the FLSA Opt-Ins, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has had gross operating revenues in excess of Five Hundred Thousand and no/100 Dollars ($500,000.00).

206. At all relevant times, Defendant has engaged, and continue to engage, in a willful policy, pattern, or practice of requiring or permitting their employees, including the Plaintiffs and members of the prospective FLSA Class, employed by Defendant, to misclassify employees as "exempt" employees in order to require exempt to perform work in excess of forty (40) hours per week without compensating such employees for work performed at the applicable rate.

207. At all relevant times, the work performed by Plaintiffs were, and continue to be, required or permitted by Defendant, for the benefit of Defendant, directly related to such employees' principal employment with Defendant, and as an integral and indispensable part of such employees' employment of Defendant.

208. As a result of the Defendant's willful failure to record or compensate its employees – including Plaintiffs and members of the prospective FLSA Collective – employed at Defendant' factories for all hours worked, Defendant have violated, and continue to violate, the maximum hours provision of the FLSA, 29 U.S.C. § 207(a)(1), and § 215(a).

209. As a result of the Defendant's willful failure to record, report, credit, and/or compensate its employees employed by Defendant, including the Plaintiffs and members of the prospective FLSA Collective, Defendant has failed to make, keep and preserve records with respect to each of their employees sufficient to determine the

wages, hours and other conditions and practices of employment in violation of the

FLSA, including 29 U.S.C. §§211(c) and §§ 215(a).

210.    The foregoing conduct, as alleged, violated the FLSA, 29 U.S.C. §§ 201 et seq.

211.    Plaintiffs, on behalf of themselves and all FLSA Opt-Ins, seek damages in the

amount of their respective unpaid compensation, plus liquidated damages, as

provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief

as the Court deems just and proper.

212.    Plaintiffs, on behalf of themselves and all FLSA Opt-Ins, seek recovery of

attorneys' fees and costs of action to be paid by Defendant, as provided by the FLSA,

29 U.S.C. § 216(b).

213.    Plaintiffs have consented to be a party to this action, pursuant to 29 U.S.C. §

216(b).  Plaintiffs' signed consents are attached hereto as exhibit "1".

214.    At all times relevant to this action, Plaintiffs and all FLSA Opt-Ins were

employed by Defendant within the meaning of the FLSA.

215.    At all times relevant to this action, Plaintiffs and all FLSA Opt-Ins were engaged

in commerce and/or the production of goods for commerce and/or Defendant were an

enterprise engaged in commerce or in the production of goods for commerce within

the meaning of 29 U.S.C. §§ 206(a) and 207(a).

216.    Due to Defendant's FLSA violations, Plaintiffs and all FLSA Opt-Ins are entitled

to recover from Defendant their unpaid compensation, an additional equal amount as

liquidated damages, additional liquidated damages for unreasonably delayed payment

of wages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. §

216(b).

217.    The Plaintiffs are "similarly situated" to other employees because the other employees like the Plaintiffs they are paid a salary but have little or no "exempt" duties.

218.    These similarly situated employees are victims of a single decision, policy, or plan. The employees similarly situated with respect to their job requirements in that their jobs are manual labor or repetitive non-discretionary type work. The similarly situated employees are also similar in that they, like the named Plaintiffs, are paid a salary and Ryan classifies them as Exempt.

219.    Further, the Plaintiffs in their positions within the Human Resources Department, while having no independent authority and discretion, are aware of numerous other employees that are similarly situated as described elsewhere in this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the FLSA Collective and the Overtime Class, pray for the following relief:

A.    That, at the earliest possible time, the Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, been employed by the Defendant as an Assistant Manager.  Such person shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were misclassified as an exempt employee, whereas their primary or significant work duties entail non-administrative duties commonly performed by non-exempt hourly employees.

36

B.      Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting United States Department of Labor regulations;

C.      Unpaid regular wages, spread-of-hours premiums, and overtime wages pursuant to the IMWL and other state wage laws;

D.      Compensation originating from Defendants company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

E.      An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

F.      An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

G.      Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 et seq. and supporting Illinois Department of Labor regulations and other state wage laws;

J.      Attorneys' fees and costs of this action; and

K.      Such other relief as this Court shall deem just and proper.

L.      Legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of the FLSA, including without limitation employment, reinstatement, promotion, the payment of wages lost and an additional equal amount as liquidated damages, and damages for mental and emotional stress.

M.      Civil remedies include all unpaid compensation, mandatory liquidated damages (equal to the amount of the unpaid compensation) equitable relief (such as reinstatement) and attorneys' fees. 29 U.S.C. § 216(b).

## S E V E N T H   C L A I M   F O R   R E L I E F

### (Quantum Meruit)

### ASSERTED BY

### PLAINTIFFS DEBRA GRAHAM AND KATHLEEN HINDES

### and/or Similarly Situated Ryan Employees
### As Members of the Opt-In Collective Action in
### accordance with 29 U.S.C. § 201 et seq.

220.    Plaintiffs reallege and incorporate by reference all paragraphs contained within this complaint, as if fully set forth herein.

221.    Ryan, at all times material to this Complaint, was conscious and aware that Plaintiffs' employment positions entailed performing non-managerial and non-administrative duties in excess of forty (40) hours per week, as Ryan by policies, procedures and specific directives ordered the Plaintiffs to complete assigned work, knowing the assigned tasks were non-managerial and would require more than forty (40) hours of work by the Plaintiffs.

222.    Plaintiffs worked in excess of forty (40) hours per week at the direction and behest of Ryan and the benefits thereby conferred on Ryan were accepted and appreciated by it.

223.    Ryan is liable to Plaintiffs and the Collective under quantum meruit for all work performed by Plaintiffs for Ryan in excess of forty (40) hours.

## E I G H T H   C L A I M   F O R   R E L I E F

### Unjust Enrichment

### ASSERTED BY

PLAINTIFFS DEBRA GRAHAM AND KATHLEEN HINDES

and/or Similarly Situated Ryan Employees
As Members of the Opt-In Collective Action in
accordance with 29 U.S.C. § 201 et seq.

224.    Plaintiffs reallege and incorporate by reference all paragraphs contained in this

complaint, as if fully set forth herein.

225.    Plaintiffs and members of the Collectives were employed by Ryan in excess of

forty (40) hours per pay period without additional compensation beyond the

Plaintiffs' set salary.  Such work constitutes a benefit to the Defendant by Plaintiffs

and the Class.

226.    The benefit was and is appreciated by the Defendant.

227.    The benefit was accepted and is being accepted by the Defendant under such

circumstances that it would be inequitable for it to be retained without payment.

228.    Accordingly, Defendant Ryan is liable to the Plaintiffs and the Class for all hours

worked or which will be worked in the future above forty (40) hours per pay period

for which the Defendant have not paid the Plaintiffs and the Class time-and-a-half.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

B.    Unpaid wages and liquidated damages pursuant to IWPCA and the

supporting Illinois Department of Labor regulations;

C.    Liquidated damages in accordance with the IWPCA in the amount of 10

days of wages.

D.    Unpaid regular wages, spread-of-hours premiums, and overtime wages

pursuant to the IWPCA;

39

E.      Consequential damages;

F.      An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

I.      Additional compensation/penalty due to the Plaintiffs in accordance with Section 14(b) of the IWPCA in the amount of 1% per day (up to an amount to twice the sum of unpaid wages) due under the IWPCA for the delay in payment of due wages;

J.      Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq* and supporting Illinois Department of Labor regulations;

K.      Attorneys' fees in accordance with all applicable laws, Illinois Law and pursuant to 705 ILCS 225/1; the Illinois Attorneys Fees in Wage Actions Act.

L.      and costs of this action; and

M.      Such other relief as this Court shall deem just and proper

## NINTH CLAIM FOR RELIEF

### RETALIATION FOR FLSA/OVERTIME WAGE CLAIMS

### ASSERTED BY

### PLAINTIFFS DEBRA GRAHAM AND KATHLEEN HINDES

229.    Plaintiffs reallege and incorporate by reference all paragraphs contained in this complaint, as if fully set forth herein.

230.    Plaintiffs expressed a belief that they were misclassified and were owed overtime wages.

231.    Plaintiffs experienced retaliation based upon this stated belief.

232.    Plaintiffs experienced retaliation up to and including termination.

233.    Plaintiffs termination was based upon and but for the FLSA complaints

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the FLSA Collective and the Overtime Class, pray for the following relief:

A.    All owed wages;

B.    Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting United States Department of Labor regulations;

C.    Unpaid regular wages, spread-of-hours premiums, and overtime wages pursuant to the IMWL and other state wage laws;

D.    Compensation originating from Defendants company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

E.    An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

F.    An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

G.    Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 et seq. and supporting Illinois Department of Labor regulations and other state wage laws;

J.    Attorneys' fees and costs of this action; and

K.    Such other relief as this Court shall deem just and proper.

L.    Legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of the FLSA, including without limitation employment, reinstatement, promotion, the payment of wages lost and an additional equal amount as liquidated damages, and damages for mental and emotional stress.

M.    Civil remedies include all unpaid compensation, mandatory liquidated damages (equal to the amount of the unpaid compensation) equitable relief (such as reinstatement) and attorneys' fees. 29 U.S.C. § 216(b).

N.  Punitive damages as set forth at 29 U.S.C. § 216(b) and allows "such legal or equitable relief as may be appropriate to effectuate the purposes of [the Act] ...."

## TENTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### ASSERTED BY

### PLAINTIFFS DEBRA GRAHAM AND KATHLEEN HINDES

---

234.    Plaintiffs reallege and incorporate by reference all paragraphs contained in this complaint, as if fully set forth herein.

235.    Plaintiffs were employees of the Defendant.

236.    Plaintiffs fulfilled their job duties with skill and expertise.

237.    Defendant's severe and outrageous acts, including but not limited to insults and degradations, hostile environment, retaliatory environment, amounted to extreme and outrageous conduct.

238.    The shocking, severe, and outrageous acts included statements to Plaintiff Hindes

such as:

   a.  Repeatedly interrogating the Plaintiff by her managers in their offices and in

       front of their co-workers,

   b.  Racial comments

   c.  sexual comments, discussing the sex lives of her co-workers

   d.  Demeaning comments in front of co-workers.

       i.  Comments such as Plaintiff was incompetent.

       ii. This was yelled loud enough that others in the accounting department

           overhead and in front of other coworkers.


239.    Defendant's acts were perpetrated with the intent to cause the Plaintiffs severe

emotional distress.

240.    Defendant's acts were perpetrated with such recklessness as to cause the Plaintiffs

severe emotional distress.

241.    The Plaintiffs did, in fact, experience extreme emotional distress which took the

form of the following symptoms:

   i.   Chest pains,

   ii.  Sleeplessness,

   iii. Headaches,

   iv.  Increased heart rates,

   v.   Increased blood pressure,

   vi.  Fear for their health and safety,

      vii.    Worry for her health, financial future and professional future.

242.    By the extreme emotional distress, the Plaintiffs were thereby damaged.

243.    The Defendant's acts, actions and inaction directly and proximately caused the Plaintiff's severe emotional distress.

244.    Plaintiff Graham sought treatment for the emotional distress by:

      i.    Seeking therapy;

      ii.    Plaintiff Graham is considering a prescription for anti-depressants.

      iii.    Plaintiff Graham coping mechanisms is to sleep and lie around the house.

      iv.    Plaintiff Graham Took Family Medical Leave (FMLA)

245.    Plaintiff Hindes sought treatment for the emotional distress by:

      i.    Plaintiff Hindes sought the advice and assistance of a professional counselor;

      ii.    Plaintiff Hindes received assistance of the counselor until her insurance coverage ended and her ability to pay was inadequate;

      iii.    Plaintiff Hindes sought assistance to the Defendant's "Employee Assistance Program" in early July of 2007 because of the hostile work environment.

      iv.    Further Plaintiff sought the assistance of a private psychiatrist and therapist because of the hostile work environment.

      v.    Plaintiff Hindes was placed on medication because of the anxiety that she faced daily.

     vi.     In late July of 2007, my psychiatrist told her to take three days off because of the stress.

    vii.     Plaintiff Hindes also had irritable bowel syndrome daily for several months at the thought of coming to and being at work.

   viii.     Plaintiff Hines attempted to escape the pressure and be transferred to another department within the company (at the request of the Department Director) but was denied because of a six month transfer rule.

     ix.     myself from the environment without leaving the company.

## PRAYER FOR RELIEF FOR COUNT FIVE

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

     i.    Acceptance of jurisdiction of this cause;

    ii.    Declaratory judgment that the employment practices challenged herein are illegal and violative of the rights secured to Plaintiff;

   iii.    Damages sufficient to compensate Plaintiff for her injuries;

   iv.    Front Pay;

    v.    Back Pay, inclusive of lost wages and any benefits;

   vi.    Lost Future Earnings;

   vii.    Pre-judgment and post-judgment interest;

  viii.    Reasonable attorney's fees pursuant of 42 U.S.C. 1988 and other statutory provisions;

   ix.    An award of litigation costs and expenses;

    x.    Any and all other relief that this Honorable Court may deem just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated:  March 28, 2008

Respectfully submitted,

By:        -S- John C. Ireland
John C. Ireland

Attorney for the Plaintiffs
and the Plaintiff Collective

John C. Ireland
The Law Office Of John C. Ireland
1921 Charles Lane
Aurora, Illinois
60505
630-464-9675
Facsimile 630-206-0889
attorneyireland@aol.com
Attorney Number # 628137