**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| DEBRA GRAHAM, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:08-cv-50019 |
| | ) | |
| v. | ) | Judge Fredrick J. Kapala |
| | ) | Magistrate Judge Michael Mahoney |
| RYAN INTERNATIONAL AIRLINES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS CLAIMS FIVE THROUGH TEN OF PLAINTIFFS' COMPLAINT**

May 2, 2008

Charles C. Jackson
Sari M. Alamuddin
Alison B. Willard
Kirsten M. Evans
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
Tel: (312) 324.1000
Fax: (312) 324.1001
Email: kirsten.evans@morganlewis.com

Defendant RYAN INTERNATIONAL AIRLINES, INC. ("Defendant" or "Ryan"), by its attorneys and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectfully submits this Memorandum of Law in Support of Its Motion to Dismiss Claims Five Through Ten of Plaintiffs' Complaint.

## INTRODUCTION

Plaintiffs Debra Graham ("Graham") and Kathleen Hindes ("Hindes") (collectively, "plaintiffs") have filed a ten-count complaint against their former employer, Ryan. Claims One through Four are pled on behalf of Graham only, and allege violations of the Family Medical Leave Act ("FMLA"). They are the only claims that state an actionable claim. The remaining claims should be dismissed, either because they fail to state a claim upon which relief may be granted, or because they are preempted by federal and state law. *See* Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") for overtime pay (Sixth Claim) and retaliation (Ninth Claim) fail because plaintiffs are exempt from the FLSA's overtime requirements as employees of a "common carrier by air" under the Railway Labor Act. Thus, plaintiffs are not entitled to overtime and their alleged complaints of Ryan's failure to pay them overtime are not protected activity under the FLSA as a matter of law.

Plaintiffs' state law overtime claims fare no better. Plaintiffs' Fifth Claim under the Illinois Minimum Wage Law ("IMWL") is preempted by the FLSA and other federal laws regulating airlines. The Sixth and Seventh Claims for *quantum meruit* and unjust enrichment are based on the right to overtime pay under the FLSA and IMWL. Because no such right exists here, those claims in turn fail to state a claim upon which relief can be granted. In any event, the

collective allegations set forth in Claims Six and Seven must be stricken because plaintiffs

cannot use the FLSA's collective action device to pursue their state common law claims.

Finally, plaintiffs' claims for intentional infliction of emotional distress ("IIED") (Tenth

Claim) fail as a matter of law. Hindes' IIED claim is partly preempted by the Illinois Human

Rights Act ("IHRA"), and both plaintiffs' IIED claims are completely preempted by the Illinois

Workers' Compensation Act. Moreover, neither plaintiff has alleged sufficiently "extreme and

outrageous" conduct to state a claim for IIED.

In short, Ryan respectfully requests that the Court dismiss the Fifth through Tenth Claims

of plaintiffs' complaint, including their putative collective action allegations.

## RELEVANT FACTUAL ALLEGATIONS

**I.      The Parties.**

Ryan is a 14 CFR Part 121 Domestic, Flag and Supplemental Air Carrier based in

Rockford, Illinois. (Compl. p. 4, ¶ 13.)[1] Ryan holds itself out to the public as a provider of

numerous air transportation services, including flying U.S. personnel, sports teams, fans, bands,

and politicians throughout the world. *See Ryan Int'l Airlines Home Page,*

http://www.flyryan.com/services.html (last visited May 1, 2008).

Graham worked for Ryan as a Payroll Accountant at the Ryan worldwide headquarters in

Rockford, Illinois. (Comp. p. 5, ¶ 26.) She was responsible for inputting data into the payroll

system to result in payment of the Ryan payroll to its employees. (Compl. p. 8, ¶ 45.)

Hindes also worked for Ryan's corporate headquarters, as a Manager, Human Resources

– Compliance. (Comp. p. 5, ¶ 27.) Hindes oversaw the drug testing program for Ryan

employees. (Compl. p. 13, ¶ 41.)

---

[1] Due to errors in the numbering of plaintiffs' Complaint, Ryan cites to both page and paragraph numbers.

II.    **Plaintiffs' Claims For Overtime Pay.**

Plaintiffs allege that Ryan misclassified them and "similarly-situated" employees as exempt and failed to pay them time-and-a-half for all hours worked in excess of 40 hours per pay period.  (Compl. pp. 5-7, ¶¶ 26-35.)  These same allegations underpin plaintiffs' individual claims for overtime under the IMWL (Fifth Claim) and their "collective" claims under the FLSA (Sixth Claim) and state law *quantum meruit* (Seventh Claim) and unjust enrichment (Eighth Claim) theories.  (Compl. pp. 31-32, 38-40 ¶¶ 160-167 ¶¶ 184-192.)

In their Ninth Claim, plaintiffs contend that Ryan retaliated against them in violation of the FLSA for expressing a belief that that they were misclassified and owed overtime wages under the FLSA.  (Compl. pp. 41-43, ¶¶ 195-197.)

III.    **Plaintiffs' IIED Claims.**

Plaintiffs' Tenth Claim alleges that Ryan subjected them to IIED.  (Compl. pp. 43-46, ¶¶ 198-209.)  Plaintiffs allege that Ryan committed "severe and outrageous acts," including but not limited to "insults and degradations, hostile environment, and retaliatory environment."  (Compl. p. 43, ¶ 201.)  In addition, Hindes specifically alleges that Ryan subjected her to: (a) repeated interrogation by her managers in their offices and in front of coworkers, (b) racial comments, (c) sexual comments, discussing the sex lives of her coworkers, and (d) demeaning comments, like Hindes was incompetent, yelled loudly so that the accounting department and coworkers could hear.  (Compl. pp. 43-44, ¶ 202.)

## <u>ARGUMENT</u>

When reviewing a Rule 12(b)(1) motion for lack of jurisdiction, or a 12(b)(6) motion for failure to state a claim, the Court must accept as true all well-pleaded factual allegations and inferences reasonably drawn from those facts.  However, it need not ignore facts in the complaint that undermine the plaintiff's claim, or assign any weight to conclusory allegations.  *See County*

*of McHenry v. Ins. Co. of the West,* 438 F.3d 813, 817-818 (7th Cir. 2006); *Boring v. World Gym-Bishop, Inc.*, No. 06 C 3260, 2008 WL 410638, at *1 (N.D. Ill. Feb. 13, 2008) (copy attached at Tab A).  "A plaintiff who files a long and detailed complaint may plead himself out of court by including factual allegations which if true show his legal rights were not invaded." *Lekas v. Briley*, 405 F.3d 602, 613-14 (7th Cir. 2005) (quoting *Am. Nurses' Ass'n. v. Illinois*, 783 F.2d 716, 725 (7th Cir. 1986)).

I.    **Plaintiffs' FLSA Overtime (Sixth) And Retaliation (Ninth) Claims Fail As A Matter Of Law.**

A.    **Plaintiffs' FLSA Overtime (Sixth) Claim Should Be Dismissed Because Plaintiffs Are Exempt Employees Of A Common Carrier.**

In their Sixth Claim, plaintiffs allege that they and "similarly situated" employees were misclassified as exempt from the overtime pay provisions of the FLSA.  (Compl. pp 34-37, ¶¶ 168-183.)  But the FLSA's overtime provisions do not apply to "any employee of a carrier by air subject to the provisions of Title II of the Railway Labor Act [RLA]."  29 U.S.C. § 213(b)(3)(2000).  Title II of the RLA, in turn, applies to every "common carrier by air engaged in interstate or foreign commerce" and every employee of such carrier.  45 U.S.C. § 181(2000). Thus, plaintiffs are exempt from FLSA overtime if three conditions are satisfied:  (1) Ryan is a common carrier by air; (2) Ryan is engaged in interstate or international air transportation; and (3) plaintiffs' work is related to air transportation.  *See Caggianiello v. FSG Privatair, Inc.*, No. 3:03CV1011(AWT), 2007 U.S. Dist. LEXIS 28904, at *3-5 (D. Conn. Aug. 6, 2007) (copy attached at Tab B) (citing *Thibodeaux v. Executive Jet Int'l, Inc.*, 328 F.3d 742 (5th Cir. 2003)). All three conditions are met here.

1.    **Ryan Is A Common Carrier By Air Engaged In Interstate Or International Transport.**

The crucial factor in identifying a "common carrier" is "whether [it] has held itself out to the public or a definable *segment* of the public as being willing to transport for hire, indiscriminately." *Caggianiello*, 2007 U.S. Dist. LEXIS 28904 at *3 (citing *Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1287 (11th Cir. 2002) (emphasis in original) (quoting *Woolsey v. Nat'l Transp. Safety Bd.*, 993 F.2d 516, 523 (5th Cir. 1993))); *see also Thibodeaux*, 328 F.3d at 749-750.[2] Plaintiffs allege that Ryan "is a 14 CFR Part 121 Domestic, Flag and Supplemental Air Carrier." (Compl. ¶ 13.)  This allegation alone establishes that Ryan is a "common carrier" Under Title II of the RLA.  *See Thibodeaux*, 328 F.3d at 745, 748-749 (finding defendant was a "common carrier by air," even though it operated most flights under Federal Aviation Regulations Part 91 (private or non-commercial carriage) as opposed to the more stringent safety standards of Part 135; accordingly, its flight attendants were exempt from overtime).

Moreover, "[w]hat is crucial is that the common carrier defines itself through its own marketing efforts as being willing to carry any member of that segment of the public which it serves." *Id.* at 752-753 (holding RLA exemptions applied to NetJets, which marketed its services in on the internet) (citing *Woolsey*, 993 F.2d at 524 (internal quotation and citation omitted)). Here, Ryan holds itself out to the public as a provider of interstate and international air transportation services, including flying U.S. and other nation's military personnel, sports teams, fans, bands, and politicians throughout the world.  *See* http://www.flyryan.com/services.html. Thus, Ryan qualifies as a common carrier under the RLA.  *See Thibodeaux*, 328 F.3d at 753.  It is also indisputably engaged in interstate transportation.  (Compl. pp. 34, ¶ 169 "[a]t all relevant

---

[2] Whether an employer is a "common carrier" under the RLA does not depend on representation by a union or the existence of a collective bargaining agreement.  *See Osborne v. Enchantment Aviation, Inc.*, 112 Fed. Appx. 673, 674 (10th Cir. Oct. 12, 2004) (copy attached at Tab C).

times, Defendant Ryan has been, and continues to be, an "employer" engaged in Interstate

Commerce . . ."); http://www.flyryan.com/services.html.

**2.    Plaintiffs' Work Is Related To Air Transportation.**

The RLA applies to work that bears "more than a tenuous, negligible and remote

relationship to the transportation activities." *See Slavens v. Scenic Aviation, Inc.*, No. 99-4197,

2000 U.S. App. LEXIS 17412, at *5 (10th Cir. Jul. 18, 2000) (copy attached at Tab D) (affirming

summary judgment in favor of the employer under the FLSA). In *Slavens*, the plaintiff worked

for an air ambulance company evaluating the background of potential medical staff, establishing

company protocols and procedures, informing hospitals of services, and resolving personnel

disputes. *Id.* at *7. Slavens argued that because he had no day-to-day responsibilities over any

pilots or airplanes, nor any knowledge of flights, his duties were "tenuous, negligible, and

remote" with respect to the transportation activities and therefore he was not covered by the

RLA. *Id.* at *7. The Tenth Circuit disagreed: "[f]ar from being 'remote, tenuous, or negligible,'

these support activities are integral to [the defendant's] air ambulance services. [Defendant],

which derives 90-95% of its revenues from its air ambulance services, simply could not perform

these services without such support activities." *Id.* at 7-8.

Likewise, in this case, plaintiffs' alleged job duties, which included processing payroll

and overseeing the drug testing program for Ryan's employees, are support activities without

which Ryan could not perform its air transportation services. Thus, plaintiffs are exempt from

overtime provisions of the FLSA, and their Sixth Claim fails. *See also Verrett v. Sabre Group,*

*Inc.*, 70 F. Supp. 2d 1277, 1283 (N.D. Okla. 1999) (granting motion to dismiss as employees of

affiliate of airlines that provided computers systems to support air transportation-related services

were exempt employees of a common carrier by air); *Furtado v. Reno Air, Inc.*, No. CV-N-96-

361-DWH(PHA), 1998 U.S. Dist. LEXIS 13486, at *2, fn. 1 (D. Nev. June 29, 1998) (copy

attached at Tab E) (noting, in an action for overtime wages brought by a human resource

coordinator, that the maximum hour provisions of the FLSA do not apply to employees of air

carriers).

> **B.    Plaintiffs' FLSA Retaliation (Ninth) Claim Fails Because They Did Not Engage In Any Protected Activity Under The FLSA.**

In Count Nine, plaintiffs allege that they formed a "reasonable belief" that they were

misclassified as exempt and owed overtime wages, expressed this belief to Defendant, and as a

result, experienced retaliation up to and including termination.  (Compl. pp. 9-10, ¶¶ 53-60, p.

14, ¶¶ 51-55, pp. 41-42, ¶¶ 193-197.)  Far from being "reasonable," plaintiffs' belief that they

were owed overtime was, as a matter of law, *unreasonable*, as the FLSA does not prohibit the

conduct they opposed.  Thus, they did not engage in any protected activity and their retaliation

claims fail as a matter of law.

FLSA retaliation claims are governed by the same legal analysis applicable to retaliation

claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.

*See Beltran v. Brentwood N. Healthcare Ctr.*, 426 F. Supp. 2d 827, 833 (N.D. Ill. 2006) (citing

*Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004)).  To state a viable retaliation

claim, a plaintiff must allege: "(1) she engaged in statutorily protected activity; (2) she suffered

an adverse action by her employer or former employer; and (3) a causal link exists between the

protected expression and adverse action."  *Id.* at 833.

There is no requirement that an actual FLSA violation occur for conduct to be protected,

so long as a plaintiff has a good faith belief that the law might be violated.  *See Sapperstein v.

Hager,* 188 F.3d 852, 857 (7th Cir. 1999).  However, as the Seventh Circuit has held in the Title

VII context, a good faith belief "must also be objectively reasonable, which means that the

complaint must involve [conduct] that is prohibited by [the law] . . . If a plaintiff opposed

conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable." *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 707 (7th Cir. 2000) (employee's subjective belief that he engaged in protected activity by complaining about sexual orientation harassment was not objectively reasonable, because sexual orientation harassment is not prohibited by Title VII).

The same principles apply under the FLSA. *See Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1134 (N.D. Ga. 2004) (finding plaintiff's belief that his employer's failure to pay for on-call time violated the FLSA was not objectively reasonable). Otherwise, plaintiffs "are free to disclaim knowledge of the substantive law, [and] the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge." *Id.* at 1134-1136 (citing *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 n. 2 (11th Cir. 1998) (holding employees' belief that grooming policy violated Title VII was unreasonable given overwhelming law upholding such policies)); *see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312, 1317 (11th Cir. 2002) ("plaintiffs may not stand on their ignorance of the substantive law to argue that their belief was reasonable"). Here, plaintiffs did not complain of conduct prohibited by the FLSA, because Ryan employees are exempt from the FLSA's overtime provisions. Thus, plaintiffs' retaliation claim fails to state a claim upon which relief can be granted.

## II.    Plaintiffs' State Law Claims For Overtime Pay Fail As A Matter Of Law.

### A.    The FLSA Preempts Plaintiffs' Illinois Minimum Wage Law Claims.

Where a state statute conflicts with or frustrates federal law, the state statute must give way. *See R.J. Corman R.R. v. Palmore*, 999 F.2d 149, 151 (6th Cir. 1993) (holding that Kentucky statute concerning overtime payments to railway workers was preempted by federal legislation) (citing *CSX Transp. v. Easterwood*, 507 U.S. 658 (1993)). Application of the IMWL to entitle employees of a common carrier by air to overtime pay would frustrate FLSA Section

213(b)(3)'s exemption for such workers, as well as Congress's extensive regulation aimed at subjecting air carriers to uniform standards nationwide.  Therefore, the IMWL must give way to federal law, and its application here is preempted.

In *Coil v. Jack Tanner Towing Co.*, the court held that the IMWL was preempted by the FLSA and maritime law.  242 F. Supp. 2d 555 (S.D. Ill. 2002).  The *Coil* court noted that under FLSA Section 213(b)(6), "any employee employed as a seamen" is specifically exempted from the overtime requirements of the FLSA.  *Id.* at 559.  Thus, "[t]he State's overtime laws may not be applied without entering a realm in which Congress has taken specific action."  *Id.* at 559.  The *Coil* court noted the problematic nature of carriers employing seamen having to track hour-by-hour when their vessels were in Illinois versus another state's waters, and comply with each state's requirements.  *Id.* at 560.  "This conflicts with the federal maritime scheme of uniformity and avoidance of disruption."  *Id.*; *see also United Transportation Union v. Consol. Rail Corp.*, No. F 80-173, 1980 U.S. Dist. LEXIS 15911, at *4-7 (N.D. Ind. Oct. 15, 1980) (copy attached at Tab F)  (finding state statute concerning wage deductions preempted by the Railway Labor Act, since it would be unacceptable for the wage withholding methods of Conrail to be subject to conflicting adjudication by the courts of various states).[3]

Likewise here, subjecting air carriers to the overtime provisions of the IMWL conflicts with Congress's intent, as expressed in FLSA Section 213(b), that these employees should be exempt from overtime pay, as well as with the broad panoply of federal regulation of airlines and air travel, aimed at providing national uniformity.[4]  *See R.J. Corman*, 999 F.2d at 153-154; *see*

---

[3] *But see Smith v. United Parcel Serv., Inc.*, 890 F. Supp. 523 (S.D. W. Va. 1995) (holding West Virginia law providing overtime protection not preempted by the FLSA).

[4] *See, e.g.,* Air Commerce Act of 1926, 44 Stat. 568 (charging the Secretary of Commerce with fostering air commerce, issuing and enforcing air traffic rules, licensing pilots, certificating aircraft, establishing airways, and operating and maintaining aids to air navigation); Civil Aeronautics Act of 1938, 49 U.S.C. § 401 *et seq.* (creating the Civil Aeronautics Authority and expanding the power to regulate airline fares

*also Fitz-Gerald v. Skywest Airlines, Inc.,*, 155 Cal. App. 4th 411, 422 (Cal. App. Sept. 19, 2007) (affirming trial court's ruling that application of California labor law regarding minimum meal and rest breaks would substantially burden interstate commerce and thwart the purpose of the RLA); *Brown v. Md. and Pa. R.R. Co.*, 719 A.2d 807, 811 (Pa. Super. 1998) (holding Adamson Act (now repealed) regulating the workday of railroad employees preempted state law claims for overtime where "to allow individual states to circumvent any of the elements of federal regulation of railroads would destroy the uniformity thought essential by Congress."). Thus, plaintiffs' Fifth Claim should be dismissed.

**B.     Because Plaintiffs Are Not Entitled To Overtime Under The FLSA Or IMWL, Their *Quantum Meruit* (Seventh) And Unjust Enrichment (Eighth) Claims Likewise Fail.**

Plaintiffs' *quantum meruit* and unjust enrichment claims merely incorporate and reallege the facts underpinning their FLSA claim, and have no basis aside from legal rights created by the FLSA and IMWL. (Compl. pp. 34-37, ¶¶ 168-183; 39, 40, ¶¶ 185,189.) Absent a statutory right to overtime pay under the FLSA or IMWL, plaintiffs have failed to plead any basis for their claim that Ryan is liable to them in *quantum meruit* or was unjustly enriched by their work, and these claims should be dismissed pursuant to Rule 12(b)(6).

**C.     To The Extent That Plaintiffs' *Quantum Meruit* And Unjust Enrichment Claims Survive, Their Collective Action Allegations Should Be Dismissed.**

Plaintiffs purport to bring their *quantum meruit* and unjust enrichment claims on behalf "the Collective." (Compl. p. 39, ¶ 185; Compl. p. 40, ¶¶ 189-192.) Plaintiffs cannot use the

---

and routes); Federal Aviation Act of 1958, 49 U.S.C. § 40101 *et seq.* (establishing the Federal Aviation Administration ("FAA") and authorizing it with, among other things, sole responsibility for common system of air navigation and air traffic control); Airport and Airway Development Act of 1970, 49 U.S.C. § 1730, (entrusting FAA with new airport aid program and safety certification of airports served by air carriers); Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) (prohibiting states and local governments from enforcing laws related to a price, route, or service of an air carrier); Omnibus Transportation Employee Act of 1991, 49 U.S.C. § 31301 *et seq.* (requiring drug and alcohol testing of safety-sensitive transportation employees in aviation and other transportation industries).

collective action mechanism authorized by Section 216(b) of the FLSA to prosecute claims under state law.  Rather, plaintiffs must seek class-wide relief pursuant to the provisions of Federal Rule of Civil Procedure 23.  *See, e.g., Marquez v. PartyLite Worldwide, Inc.*, No. 07 C 2024, 2007 U.S. Dist. LEXIS 63301, at *8 (N.D. Ill. Aug. 27, 2007) (copy attached at Tab G) (because the FLSA does not expressly provide that its modified procedures applies to all wage disputes, Rule 23's "usual course" applies to plaintiff's state law claims).  Because plaintiffs cannot bring state common law claims under the FLSA's collective action procedure, their allegations on behalf of the "collective" must be dismissed.

**III.    Plaintiffs' IIED Claim (Tenth Claim) Should Be Dismissed Pursuant To Rules 12(b)(1) And 12(b)(6).**

**A.    The IHRA Preempts Hindes' IIED Claim To The Extent It Is Based On Conduct Proscribed By The IHRA.**

The IHRA preempts all state law claims "seeking redress for a 'civil rights violation' within the meaning of [that] statute."  *See Krocka v. City of Chicago*, 203 F.3d 507, 516-517 (7th Cir. 2000) (affirming dismissal of IIED claim based on alleged comments that were only offensive to the extent that they referred to the plaintiff's disability) (citing *Geise v. Phoenix Co. of Chi.*, 159 Ill. 2d 507 (Ill. 1994)).  Much of the conduct that Hindes alleges in support of her IIED claims (racial and sexual comments) falls under the ambit of the IHRA.  (Compl. pp. 43-44, ¶¶ 201-202); 775 Ill. Comp. Stat. 5/2-102 (2008).  Hindes' IIED claim, insofar as it is based on such human rights violations, is preempted by the IHRA.  *See Stansberry v. Uhlich Children's Home*, 264 F. Supp. 2d 681, 690 (N.D. Ill. 2003) (plaintiff failed to plead a claim for IIED in the employment context where the conduct alleged was not actionable aside from its character as a civil rights violation); *Witt v. Country Ins. & Fin. Serv.*, No. 04 C 3938, 2004 WL 2644397, at *4 (N.D. Ill. Nov. 18, 2004) (copy attached at Tab H) (court lacked jurisdiction over IIED claim that merely recast alleged discrimination, harassment, and retaliation covered by the IHRA).

B.      **The IWCA Completely Preempts Both Plaintiffs' IIED Claims.**

The exclusivity provision of the Illinois Workers' Compensation Act ("IWCA") bars

employees' common law claims for accidental injuries sustained while working, and many

courts have dismissed IIED claims brought by employees pursuant to the IWCA's exclusivity

provision. *See* 820 ILCS 305/5(a); 820 ILCS 305/11; *Juarez v. Ameritech Mobile Commc'ns,*

*Inc.*, 957 F.2d 317, 323-24 (7th Cir. 1992); *Dunlap v. Nestle USA, Inc.*, 431 F.3d 1015 (7th Cir.

2005).

To escape IWCA preemption, plaintiffs must show that the injury (1) was not accidental;

(2) did not arise from their employment; (3) was not received during the course of employment;

or (4) is not compensable under the IWCA. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d. 455,

463, 564 N.E.2d 1222 (Ill. 1990); *Dunlap*, 431 F.3d at 1016. They cannot do so here.

First, plaintiffs complain only of conduct occurring in the workplace. Thus, the conduct

arose from their employment, and any injury took place during their employment, and exceptions

two and three do not apply. *See Juarez*, 957 F. 2d at 323-24. Second, plaintiffs' alleged injuries

are compensable under the IWCA. *See Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 408

N.E.2d 198, 237 (Ill. 1980) (finding that since "emotional distress is compensable under the

Act," employee who was denied medical treatment after suffering heart attack at work was

precluded from suing for civil damages for IIED).

Finally, when a plaintiff bases a claim against an employer on the alleged intentional acts

of a co-worker, the harm is considered accidental under the IWCA and the claim is preempted,

unless the plaintiff can show the employer or its "alter ego" directed or expressly authorized the

allegedly wrongful acts. *Meerbrey*, 139 Ill. 2d at 464-65. No such allegations are present in

plaintiffs' complaint.[6]  *See Hangebrauck v. Zenith Elecs. Corp.*, Case No. 86 C 6956, 1988 U.S.

Dist. LEXIS 2400 (N.D. Ill. March 23, 1988) (copy attached at Tab J) (dismissing IIED claim

where plaintiff did not plead that supervisor acted as "alter ego" of employer).  In short, plaintiffs

cannot meet any of the exceptions to the IWCA's exclusivity provision, and their IIED claims

are preempted by the IWCA.

      **C.**    **Neither Plaintiff Alleges Conduct That Is Sufficiently "Extreme" Or "Outrageous" To Make Out An IIED Claim.**

To set forth a claim for IIED, a plaintiff must show that (1) the conduct alleged is "truly

extreme and outrageous," (2) the actor intended that his conduct inflict severe emotional distress,

or knew that there was at least a high probability that his conduct would cause severe emotional

distress, and (3) the conduct in fact caused *severe* emotional distress.  *Thomas v. Fuerst*, 345 Ill.

App. 3d 929, 803 N.E.2d 619, 625 (Ill. App. 2004); *Van Stan v. Fancy Colours & Co.*, 125 F.3d

563, 569 (7th Cir. 1997) (affirming dismissal of IIED claim alleging employer terminated

plaintiff because his bipolar disorder necessitated a reduced schedule, finding that such "conduct

did not rise to the level of extreme and outrageous").

Illinois courts have long recognized that personality conflicts and "questioning of job

performance" frequently "produce concern and distress," but do not give rise to an IIED claim.

*Van Stan*, 125 F.3d at 567 (quoting *Heying v. Simonaitis*, 126 Ill. App. 3d 157, 466 N.E.2d 1137,

1144 (Ill. App. 1984) (affirming dismissal of IIED claim where the alleged improper conduct

was merely an expression by plaintiff's supervisors that personality conflicts had arisen and that

it was negatively impacting the group's work)).  "Mere insults, indignities, threats, annoyances,

---

[6]  Generally, low-level supervisors are not the employer's "alter ego."  *Walker v. Doctors Hosp. of Hyde Park*, 110 F. Supp. 2d 704, 715 (N.D. Ill. 2000); *Robinson v. Roney Oatman, Inc.*, Case No. 97 C 8964, 1999 U.S. Dist. LEXIS 18683, at *45 (N.D. Ill. Nov. 23, 1999) (copy attached at Tab I) (person is alter ego if he "speak[s] for the company" and possesses "the authority to make decisions and set policy on behalf of his employer").

petty oppressions, or other trivialities" also do not qualify as outrageous conduct. *Thomas*, 345 Ill. App. 3d at 935-36.   Rather, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* at 936 (quoting *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90, 360 N.E.2d 765 (Ill. 1976)).

Plaintiffs' allegations fall far short of that threshold.  Hindes alleges garden-variety employment claims, coupled with allegations that Ryan managers repeatedly interrogated her and yelled demeaning comments, like calling her incompetent, in front of coworkers.  (Compl. pp. 43-44, ¶¶ 201-202.)  As a matter of law, the conduct that Hindes alleges is not sufficiently egregious to make out an intentional IIED claim.  *See Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993) (affirming 12(b)(6) dismissal of IIED claim based on employer's alleged refusal to allow employee to supervise white subordinates or participate in a management incentive fund, failure to keep promise to promote, taking away major accounts, excluding her from office activities, monitoring phone calls, and ignoring concerns for her health and safety); *Maddie v. Siebel Sys.*, Case No. 04 C 3419, 2004 U.S. Dist. LEXIS 22511 (N.D. Ill. Nov. 4, 2004) (copy attached at Tab K) (IIED claims dismissed where plaintiff alleged defendant screamed at him, unfairly terminated his employment, and blocked his ability to transfer to another job); *Lundy v. City of Calumet City*, 209 Ill. App. 3d 790, 567 N.E.2d 1101 (Ill. App. 1991) (IIED claim based on public statements that employees committed fraud or were mentally ill dismissed).

As for Graham, she fails to set forth *any* specific allegations in support of her IIED claim. Presumably, she bases her IIED claim on the allegations underpinning her FMLA claims. (Compl. pp. 43-44, ¶¶ 198-202).  "Federal courts in the Northern District of Illinois routinely have held that, even when a plaintiff is entitled to leave under the FMLA, denying an employee's

request for leave or discharging an employee for requesting leave is not egregious enough conduct to be considered extreme and outrageous." *See Alcazar-Anselmo v. City of Chicago*, No. 07 C 5246, 2008 U.S. Dist. LEXIS 32042, at *7 (N.D. Ill. Apr. 18, 2008) (copy attached at Tab L) (citing *Diemer v. Fraternal Order of Police*, No. 05 C 7179, 2006 U.S. Dist. LEXIS 19605 (N.D. Ill. March 28, 2006) (copy attached at Tab M) (dismissing IIED claim based on discharge of plaintiff after a request for leave, as the conduct alleged amounted to nothing more than the routine actions taken in any termination, such as requiring the employee to remove their possessions from the workplace)); *Lozano v. Kay Mfg. Co.*, No. 04 C 2784, 2004 U.S. Dist. LEXIS 12948, at *2 (N.D. Ill. July 9, 2004) (copy attached at Tab N) (dismissing plaintiff's IIED claim based on nothing more than employer's refusal to provide medical leave as not rising to the level of extreme and outrageous).

## CONCLUSION

For all of these reasons, Defendant respectfully requests that the Court dismiss plaintiffs' Fifth through Tenth Claims in their entirety, with prejudice.

Dated: May 2, 2008

Respectfully submitted,

RYAN INTERNATIONAL AIRLINES

By:  /s/ Kirsten M. Evans
      One of Its Attorneys

Charles C. Jackson
Sari M. Alamuddin
Alison B. Willard
Kirsten M. Evans
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
Tel:  (312) 324.1000
Fax:  (312) 324.1001
Email:  kirsten.evans@morganlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing was electronically filed with the

Court this 2nd day of May, 2008, which will send a notice of electronic filing to the following

counsel of record:

> John C. Ireland
> The Law Office of John C. Ireland
> 1921 Charles Lane
> Aurora, Illinois 60505
> attorneyireleand@aol.com

> /s/ Kirsten M. Evans
> One of Defendant's Attorneys