# TAB A

Westlaw.

Slip Copy                                                                                            Page 1
Slip Copy, 2008 WL 410638 (N.D.Ill.)
**(Cite as: Slip Copy, 2008 WL 410638)**

Boring v. World Gym-Bishop, Inc.
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Shirley BORING, Plaintiffs,
v.
WORLD GYM-BISHOP, INC., Al Phillips, Indi-
vidually, and Barbara Phillips, Individually, De-
fendants.
No. 06 C 3260.

Feb. 13, 2008.

Martin K. Denis, Bethany A Hilbert, Barlow
Kobata & Denis, Chicago, Il, William J. Proven-
zano, William J. Provenzano & Associates, Liber-
tyville, IL, for Plaintiff.
Jack J. Carriglio, James Gregory Argionis, Jennifer
Jean Pomaranski, Meckler Bulger & Tilson LLP,
Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

JAMES B. ZAGEL, District Judge.
*1 Shirley Boring sues World Gym-Bishop, Inc., Al
Phillips, and Barbara Phillips (collectively "World
Gym") for discrimination in violation of the Amer-
icans with Disabilities Act ("ADA"), 42 § 12101 et.
seq. (Count I), wrongful and retaliatory discharge
(Count II), intentional infliction of emotional dis-
tress ("IIED") (Count III), violation of the Family
Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et
seq. (Count IV), willful violations of the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.
(Count V), and liqui damages (Count VI). World
Gym has moved to dismiss Counts II and III of
Boring's Third Amended Complaint pursuant to
Federal Rule of Civil Procedure 12(b)(1). World
Gym argues that the state law claims in Counts II
and III should be dismissed for lack of subject mat-
ter jurisdiction because they are preempted by the
Illinois Human Rights Act ("IHRA"), 775 ILCS

5/1-101 et seq.[FN1]

FN1. In summary fashion, Boring argues
in her response that World Gym waived its
IHRA preemption argument in their three
prior motions to dismiss the First and
Second Amended Complaints. However,
the law is clear that subject matter jurisdic-
tion cannot be waived and may be con-
tested by a party or raised sua sponte at
any point in the proceedings. *Levin v. At-
torney Registration and Disciplinary
Com'n of Supreme Court of Illinois,* 74
F.3d 763, 766 (7th Cir.1996). A court al-
ways has jurisdiction to decide its own jur-
isdiction. *Steel Co. v. Citizens for a Better
Environment,* 523 U.S. 83, 118, 118 S.Ct.
1003, 140 L.Ed.2d 210 (1998). Thus,
World Gym properly raises the issue here.

**I. BACKGROUND**

The following facts are taken from Boring's third
amended complaint. World Gym is an Illinois cor-
poration where Boring was employed most recently
as Accounts Payable Secretary. Al and Barbara
Phillips are co-owners of World Gym. Sometime
before 2004, Boring was diagnosed with an inoper-
able brain tumor and advanced gastric reflux dis-
ease. Because of her conditions, Boring claims that
on occasion she had difficulty eating and breathing.
As a result, she had sometimes choked on her food,
and required the use of an oxygen tank at the work-
place to help her breathe. During Boring's four-year
employment with World Gym, World Gym was
aware of her condition.

Sometime during her employment, Boring reported
and complained of some accounting discrepancies
at World Gym to Defendant Al Phillips
("Mr.Phillips"), alleging that Defendant Barbara
Phillips ("Ms.Phillips") was responsible for stealing
the money. After notifying Mr. Phillips of this im-
propriety, Boring claims that Ms. Phillips began

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 410638 (N.D.Ill.)
**(Cite as: Slip Copy, 2008 WL 410638)**

Page 2

making antagonistic comments to her on several occasions, utilizing derogatory and threatening language and telling Boring, "watch your back bitch" and "watch your house and car." Boring further claims that Ms. Phillips left her phone messages stating "aren't you dead yet from that brain tumor, bitch."

Boring also claims that Mr. Phillips made derogatory statements to her during her employment with World Gym. Boring told Mr. Phillips on multiple occasions that she had doctor's appointments to treat her brain cancer. Over the course of several months, whenever Boring would tell Mr. Phillips about her appointments and need for medical treatment, Mr. Phillips would tell Boring, "I have no sympathy for sick people" and "if you were a horse, they would shoot you."World Gym discharged Boring on August 14, 2004.

## II. LEGAL STANDARD

World Gym moves to dismiss Counts II and III pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of federal subject matter jurisdiction. Ensuring the existence of subject matter jurisdiction is the court's first duty in every lawsuit. *McCready v. White,* 417 F.3d 700, 702 (7th Cir.2005). In considering this motion, I must accept Boring's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in Boring's favor. *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir.2007).

## III. DISCUSSION

**\*2** Boring alleges two tort claims against World Gym: (1) wrongful and retaliatory discharge (Count II) and (2) IIED (Count III). World Gym asserts that these claims must be dismissed as preempted by the Illinois Human Rights Act ("IHRA"), which provides a comprehensive scheme of remedies and administrative procedures to redress human rights violations. 775 ILCS 5/1-101 et. seq.; *see Talley v. Washington Inventory Service,* 37 F.3d 310, 311

(7th Cir.1994). Claims under the IHRA fall within the exclusive jurisdiction of the Illinois Human Rights Commission. 775 ILCS 5/8-111(C) (stating that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act.") The IHRA preempts all state tort claims that are "inextricably linked" to a civil rights violation within the meaning of the statute. *Krocka v. City of Chicago,* 203 F.3d 507, 516-17 (7th Cir.2000). Discrimination based on a disability is a civil rights violation prohibited by the IHRA. 775 ILCS 5/1-103(I). Thus, this court lacks subject matter jurisdiction over state tort claims inextricably linked to allegations of disability discrimination. *Luttrell v. Certified Grocers Midwest, Inc.,* 2003 WL 22844239, at \*5 (N.D.Ill.Dec.1, 2003) (quoting *Quantock v. Shared Marketing Services, Inc.* 312 F.3d 899, 905 (7th Cir.2002) (internal quotations omitted)).

However, a common law tort claim is not inextricably linked with a civil rights violation where a plaintiff pleads the necessary elements of the tort claim independent of any legal duties furnished by the IHRA. *Maksimovic v. Tsogalis,* 177 Ill.2d 511, 227 Ill.Dec. 98, 687 N.E.2d 21, 24 (Ill.1997) (clarifying the issue of IHRA preemption first addressed by the Supreme Court of Illinois in *Geise v. Phoenix Co. of Chicago, Inc.,* 159 Ill.2d 507, 203 Ill.Dec. 454, 639 N.E.2d 1273 (Ill.1994)); *Bruce v. South Stickney Sanitary Dist.,* 2001 WL 789225, at \*3 (N.D.Ill. Jul.12, 2001) (adopting *Maksimovic* test); *Naeem v. McKesson Drug Co.,* 444 F.3d 593, 604 (7th Cir.2006) (same). In such a case, the plaintiff has established a basis for imposing liability on the defendant independent of any statutory cause of action arising under the IHRA. *Maksimovic,* 227 Ill.Dec. 98, 687 N.E.2d at 24

### A. Wrongful and Retaliatory Discharge

Boring argues that her wrongful and retaliatory discharge claim (Count II) does not involve any legal rights encompassed by the IHRA. She alleges that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

her discharge was in retaliation for her report that a theft was occurring and that her retaliatory discharge contravenes the public policy that encourages citizen crime fighters. World Gym latches on to the part of Count II that alleges a phone message left for Boring by Ms. Phillips, in which Ms. Phillips said "aren't you dead yet from that brain tumor, bitch." World Gym argues that because Boring includes an allegation related to her medical condition in this section of her complaint, then Boring must be alleging that her termination was motivated by the alleged animus toward that medical condition.

**\*3** While there may very well be a connection between Boring's medical condition and World Gym's motivation in firing her, the two are not linked "inextricably" such that the wrongful and retaliatory discharge claim would not exist but for the IHRA. Instead, Boring alleges an independent basis for the firing apart from the Act, namely her discovery of the alleged accounting discrepancies and her reporting those findings, implicating Ms. Phillips, to Mr. Phillips. To the extent that Boring has alleged the elements of the tort of wrongful and retaliatory discharge without reference to her disability, she has established a basis for imposing liability on World Gym independent of the Act. *See Maksimovic,* 227 Ill.Dec. 98, 687 N.E.2d at 23. Therefore, World Gym's motion to dismiss Count II is denied.

**B. IIED**

In Count III, besides the conclusory allegations that plead the elements of IIED, Boring alleges World Gym committed IIED when Mr. Phillips' made abusive comments every time she had a doctor's appointment, knowing that Boring was particularly susceptible. Although IIED claims are not categorically preempted by IHRA, the allegations here solely include conduct that is inextricably linked with Boring's ADA and FMLA claims. *Naeem,* 444 F.3d at 603, n. 4 (reviewing various federal district court applications of *Maksimovic* and inconsistent

results regarding preemption). Boring's IIED theory sounds primarily in disability discrimination, and that discrimination is the "core" of her theory. *Smith v. Chicago Sch. Reform Bd.,* 165 F.3d 1142, 1151 (7th Cir.1999) (finding preemption where racial discrimination was not merely incidental to the claim of IIED but rather the core of plaintiff's theory). Because Boring's IIED claim is inextricably linked to her allegations of disability discrimination, it is preempted by the IHRA. *See Stansberry v. Uhlich Children's Home,* 264 F.Supp.2d 681, 690 (N.D.Ill. May 21, 2003) (IIED claims barred by IHRA where they were inextricably linked to Title VII claims); *Harrington-Grant v. Loomis, Fargo & Co.,* 2002 WL 47152, at \*5 (N.D.Ill. Jan.11, 2002) (IIED claims barred by IHRA where they were inextricably linked to Title VII and FMLA claims). Therefore, World Gym's motion to dismiss Count III is granted.

For the reasons above, World Gym's Motion to Dismiss Boring's Third Amended Complaint is denied in part and granted in part. With respect to Count II, the motion is DENIED. With respect to Count III, the motion is GRANTED.

N.D.Ill.,2008.
Boring v. World Gym--Bishop, Inc.
Slip Copy, 2008 WL 410638 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB B

LEXSEE 2007 US DIST LEXIS 28904

**NICHOLAS CAGGIANIELLO, NEIL HOWARD and THOMAS FALCO, on behalf of themselves and all other similarly situated employees of FSG PrivatAir, Inc., Plaintiffs, v. FSG PRIVATAIR, INC., and in their individual and official capacities DAVID C. HURLEY, HUGH F. REGAN, THOMAS H. MILLER and THOMAS L. CONNELLY, Defendants.**

**Civil Case No. 3:03CV1011 (AWT)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2007 U.S. Dist. LEXIS 28904*

**April 6, 2007, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, employees of defendant employer, filed suit alleging violations of § 7(a) of the Fair Labor Standards Act of 1938 (FLSA). Defendants moved to dismiss the claims for lack of subject matter jurisdiction, claiming that plaintiffs were employees of a common carrier by air, which was subject to Title II of the Railway Labor Act (RLA) under *45 U.S.C.S. § 181* and thus exempt from the requirements of the FLSA under *29 U.S.C.S. § 213(b)(3)*.

**OVERVIEW:** Plaintiffs argued that the evidence submitted by defendants did not demonstrate that during the time period at issue in this case, as opposed to the time period subsequent to the filing of the complaint, defendant held itself out to the public as offering private charter flights and scheduled services for hire. The court concluded that the exhibits show that defendant held itself out to the public as a provider of charter flights and that it operated thousands of charter flights during the 2000-2003 time period. Moreover, even though the court allowed plaintiffs to conduct discovery on the issue of subject matter jurisdiction and such discovery has been completed, plaintiffs did not offered any evidence to support their assertion that defendant did not hold itself out to the public as offering charter flight services for hire. Moreover, plaintiff offered no evidence to suggest that defendant turned away customers for reasons unrelated to legitimate financial or security concerns. Finally, plaintiffs did not contest that defendant was engaged in interstate commerce.

**OUTCOME:** The court granted defendant's motion to dismiss.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] A party seeking to invoke the subject matter jurisdiction of a Court has the burden of demonstrating that there is subject matter jurisdiction in the case. The demonstration of jurisdiction must be by a preponderance of the evidence, and in resolving the question of subject matter jurisdiction, a district court can refer to evidence outside the pleadings.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Statutory Application > General Overview*
[HN2] The Fair Labor Standards Act of 1938 overtime provisions do not apply to any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act. *29 U.S.C.S. § 213(b)(3)*. Title II of the

Case 3:08-cv-50019    Document 25-2    Filed 05/02/2008    Page 7 of 23

Page 2
2007 U.S. Dist. LEXIS 28904, *

Railway Labor Act applies to every common carrier by air engaged in interstate or foreign commerce and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers. *45 U.S.C.S. § 181*. Three conditions must be satisfied in order for the exemption to apply: (1) the employer is a common carrier by air; (2) the employer is engaged in interstate or international air transportation; and (3) the employees' work is related to air transportation.

*Transportation Law > Air Transportation > General Overview*
*Transportation Law > Carrier Duties & Liabilities > General Overview*
[HN3] The crucial determination in assessing the status of a carrier is whether the carrier has held itself out to the public or a definable segment of the public as being willing to transport for hire, indiscriminately.

*Transportation Law > Air Transportation > General Overview*
*Transportation Law > Carrier Duties & Liabilities > General Overview*
[HN4] The standard for determining the status of a carrier is whether the carrier has held itself out to the public or a definable segment of the public as being willing to transport for hire, indiscriminately.

**COUNSEL:** [*1] For Nicholas Caggianiello, o/b/o himself and all others similarly situated employees of FSG Privatair, Inc., Neil Howard, o/b/o himself and all others similarly situated employees of FSG Privatair, Inc., Thomas Falco, o/b/o himself and all others similarly situated employees of FSG Privatair, Inc., Plaintiffs: James T. Baldwin, John B. Kaiser, LEAD ATTORNEYS, Coles, Baldwin & Craft, Fairfield, CT.

For FSG Privatair, Inc, David C. Hurley, I/O, Hugh F. Regan, I/O, Thomas H. Miller, I/O, Thomas L. Connelly, I/O, Defendants: Joseph C. Maya, LEAD ATTORNEY, Maya & Associates, Westport, CT; Richard J. Diviney, LEAD ATTORNEY, Sherwood & Garlick, Westport, CT; Russell James Sweeting, LEAD ATTORNEY, Maya & Associates, Fairfield, CT.

**JUDGES:** Alvin W. Thompson, United States District Judge.

**OPINION BY:** Alvin W. Thompson

**OPINION**

*RULING ON DEFENDANTS' SECOND RENEWED MOTION TO DISMISS*

The plaintiffs, employees of defendant FSG PrivatAir, Inc. ("PrivatAir"), bring this action alleging violations of *Section 7(a)* of the Fair Labor Standards Act of 1938 ("FSLA"). The defendants have moved to dismiss the plaintiffs' claims for lack of subject matter jurisdiction on the grounds that the plaintiffs were [*2] employees of a "common carrier by air," which is subject to Title II of the Railway Labor Act ("RLA") under *45 U.S.C. § 181* and therefore exempt from the requirements of the FLSA pursuant to *29 U.S.C. § 213(b) (3)*. The plaintiffs do not dispute that if PrivatAir was subject to Title II of the RLA then the defendants cannot be liable under the FLSA. For the reasons set forth below, the defendants' renewed motion to dismiss is being granted.

**I. Legal Standard**

[HN1] "A party seeking to invoke the subject matter jurisdiction of a Court has the burden of demonstrating that there is subject matter jurisdiction in the case." *Shenandoah v. Halbritter, 366 F.3d 89, 91 (2d Cir. 2004)*. The demonstration of jurisdiction must be by a preponderance of the evidence, and "[i]n resolving the question of [subject matter] jurisdiction, the district court can refer to evidence outside the pleadings." *See Luckett v. Bure, 290 F.3d 493, 496-497 (2d Cir. 2002)*.

[HN2] The FLSA overtime provisions do not apply to "any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act." *29 U.S.C. § 213(b)(3) (2000)*. [*3] Title II of the RLA applies to "every common carrier by air engaged in interstate or foreign commerce . . . and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers." *45 U.S.C. § 181 (2000)*. Three conditions must be satisfied in order for the exemption to apply: (1) the employer is a common carrier by air; (2) the employer is engaged in interstate or international air transportation; and (3) the employees' work is related to air transportation. *See Thibodeaux v. Executive Jet Int'l, Inc., 328 F.3d 742 (5th Cir. 2003); Rocky Mountain Holdings, L.L.C.,* NMB Case No. CJ-6638, 26 NMB 132 (Nat'l Mediation Bd. Jan. 12,

2007 U.S. Dist. LEXIS 28904, *3

1999).

The Second Circuit has not had occasion to define what constitutes a "common carrier by air" for purposes of the RLA. However, those circuit courts that have addressed the issue have determined that [HN3] "the crucial determination in assessing the status of a carrier is whether the carrier has held itself out to the public or a definable *segment* of the public as being willing to transport for hire, indiscriminately." *Valdivieso v. Atlas Air, Inc., 305 F.3d 1283, 1287 (11th Cir. 2002)* [*4] (emphasis in original) (*quoting Woolsey v. Nat'l Transp. Bd., 993 F.2d 516, 523 (5th Cir. 1993)*); see also *Thibodeaux, 328 F.3d at 750* (same).

## II. *Discussion*

The plaintiffs argue that the evidence submitted by the defendants does not demonstrate that during the time period at issue in this case (June 6, 2000 - June 6, 2003), as opposed to the time period subsequent to the filing of the complaint, PrivatAir held itself out to the public as offering private charter flights and scheduled services for hire. After reviewing the exhibits to Defendant's Memorandum of Law in Support of Their Second Renewed Motion to Dismiss (Doc. No. 87) and Defendants' Supplemental Exhibit A to Reply Memorandum (Doc. No. 96), the court concludes that the exhibits show that PrivatAir has held itself out to the public as a provider of charter flights since at least March of 2001 and that it operated thousands of charter flights during the 2000-2003 time period. Moreover, even though the court allowed the plaintiffs to conduct discovery on the issue of subject matter jurisdiction and such discovery has been completed, the plaintiffs have not offered any evidence [*5] to support their assertion that PrivatAir did not hold itself out to the public as offering charter flight services for hire.

The plaintiffs also argue that PrivatAir is not a common carrier by air because it did not hold itself out for hire indiscriminately. In support of this argument, the plaintiffs refer to a newspaper article where the Chief of Security for PrivatAir states that PrivateAir has turned away clients based on background checks or their requested destination. The plaintiffs' argument is unpersuasive. [HN4] The standard "is whether the carrier has held itself out to the public or a definable *segment* of the public as being willing to transport for hire, indiscriminately." *Woolsey, 993 F.3d at 516* (emphasis in original). In this case, the definable segment of the public is that group of prospective customers who the company has determined do not pose an unacceptable financial or security risk. The plaintiff has offered no evidence to suggest that PrivatAir turned away customers for reasons unrelated to legitimate financial or security concerns.

Finally, the plaintiffs do not contest that PrivatAir is engaged in interstate commerce. On the contrary, the [*6] Complaint states that the defendants were "engaged at all times in substantial activities related to interstate commerce . . . with the knowledge and intention on the part of Defendants that such activities would facilitate the operation of aircraft and aircraft services across state lines." Complaint P 26. Similarly, it is undisputed that the plaintiff employees were involved in activity relating to air transportation. The plaintiffs allege that they "were engaged in activities in the furtherance of PrivatAir's business or aircraft management and private air charter services." Complaint P 25.

### III. *Conclusion*

For the foregoing reasons, the plaintiffs have failed to meet their burden of showing, by a preponderance of the evidence, that defendant PrivatAir is liable under the FLSA because it is not a common carrier by air subject to the RLA. Accordingly, the Defendant's Second Renewed Motion to Dismiss (Doc. No. 86) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.

Dated this 6th day of April 2007 at Hartford, Connecticut.

/s/ Alvin W. Thompson

United States District Judge

# TAB C

Westlaw.

112 Fed.Appx. 673
112 Fed.Appx. 673, 2004 WL 2287765 (C.A.10 (N.M.))
**(Cite as: 112 Fed.Appx. 673, 2004 WL 2287765)**

C
Osborne v. Enchantment Aviation, Inc.
C.A.10 (N.M.),2004.
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)
United States Court of Appeals,Tenth Circuit.
Dennis Wayne OSBORNE; Karen Franco, Plaintiffs-Appellants,
v.
ENCHANTMENT AVIATION, INC., doing business as Southwest Air Ambulance, a New Mexico corporation, Defendant-Appellee.
**No. 03-2271.**

Oct. 12, 2004.

**Background:** Former employees brought action against employer, an air ambulance service operator, to recover overtime compensation under the Fair Labor Standards Act (FLSA). The United States District Court for the District of New Mexico entered summary judgment in favor of employer, and employees appealed.

**Holding:** The Court of Appeals, John L. Kane, Senior Judge, sitting by designation, held that air ambulance service operator was an air carrier excused from FLSA's overtime pay provisions. Affirmed.

West Headnotes

**Labor and Employment 231H ⇐2288**

231H Labor and Employment
    231HXIII Wages and Hours
        231HXIII(B) Minimum Wages and Overtime Pay
            231HXIII(B)3 Exemptions
                231Hk2285 Carriers
                    231Hk2288 k. Air Carriers' Employees. Most Cited Cases
Pursuant to Railway Labor Act (RLA), air ambulance service operator was an air carrier excused from overtime pay provisions of the Fair Labor Standards Act (FLSA). Fair Labor Standards Act of 1938, § 13(b)(3), 29 U.S.C.A. § 213(b)(3); Railway Labor Act, § 201 et seq., as amended, 45 U.S.C.A. § 181 et seq.

**\*674** W.T. Martin, Jr., Martin Law Firm, Carlsbad, NM, for Plaintiffs-Appellants.
William R. Babington, Jr., Holt & Babington, Las Cruces, NM, for Defendant-Appellee.

Before SEYMOUR and ANDERSON, Circuit Judges, and KANE,[FN*] Senior District Judge.

> FN* The Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

**ORDER AND JUDGMENT**[FN**]

> FN** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.KANE, Senior District Judge.

**\*\*1** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See*Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiffs Dennis Osborne and Karen Franco appeal from the district court's grant of summary judgment in favor of defendant Enchantment Aviation, Inc., d/b/a Southwest Air Ambulance (Southwest). Our

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

112 Fed.Appx. 673                                                                                    Page 2
112 Fed.Appx. 673, 2004 WL 2287765 (C.A.10 (N.M.))
**(Cite as: 112 Fed.Appx. 673, 2004 WL 2287765)**

jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Southwest operates an air ambulance service throughout New Mexico and western Texas. It is an air carrier certified by the Federal Aviation Commission, and it derives 100% of its revenue from providing air ambulance services. Each of Southwest's air ambulances are generally staffed with an emergency medical technician paramedic (EMTP) and a registered nurse (RN).

After Mr. Osborne, an EMTP, and Ms. Franco, an RN, ceased working for Southwest, they filed suit under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, asserting that they were denied overtime compensation in violation of section 207(a)(1) of the FLSA. Plaintiffs further asserted that section 213(b)(3) of the FLSA, exempting from section 207's overtime requirements any employee of an air carrier subject to title II of the Railway Labor Act (RLA), 45 U.S.C. §§ 181-188, was not applicable to them because the RLA, in plaintiffs' words, "hinges upon the existence of a union and a collective bargaining agreement being in place," Aplt.App. at 31, and plaintiffs were neither union members nor subject to a collective *675 bargaining agreement. The district court rejected plaintiffs' argument, concluding that Southwest was entitled to summary judgment as a matter of law. This appeal followed.

We review the district court's grant of summary judgment de novo, "drawing all reasonable inferences in favor of the nonmovant." *Hiner v. Deere & Co.,* 340 F.3d 1190, 1192-93 (10th Cir.2003) (bracket omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Plaintiffs raise two issues on appeal. First, they maintain that Southwest violated section 207(a)(1)

of the FLSA, contending that the RLA does not apply to air carrier employees who are neither union members nor subject to a collective bargaining agreement. Second, they allege that the district court erred in relying on *Slavens v. Scenic Aviation, Inc.,* No. 99-4197, 2000 WL 985933 (10th Cir. July 18, 2000) (unpublished), because *Slavens* is not binding, and it did not resolve whether the RLA applies to air carrier employees outside the organized labor setting.

"The construction and applicability of a federal statute is a question of law, which we review de novo." *Rosette Inc. v. United States,* 277 F.3d 1222, 1226 (10th Cir.2002). Where, as here, "the language is clear and unambiguous, then the plain meaning of the words must be given effect." *Resolution Trust Corp. v. Love,* 36 F.3d 972, 976 (10th Cir.1994).

**2** After carefully reviewing the parties' briefs, the record, and the law, we conclude that the district court correctly held that the plain text of the FLSA exemption at issue, § 213(b)(3), and of the RLA, "make it clear that Southwest is an air carrier excused from the FLSA's overtime pay provisions." Aplt.App. at 52. We therefore AFFIRM the district court's judgment for the reasons stated in its memorandum opinion and order dated September 30, 2003.

Finally, because our disposition would be the same whether the district court had cited *Slavens* or not, it is beside the point that *Slavens* is unpublished and that it did not consider whether the RLA applies to air carrier employees outside the organized labor setting.

C.A.10 (N.M.),2004.
Osborne v. Enchantment Aviation, Inc.
112 Fed.Appx. 673, 2004 WL 2287765 (C.A.10 (N.M.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB D

1 of 2 DOCUMENTS



Analysis
As of: May 01, 2008

**GARY D. SLAVENS, Plaintiff-Appellant, vs. SCENIC AVIATION, INC., Defendant-Appellee.**

**No. 99-4197**

**UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**

*2000 U.S. App. LEXIS 17412; 2000 Colo. J. C.A.R. 4361*

**July 18, 2000, Filed**

**NOTICE:**     [*1] RULES OF THE TENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**     Reported in Table Case Format at: *2000 U.S. App. LEXIS 24683.*

**PRIOR HISTORY:**     (D. Utah). (D.C. No. 99-CV-259).

**DISPOSITION:**     AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff appealed from the judgment of the United States District Court for the District of Utah, granting summary judgment in favor of defendant employer, on his Fair Labor Standards Act overtime claim.

**OVERVIEW:** Defendant operated primarily as an air ambulance and charter service, while occasionally carrying air cargo. Plaintiff worked for defendant, and after he was terminated, he alleged he should have been paid for approximately 600 hours of overtime that he worked while employed with defendant. Plaintiff argued that failure to pay him for his overtime was a violation of the Fair Labor Standards Act (FLSA). The district court granted summary judgment in favor of defendant, holding that defendant was governed by the Railway Labor Act (RLA), and was therefore exempt from the FLSA. On appeal, the court affirmed. Because the court held that defendant was a common carrier by air subject to the RLA, that plaintiff was an employee of defendant for purposes of the RLA, and that his job duties with defendant were not remote, tenuous, or negligible with respect to defendant's transportation activities, the district court's grant of summary judgment to defendant was affirmed.

**OUTCOME:** Judgment affirmed; defendant was a common carrier by air subject to the Railway Labor Act (RLA), plaintiff was an employee of defendant for purposes of the RLA, and his job duties were not remote, tenuous, or negligible with respect to defendant's transportation activities.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
*Civil Procedure > Summary Judgment > Standards > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*

2000 U.S. App. LEXIS 17412, *1; 2000 Colo. J. C.A.R. 4361

[HN1] The court reviews a grant of summary judgment de novo. In doing so, it applies the same standard as the district court to determine whether there is a genuine issue of material fact, and whether defendant is entitled to judgment as a matter of law. The court examines the entire factual record and any reasonable inferences which may be drawn from it in the light most favorable to the plaintiffs.

*Labor & Employment Law > Collective Bargaining & Labor Relations > General Overview*
[HN2] The Railway Labor Act covers every common carrier by air engaged in interstate or foreign commerce. *45 U.S.C.S. § 181.*

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Transportation Industries*
[HN3] The Fair Labor Standards Act (FLSA) expressly exempts air carriers subject to the Railway Labor Act from the FLSA's overtime provisions. *29 U.S.C.S. § 213(b)(3).*

*Labor & Employment Law > Wage & Hour Laws > General Overview*
[HN4] Exemptions to the Fair Labor Standards Act are to be narrowly construed against the employer.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Transportation Industries*
[HN5] The Fair Labor Standards Act exempts from its overtime provisions any employee of a carrier by air subject to the Railway Labor Act. *29 U.S.C.S. § 213(b)(3).*

*Labor & Employment Law > Employment Relationships > At-Will Employment > Employees*
*Labor & Employment Law > Employment Relationships > At-Will Employment > Employers*
*Labor & Employment Law > Wage & Hour Laws > General Overview*
[HN6] The Fair Labor Standards Act's definition of employee is any person employed by an employer, and its definition of employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee. *29 U.S.C.S. § 203(e)(1), (d).*

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Executives & Professional Employees*
[HN7] The Fair Labor Standards Act clearly exempts from its overtime provisions any employee employed in a bona fide executive, administrative, or professional capacity. *29 U.S.C.S. § 213(a)(1).*

*Labor & Employment Law > Collective Bargaining & Labor Relations > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Transportation Industries*
*Torts > Transportation Torts > General Overview*
[HN8] The Railway Labor Act (RLA) was not intended to apply to all types of work, regardless of the connection to transportation, just because the company conducting the work performed some carrier activities within its company functions. Rather, the RLA was intended to apply only to transportation activities and that work which bears more than a tenuous, negligible and remote relationship to the transportation activities of the employer.

**COUNSEL:** For GARY D. SLAVENS, Plaintiff - Appellant: James K. Slavens, Fillmore, UT.

For SCENIC AVIATION, INC., Defendant - Appellee: Marci Batty, Michael P. O'Brien, Jones Waldo Holbrook & McDonough, Salt Lake City, UT.

**JUDGES:** Before SEYMOUR, KELLY, and LUCERO, Circuit Judges.

**OPINION BY:** Paul J. Kelly, Jr.

**OPINION**

### ORDER AND JUDGMENT *

\*    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment

Case 3:08-cv-50019    Document 25-2    Filed 05/02/2008    Page 15 of 23

Page 3

2000 U.S. App. LEXIS 17412, *1; 2000 Colo. J. C.A.R. 4361

may be cited under the terms and conditions of *10th Cir. R. 36.3.*

Plaintiff-Appellant Gary Slavens appeals from the district court's grant of summary judgment in favor of Defendant-Appellee Scenic Aviation ("Scenic"). Scenic [*2] operates primarily as an air ambulance and charter service, while occasionally carrying air cargo. Mr. Slavens worked for Scenic as its Vice President of Medical Operations beginning in January of 1998. After he was terminated, Mr. Slavens alleged that he should have been paid for approximately 600 hours of overtime that he worked while employed with Scenic. Mr. Slavens argues that failure to pay him for his overtime was a violation of the Fair Labor Standards Act ("FLSA"). The district court granted summary judgment in favor of Scenic, holding that Scenic is governed by the Railway Labor Act ("RLA") and is therefore exempt from the FLSA. On appeal, Mr. Slavens argues that (1) Scenic is not governed by the RLA; (2) he is not an "employee" as that term is defined by the FLSA, and thus cannot fall under the RLA exemption; and (3) his job duties are too far removed from any air carrier services to be governed by the RLA. Our jurisdiction arises under *28 U.S.C. § 1291* and we affirm.

Discussion

[HN1] We review a grant of summary judgment de novo. In doing so, we apply the same standard as the district court to determine whether there is a genuine issue of material [*3] fact, and whether defendant is entitled to judgment as a matter of law. See *Southwestern Bell Wireless, Inc. v. Johnson County Bd. of County Comm'rs, 199 F.3d 1185, 1189 (10th Cir. 1999)*. We examine the entire factual record and any reasonable inferences which may be drawn from it in the light most favorable to the Plaintiffs. See *Chessin v. Keystone Resort Management, Inc., 184 F.3d 1188, 1191-92 (10th Cir. 1999)*.

(1) Scenic is governed by the RLA

[HN2] The Railway Labor Act covers "every common carrier by air engaged in interstate or foreign commerce." *45 U.S.C. § 181*. [HN3] The FLSA expressly exempts air carriers subject to the RLA from the FLSA's overtime provisions. See *29 U.S.C. § 213(b)(3)*. Mr. Slavens is correct in asserting that [HN4] exemptions to the FLSA are to be narrowly construed against the employer. See *Chessin, 184 F.3d at 1192*. However, in this case, the operations of Scenic are clearly within the exemption's terms and spirit. Thus, if Scenic is covered by the RLA, it is not subject to the FLSA's overtime provisions. See *Northwest Airlines, Inc. v. Jackson, 185 F.2d 74, 77 (8th Cir. 1950)*. [*4]

Mr. Slavens contends that Scenic does not itself provide any carrier services, but rather simply owns and manages several other companies, which do perform air carrier services. Therefore, Mr. Slavens argues, Scenic is not a common carrier by air, and therefore not covered by the RLA. The evidence, however, is undisputed. Scenic is not merely a management company. Approximately 90-95 percent of Scenic's revenues are attributable to its air ambulance and charter service. Further, Scenic holds an Air Carrier Certificate from the Federal Aviation Administration ("FAA") authorizing Scenic to "operate as an air carrier and conduct common carriage operations." Scenic's sole purpose for existence is to provide air carrier services; the fact that it conducts business using several other assumed names is irrelevant. See e.g., In re Rocky Mountain Holdings, L.L.C. d/b/a/ Eagle Airmed of Arizona, No. CJ-6638, 1999 WL 17850 (N.M.B. Jan. 12, 1999). We agree with the district court that there is no genuine issue of material fact that Scenic is a common carrier by air involved in interstate commerce. Therefore, it is governed by the RLA and exempt from the overtime provisions [*5] of the FLSA.

(2) Mr. Slavens is an "employee" of Scenic

[HN5] The FLSA exempts from its overtime provisions any "*employee* of a carrier by air subject to [the Railway Labor Act]." *29 U.S.C. § 213(b)(3)* (emphasis added). Mr. Slavens argues he is not an "employee" of Scenic for purposes of the FLSA by pointing to the [HN6] FLSA's definition of employee (any person "employed by an employer") and its definition of employer (which "includes any person acting directly or indirectly in the interest of an employer in relation to an employee.") *29 U.S.C. §§ 203(e)(1), 203(d)*.

Neither party disputes that Mr. Slavens, as Vice President of Medical Operations, worked for Scenic in a management/supervisory capacity. Mr. Slavens contends that, in doing this work, he was "acting directly or indirectly in the interest of" Scenic, and should therefore be classified as an employer rather than an employee under the FLSA. Further, he claims that, as a manager, he would always represent management rather than

2000 U.S. App. LEXIS 17412, *5; 2000 Colo. J. C.A.R. 4361

employees in labor disputes, thus making him an employer. If classified as an employer rather than an employee, Mr. Slavens believes he would be eligible [*6] for overtime benefits under the FLSA, because the exemption only applies to *employees* subject to the RLA.

However, [HN7] the FLSA also clearly exempts from its overtime provisions "any employee employed in a bona fide executive, administrative, or professional capacity." *29 U.S.C. § 213(a)(1)*. Mr. Slavens' claim to be a manager would appear to place him squarely in this exempt category, making him ineligible for overtime pay. Mr. Slavens has given us no cases to support his position that he can be a subordinate employee (thus falling outside of the *§ 213(a)(1)* exemption) while simultaneously being an employer for purposes of escaping the RLA exemption. We agree with the district court that Mr. Slavens is an employee of Scenic as defined by the FLSA.

(3) Mr. Slavens' job duties were directly related to Scenic's air carrier services

Mr. Slavens correctly points out that even if Scenic is subject to the RLA, not all of Scenic's employees are necessarily covered by the overtime exemption of the RLA. [HN8] The RLA was not intended to apply to all types of work, regardless of the connection to transportation, just because the company conducting the work performed [*7] some carrier activities within its company functions. See *Northwest Airlines, 185 F.2d at 77*. Rather, the Act "'was intended to apply only to transportation activities and that work which bears more than a tenuous, negligible and remote relationship to the transportation activities [of the employer].'" Id. (citation omitted).

Mr. Slavens argues that, because he had no day-to-day responsibilities over any pilots or airplanes, nor any knowledge of when various flights were taking place, his duties were tenuous, negligible, and remote

with respect to Scenic's transportation activities, and he is not covered by the RLA. However, Mr. Slavens' duties were directly related to Scenic's operations as an air ambulance company. In his affidavit, Mr. Slavens characterized his job duties as "primarily focused on evaluating the medical background of potential medical staff for proper qualifications, establishing medical protocols, establishing company policies and procedures, informing hospitals of the services and resolving personnel disputes." Aplee. Supp. App. at 30 P15. Far from being "remote, tenuous, or negligible," these support activities are integral to Scenic's [*8] air ambulance services. Scenic, which derives 90-95 percent of its revenues from its air ambulance services, simply could not perform these services without such support activities. Cf. *Pan American World Airways, Inc. v. United Bhd. of Carpenters & Joiners of America, 324 F.2d 217, 220 (9th Cir. 1963)* (finding that preventive maintenance work at a nuclear research development station performed by employees of an airline was too remote from transportation to be within the application of the RLA); *Marshall v. Pan American World Airways, Inc., 1977 U.S. Dist. LEXIS 14570, 1977 WL 1772*, at *5 (M.D. Fla. Aug. 8, 1977) (giving as an example of an activity that is remote, tenuous, or negligible the operation of a hotel by airline employees). Because we hold that Scenic Aviation is a common carrier by air subject to the RLA, that Mr. Slavens was an employee of Scenic for purposes of the RLA, and that his job duties with Scenic were not remote, tenuous, or negligible with respect to Scenic's transportation activities, the district court's grant of summary judgment to defendant Scenic Aviation is AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.

Circuit [*9] Judge

# TAB E

LEXSEE 1998 US DIST LEXIS 13486



Positive
As of: May 01, 2008

BETTY J. FURTADO, Plaintiff, v. RENO AIR, INC., Defendant.

CASE NO. CV-N-96-361-DWH(PHA)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA

*1998 U.S. Dist. LEXIS 13486*

June 29, 1998, Decided
June 29, 1998, Filed; June 30, 1998, Entered

**SUBSEQUENT HISTORY:** Adopting Order of July 24, 1998, Reported at: *1998 U.S. Dist. LEXIS 13484.*

**DISPOSITION:** [*1] Recommended that Reno Air's motion for partial summary judgment (Dkt. # 26) denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee filed an action against defendant employer, which alleged sex, age, and disability discrimination. The complaint also alleged breach of contract. The employer filed a motion for partial summary judgment. The case was referred to a magistrate judge for a report and recommendation.

**OVERVIEW:** The employee worked hours in excess of 40 hours per week on a consistent basis. Her supervisor informed her that she was allowed to take one hour of comp time for every overtime hour that she worked. Before she resigned from the company, she was not allowed to use all of her comp time. After she left, she sought payment for the unused time. When the employer refused to pay her, she filed an action for breach of an oral contract, among other things. The employer alleged that the supervisor never promised to pay the employee for the overtime that she worked. However, the supervisor breached his agreement by not allowing the employee to use all of her earned comp time. Moreover, a

payment would have given the employee the benefit of the bargain since she was unable to use the comp time after she left the company. The court noted that the employer received the benefit of gratuitous labor. Therefore, in the absence of an express agreement, the court implied a contract based on the fact that the employee rendered services to the employer for which she had a reasonable expectation to be paid. Finally, the court noted that the supervisor had the authority to bind the employer.

**OUTCOME:** The magistrate judge's report recommended denying the employer's motion for partial summary judgment on the breach of contract issue.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
[HN1] Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

Case 3:08-cv-50019   Document 25-2   Filed 05/02/2008   Page 19 of 23

Page 2
1998 U.S. Dist. LEXIS 13486, *1

the moving party is entitled to a judgment as a mater of law. *Fed. R. Civ. P. 56(c)*. The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If this burden is met, the nonmoving party assumes the responsibility of designating specific facts showing that there is a genuine issue for trial. In resolving a motion for summary judgment, all reasonable inferences must be drawn in favor of the nonmoving party.

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
[HN2] When deciding a motion for summary judgment, a court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

*Contracts Law > Remedies > Compensatory Damages > General Overview*
[HN3] Contractual damages are designed to award the aggrieved party the benefit of the bargain.

*Contracts Law > Types of Contracts > Implied-in-Fact Contracts*
*Labor & Employment Law > Employment Relationships > Employment Contracts > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN4] In the absence of an express agreement between the parties delineating the method of pay for comp time accumulated, a court will imply a contract based on the fact that an employee rendered services to an employer for which he had a reasonable expectation to be paid.

*Business & Corporate Law > Agency Relationships > Authority to Act > Actual Authority > Implied Authority > General Overview*
*Business & Corporate Law > Agency Relationships > Authority to Act > Apparent Authority > General Overview*
[HN5] To bind a principal, an agent must have actual authority, express or implied, or apparent authority.

**COUNSEL:** For Plaintiff: Julia C. Vohl, Law Office of Vohl and Vohl.

For Defendant: Rick R. Hsu, Walther, Key, Maupin, Oats, Cox, Klaich, and LeGoy.

**JUDGES:** Phyllis Halsey Atkins, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** Phyllis Halsey Atkins

**OPINION**

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable David W. Hagen, United States District Judge. The case was referred to the undersigned Magistrate Judge on May 20, 1998 (Dkt. # 30) pursuant to *28 U.S.C. § 636(b)(1)(B)* and Local Rule of Practice IB 1-4, for consideration of Defendant Reno Air, Inc.'s ("Reno Air") motion for partial summary judgment (Dkt. # 26). Plaintiff Betty J. Furtado ("Furtado") has filed an opposition (Dkt. # 28) to the motion, to which Reno Air has replied (Dkt. # 29).

The primary questions presented are (1) whether an employee who has been promised compensatory time-off may recover, after separation from her employment, money for accumulated, unused compensatory time-off; and (2) the authority of a Reno Air supervisor to bind Reno Air to such a promise. [1] The Court concludes [*2] that both questions contain genuine issues of material fact; consequently, the motion for partial summary judgment should be denied.

1 The maximum-hour and overtime provisions of the Fair Labor Standards Act of 1938, as amended, *29 U.S.C. §§ 201-219*, do not apply to employees of air carriers. *29 U.S.C.A. § 213(b)(3) (West Supp. 1998)*.

**I. BACKGROUND**

Furtado was employed by Reno Air from August 1992 to May 1996 as a human resource coordinator, and paid on a salary basis. She claims that she worked roughly 1,500 overtime hours, and that her supervisor, Kevin Kilcourse ("Kilcourse"), had promised her, in August or September of 1992, that for every hour of work performed in excess of forty per week, she would receive one hour of time-off with pay ("comp time"). [2] Furtado

states that she did receive eighty-eight hours of comp time, but that Kilcourse refused to allow her any more.

> 2    At deposition, Furtado characterized Kilcourse's promise as permitting her to "take comp time for the hundreds of hours that [she] worked" in excess of forty hours per week. Def.'s Mot. for Summ. J. (Dkt. # 26), Furtado Dep. at 49.

[*3] Kilcourse testified during his deposition that he told Furtado on several occasions that "[Reno Air] did not have a comp [time] policy, but that if she needed time off, and [he] could give it to her, [he] would." Def.'s Reply Br. (Dkt. # 29), Dep. of Kilcourse at 75. Consistent with this testimony are Furtado's acknowledgments that Reno Air had no "official" comp time policy or system for recording the comp time of salaried employees, and that she did not begin recording her comp time until July 1995. Furtado did testify in her deposition, however, that the president of Reno Air, Robert Reding ("Reding"), informed her that salaried employees who work more than forty hours per week are given comp time despite the absence of a written policy concerning comp time.

Several days after her resignation in May 1996, Furtado unsuccessfully sought payment for 487.5 hours of unused comp time accumulated since July 1995. Furtado concedes that Kilcourse never stated that she would be paid for her overtime.

In June 1996, Furtado commenced this litigation, asserting sex, age, and disability discrimination claims, together with various pendent state law claims, including a breach of oral contract [*4] claim that is the subject of the motion for partial summary judgment. The relief sought by Furtado for this latter claim is, apparently, payment for 1,412 hours of unused comp time. Reno Air seeks summary judgment as to this claim on two grounds: (1) there was no agreement or work policy permitting Furtado to receive money in lieu of comp time; and (2) Kilcourse lacked the authority to bind Reno Air to a promise of one hour of comp time in exchange for one hour of overtime.

## II. DISCUSSION

### A. The Summary Judgment Standard

[HN1] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mater of law." *Fed. R. Civ. P. 56(c)*. The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. If this burden is [*5] met, the nonmoving party assumes the responsibility of designating specific facts showing that there is a genuine issue for trial. *Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1048 (9th Cir. 1995)*. In resolving a motion for summary judgment, all reasonable inferences must be drawn in favor of the nonmoving party. *Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1220 (9th Cir. 1995)*.

### B. Money in Lieu of Unused Comp Time

The Court begins its analysis by noting the conflicting evidence in regard to what Kilcourse told Furtado about comp time. Kilcourse testified in his deposition that he told Furtado that Reno Air had no comp time policy, but if she "needed time off, and [he] could give it to her, [he] would." Def.'s Reply Br. (Dkt. # 29), Dep. of Kilcourse at 75. Furtado, on the other hand, states in her affidavit that Kilcourse told her that he would "make sure that [she] received [comp time] equal to one hour off for each hour in excess of 40 per week that [she] worked." Pl.'s Opp'n Br. (Dkt. # 28), Aff. of Furtado at P 4. The Court finds Furtado's portrayal of Kilcourse's promise as being hour-specific unlikely given that she did not keep a record [*6] of her comp time between August 1992 and July 1995, and there was no official comp time policy at Reno Air or any system for recording salaried employees' comp time. Unmistakably absent from the record, though, is a precise denial by Kilcourse concerning Furtado's portrayal of his promise. In any event, [HN2] when deciding a motion for summary judgment, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. Here, the exact nature of Kilcourse's promise to Furtado concerning comp time is for the trier of fact.

Not surprisingly, Reno Air emphasizes the

undisputed fact that Furtado was not promised money for the overtime she incurred. The significance of that fact, though, is overshadowed by Furtado's unchallenged contention that Kilcourse prevented her from taking comp time. If Furtado's contention is correct, Kilcourse breached whatever agreement that he (and Reno Air, *see infra* Part II.C.) had with Furtado concerning comp time. Under those circumstances, Furtado would be entitled to payment [*7] for unused comp time, notwithstanding the fact that no corresponding agreement was made. This conclusion is compelled by the fundamental tenet of contract law that [HN3] contractual damages are designed to "award[] the aggrieved party the benefit of the bargain." *Kirkpatrick v. Temme, 98 Nev. 523, 526, 654 P.2d 1011, 1013 (1982); see also Restatement (Second) of Contracts § 347 cmt. a (1981)* ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed."). Clearly, because Furtado is no longer employed by Reno Air, she can no longer be awarded comp time; thus, an award of damages commensurate with the value of the comp time promised, but denied, is the only method by which to give her the benefit of the bargain.

Reno Air's citation to *Marine Inspection Service, Inc. v. Alexander, 553 S.W.2d 185 (Tex. Ct. App. 1977), Walters v. Center Elec., Inc., 8 Wash. App. 322, 506 P.2d 883 (Wash. Ct. App. 1973),* and *Lim v. Motor Supply, Ltd., 45 Haw.* [*8] *111, 364 P.2d 38, 45 Haw. 198 (Haw. 1961),* in support of its argument, that Furtado cannot recover money in lieu of unused comp time because no such agreement was made, is unavailing for three reasons. First, those cases do not involve a contention that the employer denied the employee the opportunity to take leave. Indeed, both *Walters, 506 P.2d at 886,* and *Lim, 364 P.2d at 44,* make specific reference to the absence of employer-imposed forfeiture. Second, *Marine Inspection Service, Inc., Walters,* and *Lim* represent but one side of the split in authority concerning an ex-employee's right to payment for unused vacation time. Cases to the contrary include *Die & Mold, Inc. v. Western, 448 N.E.2d 44, 46-47 (Ind. Ct. App. 1983), Berteau v. Wiener Corp., 362 So. 2d 806, 808-09 (La. Ct. App. 1978),* and *Jones v. District Parking Management Co., 268 A.2d 860, 861-62 (D.C. App. 1970),* in which the courts held that vacation with pay is a form of wages,

rather than a mere gratuity, which, upon vesting pursuant to the terms of an agreement between the employer and employee, is not forfeited by cessation of employment. Third, and most important, vacation time differs from [*9] comp time in one fundamental respect: vacation time typically accrues alongside an employee's normal work schedule, whereas comp time accrues alongside an employee's overtime work schedule. Thus, when an employee, for whatever reason, forfeits her promised comp time, the employer receives the benefit of gratuitous labor; no such benefit is conferred when vacation time is forfeited.

It is this conferral of gratuitous labor that courts have relied upon to imply an agreement requiring an employer to pay an ex-employee money in lieu of unused comp time. *See, e.g., Heasley v. Riblet Tramway Co., 68 Wash. 2d 927, 416 P.2d 331, 336 (Wash. 1966); Acevedo v. Phoenix Opportunities Indus. Ctr., 27 Ariz. App. 156, 551 P.2d 1322, 1323-24 (Ariz. Ct. App. 1976).* Particularly illuminating is the analysis present in *Acevedo*:

> The record shows that appellee [the employer] had established a policy of compensating its employees for comp time accrued by allowing them time away from the job at full pay. Appellee thereby recognized a benefit for which it had a duty to pay. Having agreed that it would compensate its employees for comp time accrued, we see no justification for denying [*10] appellant's claim. Appellee intended that services performed by its employees in the nature of comp time were not gratuitous and were to be compensated. Appellant rendered services which were knowingly received by appellee . . . . We find untenable appellee's position that the only way one could receive comp time is to stay employed. . . . [HN4] In the absence of an express agreement between the parties delineating the method of pay for comp time accumulated, we will imply a contract based on the fact that appellant rendered services to appellee for which he had a reasonable expectation to be paid. 98 C.J.S. Work & Labor, § 8 (1957).

*551 P.2d at 1323-24.* The Washington Supreme Court in

1998 U.S. Dist. LEXIS 13486, *10

*Heasley* likewise remarked:

> unless it is clearly set out and delineated in the contract, it would be a miscarriage of justice to say that a company could make use of or receive a benefit of [the employees'] extra time and not have to pay for it. . . . In the absence of circumstances indicating otherwise, it is inferred that a person who requests another to perform services of value for him thereby bargains and by implication agrees to pay for such services.

*416 P.2d at 336* (quotations [*11] omitted).

But for the fact that the case at bar involves the possible breach of an express agreement, application of *Acevedo* and *Heasley* would forestall summary judgment in the alternative. [3] The Court's attention has not been directed to any provision in Furtado's employment contract stating that unused comp time was to be forfeited upon separation from employment. And, because the evidence of Reno Air's comp time policy is susceptible to different interpretations, *see infra* Part II.C., there is an issue of fact as to the amount of comp time which Furtado could have reasonably expected for her overtime.

> 3   Although the Nevada Supreme Court has not addressed the issue of a private ex-employee seeking to be paid for unused comp time, the alternative application of *Acevedo* and *Heasley* would be warranted. The decisions are well-reasoned, and consistent with Nevada caselaw (1) disfavoring forfeiture unless dictated by plain and clear contract language, *see American Fire v. City of N. Las Vegas, 109 Nev. 357, 360, 849 P.2d 352, 355 (1993)*; and (2) preventing an employer from "depriving an employee of that which he has earned." *Dunn v. City of Carson City, 88 Nev. 451, 454, 499 P.2d 653, 655 (1972)* (quotation omitted).

[*12] In conclusion, genuine issues of material fact exist regarding an express agreement (i.e., the nature of Kilcourse's promise, and the amount of comp time promised but denied) and, alternatively, an implied agreement (i.e., forfeiture of unused comp time, the amount of comp time which Furtado could have reasonably expected for her overtime).

**C. Authority of Kilcourse to Bind Reno Air**

Reding testified during deposition that the supervisors of salaried employees have the "ability to give [the employee] comp time in exchange for working specific hours on a specific project" so long as "the office or function is still being fulfilled." Pl.'s Opp'n Br. (Dkt. # 28), Dep. of Reding at 36. Also, when confronted with the proposition that two other Reno Air employees had been paid for their comp time, Reding responded:

> We leave a lot of those things to the discretion of individual managers and directors to be able to perform the duties and functions of their departments. It would be, I would assume, . . . very unusual, and only in some very, very extenuating circumstances would we do that.

*Id.* at 37-38.

[HN5] "To bind a principal, an agent must have actual authority, [*13] express or implied, or apparent authority." *Dixon v. Thatcher, 103 Nev. 414, 417, 742 P.2d 1029, 1031 (1987)*. The testimony of Reding indicates that Kilcourse had the authority to grant Furtado comp time. Whether that testimony could be interpreted as permitting Kilcourse to authorize an hour of comp time for every hour of overtime performed by Furtado is not as clear. Nevertheless, because the Court cannot say that it would be unreasonable for a trier of fact to find in Furtado's favor on this point, summary judgment is inappropriate.

**III. CONCLUSION AND RECOMMENDATION**

Genuine issues of material fact remain regarding the nature of Kilcourse's promise, the amount of comp time promised but denied, and the authority of Kilcourse to bind Reno Air to that promise and the resulting agreement. Moreover, even in the absence of an express agreement, there are genuine issues of fact regarding the existence of an implied agreement: the forfeiture of unused comp time, and the amount of comp time that Furtado could have reasonably expected for her overtime. As such, the Court recommends that Reno Air's motion for partial summary judgment (Dkt. # 26) be denied.

DATED this 29th day [*14] of June 1998.

Phyllis Halsey Atkins

1998 U.S. Dist. LEXIS 13486, *14

UNITED STATES MAGISTRATE JUDGE