# TAB F

LEXSEE 1980 U.S. DIST. LEXIS 15911

**United Transportation Union et al., Plaintiffs v. Consolidated Rail Corporation, Defendant.**

**Civil No. F 80-173.**

**United States District Court for the Northern District of Indiana, Fort Wayne Division.**

*1980 U.S. Dist. LEXIS 15911; 90 Lab. Cas. (CCH) P12,441*

**October 15, 1980.**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, a union and a union member, filed an action in a state court against defendant, a railroad employer, under a state statute for the railroad's deductions for overpayment of benefits or allowances from the member's wages. The railroad had removed the action. Plaintiffs' motions to remand and for summary judgment and the railroad's motion for summary judgment were before the court.

**OVERVIEW:** The railroad had been deducting an amount from the member's weekly pay. He and the union filed the state court action, alleging that the deduction was in violation of the provisions of the state code. The action was removed on the railroad's claims of diversity and federal question jurisdiction. In response to the motion for remand, the court noted that an action was removable if the claim presented was in a field preempted by federal law. It found that the Railway Labor Act, *45 U.S.C.S. § 151 et seq.*, governed the dispute, and the federal law preempted the state law. It held that since it would be unacceptable for the wage withholding methods of the railroad to be subject to the conflicting adjudication by the courts of various states, the state provisions at issue were preempted by the Act insofar as the union and the member sought to apply the state statutes to the railroad's withholding. It found that the federal statutory framework in 45 U.S.C.S. § 777 provided for arbitration of disputes before an adjustment board. It found that compulsory arbitration was provided for in the federal statute.

**OUTCOME:** The court denied plaintiffs' motion for remand and the motion for summary judgment. It granted the railroad's motion for summary judgment. It dismissed the action.

**LexisNexis(R) Headnotes**

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Exhaustion of Remedies*
[HN1] The federal statutory framework found in the Railway Labor Act, *45 U.S.C.S. § 151 et seq.*, provides for arbitration of disputes before an Adjustment Board.

*Civil Procedure > Removal > Basis > General Overview*
*Civil Procedure > Federal & State Interrelationships > Federal Common Law > General Overview*
[HN2] While it is true that a plaintiff is master of his claim and need not assert all claims available, an action is removable if the claim presented is under the circumstances in a field preempted by federal law.

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Statutory Application > General Overview*
[HN3] The need for uniformity in adjudications of labor

Case 3:08-cv-50019   Document 25-3   Filed 05/02/2008   Page 3 of 20

Page 2

1980 U.S. Dist. LEXIS 15911, *; 90 Lab. Cas. (CCH) P12,441

relations between railroads and their employees has been emphasized in numerous decisions. Two federal courts have found that state wage laws are preempted by the Railway Labor Act, *45 U.S.C.S. § 151*.

**COUNSEL:** [*1] William Mahoney, Clinton Miller, III, Washington, D.C., Stephen L. Williams, Fort Wayne, Indiana, for Plaintiffs. Henry H. Perritt, Jr., Philadelphia, Pennsylvania, William L. Sweet, Jr., Fort Wayne, Indiana, for Defendant.

**OPINION BY:** ESCHBACH

**OPINION**

ESCHBACH, D.J.: This cause is before the court on plaintiffs' motion filed September 12, 1980 to remand this action to state court; this action had been removed from state court on September 8, 1980. Defendant filed a brief in opposition to the motion for remand on September 18, 1980, and plaintiffs replied on October 10, 1980. This cause is also before the court on defendant's motion for summary judgment filed September 15, 1980 and on plaintiffs' motion for summary judgment filed October 10, 1980. For the reasons set forth below, plaintiffs' motion for remand will be denied; defendant's motion for summary judgment will be granted. This action will be dismissed.

This action orginated in a complaint filed by plaintiffs on August 19, 1980 in Allen Superior Court, Allen County, Indiana. Plaintiff H. R. Steward is a member of plaintiff United Transportation Union. According to the pleadings, defendant Consolidated Rail Corporation (Conrail) [*2] has been recovering overpayment of certain benefit or displacement allowances by withholding $ 50 per week from the wages of H. R. Steward, an employee. The parties agree that more than $ 10,000 is in issue. Plaintiffs allege that the deduction from wages is in violation of *Ind. Code 22-2-6-1* and *22-2-6-2*. The complaint does not on its face refer to any federal laws. On September 8, 1980, defendant filed a petition for removal, alleging both diversity and federal question jurisdiction. Since federal question jurisdiction exists, this court will not decide whether diversity jurisdiction exists also.

Defendant contends that a dispute of this nature must be governed by the federal Railway Labor Act, *45 U.S.C. § 151 et seq.*, in general, and *45 U.S.C. §§ 152, 775, and 779 (1980 Supp.)* in particular. [HN1] The federal statutory framework provides for arbitration of disputes before an Adjustment Board. See *45 U.S.C. § 777 (1980 Supp.)*. Apparently neither plaintiff Stewart nor the union on his behalf have pursued arbitration. The union, plaintiff Stewart, and other employees with similar claims have filed an action in the United States District Court for the District of Columbia, [*3] Civil No. 80-1000, claiming that the wage deductions violated the federal Railway Labor Act and due process. A copy of the complaint in that action is attached to the memorandum filed September 18, 1980 by the defendant in this action. On May 6, 1980, the United States District Court for the District of Columbia denied plaintiffs' motion for a preliminary injunction in that action; a copy of that court order is attached to the motion of September 12, 1980 filed by plaintiffs in this action. In that order, the court held only that preliminary injunctive relief was inappropriate; that order considered none of the jurisdictional issues involved. It was apparently after denial of a preliminary injunction by that court that plaintiffs Stewart and the union decided to pursue a request for preliminary injunctive relief in a court in the State of Indiana.

This action is removable even though the complaint does not on its face assert a federal claim. [HN2] While it is true that a plaintiff is master of his claim and need not assert all claims available, an action is removable if the claim presented is under the circumstances in a field preempted by federal law. See *Andrews v. Louisville* [*4] *& Nashville R.R. Co., 406 U.S. 320, 322-23 (1972); Avco Corp. v. Aero Lodge No. 735, I.A.M., 390 U.S. 557 (1968); La Chemise Lacoste v. Alligator Co., 313 F. Supp. 915, 918 (D.C. Del. 1970)*. See generally 14 C. Wright & A. Miller, Federal Practice and Procedure § 3722 at 567 n.39 (1976). This action is removable because it arises in a field preempted by federal law.

[HN3] The need for uniformity in adjudications of labor relations between railroads and their employees has been emphasized in numerous decisions. See, e.g., *Int'l Assoc. of Machinists, AFL-CIO v. Central Airlines, Inc., 372 U.S. 682, 589-92 (1963); Merchants Dispatch Transportation Corp. v. Systems Federation Number One Railway Employees' Department AFL-CIO, 551 F.2d 144, 152 (7th Cir. 1977)*. Since it would be unacceptable for wage withholding methods of Conrail to be subject to conflicting adjudication by the courts of various states, *Ind. Code 22-2-6-1* and *22-2-6-2* are preempted by the federal Railway Labor Act insofar as plaintiffs seek to

Case 3:08-cv-50019 Document 25-3 Filed 05/02/2008 Page 4 of 20

1980 U.S. Dist. LEXIS 15911, *4; 90 Lab. Cas. (CCH) P12,441

Page 3

apply those Indiana statutes to the withholding by Conrail in this case. Two federal courts have rendered similar holdings in analogous cases, finding state wage laws preempted by [*5] the Railway Labor Act. One court has stated:

> C & O's employees cannot circumvent the dispute procedures established under the Railway Labor Act. [footnote omitted] Nor should the State of Michigan be permitted to interject itself in the middle of a pay dispute where the provisions of the Railway Labor Act are available to resolve that dispute.

Chesapeake and Ohio Ry. Co. v. Wage Hour Division of Michigan Department of Labor, Civil No. 8010056, unpublished opinion at 3 (E.D. Mich, May 2, 1980). A copy of the opinion is attached to defendant's motion filed September 15, 1980. Another court has stated:

> It is manifest that the issue presented falls within a field which has been preempted and jurisdiction of the controversy rests with the agency involved, namely, the Railway Adjustment Board.
>
> The grievances of plaintiff may be quickly disposed of and all proceedings foreclosed upon the consummation of the hearing before the Railway Adjustment Board. If California intrudes itself in this dispute its disposition will give rise to a ruling which may lack uniformity on a national scale and preclude the integration which is deemed desirable in a problem of the sort raised by [*6] the issues now under consideration.

*Pan American World Airways, Inc. v. Division of Labor Law Enforcement of California Department of Industrial Relations, 203 F. Supp. 324, 326 (N.D. Cal. 1962).*

Plaintiffs seek to avoid preemption by arguing that there is no direct federal-state conflict because the payments were originally made under a federal statute concerning benefits or allowances, 45 U.S.C. § 775, while the state statutes in question concern wage deductions. This court, however, does not look at the issues so technically or in such isolation. It is clear that if this matter is viewed as a whole, plaintiffs' position would create the risk of conflicting state adjudications concerning Conrail's handling of matters affecting compensation for employees. Plaintiffs' effort to distinguish cases such as Chesapeake and Ohio Ry. Co. and Pan American World Airways, Inc. as dealing with wages rather than benefits is equally unconvincing.

The subject matter of this action purportedly brought under state law is therefore preempted by federal statutes, and, under those statutes, jurisdiction lies not with a federal district court but with a Railway Adjustment Board. See *Slocum* [*7] *v. Delaware, Lackawanna & Western R.R., 339 U.S. 239 (1950); United Transportation Union v. Baker, 499 F.2d 727, 729 (7th Cir), cert. denied, 419 U.S. 839 (1974);* Zappitello v. Consolidated Rail Corp., No. 79-2239 (N.D. Ohio, December 5, 1979); Special Board of Adjustment No. 819, United Transportation Union v. Penn Central Transportation Company, March 26, 1974. Copies of these latter two decisions are attached to the defendant's motion filed September 15, 1980.

Plaintiffs concede that this matter is subject to arbitration pursuant to 45 U.S.C. § 777. However, plaintiffs argue, Conrail should have taken the matter to arbitration initially instead of unilaterally commencing wage withholding. This argument that Conrail has somehow waived the right to insist that plaintiffs go to arbitration is without merit. Compulsory arbitration in this case is provided by statute. Plaintiffs also contend that they could not obtain arbitration of their claim concerning benefits, since they have no dispute to bring; that is, they have no dispute since Steward was paid benefits and regards such payments as proper. Plaintiffs also contend that they could not arbitrate a dispute over wages before [*8] a board meant to arbitrate benefits. Plaintiffs apparently shift back and forth between regarding this as a dispute over wages or a dispute over benefits, depending upon the issue involved. Plaintiffs argue that their positions concerning the unavailability of arbitration are "so intuitively obvious that a lengthy explanation hardly seems necessary." It is not obvious to this court, nor, as plaintiffs admit, was it obvious to the District Court for the District of Columbia. Plaintiffs do not appear to press seriously any claim that arbitration would be futile. Plaintiffs offer no other excuse for attempting to bypass statutorily-mandated arbitration, except a suggestion that it would be slower to pursue arbitration than to request a court to issue a preliminary injunction. This cause will be dismissed.

Order

Plaintiffs' motion for remand, filed September 12, 1980, is hereby denied. Plaintiffs' motion for summary judgment, filed October 10, 1980, is hereby denied.

1980 U.S. Dist. LEXIS 15911, *8; 90 Lab. Cas. (CCH) P12,441

Defendant's motion for summary judgment, filed September 15, 1980, is hereby granted. Plaintiffs' cause of action is dismissed.

.

# TAB G

LEXSEE 2007 US DIST LEXIS 63301



Positive
As of: May 01, 2008

Jose Marquez, individually and on behalf of all persons similarly situated, Plaintiffs, v. PartyLite Worldwide, Inc., Defendant.

Case No. 07 C 2024

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2007 U.S. Dist. LEXIS 63301

August 27, 2007, Decided
August 27, 2007, Filed

**COUNSEL:** [*1] For Jose Marquez, individually and on behalf of all persons similarly situated as class representatives, Plaintiff: John Craig Ireland, LEAD ATTORNEY, Robert M. Foote, LEAD ATTORNEY, Stephen William Fung, Foote, Meyers & Mielke, & Flowers, LLC, Geneva, IL; Kathleen Currie Chavez, Chavez Law Firm P.C., Geneva, IL; Peter Lawrence Currie, The Law Firm of Peter L. Currie, P.C., St. Charles, IL.

For Partylite Worldwide, Inc., Defendant: Jeffrey D. Pilgrim, LEAD ATTORNEY, Georgia Logothetis, Paul Ely Starkman, Arnstein & Lehr, LLP, Chicago, IL.

**JUDGES:** Virginia M. Kendall, United States District Judge.

**OPINION BY:** Virginia M. Kendall

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jose Marquez alleges that he and other similarly situated employees of Defendant PartyLite Worldwide, Inc. were wrongfully denied overtime pay when PartyLite misclassified them as "exempt" employees to avoid federal and state overtime laws. Plaintiff asserts his claims under the Illinois Minimum Wage Law ("IMWL"), *820 ILCS 105/1 et seq.*, the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201 et seq.*, and the state common law remedies of quantum meruit and unjust enrichment. Defendant now moves to strike Plaintiff's class allegations related to [*2] his IMWL claim pursuant to *Rule 12(f)*, and to dismiss Plaintiff's quantum meruit and unjust enrichment claims pursuant to *Rule 12(b)(6)*.

Because the FLSA does not expressly preclude class relief for wage claims brought under other statutes, Plaintiff's class allegations related to his IMWL claim are not "immaterial matters" that should be stricken under *Rule 12(f)*. However, given the history of the FLSA and *Rule 23*, any class that does not follow the procedures set forth in *§ 216(b)* of the FLSA is not likely to meet *Rule 23*'s superiority requirement. As to Plaintiff's quantum meruit and unjust enrichment claims, *Rule 8(e)(2)* permits a party to plead alternative, even inconsistent, theories of relief. Thus, although Plaintiff's state common law claims are based upon the same facts as his FLSA claim, dismissal under *Rule 12(b)(6)* is not appropriate.

**Standard of Review**

When considering a *Rule 12(b)(6)* motion, the court

Case 3:08-cv-50019 Document 25-3 Filed 05/02/2008 Page 8 of 20

Page 2
2007 U.S. Dist. LEXIS 63301, *2

must accept as true all the allegations in the complaint and construe all reasonable inferences in favor of the plaintiff. *Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995)*. In order to state a claim, a plaintiff must allege facts that plausibly suggest he is entitled to [*3] relief. *Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)*. *Rule 12(f)* provides that a "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

## Discussion

The Fair Labor Standards Act of 1938 sets the requirements for minimum wages, overtime pay, equal pay, recordkeeping and child labor standards for covered employees -- in the words of Franklin D. Roosevelt, the FLSA ensures "[a] fair day's pay for a fair day's work." Subject to certain exemptions, the FLSA requires employers to pay their employees at least time-and-a-half for each hour the employee works over forty hours during a week. *29 U.S.C. § 207(a)(1)*. If an employer violates this provision, an employee may bring "a collective action" on behalf of himself and other employees similarly situated to recover unpaid overtime compensation. *29 U.S.C. § 216(b)*; *see Harkins v. Riverboat Services, Inc., 385 F.3d 1099, 1101 (7th Cir. 2004)*. The procedures in *Rule 23* usually govern class actions in federal court. Under *Rule 23(c)(2)(B)*, an individual becomes a member of the class, and thereby bound by any judgment in the matter, unless he expressly opts-out. [*4] *See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 807-09, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985)*. The FLSA, in contrast, provides that no employee may join the collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *29 U.S.C. § 216(b)*. Under this language, members of a collective action opt-in, rather than opt-out, of the class. *See King v. General Electric Co., 960 F.2d 617, 621 (7th Cir. 1992)*; *Woods v. New York Life Ins. Co., 686 F.2d 578, 580 (7th Cir. 1982)*.

## I. Motion to Strike Plaintiff's Allegations Related to His State Law Claims

Plaintiff alleges class claims under both the FLSA and state law. While *§ 216(b)*'s collective action procedure will govern the FLSA claims, the state law claims would proceed under *Rule 23*. Defendant argues that a *Rule 23(b)(3)* opt-out class will subvert Congress' intent to limit wage actions to those employees that affirmatively opt-in. Judge Shadur raised this concern in an order entered shortly after a complaint containing FLSA and IMWL claims was filed:

> There are powerful policy considerations that led Congress to change the original version of the Fair Labor Standards Act by enacting [*5] the Portal to Portal Act of 1947 so as to require the opt-in procedure via individualized written consents by employees wishing to join such actions (see *Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 173, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*). That policy and the underlying congressional intent would be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement.

*Rodriguez v. The Texan, Inc., 2001 U.S. Dist. LEXIS 24652, 2001 WL 1829490, *2 (N.D. Ill. 2001)*. Since that cautionary order, at least eight opinions in this district have addressed directly whether a plaintiff may pursue a *Rule 23(b)(3)* opt-out class on a state-law claim when he also asserts a claim under the FLSA.

Three primary reasons are given for refusing to certify such a state-law class: (1) that it would undermine Congress' creation of the "collective action" procedure in the FLSA, *see, e.g., McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 578 (N.D. Ill. 2004)* (certifying class on state-law claims "would undermine Congress's directive that FLSA collective actions are limited to those parties who opt in to the action"); (2) the concern that absent [*6] class members would be confused by "a notice that both calls for a decision whether to opt-in to the collective action and also whether to opt-out of the class action," *De La Fuente v. FPM Ipsen Heat Treating, Inc., 2002 U.S. Dist. LEXIS 24040, 2002 WL 31819226, *2 (N.D. Ill. 2002)*; and (3) the prudential limits of a federal court's exercise of supplemental jurisdiction, *see, e.g., Harper v. Yale Int'l Insur. Agency, Inc., 2004 U.S. Dist. LEXIS 8476, 2004 WL 1080193, *5 (N.D. Ill. 2004)* (noting that a large class of state law claimants would cause "the federal tail represented by a comparative small number of plaintiffs to wag what is in substance a state dog"), *quoting De Asencio v. Tyson Foods, Inc., 342 F.3d*

Case 3:08-cv-50019   Document 25-3   Filed 05/02/2008   Page 9 of 20

Page 3
2007 U.S. Dist. LEXIS 63301, *6

*301, 311 (3rd Cir. 2003)*. Reflecting several of these concerns, Judge Kennelly noted that if only a few employees exercise their opt-in and opt-out rights "we would be left with the rather incongruous situation of an FLSA 'class' including only a tiny number of employees who are interested in seeking back wages, with a state-law class that nonetheless includes all or nearly all of the companies' present or former employees." *Muecke v. A-Reliable Auto Parts and Wreckers, Inc., 2002 U.S. Dist. LEXIS 11917, 2002 WL 1359411, *2 (N.D. Ill. 2002)*. Attempting to deal [*7] with some of these problems, several courts have waited until the FLSA's opt-in period is complete before deciding whether to certify an opt-out class on any state-law claims. *See Harper, 2004 U.S. Dist. LEXIS 8476, 2004 WL 1080193 at *5* (citing cases).

The opinions that certified state-law classes relied on the facts that: (1) nothing in the FLSA seeks to limit wage claims or remedies available under other statutes, *see, e.g., Acosta v. Scott Labor, LLC, 2006 U.S. Dist. LEXIS 153, 2006 WL 27118, *5 (N.D. Ill. 2006); see also Lindsay v. Gov't Emples. Ins. Co., 371 U.S. App. D.C. 120, 448 F.3d 416, 421 (D.C. Cir. 2006)* (rejecting the argument that *§ 216(b)* "manifests that the Congress intended to require opting-in for the entire litigation, not merely the FLSA claims"); (2) supplemental jurisdiction should be exercised because it would be inefficient to proceed with the FLSA collective action in federal court, while requiring the employees to pursue class relief under state law -- based upon the same facts -- in the state courts, *see O'Brien v. Encotech Constr. Srvcs., 203 F.R.D. 346, 352 (N.D. Ill. 2001)*, and (3) defendants, who removed the case to federal court, cannot complain about a plaintiff utilizing a remedy that would have been available to him [*8] in the state courts, *see, e.g., Yon v. Positive Connections, Inc., 2005 U.S. Dist. LEXIS 3396, 2005 WL 628016, *4 (N.D. Ill. 2005)*.

In determining whether Plaintiff may pursue an opt-out class on his state-law claims, this Court begins with the assumption that the usual federal procedures apply in each case or controversy. *See Califano v. Yamasaki, 442 U.S. 682, 700, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979)* ("In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate"). An opt-out class under *Rule 23* is the federal procedure usually applicable to claims seeking monetary relief on behalf of similarly situated individuals. The FLSA modifies this procedure for claims brought pursuant to its provisions. [1] *See King, 960 F.2d at 621*. Because the FLSA does not expressly provide that its modified procedure applies to all wage disputes, *Rule 23*'s "usual course" applies to Plaintiff's state law claims. For this reason, this Court will not strike Plaintiff's class allegations related to his IMWL claim. Nevertheless, as part of *Rule 23*'s usual course, Plaintiff will be required to show that an opt-out class [*9] is "superior to other available methods for the fair and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3)*. The history of the FLSA and *Rule 23* provide significant direction on the superior method for adjudicating controversies involving employee wage complaints.

> 1   The Age Discrimination in Employment Act ("ADEA") adopts the FLSA's collective action procedure for the enforcement of fair labor standards. *See 29 U.S.C. § 626(b)*.

Congress articulated two concerns when it amended the FLSA in 1947. First, in *Anderson v. Mt. Clemens Pottery Co.*, the Supreme Court held that the compensable work week included walking from the time clock to an employee's work station and also "certain preliminary activities after arriving at their places of work, such as putting on aprons and overalls, removing shirts, taping or greasing arms, putting on finger cots, preparing the equipment for productive work, turning on switches for lights and machinery, opening windows and assembling and sharpening tools" -- so-called "Portal-to-Portal" activities. *328 U.S. 680, 691-693, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)*. In response, Congress amended the FLSA, finding that it "ha[d] been interpreted judicially in disregard of long-established [*10] customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers." *29 U.S.C. § 251*. Senator Donnell, chairman of the subcommittee which conducted hearings on the FLSA amendments, explained Congress' second concern:

> We now proceed to the final portion of the bill, Part IV. *Section 8* contains a provision entitled "Representative Actions Banned." Let me just say a word about what is meant by representative actions. It will be recalled that in *section 16(b)* of the

Fair Labor Standards Act there is a provision reading as follows:

Action to recover such liability-

This is, the liability for unpaid minimum wages, unpaid overtime compensation, and liquidated damages-

Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

It will be observed, Mr. President, that two types of actions are permitted under this sentence in *section 16(b)* of the Fair Labor Standards Act of 1938: First, a suit by one or more employees, for himself and all other employees [*11] similarly situated. That I shall call for purposes of identification a collective action, a suit brought by one collectively for himself and others. The second class of actions authorized by that sentence embrace those in which an agent or a representative who may not be an employee of the company at all can be designated by the employee or employees to maintain an action on behalf of all employees similarly situated.

In illustration of this latter category-which category for purposes of identification I call a representative action, as distinguished from a collective action-suppose that everyone here present this afternoon were employed by the X steel company, and we all belonged to a labor union, and gave a power of attorney to the district director of the labor union who might live 500 miles away and not be employed at all in the plant in which we were employed. He could file a suit there as representative of all of us. We would not be in that case at all except as he is our representative. It will be noted, therefore, Mr. President, that in those two classes of cases there is this difference: In the first case, an employee, a man who is working for X steel company can sue for himself [*12] and other employees. We see no objection to that. But the second class of cases, namely, cases in which an outsider, perhaps someone who is desirous of stirring up litigation without being an employee at all, is permitted to be the plaintiff in the case, may result in very decidedly unwholesome champertous situations which we think should not be permitted under the law.

So *section 8* amends the Fair Labor Standards Act by eliminating that portion of *section 16(b)* which permits employees to designate an agent or representative to maintain an action for and in behalf of all employees similarly situated.

93 Cong. Rec. 2182. Thus, while the FLSA amendment eliminated actions brought by certain designated representatives, Senator Donnell had no quarrel with an employee bringing a collective action on behalf of himself and other similarly situated employees.

In addition to banning "representative" actions, Congress also amended the FLSA by adding the requirement that an employee file written consent in order to join a collective action. 93 Cong. Rec. 2182. Of course, to say that Congress added the written consent requirement is both true and misleading. During the same year that Congress passed [*13] the FLSA, *Rule 23* governing class actions was adopted. The original version of *Rule 23* identified three types of class actions: true, spurious and hybrid. A true class action was one wherein "the number of persons having substantially identified interests in the subject matter or litigation is so great that it is impracticable to join all of them as parties, in accordance with the usual rules of procedure, and in which an issue raised which is common to all of such persons." *Pentland v. Dravo Corp., 152 F.2d 851, 852 (3d Cir. 1945), quoting* Restatement Judgments, Sec. 86(b). A true class action also required that the "right to be enforced was joint, common or derivative." *Id., quoting* Moore (2 Federal Practice 2236). A spurious action was a "permissive joinder device" that allowed "numerous persons interested in a common question of law or fact" to resolve their disputes in an efficient and consistent manner. *Id., quoting* Moore (2 Federal Practice 2241). A hybrid action involved individual plaintiffs that had claims to a common fund. *Id.* The overwhelming

Case 3:08-cv-50019    Document 25-3    Filed 05/02/2008    Page 11 of 20

Page 5
2007 U.S. Dist. LEXIS 63301, *13

weight of authority prior to 1947 held that § 216 called for a spurious class action. See id. at 853-56 (citing cases). Thus, while [*14] Congress amended the FLSA to include the written consent requirement, it, in effect, just codified the prevailing practice.

In 1966, Rule 23 was amended. The terms "true, spurious and hybrid" were abandoned in favor of the current Rule 23. The current Rule 23(b)(3) requires that a class action be the superior method for fairly and efficiently adjudicating class members' claims. Among the non-exhaustive lists of factors that a court should consider in making the superiority determination is "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). On this point, the Advisory Committee Notes cite "Pentland v. Dravo Corp., 152 F.2d 851 (3d Cir. 1945), and Chafee, Some Problems of Equity, at 273-75 (1950), regarding policy of Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C. § 216(b), prior to amendment by Portal-to-Portal Act of 1947, § 5(a)." [2] Pentland was one of many cases holding that a spurious action, an opt-in class, best effectuated Congress' intent to protect employee rights in the FLSA. Pentland, 152 F.2d at 853; see also Lofther et al. v. First Nat. Bank of Chicago, 45 F. Supp. 986, 988 (N.D. Ill. 1941); [*15] Saxton v. W.S. Askew Co., 35 F. Supp. 519, 520 (N.D. Ga. 1940). Chafee likewise concluded that the best method for resolving employee wage claims was through "an Invitation to Come In," whereby an individual employee could "jump on the bandwagon" if he wanted. Chafee, supra, at 274-75. Along the same line, both the cases and commentary shared the opinion that an employee should not be bound by a judgment unless he affirmatively chose to join the litigation. [3] See Chafee, supra, at 275 ("The very support Congress gives [employees'] claims indicates an unwillingness to let them be barred by what somebody else does"); Pentland, 152 F.2d at 853 ("If [the representative] should lose his lawsuit, it certainly would be a startling result to find that every fellow employee was bound by the estoppel of that judgment when he came to sue the employer"); Saxton, 35 F. Supp. at 521 ("[T]here can be no intention implied that Congress in the passage of the [FLSA]" meant for employees "to have their rights adjudged, or maybe precluded, by an action maintained by another, of which they might have no knowledge").

2   The Advisory Committee Notes also make clear that"[t]he present provisions of 29 U.S.C. § 216(b) [*16] are not intended to be affected by Rule 23, as amended."

3   The Court recognizes that these opinions and commentary convey a somewhat antiquated view of the class action device. Over the several decades since the 1966 Amendments, courts have become increasingly willing to accept the many fictions and deficiencies in the class action procedure in order to utilize its benefits. Among these fictions are the notions that the class representative, as opposed to class counsel, controls the litigation and that class members will receive notice of the action so that they may exercise their opt-out rights.

Based on the Advisory Committee Notes to Rule 23 and Congress' addition of the written consent requirement to the FLSA, an opt-out class action is not likely to be the superior method for resolving Plaintiff's state-law claims that Defendant failed to make overtime payments. In any respect, it will be wise to delay any decision on certifying a state-law claim under Rule 23 until after notice has been sent pursuant to the FLSA and the written consents returned. [4] After the consents are returned, the Court will have a better idea of the number of class members and their various situations. With [*17] that information, the Court properly can assess whether Rule 23's requirements -- such as, joinder being impracticable, commonality, superiority and adequacy of representation -- are met. Based on the number of individuals that opt-into the action, the Court also can determine whether exercising supplemental jurisdiction over a state law class would be prudent. [5] See 28 U.S.C. § 1367(a)(2) ("District courts may decline to exercise supplemental jurisdiction over a claim . . . if the claim substantially predominates over the claim or claims over which the district court has original jurisdiction"). Finally, the Court is cognizant that Defendant removed this case from state court where Plaintiff likely would have been able to pursue a class action on his IMWL claim. Nevertheless, the action now being in federal court, the Federal Rules of Civil Procedure apply. See Fed. R. Civ. P. 81(c). As such, Rule 23(b)(3)'s superiority requirement must be met before this Court may certify an opt-out class.

4   Assuming that Plaintiff can meet the requirements for notification. See Jonites v. Exelon Corp., 2006 U.S. Dist. LEXIS 75510, 2006 WL 2873198, *2 (N.D. Ill. 2006) (describing the two-step inquiry for notification and certification

Case 3:08-cv-50019 Document 25-3 Filed 05/02/2008 Page 12 of 20

Page 6
2007 U.S. Dist. LEXIS 63301, *18

[*18] in a FLSA collective action).

5   If "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers v. Gibbs, 383 U.S. 715, 726-27, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)*. There is disagreement over whether the size of a class may cause a state-law claim to predominate over a federal claim under *§ 1367(a)(2)*. The basis for certifying any class is a finding that the class claims will be tried through an adequate representative whose claims are based on questions common to all class members. *See Rule 23(b)(3)*. Given this fact, it is unlikely that the size of the class would affect greatly the evidence presented or the scope of the issues raised. The tougher question revolves around the comprehensiveness of the remedy. This question will turn on whether the remedy's comprehensiveness is measured as to each class member or whether it is measured as to the class as a whole. *Compare Lindsay, 448 F.3d at 425* ("Predomination under *section 1367(c)(2)* relates to the type of claim," not the number of claimants) *with De Asencio, 342 F.3d at 311* [*19] (disparity in number of claimants under one claim can be dispositive of the predominance issue).

## II. Motion to Dismiss Plaintiff's Common Law Claims

Plaintiff has alleged claims under both the FLSA and the common law theories of quantum meruit and unjust enrichment. *Federal Rule of Civil Procedure 8(e)(2)* provides that a party may plead alternative theories of relief under both legal and equitable grounds. While Plaintiff may not obtain double recovery, he is free to pursue relief under the FLSA as well as unjust enrichment and quantum meruit. *Cromeens, Holloman, Sibert, Inc v. AB Volvo, 349 F.3d 376, 397 (7th Cir. 2003)*.

## Conclusion and Order

Because the FLSA does not expressly prohibit *Rule 23* class certification on wage claims brought under other statutes, Plaintiff's class allegations related to his state-law claims are not immaterial matters. Additionally, *Rule 8(e)(2)* allows Plaintiff to plead alternatively his theories under the FLSA, quantum meruit and unjust enrichment. Wherefore, Defendant's Motion to Strike and Dismiss is denied.

So ordered.

Virginia M. Kendall, United States District Judge

Northern District of Illinois

Date: August 27, 2007

# TAB H

**Westlaw.**

Not Reported in F.Supp.2d                                                                                                     Page 1
Not Reported in F.Supp.2d, 2004 WL 2644397 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2644397)**

C
Witt v. County Ins. & Financial Services
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
Patricia WITT, Plaintiff,
v.
COUNTY INSURANCE & FINANCIAL SERVICES, Defendant.
**No. 04 C 3938.**

Nov. 18, 2004.

*MEMORANDUM OPINION AND ORDER*

GETTLEMAN, J.
*1 On June 10, 2004, Patricia Witt ("Witt") filed a thirteen count complaint against Country Insurance & Financial Services ("defendant") [FN1] alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601*et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12201*et seq.*, and the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132*et seq.*, as well as claims for breach of contract and intentional infliction of emotional distress ("IIED"). All of plaintiff's claims are related to her employment as a field claim representative for defendant from January 2, 2001, until her termination on July 3, 2003.

> FN1. Defendant states that neither "Country Insurance and Financial Services" nor "Country Insurance" exist as legal entities, and that plaintiff was employed by CC Services, Inc. Plaintiff does not agree to change the caption or to substitute the parties. The court notes that the parties should be able to resolve this seemingly simple issue amicably, but if plaintiff has named parties that are not legal entities and therefore cannot be sued, defendant should file a motion for summary judgment and appropriate sanctions.

Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), defendant has filed a motion to dismiss three counts of plaintiff's complaint: Count III (familial status discrimination in violation of Title VII); Count XII (breach of contract); and Count XIII (IIED). Defendant asserts that familial status discrimination is not a recognized claim under Title VII, and that plaintiff's state law claims are preempted by the Illinois Human Rights Act ("IHRA"), the Illinois Workers' Compensation Act ("IWCA"), and/or ERISA. Defendant has also moved to strike certain demands for relief and for a jury trial on Count IX (retaliatory discharge in violation of the ADA) and Count XI (retaliatory discharge in violation of ERISA). For the reasons explained below, defendant's motion to dismiss is granted as to Counts III, XII, and XIII. Defendant's motion to strike plaintiff's jury demand and request for compensatory and punitive damages under plaintiff's ADA retaliation claim is granted. The parties agree that defendant's motion to strike plaintiff's jury demand and request for relief under her ERISA retaliation claim is moot.

*FACTS*

For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996).

Plaintiff was employed by defendant from January 2, 2001, through July 3, 2003, as a field claim representative in the Grayslake, Illinois office. Defendant provided plaintiff a benefits package throughout her employment that included health insurance, life insurance, long-term disability, and a diversified

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2644397 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2644397)**

Page 2

plan.

In March 2001, plaintiff took an unpaid eight-week leave of absence under the FMLA when her three and a half year old daughter was diagnosed with cancer. Plaintiff returned from this leave of absence in May 2001. Plaintiff alleges that immediately after she returned to work she was treated differently from similarly situated male counterparts, including when she was refused a promotion and an allegedly less-qualified man was promoted.

In December 2001, plaintiff informed defendant that she was pregnant, and in January 2002, plaintiff informed defendant that she would take twelve weeks of maternity leave. Plaintiff alleges that after announcing her pregnancy and her intention to take maternity leave, she was treated differently than similarly situated non-pregnant employees. Plaintiff claims that: (1) she was refused a promotion, and defendant hired a less-qualified man from outside of the company; (2) her work product and/or assignments were taken away from her and reassigned to male employees; (3) she was subjected to a pattern of sexual harassment by supervisors and other employees; (4) she was subjected to threats that defendant would take away her company car during her maternity leave; and (5) she was subjected to threats that she would lose her job and/or be demoted during her maternity leave if she took twelve weeks of leave.

*2 Plaintiff claims that she complained to defendant's agents about the alleged discriminatory conduct of defendant's supervisors and employees. Plaintiff asserts that defendant failed to respond properly, and that she was subjected to retaliatory discrimination after making her complaints, including inappropriate comments and threats to take away her company car.

On June 3, 2002, plaintiff began her FMLA maternity leave. Defendant approved the leave to continue through August 28, 2002. On August 25, 2002, plaintiff was diagnosed with cancer. Plaintiff returned from maternity leave on August 28, 2002. At some point prior to September 18, 2002, plaintiff was ordered by her physician to undergo chemotherapy for treatment. Plaintiff notified defendant of her doctor's orders and her disability, and requested medical leave. On September 18, 2002, plaintiff went on medical leave. Plaintiff claims that defendant took away plaintiff's company car on September 18, 2002, allegedly in violation of company policy.

On or about February 18, 2003, plaintiff returned to work from her medical leave. On or about February 21, 2003, plaintiff was advised that her position would be eliminated sometime between June 1, 2003, and December 31, 2003. Plaintiff was terminated on July 3, 2003.

Plaintiff claims she was the only claims representative from the Grayslake office who was terminated, and that other less qualified, non-pregnant, non-disabled, and male employees were not terminated. Plaintiff asserts that the conduct of defendant's supervisors, employees and agents created a hostile work environment. Plaintiff also alleges that she made numerous complaints to defendant's management regarding the discriminatory and retaliatory conduct of defendant's employees, supervisors, and agents up to and until July 3, 2003.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against defendant, and received a right-to-sue letter from the EEOC dated March 16, 2004.

## DISCUSSION

Defendant has moved to dismiss Count III pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In ruling on a motion to dismiss for failure to state a claim, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. *Travel All Over the World,* 73 F.3d at 1428. A complaint should not be dismissed for failure to state a claim unless there is no doubt that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2644397 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2644397)

Page 3

the plaintiff cannot prove a set of facts that would entitled her to relief based on her claim. *Pressalite Corp. v. Matsushita Electric Corp. of America,* 2003 WL 1811530, at *2 (N.D.Ill. Apr.4, 2003).

Defendant has moved to dismiss Count XII and Count XIII pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Plaintiff bears the burden to establish that the jurisdictional requirements exist. *Newman v. Hansen & Hempel Co.,* 2002 WL 31455990, at *2 (N.D.Ill. Nov.1, 2002).

I. Familial status discrimination in violation of Title VII (Count III)

*3 In Count III of her complaint, plaintiff alleges that certain "adverse employment actions were taken against her because of her familial and/or pregnancy status" in violation of Title VII.[FN2] Defendant argues that no independent cause of action for "familial discrimination" exists under Title VII, citing *Cleaves v. City of Chicago,* 68 F.Supp.2d 963, 967 (N.D.Ill.1999) (quoting *Coleman v. B-G Maintenance Management of Colorado, Inc.,* 108 F.3d 1199, 1204 (10th Cir.1997)) ("Title VII prohibits employers from treating married women differently than married men, but it does not protect marital status alone."). Plaintiff concedes that defendant correctly stated the rule expressed in *Cleaves.*[FN3] In an attempt to save her claim, plaintiff asserts that she "is not arguing that she was treated differently because she was married."[FN4] Plaintiff fails, however, to demonstrate another basis for her familial status claim, but rather merely repeats her sex and pregnancy allegations under a new heading.

> FN2. Count I of plaintiff's complaint alleges that certain "adverse employment actions were taken against her because of her pregnancy status, in violation of Title VII ..." Because her reference to pregnancy in Count III is redundant of her claims in Count I, the court will treat Count III as alleging "familial status" discrimination only.

> FN3. The court notes that plaintiff's characterization of *Despot v. Combined Ins. Co. of America,* 2004 WL 1088361 (N.D.Ill. May 12, 2004), is misleading, and contradicts her acceptance of the holding in *Cleaves* and other cases. *Despot* merely noted that the plaintiff's numerous claims "may be brought under Title VII or the IHRA," but were barred in that case because of the plaintiff's failure to exhaust his administrative remedies. *Id.* at *1. The *Despot* court did not address the issue of familial status discrimination, parse the individual claims or distinguish which were actionable under Title VII and which under the IHRA.

> FN4. The court notes that plaintiff confuses the issues at hand by citing several cases that are inapposite to her Title VII familial status claim. For example, *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 113 (2nd Cir.2004), involved a § 1983 claim from another circuit. Also, despite plaintiff's attempt to cast it as a familial status case, *Sheehan v. Donlen Corp.,* 173 F.3d 1039 (7th Cir.1999), affirmed the magistrate judge's denial of the defendant's motion for judgment as a matter of law in a pregnancy discrimination case.

Title VII prohibits discrimination based upon "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). Discrimination based on marriage is not forbidden by the language of Title VII. *See, e.g., Whitmore v. Bd. of Educ. of DeKalb Comm. Sch. Dist. No. 428,* 1992 WL 70339, at *6 (N.D.Ill. Mar.18, 1992). Title VII does, however, prohibit discrimination on the basis of marriage *plus* gender. *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) (distinct hiring policies for woman and men, each having pre-school-age children, may violate Title VII);

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 4
Not Reported in F.Supp.2d, 2004 WL 2644397 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2644397)**

*Sprogis v. United Air Lines,* 444 F.2d 1194, 1198 (7th Cir.1971) (a no-marriage rule directed against only female flight attendants is sex discrimination in violation of Title VII.); *Stern v. Cintas Corp.,* 319 F.Supp.2d 841, 858 (N.D.Ill.2004) ("Under Title VII, an employer may not treat mothers and mothers-to-be differently from fathers and fathers-to-be.").[FN5] "Gender plus" claims are really a sub-category of gender discrimination claims, and a plaintiff must allege discrimination, harassment or retaliation based on her gender plus her familial status, not merely familial status alone. *SeeStern* 319 F.Supp.2d at 858.

> FN5. The court notes that plaintiff misstates the holding in *Stern* as "employers may not treat mothers-to-be and fathers-to-be differently."In doing so, plaintiff neglects the essential element of a "sex plus" claim: that men and women be treated differently.

Plaintiff states that "[d]iscrimination based upon marital/family status may be cognizable as sex discrimination where there is a disparate impact upon the sexes."Plaintiff does not, however, point to employees of defendant who were fathers or married and were treated differently than plaintiff. Absent allegations of a disparate impact upon men and women, Count III does not state an independent cause of action under Title VII, and merely repeats her claims of pregnancy and sex discrimination from Count I and Count II. Accordingly, defendant's motion to dismiss Count III is granted.

II. IIED (Count XIII)

Count XIII of plaintiff's complaint states an IIED claim. Defendant asserts that Count XIII should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the court lacks jurisdiction over this claim because it is preempted by the Illinois Human Rights Act ("IHRA"), 775 ILCS § 5/1-101*et seq.,* and the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1*et seq.*

*4 The IHRA preempts all state law claims seeking redress for a 'civil rights violation' within the meaning of that statute. *Krocka v. City of Chicago,* 203 F.3d 507, 516 (7th Cir.2000), *quotingGeise v. Phoenix Co. of Chicago, Inc.,* 159 Ill.2d 507, 203 Ill.Dec. 454, 639 N.E.2d 1273 (Ill.1994).*Seealso*775 ILCS 5/8-111(C) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than set forth in this Act."). The IHRA prohibits, *inter alia,* employment discrimination based on a person's sex and sexual harassment in the workplace. *See*775 ILCS § 5/1-102(A); 775 ILCS § 5/1-102(B).

The Illinois Supreme Court held in *Maksimovic v. Tsogalis,* 177 Ill.2d 511, 517, 227 Ill.Dec. 98, 687 N.E.2d 21 (Ill.1997), that the IHRA preempts claims that are "inextricably linked" to a civil rights violation. Because the plaintiff in *Maksimovic* alleged the elements of the torts, "without reference to legal duties created by the [IHRA], [the plaintiff] established a basis for imposing liability on the defendants independent of the [IHRA]."*Id.*Courts in this district have "routinely dismissed Illinois state tort claims-particularly IIED claims-for lack of jurisdiction when brought in connection with allegations of a civil rights violation."*Dardai v. Cook County,* 1999 WL 46906, at *9 (N.D.Ill. Jan.28, 1999); *quotingRatley v. Aurora,* 1998 WL 30697, at *3 (N.D.Ill. Jan.22, 1998) (citations and quotations omitted); *seealsoJohnson v. Chicago Bd. of Educ.,* 2002 WL 1769976, at *5 (N.D.Ill. Aug.1, 2002); *Westphal v. City of Chicago,* 8 F.Supp.2d. 809, 812 (N.D.Ill.1998); *Silk v. City of Chicago,* 1997 WL 790598, at *17 (N.D.Ill.Dec.17, 1997).

Pursuant to the seminal holdings in *Geise* and *Maksimovic,*[FN6] when deciding whether a claim is preempted, courts must look at the essence of the claims in order to determine whether the tort claim at issue is, in reality, a claim of discriminatory acts covered by the IHRA. *Silk,* 1997 WL 790598, at *16. "In other words, there must still exist a foundation for the emotional distress claims even if the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2644397 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2644397)**

Page 5

defendants' conduct was not discriminatory."*Westphal*, 8 F.2d. at 812. The question in the instant case is whether the alleged elements of plaintiff's IIED claim reference the legal duties created by the IHRA, or whether plaintiff's IIED claim could exist independent of her discrimination claims.

> FN6. The court notes that plaintiff improperly attempts to substitute the preemption test formulated in *Bailey v. Unocal Corp.*, 700 F.Supp. 396 (N.D.Ill.1988), and attempts to substitute it for the well-established *Geise-Maksimovic* analysis. *Bailey* and most of its progeny were decided before *Geise* and *Maksimovic,* and this line of cases has been criticized and abrogated by numerous courts. *See Peric v. Bd. of Trustees of Univ. of Ill.*, 1997 WL 112819, at *8 (N.D.Ill. Mar.10, 1997); *Hannigan-Haas v. Bankers Life and Cas. Co.*, 1996 WL 139402, at *3 (N.D.Ill. Mar.26, 1996). *Geise* and *Maksimovic* set forth the proper test for preemption under the IHRA, and the court will apply that analysis to the instant case.

Plaintiff claims that she was harmed by defendant's conduct toward her, including denying her a promotion, reassigning her work projects to other employees, threatening to and ultimately taking away her company car while she was on maternity leave, harassing her, and terminating her.[FN7] These incidents, standing alone, do not support an IIED claim.[FN8] Rather, these actions are inextricably linked to plaintiff's discrimination and retaliation claims because they were "extreme and outrageous" (if at all) only to the extent that they were motivated by gender-based or pregnancy-based animus. *See Krocka*, 203 F.3d at 517 (affirming the trial court's dismissal of an IIED claim because it was "inextricably linked to [the plaintiff's] disability discrimination claim because [the comments] were only offensive to the extent that they referred to [the plaintiff's] disability."); *Watanabe v. Loyola Univ. of Chicago*, 2000 WL 876983, at *6 (N.D.Ill. July 3, 2000) ("Because plaintiff would be unable to establish her [IIED] claim absent her claims of discrimination, this claim is preempted by the [IHRA].").

> FN7. The court notes that plaintiff cites to a number of district court opinions holding that specific IIED claims were not preempted, but these cases are factually distinguishable, and therefore inapposite. For example, *Rapier v. Ford Motor Co.*, 49 F.Supp.2d 1078 (N.D.Ill.1999), and *Bruce v. South Stickney Sanitary Dist.*, 2001 WL 789225 (N.D.Ill. July 12, 2001), each denied the plaintiff's motion to dismiss because the defendant's alleged conduct that could be considered "extreme and outrageous" was independent of the alleged discriminatory nature of the conduct.

> FN8. The elements of an IIED cause of action under Illinois law are: (1) the conduct involved must be "truly extreme and outrageous"; (2) the defendant must either intend the infliction of emotional distress or know that there is a high probability that his conduct will result in such distress; and (3) the conduct must in fact cause severe emotional distress. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 660 (7th Cir.2001), citing *McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806 (1988).

*5 Plaintiff's state tort claim is merely a recasting of the acts of discrimination, harassment, and retaliation preemptively covered by the IHRA. *See Johnson*, 2002 WL 1769976, at *5. To the extent that plaintiff states a claim for IIED, the court lacks jurisdiction over such a claim because it is preempted by the IHRA. Because plaintiff's claim is preempted by the IIED, the court need not reach defendant's alternative argument that the claim is preempted by the exclusivity provisions of the IWCA. Accordingly, defendant's motion to dismiss Count XIII is granted.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2644397 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2644397)**

Page 6

III. Breach of contract (Count XII)

In Count XII of her complaint, plaintiff alleges that defendant breached its contract with her by, *inter alia*, discriminating against her based on her sex, denying her reasonable accommodation as required by the ADA, and denying plaintiff's participation in defendant's employee welfare and benefits program. Defendant argues that plaintiff's breach of contract claim is barred by the IHRA and ERISA, and should be dismissed pursuant to Rule 12(b)(1).

As discussed above, the IHRA preempts common law claims that are "inextricably linked" to a civil rights violation. *SeeMaksimovic,* 177 Ill.2d at 517, 227 Ill.Dec. 98, 687 N.E.2d 21. Courts have routinely found that breach of contract claims are preempted by the IHRA. *SeeEllman v. Woodstock # 200 Sch. Dist.,* 2001 WL 218958, at *10 (N.D.Ill. Feb.26, 2001); *Wootten v. Fortune Brands, Inc.;* 1999 WL 705763, at *2-3 (N.D.Ill. Aug.27, 1999); *Isaacson v. Keck, Mahin & Cate,* 1993 WL 68079, at *7-8 (N.D.Ill. Mar.10, 1993). Like an IIED claim, a breach of contract claim is preempted when "there is no independent basis for the action apart from the [IHRA] itself."*Ellman,* 2001 WL 218958 at *10. That is, when the breach of contract claim amounts to nothing more than an alleged breach of an alleged promise to uphold the laws against discrimination. *Wootten,* 1999 WL 705763 at *3.

The specific allegations incorporated into plaintiff's breach of contract claim are the same core allegations that support her claims of sex discrimination, disability discrimination, and retaliation. The central allegations of these claims are clearly covered by the IHRA and are thus preempted. *Issacson,* 1993 WL 68079 at *8. The "IHRA preempts any state law claims in which the plaintiff must prove discriminatory motive or impact."*Seehawer v. Magnecraft Elec. Co.,* 714 F.Supp. 910, 914 (N.D.Ill.1989). Plaintiff does not allege an employment contract or other agreement that contains additional terms. It appears, therefore, that her breach of claim is premised on a general contract by defendant not to discriminate against its employees. Like plaintiff's IIED claim, her breach of contract claim is inextricably linked to violations of the IHRA because without the IHRA there is no breach of contract claim. *SeeEllman,* 2001 WL 218958 at *10;*Wootten,* 1999 WL 705763 at *2-3,*Issacson,* 1993 WL 68079 at *8.

*6 Plaintiff also alleges in her complaint that defendant breached its contract with her by denying plaintiff's participation in defendant's welfare and benefits program which, it is undisputed, was an ERISA plan. Defendant assets that this portion of plaintiff's breach of contract claim is therefore preempted by ERISA. ERISA preempts "any and all State laws insofar as they now may or hereafter relate to any employee benefit plan."29 U.S.C. § 1144(a). In so providing, Congress "blotted out (almost) all state law on the subject of [employee benefit plans], so a complaint about [such plans] rests on federal law no matter what label its author attaches ."*Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1075 (7th Cir.1992).

Plaintiff's allegation in Count XII that defendant breached its contract with her by terminating her, which in turn terminated her employee benefits, is redundant of plaintiff's ERISA retaliation claim in Count XI. As such, the claim is preempted by ERISA. 29 U.S.C. § 1144(a); *Rice v. Panchal,* 65 F.3d 637, 644 (7th Cir.1995) (complete preemption of state law claims "is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law"); *seealsoMiller v.. Taylor Insulation Co.,* 39 F.3d 755 (7th Cir.1994) (plaintiff's claim to recover on written promise by his former employer to provide coverage under the company's medical reimbursement plan was preempted by ERISA). This court has held that even claims that an individual contract promises more employee benefits than an existing ERISA relate to the plan and are preempted by ERISA." *Welles v. Brach & Brock, Confections, Inc.,* 2000 WL 420738, at *2 (N.D.Ill. Apr.12, 2000), *aff'd,*14 Fed.Appx. 668, 2001 WL 823887

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 2644397 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2644397)**

Page 7

th Cir. July 18, 2001).

The portions of plaintiff's breach of contract claim that relate to defendant's alleged discrimination, harassment, and retaliation are preempted by the IHRA. The portion of Count XII that alleges that defendant breached its contract by denying plaintiff's participation in defendant's employee welfare and benefits program is redundant of Count XI and is preempted by ERISA. Accordingly, defendant's motion to dismiss is granted as to Count XII.

IV. Motion to strike

Defendant has moved to strike: (1) plaintiff's demands for compensatory and punitive damages and for a jury trial on plaintiff's claim of retaliatory discharge under the ADA; and (2) plaintiff's demands for relief other than equitable relief for unpaid benefits and for a jury trial on plaintiff's ERISA retaliation claim. For the reasons stated below, defendant's motion to strike is granted as to plaintiff's ADA claim. The parties agree that defendant's motion to strike is moot as to plaintiff's ERISA claim.

The Seventh Circuit recently held in a case of first impression, *Kramer v. Banc of America Securities,* 355 F.3d 961 (7th Cir.2004), *cert.denied* 542 U.S. 932, 124 S.Ct. 2876, 159 L.Ed.2d 798 (June 21, 2004), that the ADA does not allow a plaintiff to recover compensatory or punitive damages for ADA retaliation claims. *Kramer* further held that because the plaintiff was not entitled to recover compensatory or punitive damages on her ADA claim, she also had no statutory or constitutional right to a jury trial. *Id.* at 967-68. Plaintiff cannot, and does not, dispute that this is the holding of *Kramer.* Rather, plaintiff suggests that the court should disregard the Seventh Circuit's opinion. Plaintiff then devotes almost eight pages of her brief to disagreeing with the reasoning of *Kramer.* Plaintiff should have spared herself, and the court, the time. The court is bound by the Seventh Circuit's holding in *Kramer,* which unambiguously bars plaintiff's jury demand and requests for relief under her ADA claim. Accordingly, defendant's motion to strike plaintiff's demand for a jury trial and her request for compensatory and punitive damages on her ADA retaliation count is granted.

*7 In her response, plaintiff withdraws her demand for a jury trial under ERISA. Plaintiff also withdraws the all of her prayers for relief under her ERISA claim, except for: (1) lost employee benefits; and (2) attorney fees and costs. Defendant concedes in its reply that contractual remedies under ERISA may include lost benefits, and that plaintiff may be entitled in certain circumstances to recover attorneys' fees and costs under ERISA. Accordingly, defendant's motion to strike plaintiff's jury demand and prayer for relief under her ERISA claim is denied as moot.

*CONCLUSION*

As explained above, defendant's motion to dismiss is granted with respect to Counts III, XII, and XIII. Defendant's motion to strike plaintiff's jury demand and prayer for compensatory and punitive damages under her ADA retaliation claim is granted. Defendant's motion to strike plaintiff's jury demand and prayer for relief under her ERISA claim is denied. This matter is set for a report on status on November 24, 2004, at 9:00 a.m.

N.D.Ill.,2004.  
Witt v. County Ins. & Financial Services  
Not Reported in F.Supp.2d, 2004 WL 2644397 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.