# TAB I

LEXSEE 1999 US DIST LEXIS 18683



Analysis
As of: May 01, 2008

**LEWIS E. ROBINSON, JR., Plaintiff, v. RONEY OATMAN, INC. & ROBERT HAUGE, SR., Defendants.**

**CAUSE NO. 97C8964**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1999 U.S. Dist. LEXIS 18683*

**November 23, 1999, Decided
November 26, 1999, Docketed**

**DISPOSITION:**    [*1]  Defendant's Motion for Summary Judgment (doc. # 61) GRANTED in part and DENIED in part. Defendant's Motion to Strike Rule 56.1(b) Statement (doc. # 70-1, 70-2) and Motion to Strike Daniel Sherman's Afidavit (doc. # 71) DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant employer moved for summary judgment, to strike portions of plaintiff employee's response, and to strike an affidavit, in plaintiff's suit alleging sexual harassment, retaliation, and constructive discharge under Title VII, and state law claims of assault and battery, and intentional and negligent infliction of emotional distress.

**OVERVIEW:** Plaintiff employee sued defendant employer, alleging sexual harassment, retaliation, and constructive discharge under Title VII, and state law claims of assault and battery, and intentional and negligent infliction of emotional distress. Defendant moved for summary judgment, to strike portions of plaintiff's response, and to strike an affidavit. The court granted defendant's summary judgment motion as to: (1) plaintiff's retaliation claim regarding his wife's termination because the claim was outside the scope of his Equal Employment Opportunity Commission (EEOC) charge; and (2) all claims involving conduct occurring more than 300 days before the date on which plaintiff filed his EEOC charge. Genuine issues of material fact existed, and thus summary judgment was denied, as to: (1) whether plaintiff's complaint was time-barred because it was not filed within 90 days of receiving his right to sue letter; and (2) whether defendant was aware of the harassment and failed to remedy it.

**OUTCOME:** Defendant's summary judgment motion was granted as to plaintiff's retaliation claim regarding his wife, his constructive discharge claim, his state law claims of assault and battery, intentional and negligent infliction of emotional distress, and claims occurring more than 300 days prior to filing his Equal Employment Opportunity Commission charge.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Supporting*

1999 U.S. Dist. LEXIS 18683, *1

*Materials > General Overview*
[HN1] *Fed. R. Civ. P. 56(c)* provides that a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
[HN2] Summary judgment is appropriately entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Trials > Jury Trials > Province of Court & Jury*
[HN3] For summary judgment purposes, the initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. A question of material fact is a question which will be outcome determinative of an issue in the case. The facts which are considered material in a specific case shall be determined by the substantive law controlling the given case or issue. Once the moving party has met the initial burden, the opposing party must go beyond the pleadings and designate specific facts showing that there is a genuine material issue for trial. The nonmoving party cannot rest on its pleadings, nor may that party rely upon conclusory allegations in affidavits.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN4] During its summary judgment analysis, a federal district court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. However, neither the mere existence of

some factual dispute between the parties, nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment.

*Labor & Employment Law > Discrimination*
[HN5] The well-established general rule is that a Title VII plaintiff may bring only those claims that were included in his Equal Employment Opportunity Commission (EEOC) charge. This rule serves two purposes: affording an opportunity for the EEOC to settle the dispute between the employee and employer and putting the employer on notice of the charges against it.

*Labor & Employment Law > Discrimination*
[HN6] A plaintiff may include a claim in a federal complaint that was not brought in charges filed with the Equal Employment Opportunity Commission (EEOC) if a two-prong test is satisfied: (1) the claim is like or reasonably related to the EEOC charges; and (2) the claim in the complaint reasonably could develop from the EEOC investigation into the original charges. The allegations in the EEOC complaint and the claims in the federal complaint are reasonably related if there is a factual relationship between the two. This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals. Furthermore, a federal district court shall consider whether the complaint's claims and the EEOC charge cover the same time period. The district court shall examine the factual allegations in the body of the EEOC charge.

*Labor & Employment Law > Discrimination*
[HN7] Allegations outside the body of an Equal Employment Opportunity Commission charge may be considered when it is clear that the charging party intended the agency to investigate the allegations.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Discrimination*
[HN8] Plaintiffs in Illinois must file Equal Employment Opportunity Commission charges within 300 days of the allegedly unlawful employment practice.

*Labor & Employment Law > Discrimination*

1999 U.S. Dist. LEXIS 18683, *1

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Statutes of Limitations > Continuing Violations*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Statutes of Limitations > Estoppel, Tolling & Waiver*
[HN9] Standard principles of limitations law, including the continuing violation theory, the discovery rule, equitable tolling, and equitable estoppel, apply to Title VII cases.

*Governments > Legislation > Statutes of Limitations > Extension & Revival*
*Labor & Employment Law > Discrimination*
[HN10] The continuing violation doctrine allows a plaintiff to obtain relief from a time-barred act of discrimination by linking it with acts which fall within the limitations period. The continuing violation doctrine is applicable only if it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in light of events that occurred later, within the period of the statute of limitations.

*Governments > Legislation > Statutes of Limitations > Extension & Revival*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Discrimination*
[HN11] To succeed under the continuing violation theory, a plaintiff must show that the alleged acts of discrimination were part of an ongoing pattern of discrimination and that at least one of the alleged acts of discrimination occurred within the relevant limitations period.

*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Coercion > Elements*
*Governments > Legislation > Statutes of Limitations > General Overview*
*Labor & Employment Law > Discrimination*
[HN12] The factors a federal district court must consider when applying the continuing violation doctrine are: (1) whether the alleged acts involve the same type of discrimination; (2) whether the alleged acts are recurring or are instead isolated events; and (3) whether the act has a degree of permanence which should trigger the

plaintiff's awareness. Where it is evident that a plaintiff should have been aware that he was a victim of harassment long before he brought suit, he may bring an action provided that the last act of harassment occurred within the statute of limitations, however the plaintiff cannot reach back and base his suit on conduct that occurred outside the statute of limitations.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Discrimination*
[HN13] Any act occurring outside the limitations period may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

*Civil Procedure > Dismissals > General Overview*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Discrimination*
[HN14] A civil action alleging a Title VII violation must be filed within 90 days of notice that the Equal Employment Opportunity Commission has dismissed the suit. *42 U.S.C.S. § 2000e-5(f)(1)*. The general rule is that the 90-day period begins to run when the plaintiff actually receives notice. However, in cases where there are exceptions, there is a three-part test to determine when the 90-day period for filing a Title VII action begins.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Discrimination*
[HN15] The three-part test to determine when the 90-day period for filing a Title VII action begins is as follows. When the plaintiff is represented by an attorney, and the Equal Employment Opportunity Commission has been informed of the representation, receipt by the attorney begins the 90-day period. Where someone other than the plaintiff or his attorney receives notice, such as a member of the plaintiff's household, the limitations period does not begin to run until the plaintiff or his attorney receives such notice. In cases where the plaintiff's receipt of the right to sue letter is otherwise delayed, then federal district courts are to apply a fault approach. Under the fault approach, a delay in the plaintiff's receipt of notice,

1999 U.S. Dist. LEXIS 18683, *1

which is caused by the plaintiff's lack of diligence, will not delay the running of the statute of limitations.

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Federal & State Interrelationships**

[HN16] Title VII provides that it shall be an unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex. *42 U.S.C.S. § 2000e-2(a)(1).*

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Burdens of Proof > Severe & Pervasive Standards**

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Federal & State Interrelationships**

[HN17] Sexual harassment which is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment violates Title VII.

**Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Coercion > Elements**

**Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities**

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Employer Liability > General Overview**

[HN18] The five-part test for establishing a Title VII claim of sexual harassment is as follows. First, an employee must show that he was a member of a protected class. Next, he must show that he was subjected to unwanted sexual advances or physical conduct of a sexual nature. Third, the harassment complained of must be based on sex. Additionally, the charged sexual harassment must have unreasonably interfered with the employee's work performance. Finally, there must be a basis for employer liability.

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Federal & State Interrelationships**

[HN19] Title VII's protection against sexual harassment extends to men as well as women.

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Coverage & Definitions > General Overview**

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Employer Liability > Coworkers**

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Employer Liability > Supervisors**

[HN20] An employer's liability for hostile work environment sexual harassment depends upon whether the harasser is the victim's supervisor or merely a co-employee.

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Coverage & Definitions > General Overview**

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Employer Liability > Supervisors**

**Torts > Vicarious Liability > Employers > Activities & Conditions > General Overview**

[HN21] An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. Heightened liability exists in this context only because a supervisor's conduct is made possible by the abuse of his supervisory authority, his apparent authority, or because his supervisory position aided him in accomplishing the sexual harassment. Because liability is predicated on misuse of supervisory authority, the touchstone for determining supervisory status is the extent of authority possessed by the purported supervisor.

**Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Coercion > Elements**

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Defenses & Exceptions > Antiharassment Policy**

**Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Employer Liability > Coworkers**

[HN22] Because employers do not entrust mere co-employees with any significant authority with which

Case 3:08-cv-50019    Document 25-4    Filed 05/02/2008    Page 6 of 28

Page 5
1999 U.S. Dist. LEXIS 18683, *1

they might harass a victim, employers are liable for a co-employee's harassment only when they have been negligent either in discovering or remedying the harassment. An employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of sexual harassment of its employees.

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Coverage & Definitions > General Overview*
[HN23] It is manifest that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes imputing liability to the employer.

*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Coercion > Elements*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Employer Liability > Coworkers*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Employer Liability > Supervisors*
[HN24] In order to hold an employer liable, it must have either notice or knowledge of the sexual harassment. An employer may receive notice from a department head or someone else that the plaintiff reasonably believed was authorized to receive and forward (or respond to) a complaint of harassment.

*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Coercion > Elements*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Coverage & Definitions > General Overview*
[HN25] Whatever evidentiary route a plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex. However, harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A federal district court shall judge the objective severity of the harassment under

a reasonable person standard in light of all the circumstances.

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Coverage & Definitions > Same-Sex Harassment*
[HN26] Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Labor & Employment Law > Discrimination > Retaliation > Statutory Application > General Overview*
[HN27] Title VII prohibits an employer from retaliating against an employee who has opposed any practice made an unlawful practice by Title VII. *42 U.S.C.S. § 2000e-3(a).*

*Labor & Employment Law > Discrimination > Retaliation > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN28] In order to withstand a motion for summary judgment on a retaliation claim, a plaintiff must prove: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action exists. As to the first element of the prima facie case, filing an Equal Employment Opportunity Commission complaint is a protected activity under Title VII.

*Labor & Employment Law > Discrimination > Retaliation > General Overview*
[HN29] Adverse employment action consists of termination of employment, a demotion as evidenced by a decrease in wages or salary, a less distinguished job title, a material loss of benefits, or significantly diminished job responsibilities.

*Labor & Employment Law > Discrimination > Retaliation > General Overview*
[HN30] Adverse employment action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well. However, while adverse employment actions extend beyond readily

quantifiable losses, not everything that makes an employee unhappy is actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.

***Labor & Employment Law > Wrongful Termination > Constructive Discharge > Burdens of Proof***
***Labor & Employment Law > Wrongful Termination > Constructive Discharge > Statutory Application > Title VII of the Civil Rights Act of 1964***
***Labor & Employment Law > Wrongful Termination > Remedies > General Overview***
[HN31] A plaintiff may bring constructive discharge claims under Title VII where that plaintiff has demonstrated that his discriminatory working conditions were so intolerable that they would have compelled a reasonable person to resign from the position. Circumstances that might be adequate to establish a hostile working environment for purposes of Title VII will not necessarily support a constructive discharge claim, which requires the plaintiff to demonstrate harassment that is more severe or pervasive. Therefore, an employee must seek legal redress while remaining in his or her job unless confronted with an aggravated situation beyond ordinary discrimination. In other words, a constructive discharge claim requires evidence that quitting was the only way the plaintiff could extricate herself from the intolerable conditions.

***Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Employer Liability > Supervisors***
***Torts > Business Torts > General Overview***
***Torts > Vicarious Liability > Employers > Activities & Conditions > Intentional Torts***
[HN32] The common law rule is that an employer is liable for intentional torts of its employees committed in furtherance of their employment. If one low-level employee makes sexual advances to another, his conduct is so unrelated to the employer's business that the employer will ordinarily be excused from liability under the doctrine of respondeat superior; the employer's own fault must be shown. When determining whether an employee's acts are within the scope of his employment, the focus is generally upon the issues of whether the act was conducted substantially within the constraints of authorized time and location of employment, and whether the conduct was actuated at least in part by a purpose to

further the employer's business.

***Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Federal & State Interrelationships***
***Torts > Vicarious Liability > Employers > General Overview***
[HN33] Allegations of common law tort which can only be attributed to a defendant by means of respondeat superior or on the theory that the defendant implicitly approved of the sexual harassment by ignoring evidence that it was occurring are exactly those types of claims preempted by the Illinois Worker's Compensation Act, *820 Ill. Comp. Stat. 305/1 et seq.*

***Administrative Law > Separation of Powers > Primary Jurisdiction***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview***
***Torts > Procedure > Preemption > General Overview***
[HN34] The Illinois Human Rights Act, *775 Ill. Comp. Stat. 5/1-101 et seq.*, preempts a common law action seeking redress for civil rights violations. The Supreme Court of Illinois holds that an allegation of sexual harassment is merely incidental to the ordinary common law tort claims of assault and battery. An action to redress a civil rights violation has a purpose distinct from a common law tort action.

***Administrative Law > Separation of Powers > Primary Jurisdiction***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview***
***Governments > Courts > Common Law***
[HN35] Assault and battery are long-recognized tort actions which exist wholly separate and apart from a cause of action for sexual harassment under the Illinois Human Rights Act (IHRA), *775 Ill. Comp. Stat. 5/1-101 et seq.* To the extent that a plaintiff alleges the elements of each of these torts without reference to legal duties created by the IHRA, he establishes a basis for imposing liability on the defendant independent of the IHRA.

***Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Federal & State Interrelationships***
***Torts > Procedure > Commencement & Prosecution >***

*General Overview*
[HN36] The Illinois Human Rights Act (IHRA), *775 Ill. Comp. Stat. 5/1-101 et seq.*, only preempts those tort claims which are inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the IHRA itself.

*Workers' Compensation & SSDI > Remedies Under Other Laws > Exclusivity > General Overview*
[HN37] See *820 Ill. Comp. Stat. 305/5(a).*

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Federal & State Interrelationships*
*Workers' Compensation & SSDI > Remedies Under Other Laws > Exclusivity > General Overview*
[HN38] A sexually harassing co-employee is a risk inherent in employment, and state law claims, such as assault and infliction of emotional distress, which are inextricably linked to a plaintiff's employment, are barred by the Illinois Worker's Compensation Act, *820 Ill. Comp. Stat. 305/1 et seq.*

*Torts > Procedure > Preemption > General Overview*
*Workers' Compensation & SSDI > Compensability > Course of Employment > General Overview*
*Workers' Compensation & SSDI > Coverage > Employment Relationships > Casual Employees*
[HN39] It is because sexual assaults are compensable under the Illinois Worker's Compensation Act (IWCA), *820 Ill. Comp. Stat. 305/1 et seq.*, that the IWCA generally preempts common law torts based on those assaults. In order to avoid the bar of the IWCA, a plaintiff suing his employer must prove either that the injury: (1) was accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was noncompensable under the IWCA.

*Torts > Intentional Torts > Assault & Battery > General Overview*
*Workers' Compensation & SSDI > Administrative Proceedings > Burdens of Proof*
*Workers' Compensation & SSDI > Coverage > Actions Against Employers > Intentional Misconduct*
[HN40] To prove that an assault was not an accident (in order to avoid the bar of the Illinois Worker's Compensation Act, *820 Ill. Comp. Stat. 305/1 et seq.*), a

plaintiff must prove that the defendant or its alter ego intentionally inflicted, commanded, or expressly authorized the injurious act.

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Federal & State Interrelationships*
*Workers' Compensation & SSDI > Administrative Proceedings > Burdens of Proof*
*Workers' Compensation & SSDI > Remedies Under Other Laws > Exclusivity > General Overview*
[HN41] In order to prove that an employee is an alter ego of his employer (to avoid the bar of the Illinois Worker's Compensation Act, *820 Ill. Comp. Stat. 305/1 et seq.*), a plaintiff must show that the employee in a practical sense speaks for the employer in such a way that he possesses the authority to make decisions and set policy on behalf of his employer. It is clear, however, that status as a foreman, supervisor, or manager, by itself, will not suffice.

**COUNSEL:** For LEWIS E ROBINSON, JR, plaintiff: Daniel W. Sherman, Reardon, Golinkin & Reed, Chicago, IL.

For LEWIS E ROBINSON, JR, plaintiff: Lewie E Robinson, Jr, Sandwich, IL.

For RONEY OATMAN, INC., defendant: Stuart Michael Gimbel, Naomi Felicia Katz, Kamensky & Rubinstein, Lincolnwood, IL.

**JUDGES:** William J. Hibbler, District Judge.

**OPINION BY:** William J. Hibbler

**OPINION**

**MEMORANDUM OPINION AND ORDER**

This Court has before it the defendant's Motion for Summary Judgment (doc. # 61). The plaintiff, Lewis Robinson filed a seven-count Complaint against Defendant Roney Oatman alleging sexual harassment, retaliation, constructive discharge, assault and battery, and intentional and negligent infliction of emotional distress. For the reasons stated herein, the defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. This Court will also address

Defendant Roney Oatman's Motion to Strike Certain Portions of Plaintiff's Response (doc. # [*2] 70-1) and Deem as Admitted Certain Portions of its Rule 56.1(a) Statement (doc. # 70-2). In addition, the Court will rule on Defendant Roney Oatman's Motion to Strike Daniel Sherman's Affidavit (doc. # 71). The issues, being fully briefed, are now ripe for ruling.

With respect to Defendant Roney Oatman's Motion to Strike Portions of Plaintiff's Response and Deem as Admitted Statements in it Rule 56.1(a) Statement. (Doc. # 's 70-1 & 70-2) this Court recognizes that on its face, Plaintiff's Rule 56.1(b) response was deficient. However, this Court feels that whatever confusion that existed as to the Rule 56.1(b) has been rectified. Therefore, the defendants Motion to Strike (doc. # 's 70-1 & 2) is **DENIED**. As for the defendants' Motion to Strike Daniel Sherman's Affidavit (doc. # 71), this Court DENIES that motion as well because the evidence presented by the plaintiff in his response to a motion for summary judgment need not be in admissible form. *Winskunas v. Birnbaum, 23 F.3d 1264, 1267-68 (7th Cir. 1994)*. This Court is convinced that whatever deficiencies existed with Daniel Sherman's affidavit have since been cured. Furthermore, this Court declines to issue [*3] sanctions for filing a false affidavit, as has been requested by the plaintiff.

## BACKGROUND

Lewis Robinson began working at the Roney Oatman's ice cream plant in August 1992, and continued his employment until August 1996. During his employment, the plaintiff worked in the ice cream production, mix production, and freezer departments of the plant. Plaintiff alleges that beginning in late 1992 or early 1993, Defendant Hauge [1], a working supervisor in ice cream production, repeatedly grabbed Plaintiff's testicles. With each incident, the plaintiff demanded that Defendant Hauge stop, yet the plaintiff alleges the assaults continued on a weekly basis. The plaintiff alleges that in 1993, he told his supervisors at Roney about the assaults yet they failed to correct the problem. In January 1996, Plaintiff submitted a written complaint to Roney management. [2] Thereafter, the plaintiff transferred to the mix production side of the plant to avoid further contact with Defendant Hauge. After the written complaint, the plaintiff alleges that the assaults stopped. Furthermore, two months after Plaintiff filed his complaint, his wife's position in Roney's accounting department was

terminated. [*4] On April 17, 1996, Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging sexual harassment. The plaintiff alleges that the defendants retaliated against him for making his EEOC charge by assigning him menial duties and asking him to work on the ice cream side of production.

1   Robert Hauge was dismissed as a defendant on January 1, 1999, however, for the ease of discussion, he will hereinafter be referred to as Defendant Hauge.

2   The plaintiff gave his complaint to Chris Oelker, Plant Manager and Tim Waldrop, Assistant Plant Manager. The complaint stated "this is a written complaint against a working supervisor, Bob Hauge Sr., he has been going around grabbing and squeezing my testicles and I'm tired of it. You have already had a verbal complaint a year ago from my self [sic] and now a written one, if it happens again, I will be forced to take further action! Last date of reoccuring [sic] incident 1/18/96." *Def.'s Ex. H.*

## SUMMARY JUDGMENT STANDARD

[HN1] *Rule 56(c)* [*5] *of the Federal Rules of Civil Procedure* provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*; *Bragg v. Navistar Int'l Trans. Corp., 164 F.3d 373 (7th Cir. 1998)*; *Leisen v. City of Shelbyville, 968 F. Supp. 409 (S.D. Ind. 1997), aff'd 153 F.3d 805 (7th Cir. 1998)*. [HN2] "Summary judgment is appropriately entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 479 (7th Cir. 1996)* (citations omitted).

[HN3] The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should [*6] be granted in the moving party's favor. *Celotex Corp. v. Catrett, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*; *Larimer v. Dayton Hudson Corp., 137 F.3d*

*497 (7th Cir. 1998), reh'g denied.* A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts which are considered material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson, 477 U.S. at 248.* Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial." *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel, 160 F.3d 1139 (7th Cir. 1998); Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-21 (7th Cir. 1994),* nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys., 60 F.3d 317, 320 (7th Cir. 1995).* [HN4] During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in [*7] the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560 (7th Cir. 1996).* "However, neither the mere existence of some factual dispute between the parties, nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Lewis v. Simmons Airlines, Inc., 16 F. Supp. 2d 978, 981 (C.D. Ill. 1998).* Applying the above standard, this Court addresses the defendant's motion.

## ANALYSIS

### A. The Plaintiff's Title VII Claims Are Untimely

The defendant's first claim is that the plaintiff's Title VII counts are untimely and should therefore be dismissed. The defendant maintains the plaintiff's claims go beyond the allegations in his EEOC Charge of Discrimination in violation of pertinent case law. Next, the defendant contends that any claims of harassment which allegedly occurred more than 300 days prior to the filing of the EEOC charge should not be considered by the Court because they are time barred. Finally, the defendant claims that because the plaintiff failed to file his Complaint with this Court within 90 days of the issuance of the EEOC's [*8] Dismissal and Notice of Rights, summary judgment should be granted in its favor.

*1. Any claims outside the scope of the EEOC charge are barred*

The defendant first asks this Court to hold that Plaintiff's claims of retaliation by the defendant and any

continuing violation theories be dismissed because they were not included in his EEOC charge. It is the defendant's contention that when the plaintiff filed his EEOC charge in April 1996, he claimed that he had been a victim of discrimination based on his sex. He stated that he had filed a written charge of sexual harassment with his employer, yet no action had been taken. Further, the plaintiff failed to make a claim of retaliation and failed to state that the harassment was a continuing occurrence during the course of his employment.

[HN5] The well established general rule is that "a Title VII plaintiff may bring only those claims that were included in his EEOC charge." *McKenzie, 92 F.3d at 481; Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 501 (7th Cir. 1994); Bowers v. Radiological Society of North America, 57 F. Supp. 2d 594, 598 (N.D. Ill. 1999); Duhart v. Fry, 957 F. Supp. 1478 (N.D. Ill 1997).* [*9] "This rule serves two purposes: affording an opportunity for the EEOC to settle the dispute between the employee and employer and putting the employer on notice of the charges against it." *Duhart, 957 F. Supp. at 1488* (citations omitted). [HN6] "A plaintiff may include a claim in a federal complaint that was not brought in charges filed with the EEOC if a two-prong test is satisfied: '(1) the claim is like or reasonably related to the EEOC charges, and (2) the claim in the complaint reasonably could develop from the EEOC investigation into the original charges." *Bowers, 57 F. Supp. 2d at 598* (citing *Harper v. Godfrey Co., 45 F.3d 143, 148 (7th Cir. 1995));* *Duhart, 957 F. Supp. at 1488.* The allegations in the EEOC complaint and the claims in the federal complaint are reasonably related if there is a factual relationship between the two. *Harper, 45 F.3d at 148.* "This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Id.* Furthermore, this Court should consider "whether the complaint's claims and the EEOC charge cover the same time [*10] period." *Duhart, 957 F. Supp. at 1488.* This Court should examine the factual allegations in the body of the EEOC charge. *Cheek, 31 F.3d at 500.* In other words, "the proper investigation would be into what EEOC investigation could reasonably be expected to grow from the original complaint." *Babrocky v. Jewel Food Co., 773 F.2d 857, 864 n.2 (7th Cir. 1985).*

The plaintiff filed his charge with the EEOC on April 17, 1996. [3] In this case, there can be no question that the plaintiff did not include his claim of retaliation against

his wife in his EEOC charge, even though her position was terminated on March 22, 1996, a month before he filed his charge. If the purpose of the EEOC complaint is to give the EEOC an opportunity to investigate all claims and to notify an employer of the charges against it, then Plaintiff has failed to meet this burden. [HN7] "Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek, 31 F.3d at 503.* It is apparent that the plaintiff knew that his wife was fired at the time he filed his charge. It [*11] is also clear that his failure to include this portion of his retaliation claim did not afford the EEOC nor Defendant Roney Oatman the opportunity to investigate this charge. Because his claim of retaliation against his wife involves neither the same conduct nor the same individuals, this claim is **DISMISSED** and Summary Judgment is **GRANTED** with respect to these claims.

> 3  The plaintiff's EEOC charge states,
>
> > I. I was hired by the above named company on August 1, 1992 as a Freezer Worker. In January 1996 I filed a written complaint of sexual harassment with management officials of the company. To date no action has been taken against the harasser.
> >
> > II. I believe I have been discriminated against in violation of Title VII because of my sex, male in that no action has been taken to stop the sexual harassment.
>
> *Def.'s Ex. J.*

**2. The bulk of the claims are time barred by the 300-day filing requirement**

The defendant next argues that Plaintiff is time barred from asserting any Title [*12] VII claims, or other acts which occurred more than 300 days before the April 17, 1996 date which he filed his EEOC charge. Therefore, Defendant maintains that any incidents of harassment which occurred prior to June 22, 1995 are barred from this litigation. The plaintiff counters that the defendant's actions constitute a continuing violation and

therefore they should be linked with actions falling within the limitations period.

[HN8] Plaintiffs in Illinois must file EEOC charges within 300 days of the allegedly unlawful employment practice. *Speer v. Rand McNally & Co., 123 F.3d 658, 662 (7th Cir. 1997); Duhart, 957 F. Supp. at 1483; Moore v. Allstate Ins. Co., 928 F. Supp. 744, 750 (N.D. Ill. 1996).* However, [HN9] "standard principles of limitations law, including the continuing violation theory, the discovery rule, equitable tolling, and equitable estoppel, apply to Title VII cases." *Duhart, 957 F. Supp. at 1483.* [HN10] The continuing violation doctrine allows a plaintiff to obtain relief from a time barred act of discrimination by linking it with acts which fall within the limitations period. *Id.; Gurzynski v. Area 604/605 Local* [*13] *6266, 1999 U.S. Dist. LEXIS 14335, No. 98 C 2971, 1999 WL 728096, *3 (N.D. Ill. Sept. 14, 1999).*

> The continuing violation doctrine is applicable only it "it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in light of events that occurred later, within the period of the statute of limitations."

*Gurzynski,* 1999 WL 728096, at *3 (citing *Galloway v. General Motors Serv. Parts Operations, 78 F.3d 1164, 1167 (7th Cir. 1996)).* [HN11] "To succeed under the continuing violation theory, a plaintiff must show that the alleged acts of discrimination were part of an ongoing pattern of discrimination and that at least one of the alleged acts of discrimination occurred within the relevant limitations period. *Duhart, 957 F. Supp. at 1483.* Should the plaintiff succeed in showing an ongoing pattern, this Court will treat the series of acts as one continuous act within the 300 day limitations period. *Gurzynski,* 1999 WL 728096, at *3; *Duhart, 957 F. Supp. at 1483.* [HN12] The factors [*14] this Court must consider when applying the continuing violation doctrine are, (1) whether the alleged acts involve the same type of discrimination, (2) whether the alleged acts are recurring or are instead isolated events, and (3) whether the act has a degree of permanence which should trigger the plaintiff's awareness. *Selan v. Kiley, 969 F.2d 560, 565 (7th Cir. 1992).* Where it is evident that a plaintiff should have been aware that he was a victim of harassment long

before he brought suit, he may bring an action "provided that the last of harassment occurred within the statute of limitations, [however] the plaintiff cannot reach back and base [his] suit on conduct that occurred outside the statute of limitations." *Duhart, 957 F. Supp. at 1484.*

In this case, the plaintiff cannot reach back and include incidents that occurred outside the 300 day limitations period. Although the plaintiff has alleged that same type of discrimination occurred over the course of his employment with Defendant Roney Oatman, these acts were recurring and should have triggered him to his right to sue before he filed his EEOC complaint in 1996. This Court recognizes that [*15] even though there may be a dispute as to when the incidents of harassment ceased, there can be no question that they began more than 300 days prior to the filing of the EEOC charge. It would not have been unreasonable to expect the plaintiff to have brought suit before the statute ran on the conduct, and therefore, all conduct which falls before the 300 day statute of limitations period is **DISMISSED**. Therefore, [HN13] "any act occurring outside the filing period 'may constitute relevant background evidence in a proceeding in which the status of a *current practice* is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.'" *Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027, 1036 fn. 2,* (7th Cir. 1998). Defendants' Motion for Summary Judgment is therefore **GRANTED** with respect to all claims falling outside the 300 day statute of limitations period.

3. *A genuine issue of fact exists as to whether the plaintiff's EEOC complaint is time barred*

The defendant also argues that the plaintiff's EEOC complaint should be dismissed because he failed to file it within 90 days of receiving [*16] his Right to Sue Letter. The plaintiff counters that he exercised due diligence in trying to receive his Right to Sue Letter and any delay in filing his Complaint was through no fault of his own.

[HN14] A civil action alleging a Title VII violation must be filed within 90 days of notice that the Commission has dismissed the suit. *42 U.S.C. § 2000e-5(f)(1).* The general rule is that the 90-day period begins to run when the plaintiff actually receives notice. *Jones v. Madison Service Corp., 744 F.2d 1309, 1312 (7th Cir. 1984).* However, in cases where there are exceptions, the Seventh Circuit has instituted a [HN15] three-part test to determine when the 90-day period for

filing a Title VII action begins. *Bond v. American Medical Assoc., 764 F. Supp. 122, 124 (N.D. Ill. 1991); Trinkle v. Bell Litho, Inc., 627 F. Supp. 764, 765 (N.D. Ill. 1986).* When the plaintiff is represented by an attorney, and the EEOC has been informed of the representation, receipt by the attorney begins the 90-day period. *Jones, 744 F.2d at 1312, 1314.* Where someone other than the plaintiff or his attorney receives notice, such as a [*17] member of the plaintiff's household, the limitations period does not begin to run until the plaintiff or his attorney receives such notice. *Archie v. Chicago Truck Drivers, Helpers & Warehouse Workers Union, 585 F.2d 210 (7th Cir. 1978).* In cases where the plaintiff's receipt of the Right to Sue Letter is otherwise delayed, courts are to apply a fault approach. *St. Louis v. Alverno College, 744 F.2d 1314, 1317 (7th Cir. 1984).* Under the fault approach, a delay in the plaintiff's receipt of notice, which is caused by the plaintiff's lack of diligence, will not delay the running of the statute of limitations. *St. Louis, 744 F.2d at 1317; Jones, 744 F.2d at 1313.*

In this case, the defendant maintains that because the plaintiff did not file his Complaint with the Court until 274 days after the EEOC issued his Right to Sue Letter, then his claims are barred. The plaintiff counters that he exercised due diligence in order to obtain the letter and the delay in its receipt was through no fault of his own. A genuine issue of material facts exists as to whether the plaintiff was in fact diligent in his pursuit of his Right [*18] to Sue Letter. At one point in his deposition testimony, the plaintiff claims that he called the EEOC in either April or May and then did not make any further calls until late September. *Def.'s Ex. A.* at 256 & 301. However, later in his deposition testimony, the plaintiff claims that he made phone calls to the EEOC in June, July, and August of 1997. *Def.'s Ex. A.* at 373. Because a genuine issue of material fact exists as to whether the plaintiff in fact diligently pursued receipt of his Right to Sue Letter, this is a question best left for a jury and this Court now **DENIES** the defendants' Motion for Summary Judgment on the issue.

**B. Plaintiff's Sexual Harassment Claims Have Merit**

[HN16] Title VII provides that "it shall be unlawful employment practice for a employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's ... sex." *42 U.S.C. 2000e-2(a)(1)*. [HN17] "Sexual harassment which is so 'severe or pervasive' as to 'alter the conditions of the victim's employment and creates an [*19] abusive working environment' violates Title VII." *Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027, 1032 (7th Cir. 1998)* (quoting *Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1986)* (internal citations and quotations omitted). The Seventh Circuit has set forth [HN18] a five-part test for establishing a Title VII claim of sexual harassment. First, the employee must show that he was a member of a protected class. Next, he must show that he was subjected to unwanted sexual advances or physical conduct of a sexual nature. Third, the harassment complained of must be based on sex. Additionally, the charged sexual harassment must have unreasonably interfered with the employee's work performance. Finally, there must be a basis for employer liability. *Id.; Rennie v. Dalton, 3 F.3d 1100, 1107 (7th Cir. 1993)*.

In this case, the plaintiff has met all the *Parkins* elements. As for the first element, the plaintiff is a member of a protected class. The Supreme Court has recently held that [HN19] Title Vii's protection against sexual harassment extends to men as well as women. [*20] *Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)*. Because this Court must construe the facts in the plaintiff's favor, there can be no doubt that based upon the allegations, the plaintiff was subjected to unwanted sexual contact. This Court is of the opinion that the harassment was based on the plaintiff's sex, and that harassment interfered with his work performance. Finally, the plaintiff has successfully alleged that there may be a basis for Defendant Roney Oatman's liability in that it may have been negligent in remedying the harassment.

1. Defendant Roney Oatman's Conduct may have been negligent

As an initial matter, this Court must first determine whether Defendant Hauge is a supervisor or rather a co-worker. [HN20] "An employer's liability for hostile work environment sexual harassment depends upon whether the harasser is the victim's supervisor or merely a co-employee." *Parkins, 163 F.3d at 1032*. [HN21] "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority [*21] over the employee." *Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270, 141 L. Ed. 2d 633 (1998)*. "The Supreme Court has made clear that heightened liability exists in this context only because a supervisor's conduct is made possible by the 'abuse of his supervisory authority' his apparent authority, or because his supervisory position aided him in accomplishing the harassment." *Parkins, 163 F.3d at 1033* (citing *Faragher, 524 U.S. at , 118 S. Ct. at 2290*). ""Because liability is predicated on misuse of supervisory authority, the touchstone for determining supervisory status is the extent of authority possessed by the purported supervisor." *Id.* [HN22] "Because employers do not entrust mere co-employees with any significant authority with which they might harass a victim, employers are liable for a co-employee's harassment only 'when they have been negligent either in discovering or remedying the harassment.'" *Parkins, 163 F.3d at 1032; Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997)*. "An employer's legal duty in co-employee harassment [*22] cases will be discharged if it takes 'reasonable steps to discover and rectify acts of sexual harassment of its employees." *Id.*

In this case, Defendant Hauge was not a supervisor. Defendant's Hauge's duties as a working supervisor did not include the power to hire or fire employees, or to review employees work. Defendant Hauge was a member of the union and was not considered part of the management team. Defendant Hauge was compensated at an hourly rate and received fifty cents more per hour for functioning as a working supervisor.

> [HN23] It is manifest that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes imputing liability to the employer.

*Parkins, 163 F.3d at 1034*. This being the case, there can be no doubt that Defendant Hauge was a co-worker rather than a supervisor of the plaintiff. Therefore, this Court must determine whether Defendant Roney Oatman was

1999 U.S. Dist. LEXIS 18683, *22

negligent [*23] in either discovering or remedying the harassment.

"An employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of sexual harassment by its employees. *Parkins, 163 F.3d at 1035.* [HN24] In order to hold the employer liable, it must have either notice or knowledge of the harassment. *Id.* An employer may receive notice from a department head or someone else that the plaintiff "reasonably believed was authorized to receive and forward (or respond to) a complaint of harassment." *Young v. Bayer Corp., 123 F.3d 672, 674 (7th Cir. 1997).* In this case, Defendant Roney Oatman alleges that Plaintiff failed to inform management of the sexual harassment until he submitted his written complaint in January 1996. However, in his deposition testimony, the plaintiff asserts that he verbally informed his union steward, business agent, and two managers, Tim Waldrop and Chris Oelker on numerous occasions between 1994 and 1996. He even goes so far as to allege a meeting in 1995 between Paul Brennan, the union steward, Waldrop and Oelker. Plaintiff claims that as a result of this meeting he decided not to [*24] file a grievance with the union because he believed Oelker would rectify the situation. *Pls'. Ex. 2* at 156-162.

There can be no doubt that the plaintiff acknowledges that from the day of his written complaint until the time he terminated his employment, there were no further assaults. Both parties attribute this to the fact that Plaintiff was transferred to a different section of the plant. Both parties take credit for this occurrence, and argue as to the other parties true involvement in the event. This dispute is neither here nor there. The fact of the matter remains that after Plaintiff submitted his written request to Defendant Roney Oatman no further episodes occurred. Although Plaintiff alleges that there were instances when he was asked to again work side by side with Defendant Hauge, he does not allege that Defendant Hauge assaulted him again. The critical inquiry which remains is whether Defendant Roney Oatman was on notice of the harassment between June 22, 1995, 300 days prior to filing to EEOC charge, and January 18, 1996, the date the written complaint gives as the date of the last instance of harassment. Based upon the papers submitted by the parties, this Court [*25] cannot answer that question and therefore feels that the issue should proceed to trial. [4] As such, a genuine issue of material fact remains as to whether Defendant Roney

Oatman was aware of the harassment and failed to remedy it. Therefore, the defendant's Motion for Summary Judgment as to whether Defendant Roney Oatman was negligent is **DENIED**.

4  Because the plaintiff has failed to submit the dates of his verbal complaints, and this Court must construe allegations in favor of the plaintiff, a genuine issue of material fact exists as to the dates of those complaints.

2. Plaintiff has established the sexual harassment was motivated by his sex

The defendant also argues that the plaintiff cannot prove that the alleged sexual harassment was motivated by his sex, and therefore, summary judgment should be granted in its favor. The defendant contends that because the plaintiff does not know what motivated Defendant Hauge to sexually harass him, he has failed to prove that Defendant Hauge was motivated by [*26] plaintiff's sex. The Court now rejects this line of circular reasoning and holds that summary judgment should be **DENIED** on this issue.

"Title VII's prohibition of discrimination 'because of sex' protects men as well as women." *Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78, 118 S. Ct. 998, 1001, 140 L. Ed. 2d 201 (1998)* (citing *Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 682, 77 L. Ed. 2d 89, 103 S. Ct. 2622 (1983)).* [HN25] "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination ... because of ... sex.'" *118 S. Ct. at 1002.* However, "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Id.* This Court should judge the objective severity of the harassment under a reasonable person standard in light of all the circumstances. *Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993).* "The real social impact of workplace behavior [*27] often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *118 S. Ct. at 1003.* Where, ·

it appears plain on the record as a whole that the statements or conduct in question

were nothing other than vulgar provocations having no causal relationship to the plaintiff's gender as a male, the sexual content or connotations of those statements or conduct will not alone raise a question of fact as to the sex-based character of the harassment. On the other hand, when the context of the harassment leaves room for the inference that the sexual overlay was not incidental - that the harasser was genuinely soliciting sex from the plaintiff or was otherwise directing harassment at the plaintiff because of the plaintiff's sex - then the task of deciding whether the harassment amounts to sex discrimination will fall to the finder of fact.

*Shepherd v. Slater Steels Corp., 168 F.3d 998, 1010-11 (7th Cir. 1999)*(quoting *Johnson v. Hondo, Inc., 125 F.3d 408, 413 (7th Cir. 1997))* (internal quotation marks omitted).

The defendant [*28] claims that summary judgment should be granted in its favor because the plaintiff cannot prove the incidents of "gender-neutral horseplay" were motivated by the plaintiff's sex. The defendant points to *Johnson* to support its contention that Plaintiff cannot prove that he was harassed because of his sex. However, this Court finds *Johnson* readily distinguishable from the case at hand. In *Johnson*, the Seventh Circuit held that the plaintiff had failed to prove that he was harassed because of his gender. The key factors which enabled the Court to reach its conclusion were the fact that the defendant had used expletives and vulgar language with the plaintiff. "Besides the sexual content of [the defendant's] remarks there is absolutely nothing in this record that supports a reasonable inference that the remarks were directed at Johnson on account of his gender." *Johnson, 125 F.3d at 412.* "Most unfortunately, [vulgar] expressions ... are commonplace in certain circles, and more often than not, when these expressions are used (particularly when uttered by men speaking to other men), their use has no connection whatsoever with the sexual acts to which they make [*29] reference - even when they are accompanied, as they sometimes were here, with a crotch-grabbing gesture." [5] *Id.* In this case, Defendant Hauge's conduct went beyond vulgar language and locker room antics, the plaintiff alleges that at least 100 times over a two-and-a-half to three year period the defendant grabbed

his testicles. In light of the fact that the plaintiff claims that he repeatedly told Defendant Hauge to stop this behavior, and then turned to his managers for assistance, this Court finds that a reasonable person in the plaintiff's position would find the situation hostile. This Court finds Defendant Hauge's conduct severe and pervasive enough to create an objectively hostile or abusive work environment in compliance with *Harris.* Although there is no hard and fast evidence that Defendant Hauge was motivated by sexual desire when he harassed the plaintiff, this Court finds that the facts are sufficiently analogous to that of *Shepherd* and holds that the "finder of fact, evaluating this harassment in context, might reasonably conclude from the relentless[] [physical contact] that [Plaintiff] was harassed because he was a man." *Shepherd, 168 F.3d at 1011.* [*30] [HN26] "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 82, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998).* Therefore, the defendants Motion for Summary Judgment on the plaintiff's sexual harassment claims are **DENIED.**

> 5   The defendant in *Johnson* did not touch the plaintiff's genitals, but rather the defendant touched himself as if masturbating through his clothes.

## C. Plaintiff's Title VII Retaliation Claims Are Without Merit

[HN27] Title VII prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful practice by [Title VII]." *42 U.S.C. § 2000e-3(a).* [HN28] In order to withstand a motion for summary judgment on [*31] a retaliation claim, a plaintiff must prove (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) a causal link between the protected activity and the adverse action exists. *Essex v. United Parcel Service, 111 F.3d 1304, 1309 (7th Cir. 1997)*; *McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997)*; *Spearman v. Ford Motor Comp., 1999 U.S. Dist. LEXIS 14852, No. 98 C 452, 1999 WL 754568, *7 (N.D. Ill. Sept. 9, 1999)*; *Harris v. City of Harvey, 993 F. Supp. 1181, 1187 (N.D. Ill. 1998).* As to

the first element of the prima facie case, filing an EEOC complaint is a protected activity under Title VII. *Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)*. The present dispute is with the second and third element. The defendant maintains that no causal connection exists between any adverse action and the filing of the EEOC charge. As will be discussed more fully, this Court is of the opinion that the root of the claim is flawed because the plaintiff has failed to allege adverse employment action.

1. Plaintiff may not maintain a claim of retaliation against his ex-wife

[*32]  As this Court has previously stated, although the plaintiff knew that his wife was recently terminated by Defendant Oatman, he failed to include a retaliatory allegation in his EEOC charge based upon that action. Because his retaliation claim with regards to his wife's discharge did not sufficiently notify the EEOC or Defendant Roney Oatman of this claim, the defendants' summary judgment motion is **GRANTED**.

2. Plaintiff's other claims of retaliation are without merit

This Circuit has held that [HN29] adverse employment action consists of termination of employment, a demotion as evidenced by a decrease in wages or salary, a less distinguished job title, a material loss of benefits, or significantly diminished job responsibilities. *Dey v. Colt Construction and Development Co., 28 F.3d 1446 (7th Cir. 1994)*. [HN30] "Adverse employment action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well." *Collins v. State of Illinois, 830 F.2d 692, 703 (7th Cir. 1987)*. However, "while adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy [*33] is actionable adverse action. Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" *Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)* (quoting *Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996))*.

In this case, the plaintiff alleges that he was asked to clean the exhaust fans twice, the ceilings twice, the drains once, and work on the ice cream production side of the plant five or six times. As for the plaintiff's allegation that working on the ice cream side of the production line

amounted to retaliation, in his deposition testimony, the plaintiff admits to being asked to work on the ice cream side of the line while he worked in other areas of the plant, even before he filed his EEOC charge. In fact, the plaintiff admits that it was customary for management to ask workers from different parts of the plant to help with ice cream production when help was needed. *Pl.'s Ex. 2* at 201-202. Additionally, Plaintiff concedes that Defendant Hauge no longer harassed him after January 1996, therefore, he was not harmed [*34] by working on the ice cream production side five or six times over a three and a half month period. *Pl.'s Ex. 2* at 219. As for the menial tasks which the plaintiff alleges amount to retaliation for filing his EEOC charge, minor changes in an employees routine do not give rise to adverse employment action. *Spearman*, 1999 WL 754568, at *7. In this case, the plaintiff continued to hold his job title at the plant with no decrease in wages, benefits, or title. Although the plaintiff attempts to argue that the additional menial jobs tasks were retaliatory, Defendant Roney Oatman has offered a legitimate business reason for the requested duties. [6] This being the case, this Court finds that the plaintiff has failed to meet the second criteria for a finding of retaliation. Therefore, the defendant's summary judgment motion on the issue of retaliation is hereby **GRANTED**.

> 6   Defendant Roney Oatman maintains, and has produced evidence that it one of its largest customers, Bresler's Ice Cream Company, terminated its manufacturing agreement in March 1996. As a result of the loss of one of its biggest accounts, Defendant Roney Oatman claims that it asked all its employees to perform perfunctory duties in an attempt to avoid layoffs.

[*35] **D. Plaintiff Has Failed to Make a Claim for Constructive Discharge**

[HN31] A plaintiff may bring constructive discharge claims under Title VII where that plaintiff has demonstrated that his discriminatory working conditions were so intolerable that they would have compelled a reasonable person to resign from the position. *Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1015*. "Circumstances that might be adequate to establish a hostile working environment for purposes of Title VII will not necessarily support a constructive discharge claim, which requires the plaintiff to demonstrate harassment that is more severe or pervasive." *Chisholm v.*

*Foothill Capital Corp., 3 F. Supp. 2d 925, 936 (N.D. Ill. 1998)* (citing *Landgraf v. USI Film Products, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994).* Therefore, "an employee must seek legal redress while remaining in his or her job unless confronted with an aggravated situation beyond ordinary discrimination." *Id.* (internal citations and quotations omitted). In other words, "a constructive discharge claim requires evidence that quitting was the only way the plaintiff could extricate herself [*36] from the intolerable conditions." *Sweeney v. West, 149 F.3d 550, 558 (7th Cir. 1998).*

In this case, this Court finds that the plaintiff has failed to make a sufficient constructive discharge claim. As has been stated, the assaults stopped immediately after the plaintiff submitted his written request to management outlining his problem. Furthermore, the plaintiff has stated that the reason he left his position at the plant was not because the conditions were so intolerable that he could no longer stay with the company, instead he left because he felt that management had failed to handle the situation with Defendant Hauge properly. *Pl.'s Ex. 2* at 167. The fact that the plaintiff felt that more could have been done to remedy the situation is insufficient to support a claim for constructive discharge. "Whatever lingering dissatisfaction [the plaintiff] may have felt regarding the resolution of [his] complaint or [his] position at work, [his] situation cannot reasonably be described as intolerable." *Saxton v. American Telephone & Telegraph Co., 10 F.3d 526, 535 (7th Cir. 1993).* Therefore, the defendant's Motion for Summary Judgment on the constructive [*37] discharge claim is hereby **GRANTED.**

### E. Plaintiff's State Law Claims Must be Dismissed as a Matter of Law

The defendant maintains that Plaintiff's state law claims must fail as a matter of law because not only is there no basis for vicarious liability for the state law claims, but those claims are preempted by the Illinois Worker's Compensation Act ("IWCA"), *820 ILCS 305/1 et seq.*, and the Illinois Human Rights Act ("IHRA"), *775 ILCS 5/1-101 et seq.* The plaintiff counters that issues of fact preclude this Court from granting summary judgment in the defendant's favor. This Court disagrees with the plaintiff's assumption and finds that based on the facts before this Court, summary judgment should be granted in the defendant's favor.

1. Defendant Roney Oatman is not liable for Defendant

Hauge's conduct

The Supreme Court has recognized that lower courts have addressed sexual harassment between co-workers under a negligence standard and have therefore "implicitly treated such harassment as outside the scope of common employees' duties." *Faragher v. City of Boca Raton, 524 U.S. 775, 799, 118 S. Ct. 2275, 2289, 141 L. Ed. 2d 662 (1998).* [*38] [HN32] "The common law rule is that an employer is liable for intentional torts of its employees committed in furtherance of their employment." *Shager v. Upjohn, 913 F.2d 398, 404 (7th Cir. 1990)*(citations omitted). "If one low-level employee makes sexual advances to another, his conduct is so unrelated to the employer's business that the employer will ordinarily be excused from liability under the doctrine of respondeat superior; the employer's own fault must be shown." *Id. at 405.* When determining whether an employee's acts are within the scope of his employment, "the focus is generally upon the issues of whether the act was conducted substantially within the constraints of authorized time and location of employment, and whether the conduct was actuated *at least in part by a purpose to further the employer's business." Randi F. v. High Ridge YMCA, 170 Ill. App. 3d 962, 524 N.E.2d 966, 970, 120 Ill. Dec. 784 (Ill. App. Ct. 1988)*(emphasis added).

In this case, although a genuine issue of material fact exists as to whether Defendant Roney Oatman had notice and failed to curb the alleged sexual harassment, those issues of fact do not bar a [*39] finding of summary judgment where the law is clear and Defendant Hauge's alleged conduct was purely for his own interest. Because the plaintiff has failed to prove that the alleged common law torts were in furtherance of or within the scope of Defendant Hauge's employment, this Court cannot find Defendant Roney Oatman liable under a theory of respondeat superior. [HN33] Allegations of common law tort "can only be attributed to defendants by means of respondeat superior or on the theory that defendants implicitly approved of the harassment by ignoring evidence that it was occurring, ... are exactly those types of claims preempted by the [IWCA]." *Jaskowski v. Rodman & Renshaw, Inc., 813 F. Supp. 1359, 1362 (N.D. Ill. 1993).* [7] Therefore, the defendants' Motion for Summary Judgment on the plaintiff's vicarious liability claims is **GRANTED.**

7   The implications of the Illinois Worker's

Compensation Act will be discussed more fully below.

2. Plaintiff's Tort Claims are Preempted by Illinois Law

[*40] a. Illinois Human Rights Act

One purpose of bringing civil rights actions under the IHRA is to eradicate sexual harassment in the workplace. As a means to achieving that goal the Illinois legislature created the Illinois Human Rights Commission in which it vested exclusive jurisdiction over allegations of sexual harassment constituting civil rights violations. [8] Accordingly, [HN34] the IHRA preempts a common law action seeking redress for civil rights violations. [9] The Supreme Court of Illinois has held that an allegation of sexual harassment is merely incidental to the ordinary common law tort claims of assault and battery. *Maksimovic v. Tsogalis, 177 Ill. 2d 511, 687 N.E.2d 21, 23, 227 Ill. Dec. 98 (Ill. 1997).* "An action to redress a civil rights violation has a purpose distinct from a common law tort action." *687 N.E.2d at 24.* The court in *Maksimovic* went on to explain that [HN35] assault and battery

> are long-recognized tort actions which exist wholly separate and apart from a cause of action for sexual harassment under the Act. To the extent that the plaintiff has alleged the elements of each of these torts without reference to legal duties created by the Act, [*41] [he] has established a basis for imposing liability on the defendants independent of the Act.

*Id. at 23.* The grant of exclusive jurisdiction to the Illinois Human Rights Commission "was intended to promote the efficient and uniform processing of state civil rights claims - not common law tort claims. Assault [and] battery ... existed long before the legislature became interested in sexual harassment and are intended to redress violations of bodily integrity and personal liberty." *Id. at 24.* [HN36] The IHRA only preempts those tort claims which are "inextricably linked to a civil tights violation such that there is no independent basis for the action apart from the Act itself." *Id.* Therefore, should the plaintiff establish the nècessary elements of the these torts, independent of any legal duty created by the IHRA, his tort claims of assault and battery will not inextricably

linked to a civil rights violation such that this Court has jurisdiction over those claims.

> [8]  IHRA defines sexual harassment as "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when ... such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." *775 ILCS 5/2-101(E).*

[*42]
> [9]  Civil rights violations include claims of sexual harassment. *775 ILCS 5/2-102(D).*

In this case, the plaintiff's state law claims are not barred by IHRA. This Court finds that his claims of assault, battery, and infliction of emotional distress are not so inextricably linked with his claims of sexual harassment as to bar this Court's exercise of subject matter jurisdiction over those claims. Contrary to the defendants contention, the plaintiff's state law claims do not necessarily flow from his sexual harassment claims because "[a] legislative intent to abolish all common law torts factually related to sexual harassment is not apparent from a plain reading of the statute." *Maksimovic, 687 N.E.2d at 24.* Therefore, summary judgment based on the Illinois Human Rights Act is **DENIED**.

b. Illinois Worker's Compensation Act

The fact that the plaintiff's state law claims are not barred under IHRA does not end this Court's analysis however. The defendant also claims that IWCA acts as a bar to the plaintiff's claims. This Court agrees with the defendant's assessment and, therefore, [*43] **GRANTS** summary judgment barring the plaintiff's state law claims.

[HN37] The IWCA provides in relevant part:

> no common law or statutory right to recover damages from the employer ... for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act.

*820 ILCS 305/5(a).* The Seventh Circuit has held that

[HN38] a "sexually harassing co-employee is ... a risk inherent in employment. " *Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 323 (7th Cir. 1992)*. The court in Juarez went even further to hold that state law claims, such as assault and infliction of emotional distress, which are inextricably linked to an plaintiff's employment, are barred by the IWCA. *Id. at 324.* [HN39] It is because sexual assaults are compensable under the IWCA that the IWCA generally preempts common law torts based on those assaults. "In order to avoid the bar of the Workers Compensation Act, a plaintiff suing [his] employer must 'prove either that the injury (1) was accidental, (2) did not arise from ... [his] [*44] employment, (3) was not received during the course of employment or (4) was noncompensable under the Act.'" *Id. at 323 n.4* (quoting *Collier v. Wagner Castings Co., 81 Ill. 2d 229, 408 N.E.2d 198, 202, 41 Ill. Dec. 776 (1980)*). A plaintiff who alleges assaults suffered at the workplace, during work hours, at the hands of a co-worker are in turn, unable to prove that his assault and battery did not occur at work, during the course of his employment, nor may he prove the assault and battery are noncompensable under the Act. *Quiroz v. Ganna Construction, 1998 U.S. Dist. LEXIS 10301*, No. 97 C 480, 1998 WL 386344, *3 (N.D. Ill. July 8, 1998). Accordingly, the plaintiff's last resort is [HN40] to prove that the assault was not an accident with respect to Defendant Roney Oatman, in compliance with the first element of the *Juarez* test. To do so he must prove that Defendant Roney Oatman or its alter ego intentionally inflicted, commanded, or expressly authorized the injurious act. *Meerbrey v. Marshall Field and Co., 139 Ill. 2d 455, 564 N.E.2d 1222, 1226, 151 Ill. Dec. 560 (1990)*.

Plaintiff has failed to allege that Defendant Roney Oatman was directly involved [*45] in his assaults through the intentional infliction or the express authorization of them. Defendant Roney Oatman "cannot be said to have specifically commanded or expressly authorized the intentional torts of co-workers simply because it knew or should have known that [Defendant Hauge] was harassing [the plaintiff]." *Fortenberry v. United Air Lines, 1997 U.S. Dist. LEXIS 11751*, No. 96 C 3198, 1997 WL 457499, *5 (N.D. Ill. Aug. 7, 1997). Therefore, Plaintiff's claims are barred by IWCA unless he can prove that Defendant Hauge was an alter ego of Defendant Roney Oatman. [HN41] In order to prove that Defendant Hauge was an alter ego of his employer, he

"must in a practical sense speak [] for the company" in such a way that he possesses "the authority to make decisions and set policy on behalf of" his employer." *Daulo v. Commonwealth Edison, 938 F. Supp. 1388, 1406 (N.D. Ill. 1996)*(quoting *Crissman v. Healthco Int'l, Inc., 1992 U.S. Dist. LEXIS 13167*, No 89 C 8298, 1992 WL 223820, *9 (N.D. Ill. Sept. 2, 1992)). "It is clear, however, that status as a foreman, supervisor, or manger, by itself, will not suffice." *Id.* (internal quotations and citations omitted). There can be no doubt that under [*46] the standard articulated by *Daulo* and *Crissman*, Defendant Hauge was not an alter ego of Defendant Roney Oatman.

In this case, the plaintiff has failed to allege that Defendant Roney Oatman expressly authorized or specifically commanded Defendant Hauge's conduct. Likewise, he has failed to assert that Defendant Hauge was an alter ego of Defendant Roney Oatman. Therefore, his claims of assault, battery, negligent and intentional infliction of emotional distress are barred by IWCA, and as such this Court is without jurisdiction to hear those claims. As such, Defendants' Motion for Summary Judgment based on the Illinois Worker's Compensation Act is **GRANTED**.

## CONCLUSION

Therefore, this Court **GRANTS** Defendant Roney Oatman's Motion for Summary Judgment in part. The issues that are **dismissed** are Plaintiff's retaliation claim, both with regard to his wife's termination and his menial duties claim; constructive discharge claim; his state law claims; and any claims which occurred more than 300 days prior to his filing his EEOC complaint. However, this Court finds that genuine issues of material fact remain as to whether Plaintiff's EEOC complaint is not time [*47] barred, Defendant Roney Oatman was negligent in handling the sexual harassment, and Defendant Hauge's harassment of Plaintiff was motivated by the plaintiff's sex. As such, those issues survive the defendant's Motion for Summary Judgment, and the Court **DENIES** the motion on those issues.

**IT IS SO ORDERED.**

DATED: November 23, 1999

**William J. Hibbler, District Judge**

# TAB J

LEXSEE 1988 U.S. DIST. LEXIS 2400



Cited
As of: May 01, 2008

**Wendi J. Hangebrauck, Plaintiff, v. Zenith Electronics Corporation, a Deleware Corporation, and Tim Flanagan, Defendants**

**No. 86 C 6956**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1988 U.S. Dist. LEXIS 2400; 48 Fair Empl. Prac. Cas. (BNA) 1249; 47 Empl. Prac. Dec. (CCH) P38,235; 4 I.E.R. Cas. (BNA) 275*

**March 9, 1988, Decided; March 23, 1988, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee instituted a suit for sex discrimination, retaliation, wage discrimination, intentional infliction of emotional distress, and battery. Defendant employer filed a motion to dismiss the intentional infliction of emotional distress count, and defendant supervisor filed a motion to dismiss the battery count.

**OVERVIEW:** The employee brought an action against her employer and its supervisor, alleging sex discrimination, retaliation, wage discrimination, intentional infliction of emotional distress, and battery. The employer filed a motion to dismiss the intentional infliction of emotional distress claim, arguing that it was preempted by the Illinois Workers' Compensation Act. The supervisor filed a motion to dismiss the battery count, arguing that exercising pendent jurisdiction would confuse the jury with unrelated issues and prejudice it against him. The motions for dismissal were denied. In the interests of convenience, economy, fairness, and comity, the court exercised pendent jurisdiction over the state law claims. The court held that the employee could prove that the employer directed, committed or encouraged the alleged acts of intentional infliction of emotional distress. The court further held that where the alleged wrong was part and parcel of allegations that a continuous policy or series of events were committed, directed or encouraged by an employer to intentionally injure an employee, that alleged wrong was an intentional act as to the employer.

**OUTCOME:** The employer's motion to dismiss the intentional infliction of emotional distress count was denied. The supervisor's motion to dismiss the battery count was likewise denied. The court exercised pendent jurisdiction over both counts.

**LexisNexis(R) Headnotes**

*Governments > Legislation > Statutory Remedies & Rights*
*Workers' Compensation & SSDI > Coverage > Actions Against Employers > Statutory Requirements*
*Workers' Compensation & SSDI > Remedies Under Other Laws > Common Law*
[HN1] Section 5(a) of the Illinois Workers' Compensation Act (Act) provides that no common law or statutory right to recover from the employer, his insurer, his broker, any service organization retained by the

1988 U.S. Dist. LEXIS 2400, *; 48 Fair Empl. Prac. Cas. (BNA) 1249;
47 Empl. Prac. Dec. (CCH) P38,235; 4 I.E.R. Cas. (BNA) 275

employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury. Ill. Rev. Stat. ch. 48, para. 138.5(a).

***Workers' Compensation & SSDI > Coverage > Actions Against Employers > Statutory Requirements***
[HN2] Section 11 of the Illinois Workers' Compensation Act (Act) provides, in part that the compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in § 3 of this Act. Ill. Rev. Stat. ch. 48, para. 138.11.

***Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview***
***Workers' Compensation & SSDI > Coverage > Actions Against Employers > Statutory Requirements***
[HN3] The fact that an alleged wrong is an intentional act does not automatically render it an intentional act under the Illinois Workers' Compensation Act. An act is deemed intentional to the employer, only when it is committed by the employer or its alter ego, or when the employer has committed, commanded or expressly authorized the intentional tort.

***Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview***
***Workers' Compensation & SSDI > Coverage > Actions Against Employers > Intentional Misconduct***
[HN4] The Illinois Workers' Compensation Act is intended to prevent a plaintiff in most instances from picking her forum. However, where the alleged wrong is part and parcel of allegations that a continuous policy or series of events were committed, directed or encouraged by an employer to intentionally injure an employee, that alleged wrong is an intentional act as to the employer.

***Civil Procedure > Jurisdiction > Subject Matter***

***Jurisdiction > Supplemental Jurisdiction > General Overview***
[HN5] The court may invoke pendent jurisdiction over plaintiff's state claims if (1) those claims and her federal claims involve a common nucleus of operative fact, (2) Congress did not prevent the exercise of federal jurisdiction over nonfederal claims in Title VII suits and (3) considerations of judicial economy, convenience and fairness to litigants warrant a resolution of all claims in federal court.

***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims***
[HN6] When the grant of jurisdiction to a federal court is exclusive the argument of judicial economy and convenience can be coupled with the additional argument that only in federal court may all of the claims be tried together.

**OPINION BY:** [*1] WILL

**OPINION**

*MEMORANDUM OPINION*

*HUBERT L. WILL, Judge*

    *Plaintiff Wendi Hangebrauck, an Illinois resident, brought a five-count complaint against her former employer, Zenith Electronics Corporation, a Deleware corporation with its principal place of business in Glenview, Illinois, and Tim Flanagan, an Illinois resident and a Zenith employee who was one of Hangebrauck's supervisors at Zenith. Hangebrauck's complaint alleges the following claims: sex discrimination by Zenith in violation of Title VII, 42 U.S.C. § 2000(e) et seq. (Count I); retaliation by Zenith in violation of Title VII (Count II); wage discrimination by Zenith in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (Count III); intentional infliction of emotional distress by Zenith (Count IV); and battery by Flanagan (Count V). Subject matter jurisdiction is clear for Counts I, II and III as they involve federal questions. 28 U.S.C. § 1331(a). Hangebrauck argues that we should not take pendent jurisdiction over Counts IV and V, state claims. Venue is proper in this district under 28 U.S.C. § 1391(b).*

1988 U.S. Dist. LEXIS 2400, *1; 48 Fair Empl. Prac. Cas. (BNA) 1249;
47 Empl. Prac. Dec. (CCH) P38,235; 4 I.E.R. Cas. (BNA) 275

Zenith has moved to dismiss both Counts IV and V. In its motion, Zenith has assumed that it was charged in both Counts IV [*2] and V. In support of its motion, Zenith argues that Hangebrauck's claims in those Counts are pre-empted by the Illinois Workers' Compensation Act (the "Act") which, Zenith contends, provides the exclusive remedy for her alleged injuries attributed to Zenith in those Counts. Ill.Rev.Stat. ch. 48, para. 138.5(a). In her response to Zenith's motion, Hangebrauck admits that Count V is assertable only against the individual defendant, Flanagan. Plaintiff's Brief in Opposition, at 5. Accordingly, we will review Zenith's motion only with respect to Count IV. Flanagan has moved to dismiss Count V against him, arguing that our exercising pendent jurisdiction over Count V will confuse the jury with unrelated issues and prejudice it against him.

We find that Hangebrauck's claims against Zenith in Count IV are not pre-empted by the Act. We also find that Hangebrauck's claims against Zenith in Count IV and against Flanagan in Count V are based on the identical facts and injuries alleged in Count II (retaliation) and that the exercise of pendent jurisdiction over both Counts IV and V is appropriate. Accordingly, we deny Zenith's motion to dismiss Count IV and Flanagan's motion to dismiss Count [*3] V.

*Facts*

*The following facts are undisputed. Hangebrauck was employed by Zenith as a financial analyst at its Glenview, Illinois plant. Flanagan was her supervisor. The acts in question occured during September, 1985 through April, 1986.*

*Hangebrauck's charges of sex discrimination in Count I include the following allegations:*

*8. Defendant has a policy of tuition reimbursement which provides reimbursement for education courses which are "of value to the company in the employee's current position or in other positions within the company to which the employee might reasonably be transferred or promoted." Male employees have received tuition reimbursement for law school classes. Because of plaintiff's sex, female, Zenith denied approval of tuition reimbursement to plaintiff for graduate level law school courses which related directly to work she was then currently performing and which would further have qualified plaintiff for transfer or promotion into at least*

*three different areas within the company.*

*9. Because of plaintiff's sex, female, Zenith paid plaintiff less than it paid males in substantially the same positions as plaintiff, even though plaintiff had more seniority than at [*4] least three of those males and even though plaintiff was equally or better qualified through her education and work related experience than those males.*

*Hangebrauck's allegations of retaliation in Count II include the following:*

*8. After the filing of plaintiff's EEOC charge, Zenith, through its agents, engaged in acts detailed in paragraphs 9 through 15 for the purpose of harassing, humiliating, degrading and retaliating against plaintiff with the intent of forcing plaintiff to quit.*

*9. On or about June 1, 1985, plaintiff was scheduled for a salary review. Said review was not given until November 1985, and because plaintiff had filed an EEOC charge, Zenith refused to make plaintiff's salary increase retroactive to the date of her entitlement to such increase.*

*10. Because of plaintiff's filing of a discrimination charge with the EEOC, Zenith, through its agent and plaintiff's supervisor Tom Flanagan, retaliated against plaintiff on or about March 6, 1986 by issuing a written reprimand based upon untrue accusations and threatening plaintiff with termination.*

*11. Since the filing of the EEOC charge until on or about April 21, 1986, plaintiff was harassed and retaliated against by Tom [*5] Flanagan as Zenith's agent through such acts as instructing plaintiff to perform certain work and then removing the materials necessary to complete the assignment and by denying plaintiff reimbursement for travel expenses to other Zenith locations even though plaintiff had been reimbursed for such expenses in conformance with Zenith's policy prior to the filing of the EEOC charge. During this time and as part of the harassment and retaliation, Flanagan on numerous occassions would approach plaintiff in her work area, pick his nose, wipe his fingers on materials with which plaintiff needed to work, and then instruct plaintiff to perform work which would require her to use the materials which Flanagan had just defiled.*

*12. On or about April 8, 1986, . . . Zenith forced*

1988 U.S. Dist. LEXIS 2400, *5; 48 Fair Empl. Prac. Cas. (BNA) 1249;
47 Empl. Prac. Dec. (CCH) P38,235; 4 I.E.R. Cas. (BNA) 275

plaintiff to a more remote company location ("Melrose Park location") effective April 21, 1986. Upon being transferred to the Melrose Park location, plaintiff was informed by her new supervisor, Laurie Balin, that plaintiff's career with Zenith was over, that Zenith's personnel department had instructed Balin to watch plaintiff, and that it would [be] easier if plaintiff quit.

13. . . . plaintiff was not given any work [*6] assignments for days, and when assignments were given, such assignments were restricted to clerical work. In addition, plaintiff's authority as a function of her job as a financial analyst to "sign off" on expense vouchers was taken away from her, and interoffice mail addressed to plaintiff was opened before she received it.

14. As a direct and proximate result of defendants' conduct, plaintiff suffered from various ailments which included chest pains, loss of sleep, preoccupations with her problems at work, loss of body weight, vomiting and nervous stomach disorder, blurred vision, and other stress related problems which resulted in plaintiff having to take a month long medical leave beginning in late May of 1986.

15. Upon her return to work, Defendants continued with their harassment and retaliation against plaintiff finally forcing plaintiff to quit her employment on July, 15, 1986.

16. As a result of the foregoing acts, Zenith and its agents intentionally, willfully, and knowingly harassed and engaged in retaliation against plaintiff for filing of her EEOC charges in violation of Title VII, and caused plaintiff's termination from employment, the suffering of mental and physical [*7] distress, the loss of income and other monetary benefits, and the incurrance of expenses.

Hangebrauck's allegations of the intentional infliction of emotional distress in Count IV include the following

6. Since the filing of plaintiff's EEOC charge in October, 1985, Defendant Flanagan has deliberately engaged in extremely offensive, and harassing acts against plaintiff designed to degrade plaintiff and cause her to be humiliated and embarrassed before her co-workers.

7. Shortly prior to plaintiff being issued a written reprimand based on false charges on or about March 6,

1986, Defendant Flanagan called plaintiff into the office and engaged in a tirade consisting of screaming at plaintiff, pounding his fist on the desk and throwing paperwork around the office, all of which was overheard and observed by plaintiff's co-workers.

8. Subsequent to plaintiff's filing an EEOC charge, and on numerous occassions witnessed by plaintiff's co-workers, Flanagan would approach plaintiff in her work area, proceed to pick his nose, then spread nasal cavity material on plaintiff's papers, computer, pens, telephone and other material required for the performance of plaintiff's job, all the while watching [*8] plaintiff to see if she noticed his actions, and then instruct plaintiff to perform work tasks involving the materials he had just defiled.

9. As a direct and proximate result of Flanagan's actions, plaintiff suffered from vomiting and nervous stomach disorder, chest pains, loss of body weight, loss of sleep, and other physical manifestations of extreme emotional distress which cased her to seek medical attention.

10. As a direct and proximate cause of Flanagan's conduct, plaintiff was required to take a medical leave of absence from work.

Hangebrauck allegations of battery in Count V include the following:

6. On numerous occassions Flanagan would approach plaintiff in her work area, pick his nose, then spread nasal cavity material on plaintiff's papers, computer, pens, telephone and other material required for the performance of plaintiff's job, all the while watching plaintiff to see if she noticed his actions, and then instruct plaintiff to perform work tasks which required her to come in contact with the material he had just defiled.

7. Defendant's conduct was intended to cause plaintiff to come in contact with a foreign substance reasonably regarded as offensive.

8. Plaintiff [*9] was forced, as a result of Defendant's conduct, to come in contact with the offensive material used to defile the equipment and other material with which she had to perform her job.

9. As a direct and proximate result of Defendant's

1988 U.S. Dist. LEXIS 2400, *9; 48 Fair Empl. Prac. Cas. (BNA) 1249;
47 Empl. Prac. Dec. (CCH) P38,235; 4 I.E.R. Cas. (BNA) 275

conduct, plaintiff suffered physical harm which manifested itself in the form of nausea, vomiting and nervous stomach disorder, chest pains, loss of body weight, and loss of sleep, which required plaintiff to seek medical attention.

### Standard of Review

Zenith has moved to dismiss Count IV pursuant to Fed.R.Civ.P. 12(b)(6) and Flanagan has moved to dismiss Count V pursuant to Fed.R.Civ.P. 12(b)(1). Count IV can be dismissed for "failure to state a claim upon which relief can be granted," Fed.R.Civ.P. 12(b)(6), if, accepting Hangebrauck's allegations as true, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1983), citing, Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If Hangebrauck's claims under Count IV are not pre-empted, then we must determine whether exercising pendent jurisdiction over Count V is proper. Our decision [*10] whether or not to assume pendent jurisdiction over Counts IV and V must be based on an analysis of "the values of judicial economy, convenience, fairness, and comity . . . ." Carnegie-Mellon University v. Cohill, 108 S.Ct. 614, 618 (1988).

### Analysis

### Pre-emption Under the Act

[HN1] Section 5(a) of the Illinois Workers' Compensation Act provides as follows:

No common law or statutory right to recover from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury.

Ill.Rev.Stat. ch. 48, para. 138.5(a). [HN2] Section 11 of the Act provides, in relevant part:

The compensation herein provided, together with the provisions of this Act, shall be the measure [*11] of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act, . . . .

Ill.Rev.Stat. ch. 48, para. 138.11. There is no dispute that Zenith and Hangebrauck are both covered under the Act.

In order for Hangebrauck's injuries alleged in Count IV to fall outside the compensation provisions of the Act, she must "prove either that the injury (1) was not accidental, (2) did not arise from his or her employment, (3) was not received during the course of employment or (4) was noncompensable under the Act. Collier v. Wagner Castings Co., 408 N.E.2d 198, 202 (Ill. 1980). There is no dispute that the alleged injury arose from and was received during the course of Hangebrauck's employment at Zenith. In addition, she may receive compensation for emotional distress under the Act. Pathfinder Co. v. Industrial Com., 343 N.E.2d 913, 916-17 (Ill. 1976). Accordingly, we must decide whether the alleged injury was "accidental" as that term is defined under the Act.

The tort alleged against Zenith is the intentional infliction of emotional distress. [HN3] The fact that an alleged wrong is an intentional act, however, does not automatically [*12] render it an intentional act under the Act. An act is deemed intentional to the employer, only when it is committed by the employer or its "alter ego," Jablonski v. Multack, 380 N.E.2d 924, 926-27 (Ill.App.Ct. 1st Dist. 1978), or when the employer "has committed, 'commanded or expressly authorized'" the intentional tort. Collier, supra, at 202, quoting, 2A A. Larson, Workmen's Compensation sec. 68.21 (1976).

There are no allegations in Count IV that Flanagan acted as Zenith's alter ego. Hangebrauck does allege in her complaint that Flanagan "is an employee of Zenith Corporation and . . . was an agent of Zenith and was working for defendant with supervisory power over plaintiff." Plaintiff's Complaint, Count IV, para. 5. Zenith is a large corporation, however, as distinguished from an individual employer, see, Jablonski, supra, at 926-27, and Flanagan was apparently employed as a middle level supervisor. This does not make him Zenith's alter ego.

In Collier, supra, the tort alleged was the intentional infliction of emotional distress, an intentional tort and the

1988 U.S. Dist. LEXIS 2400, *12; 48 Fair Empl. Prac. Cas. (BNA) 1249;
47 Empl. Prac. Dec. (CCH) P38,235; 4 I.E.R. Cas. (BNA) 275

same wrong alleged here against Zenith in Count IV. The court concluded that it was [*13] accidental as to the employer because "the employer did not direct, encourage or commit [it], . . . ." *408 N.E.2d at 203.* Likewise, in *Jablonski* the torts alleged were an assault and battery, intentional torts, and they were deemed accidental as to the employer. *See also, Fregeau v. Gillespie, 451 N.E.2d 870 (Ill. 1983)* (assault and battery).

The allegations in Hangebrauck's complaint, however, are distinct from those in *Jablonski, Collier* and *Fregeau.* Hangebrauck charges Zenith with engaging in a continuous policy of discrimination and retaliation against her which included a number of acts: (1) denying her tuition reimbursements; (2) paying her lower wages than other male employees with equal responsibilities; (3) denying her timely salary increases; (4) issuing false reprimands; (5) threatening to terminate her; (6) interfering with her work assignments; (7) denying her reimbursement for travel expenses; (8) transferring her; (9) decreasing her authority; (10) encouraging her to quit; and (11) acting in the manner described in Counts IV and V. Unlike the facts in *Jablonski, Collier,* and *Fregeau,* Hangebrauck's allegations of an intentional tort, [*14] in Count IV, comprise more than an isolated event. Accepting Hangebrauck's allegations, as we must, she may establish that several Zenith employees, including Flanagan, engaged in a series of acts which were discriminatory and in retaliation for her filing of charges against Zenith.

The facts here are analogous to those in *Martin v. Granite City Steel Div. of Nat. Steel, 607 F.Supp. 1430 (C.D. Ill. 1985), Handley v. Unarco Indus. Inc., 463 N.E.2d 1011 (Ill.App.Ct. 4th Dist. 1984),* and *Matter of Johns- Manville/Asbestosis Cases, 511 F.Supp. 1229 (N.D. Ill. 1981).* In *Handley,* the "plaintiffs' complaint alleged that defendant intended to kill the plaintiff and his co-workers, that defendant's conscious purpose was that asbestos would become trapped in the lungs and bodies of the workers and that defendant intended bodily harm to plaintiffs." *463 N.E.2d at 1023.* The plaintiffs in *Handley* also alleged that the defendant-employer misrepresented the danger to which they were exposed. *Id.* The defendant in *Handley* argued that the plaintiffs' remedy was exclusively provided by the Workers' Occupational Diseases Act, an act which the court found comparable to the [*15] Workers' Compensation Act. The court concluded, however, that

[t]hese allegations are sufficient to allege, that the employer directed, encouraged, or committed an intentional tort as stated in *Collier* to fall outside the exclusive remedy provisions of the Workers' Occupational Diseases Act. The Workers' Occupational Diseases Act, like the Workers' Compensation Act, establishes a system of liability without fault, and abolished traditional defenses available to the employer in exchange for the prohibition against common-law suits by employees, but we are not persuaded that this legislative balance was meant to permit an employer who encourages, commands, or commits an intentional tort to use the act as a shield against liability by raising the bar of the statute and then shifting liability throughout the system on other innocent employers. At this stage, we are only ruling upon a motion to dismiss and it remains to be seen what proof plaintiffs have to substantiate these allegations.

*Id.*

In *Martin,* the plaintiffs "complaint allege[d] that the defendant [employer] intentionally, knowingly and willfully exposed the plaintiffs to toxins by changing an industrial process." [*16] *607 F.Supp. at 1432.* This exposure was allegedly accomplished "by recycling coal by-products into [the employer's] coke ovens, . . . ." *Id. at 1431.* In *Matter of Johns-Manville/Asbestosis Cases,* employees charged their employer with, among other things, intentionally exposing them to asbestos and subsequently concealing information concerning their exposure. The acts complained of were allegedly committed by several employees in furtherance of a policy instituted by the defendant employer.

Here plaintiffs do not allege misconduct by a specific employee of Johns-Manville Sales. Instead the Complaint charges that the harms to employees resulted from a uniform and intentional policy developed by Johns-Manville Sales. On those allegations it is Johns-Manville Sales itself that committed the intentional tort. Johns-Manville Sales' motion for its dismissal . . . is therefore denied.

*511 F.Supp. at 1234.*

Hangebrauck similarly alleges a pattern and practice of intentional acts. She argues that "it became the policy of Zenith, through Flanagan, to embarrass, harass and humiliate Wendi in retaliation for her EEOC charge." Plaintiff's Brief in Opposition, at 7. She also charges that

1988 U.S. Dist. LEXIS 2400, *17; 48 Fair Empl. Prac. Cas. (BNA) 1249;
47 Empl. Prac. Dec. (CCH) P38,235; 4 I.E.R. Cas. (BNA) 275

[*17] other Zenith employees, specifically Ms. Balin and personnel department employees, were instructed to scrutinize her and encourage her to quit.

Hangebrauck's allegations that Flanagan harassed, embarassed and humiliated her are also contained in Count II (retaliation under Title VII). In fact, the same acts and injuries complained of in both Counts IV and V are included among those alleged in Count II, paras. 11 and 14. Accepting these allegations, Hangebrauck may establish that Zenith instituted a policy to discriminate and retaliate against her and that part and parcel of that policy were Flanagan's alleged acts complained of in Counts IV and V. Accordingly, Hangebrauck may prove that Zenith directed, committed or encouraged the alleged acts of intentional infliction of emotional distress.

If Hangebrauck had already pursued her state claims, she would be barred from seeking recovery for the same alleged wrongs in federal court. *Collier, 408 N.E.2d at 203-04.* Hangebrauck notes, however, that "[t]here is no allegation in the complaint demonstrating whether Wendi has filed [a claim under the Act], or has received benefits, or that Zenith would accede to benefits under [the Act]. [*18] The Complaint indicates that Wendi has chosen to bring her state claims arising out of Zenith's retaliation against her in the federal forum." Plaintiff's Brief in Opposition, at 5.

We recognize that Hangebrauck may have selected to bring her claims for emotional distress in federal court for any number of reasons. [HN4] The Act is intended to prevent a plaintiff in most instances from picking her. forum. However, where the alleged wrong is part and parcel of allegations that a continuous policy or series of events were committed, directed or encouraged by an employer to intentionally injure an employee, that alleged wrong is an intentional act as to the employer. Accordingly, Count IV is not pre-empted by the Illinois Workers' Compensation Act.

*Pendent Jurisdiction Over Counts IV and V*

*As is apparent, Hangebrauck has alleged the same incidents and injuries in Count V which are included in those alleged in both Counts II and IV. The difference between Counts IV and V is that she seeks relief from Zenith in . Count IV, charging intentional infliction of emotional distress, while she seeks relief from Flanagan in Count V, charging battery. We will analyze the pendent jurisdiction issue for* [*19] *Counts IV and V*

*together.*

[HN5] *We may invoke pendent jurisdiction over Hangebrauck's state claims if (1) those claims and her federal claims involve "a common nucleus of operative fact," (2) Congress did not prevent the exercise of federal jurisdiction over nonfederal claims in Title VII suits and (3) "considerations of judicial economy, convenience and fairness to litigants" warrant a resolution of all claims in federal court. Zabkowicz v. West Bend Co., Div. Dart Industries, 789 F.2d 540, 546 (7th Cir. 1986), quoting, United Mine Workers of America v. Gibbs, 383 U.S. 715, 725-26 (1966).*

Hangebrauck's state claims involve the same common nucleus of operative facts as her federal claims. We assume "that Title VII jurisdiction is exclusively federal and further assume that Congress did not intend to bar pendent state claims from being brought against co-workers in conjunction with Title VII actions, . . . ." *Zabkowicz, supra, at 548.* Furthermore, as the Supreme Court noted in *Aldinger v. Howard, 427 U.S. 1, 18 (1976)* (emphasis in original), [HN6] "[w]hen the grant of jurisdiction to a federal court is exclusive . . . the argument of judicial economy and convenience can [*20] be coupled with the additional argument that *only* in federal court may all of the claims be tried together."

The interests of convenience and economy here weigh strongly in favor of exercising pendent jurisdiction. Zenith is the defendant in all of Hangebrauck's federal claims and Flanagan will likely be a principal witness as well as a defendant. Zenith's liability is partially based on his acts. Hangebrauck is merely seeking to recover for the same alleged injuries under different legal theories. Her state claims do not present novel issues on which we should defer to a state court.

Flanagan is concerned that a jury may be prejudiced against him because he is a co-defendant with a large corporation. The concerns of convenience and economy, however, outweigh any possible prejudice and the jury will be properly instructed to avoid bias. In addition, the fact that some of the Counts are triable by the court while others are triable by a jury does not significantly diminish the factors favoring consolidating Hangebrauck's claims. Moreover, it would be duplicative, inconvenient and burdensome for all parties to proceed in both federal and state court with the possibility of two trials [*21] and appeals as well as arguably inconsistant verdicts.

1988 U.S. Dist. LEXIS 2400, *21; 48 Fair Empl. Prac. Cas. (BNA) 1249;
47 Empl. Prac. Dec. (CCH) P38,235; 4 I.E.R. Cas. (BNA) 275

We find that the interests of convenience, economy, fairness and comity warrant our exercise of pendent jurisdiction over Counts IV and V and, accordingly, Zenith's motion to dismiss Count IV is denied and

Flanagan's motion to dismiss Count V is likewise denied.

An appropriate order shall be entered.