# TAB K

LEXSEE 2004 U.S. DIST. LEXIS 22511



Positive
As of: May 01, 2008

**MICHAEL C. MADDIE, Plaintiff, vs. SIEBEL SYSTEMS, INC., a Delaware Corporation, and DONALD O'SHEA, Defendants.**

**No. 04 C 3419**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2004 U.S. Dist. LEXIS 22511*

**November 4, 2004, Decided**
**November 5, 2004, Docketed**

**DISPOSITION:** Defendant's motion to dismiss granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendants, the employer and a former supervisor, alleging defamation, tortious interference with a contract, civil assault, tortious supervision, tortious retention, tortious investigation, breach of contract, and intentional infliction of emotional distress (IIED). Defendants moved to dismiss under *Fed. R. Civ. P. 12(b)(6)*.

**OVERVIEW:** The employee alleged that the supervisor did not like him and denied the employee's transfer requests by, inter alia, telling others that the employee had a performance issue. The employee was terminated after an altercation with the supervisor, during which the employee thought that the supervisor was about to physically attack him. The court determined that the employee's defamation claim survived dismissal because (1) the court could not conclude that the claim was barred by the statute of limitations, *735 Ill. Comp. Stat. 5/13-201*, since the employee alleged facts that could trigger the use of the discovery rule; (2) the statement that the employee was being counseled for a performance

issue was not a constitutionally protected opinion; and (3) the employer could be liable since the court could not conclude that the defamatory statement fell outside the scope of the supervisor's employment. However, Illinois did not recognize a cause of action for negligent or tortious investigation. Also, the IIED claim failed because the supervisor's conduct did not rise to the required level of outrageous conduct.

**OUTCOME:** The court granted defendants' motion to dismiss as to the IIED claim and the claim of tortious investigation. The court denied defendants' motion to dismiss as to the remaining claims.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] The purpose of a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* is to test the legal sufficiency of a complaint not the merits of the case. The well-pled allegations of a complaint must be accepted as true. The courts construe ambiguities in favor of the plaintiff. The plaintiff can plead conclusions and need not allege all or any facts entailed by the claim.

2004 U.S. Dist. LEXIS 22511, *

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Governments > Legislation > Statutes of Limitations > Pleading & Proof*
[HN2] Courts should only grant a motion to dismiss based on statute of limitations if the plaintiff can prove no set of facts that would support a cause of action. *735 Ill. Comp. Stat. 5/2-619.*

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Torts > Intentional Torts > Defamation > Defenses > Statutes of Limitations*
*Torts > Procedure > Statutes of Limitations > General Overview*
[HN3] Illinois has a one-year statute of limitations in defamation actions. *735 Ill. Comp. Stat. 5/13-201.* In certain defamation actions, however, courts have applied the discovery rule. Specifically, if the confidential nature of the defendant's publication prohibits the plaintiff from early discovery of the defamation, then the statute of limitations commences when the plaintiff knew or should have known of the defamatory statements, not from the date of publication. Courts have applied this reasoning to oral statements as well as written communications when the plaintiff was not present at the time of the statement and the statement was not made publicly.

*Torts > Intentional Torts > Defamation > Defenses > Privileges > Constitutional Privileges*
[HN4] The Illinois Supreme Court has held that statements are only constitutionally protected when they cannot reasonably be interpreted as stating actual facts.

*Torts > Intentional Torts > Defamation > Elements > General Overview*
*Torts > Vicarious Liability > Employers > Activities & Conditions > General Overview*
*Torts > Vicarious Liability > Employers > Scope of Employment > Application of State Law*
[HN5] In order to hold an employer in Illinois vicariously liable for an employee's torts under the doctrine of respondeat superior, the employee must have committed the torts within the scope of his employment. An employer is subject to liability for defamatory statements made by an employee acting within the scope of employment. The question of whether an act falls within the scope of an employee's employment generally lies

with the jury.

*Contracts Law > Breach > General Overview*
*Torts > Business Torts > Commercial Interference > Employment Relationships > Elements*
*Torts > Business Torts > Commercial Interference > Prospective Advantage > General Overview*
[HN6] In order to succeed on a claim of tortious interference with an employment expectancy, a plaintiff must show: (1) the existence of a contract or a reasonable expectation of a continued business relationship; (2) the defendant's knowledge of the contract or expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach of the contract or prevented the expectancy from ripening; and (4) damage resulting from the interference.

*Contracts Law > Third Parties > General Overview*
*Torts > Business Torts > Commercial Interference > Contracts > General Overview*
[HN7] A party cannot tortiously interfere with his own contract. The tortfeasor must be a third party to the contractual relationship.

*Torts > Business Torts > Commercial Interference > Contracts > General Overview*
[HN8] A defendant employee and a defendant company are not one in the same for purposes of the tortuous interference analysis if the defendant employee acted on his own behalf and not in the company interest.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN9] Under the federal rules, a party may state as many claims as the party has, regardless of consistency. *Fed. R. Civ. P. 8(e)(2).* The plaintiff is entitled to plead in the alternative.

*Torts > Business Torts > General Overview*
[HN10] Illinois does not recognize a cause of action for negligent or tortious investigation.

*Civil Procedure > Federal & State Interrelationships > Erie Doctrine*

2004 U.S. Dist. LEXIS 22511, *

*Governments > Courts > Authority to Adjudicate*
[HN11] Federal courts have no power to create state law.

*Torts > Business Torts > General Overview*
[HN12] A "negligent undertaking" claim in Illinois concerns primarily voluntary undertakings that result in bodily harm to a plaintiff.

*Contracts Law > Breach > Causes of Action > General Overview*
[HN13] To prevail on a breach of contract claim under Illinois law, a plaintiff must establish (1) the existence of a valid and enforceable contract, (2) his own performance under the terms of the contract, (3) a breach of the contract by the defendant, and (4) an injury suffered as a result of the defendant's breach.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN14] Federal court is a notice pleading jurisdiction; therefore, complaints need not contain elaborate factual recitations.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN15] Documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss.

*Torts > Damages > Compensatory Damages > Pain & Suffering > Emotional & Mental Distress > General Overview*
*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview*
[HN16] Under Illinois law, to state a cause of action for intentional infliction of emotional distress, a plaintiff must plead: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct caused severe emotional distress. Recovery under this theory does not extend to conduct which merely involves insults, indignities, threats, annoyances, petty oppressions, or other trivialities. With respect to the

severity of the plaintiff's distress, the law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements*
[HN17] In the context of a claim of intentional infliction of emotional distress, the United States Court of Appeals for the Seventh Circuit has held that even with liberal notice pleading standards, the plaintiff must show that the defendants' actions were objectively outrageous and the harm caused was very severe to survive a motion to dismiss.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview*
[HN18] In the context of a claim for intentional infliction of emotional distress under Illinois law, while losing one's job and having to relocate to find new employment is stressful, it alone does not rise to the level of severe emotional harm.

COUNSEL: [*1] For MICHAEL C MADDIE, Plaintiff: Penny Nathan Kahan, Michael John Merrick, Kristin Meridith Case, Penny Nathan Kahan and Associates, Ltd., Chicago, IL.

For SIEBEL SYSTEMS, INC., A DELAWARE CORPORATION, DONALD O'SHEA, Defendant: Brian Wegg Bulger, Eileen Elizabeth Baker, Meckler, Bulger & Tilson, Chicago, IL.

JUDGES: AMY J. ST. EVE, District Court Judge.

OPINION BY: AMY J. ST. EVE

OPINION

MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Michael Maddie filed a complaint against his former employer, Siebel Systems, Inc. and his former supervisor, Donald O'Shea, alleging: defamation (Count I); tortious interference with a contract (Count II); civil assault (Count III); tortious supervision, retention, and

investigation (Count IV); breach of contract (Count V); and intentional infliction of emotional distress. (Count VI). Defendants move to dismiss all claims under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim. For reasons stated herein, the Court denies Defendants' motion to dismiss Counts I, II, III, and V, grants in part and denies in part their motion to dismiss Count IV, and grants their motion to dismiss Count VI.

## LEGAL [*2] STANDARDS

[HN1] The purpose of a motion to dismiss pursuant to *Rule 12(b)(6)* is to test the legal sufficiency of a complaint not the merits of the case. *Triad. Assocs, Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989).* The well-plead allegations of a complaint must be accepted as true. *Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002).* The courts construe ambiguities in favor of the plaintiff. *Id.* Plaintiff can plead conclusions and need not allege all or any facts entailed by the claim. *Shah v. Inter-Continental Hotel Chicago Operating Corp., 314 F.3d 278, 282 (7th Cir. 2003).*

## BACKGROUND

For the purpose of this Opinion, the following facts are accepted as true. Siebel Systems, in Rosemont, Illinois, is engaged in the business of developing customer relationship management software and providing consulting services to implement software. Michael Maddie began working as a consultant for Siebel Systems in June of 2000. (R. 1-1, Pl's Comp. P 7.) Donald O'Shea was one of Maddie's supervisors. (*Id.* at P 21.) In October or November of 2002, Maddie expressed an interest in transferring [*3] into another group within the company - the Customer Relationship Management Strategy Group ("CRM"). (*Id.* at P 20.) CRM offered Maddie a position pending approval of management including Donald O'Shea. (*Id.* at PP 20-21.) When O'Shea learned of Maddie's possible transfer he was furious and told another manager, "I don't like this guy. I'm not going to transfer him, I'm just going to fuck with him and use him until he leaves." (*Id.* at P 22.) O'Shea allegedly thereafter denied Maddie's transfer request and told representatives of the CRM Strategy Group that, "[Maddie] was a performance issue and being counseled and therefore was not eligible for transfer." (*Id.* at P 23.)

In January of 2003, Maddie attempted to transfer into the Automotive Product Marketing Group ("APM") and

APM offered him a position. APM advised Plaintiff that they would "coordinate approval of the transfer with O'Shea." (*Id.* at PP 26-27.) O'Shea allegedly did not approve the transfer and APM eventually froze all transfers into the group. (*Id.* at PP 28-29.) O'Shea told Plaintiff that he "only transfers the right people out of the group." (*Id.* at P 29.)

On or about April, 28, 2003, Maddie [*4] alleges that O'Shea confronted him about arriving late to work. (*Id.* at P 31.) Allegedly O'Shea acted in a manner that caused Maddie to think he was about to be physically attacked. (*Id.* at PP 31-37.) The altercation ended with O'Shea demanding Maddie's resignation. (*Id.* at P 31.)

Maddie contacted Cynthia Erickson, the Director of Human Resources, to complain. (*Id.* at PP 39-40.) Erickson told Maddie to stay away from O'Shea and "await her call while she contacted O'Shea and the Project Manager to get their side of the story." (*Id.* at P 39.)

On April 30, 2003, Plaintiff contacted Erickson to inquire about the status of her investigation. (*Id.* at P 40.) During the call, Erickson allegedly told Plaintiff that the company Human Resources Department was processing his resignation. (*Id.*) Erickson said that O'Shea informed her that Maddie had resigned. (*Id.* at P 41.) Erickson said her investigation was ongoing. (*Id.* at PP 41-42.) Plaintiff advised Erickson that he had not resigned. (*Id.* at P 40.)

On May 1, 2003, Erickson e-mailed Plaintiff stating that "Don [O'Shea] is under the impression that he accepted your resignation effective Monday 4/28 and [*5] the HR Operations dept has processed paperwork to that effect. I have not been able to reach Don today to discuss this further. I can confirm today that you no longer work for Siebel. . ." (*Id.* at P 44.)

On July 25, 2003, Siebel Systems' Senior Corporate Counsel advised Plaintiff that Siebel had completed its investigation of his allegations. She concluded that Plaintiff "was an at-will employee who was terminated lawfully by Siebel Systems, Inc." (*Id.* at P 55.) In August of 2003, another Corporate Counsel concluded that O'Shea "was not responsible for [Plaintiff's] ultimate departure and supported him during his tenure." (*Id.* at P 58.) On May 17, 2004, Plaintiff filed this lawsuit.

## ANALYSIS

## I. Defamation (Count I)

Plaintiff argues that in October or November of 2002, O'Shea made a defamatory statement that Plaintiff was a performance issue and being counseled and therefore was not eligible to transfer. (R. 1-1, Pl's Comp. at P 23.) Defendants argue that: (1) the one year statute of limitations bars Plaintiff from bringing this action; (2) the alleged statement did not contain an objectively verifiable fact and was therefore a constitutionally protected [*6] opinion; and (3) Siebel Systems cannot be held liable for a defamation tort committed by O'Shea. (R. 6-1, Def. Mot. to Dis. P 2).

### A. Statute of Limitations

[HN2] Courts should only grant a motion to dismiss based on statute of limitations if the plaintiff can prove no set of facts that would support a cause of action. *See 735 ILCS 5/2-619*. Defendants correctly points out that [HN3] Illinois has a one-year statute of limitations in defamation actions. *See 735 ILCS 5/13-201*. In certain defamation actions, however, courts have applied the discovery rule. *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., 61 Ill.2d 129, 334 N.E.2d 160, 161 (1975); Schweihs v. Burdick, 96 F.3d 917, 920 (7th Cir. 1996)*. Specifically, if the confidential nature of the defendant's publication prohibits the plaintiff from early discovery of the defamation, then the statute of limitations commences when the plaintiff knew or should have known of the defamatory statements, not from the date of publication. *Id.* Courts have applied this reasoning to oral statements as well as written communications when the plaintiff was not present at the time of [*7] the statement and the statement was not made publicly. *See Luttrell v. O'Conner Chevrolet, Inc., 2001 U.S. Dist. LEXIS 14651, No. 01 C 0979, 2001 WL 1105125, at *6-7 (N.D. Ill. Sep. 19, 2001)*. Plaintiff has alleged that he was not present when the alleged statement was made in 2002, that he did not learn of the statement until April of 2004, and had no reason to know of it earlier (R.1-1, Pl's. Comp. at P 61.) Plaintiff has alleged facts that, if true, could trigger the use of the discovery rule. Accordingly, the Court cannot conclude at this stage that Plaintiff's defamation claim is time-barred.

### B. The Allegedly Defamatory Statement

The Court is not persuaded by Defendants' argument that O'Shea's alleged statements amount to constitutionally protected opinions. [HN4] The Illinois

Supreme Court has held that statements are only constitutionally protected when they cannot reasonably be interpreted as stating actual facts. *Bryson v. News Am. Publ'ns, Inc., 174 Ill.2d 77, 100, 220 Ill. Dec. 195, 672 N.E.2d 1207, 1220 (Ill. 1996)*. Plaintiff has alleged that O'Shea said that Plaintiff was a performance issue and being counseled and therefore not eligible for transfer. Whether Plaintiff [*8] was "being counseled" can reasonably be interpreted to be an objectively verifiable fact. Similarly, whether Plaintiff was ineligible for transfer can also be interpreted as an objective fact. The statement, therefore, is not a constitutionally protected opinion.

### C. Siebel's Liability

Plaintiff argues that Siebel Systems is vicariously liable for O'Shea's defamatory statements. [HN5] In order to hold an employer in Illinois vicariously liable for an employee's torts under the doctrine of respondeat superior, the employee must have committed the torts within the scope of his employment. *Pyne v. Witmer, 129 Ill.2d 351, 359, 135 Ill. Dec. 557, 543 N.E.2d 1304, 1308 (Ill. 1989)*. An employer is subject to liability for defamatory statements made by an employee acting within the scope of employment. *Gianforte v. Elgin Riverboat Resort,* No. 02- 02-1390, 2003 WL 22208916, at *3 (Ill.App. Ct. Sept. 17, 2003), citing *Restatement (Second) of Agency § 247* (1958). The question of whether an act falls within the scope of an employee's employment generally lies with the jury. *Gaffney v. City of Chicago, 302 Ill.App.3d 41, 49, 236 Ill. Dec. 40, [*9] 706 N.E.24 914 (Ill. App. Ct. 1998)*.

Plaintiff has alleged that O'Shea made defamatory statements in response to a request for a transfer from one department to another within the Siebel Corporation. (R. 1-1, Pl's Comp. at P 23.) Plaintiff also has alleged that O'Shea's supervisory duties included approving or denying transfers. (*Id.* at P 22.) Because O'Shea supported his denial of Plaintiff's transfer with the alleged defamatory statement, the Court cannot conclude at this stage that the defamatory statement falls outside the scope of his employment. Accordingly, the Court denies Defendants' motion to dismiss Count I.

## II. Intentional Interference with Plaintiff's Employment Expectancy (Count II)

Plaintiff alleges that Donald O'Shea intentionally interfered with Plaintiff's employment expectancy with

Siebel Systems. O'Shea claims that as an employee of Siebel Systems he is a party to the contract and a party cannot tortiously interfere with its own contract.

[HN6] In order to succeed on a claim of tortious interference with an employment expectancy, a plaintiff must show: (1) the existence of a contract or a reasonable expectation of a continued business relationship; (2) [*10] the defendant's knowledge of the contract or expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach of the contract or prevented the expectancy from ripening; and (4) damage resulting from the interference. *See Cook v. Winfrey, 141 F.3d 322, 329 (7th Cir. 1998); Anderson v. Vanden Dorpel, 172 Ill.2d 399, 217 Ill. Dec. 720, 667 N.E.2d 1296, 1299 (Ill. 1996).* Plaintiff has sufficiently alleged these four elements in his complaint.

Defendants point out that it is settled law that [HN7] a party cannot tortiously interfere with his own contract. The tortfeasor must be a third party to the contractual relationship. *Quist v. Board of Trs., 258 Ill. App.3d 814, 821, 196 Ill. Dec. 262, 629 N.E.2d 807 (Ill. App. Ct. 1994); IK Corp. v. One Fin. Place Partnership, 200 Ill. App.3d 802, 819, 146 Ill. Dec. 198, 558 N.E.2d 161 (Ill. App. Ct. 1990).* In response, Plaintiff cites *Mittleman v. Witous* which states that [HN8] a defendant employee and a defendant company are not one in the same for purposes of the tortuous interference analysis if the defendant employee acted on his own behalf [*11] and not in the company interest *Mittelman v. Witous, 135 Ill.2d 220, 250, 142 Ill. Dec. 232, 552 N.E.2d 973 (Ill. 1990), abrogated on other grounds, Kuwik v. Starmark Star Mktg. Admin., Inc., 156 Ill.2d 16, 118 Ill. Dec. 765, 619 N.E.2d 129 (Ill. 1993).* Plaintiff has alleged that Defendant O'Shea intentionally and willfully interfered with Plaintiff's employment expectancy solely for his own benefit and/or to injure Plaintiff. This sufficiently alleges that O'Shea was acting on his own behalf and not in the company's interest.

Defendants' contention that Plaintiff cannot claim that O'Shea acted independently of Siebel in one count and claim vicarious liability of Siebel for O'Shea's actions in other counts is erroneous. [HN9] Under the federal rules, "a party may state as many claims as the party has, regardless of consistency." *Fed.R.Civ.P. 8(e)(2).* Plaintiff is "entitled to plead in the alternative." *Alper v. Altheimer & Gray, 257 F.3d 680, 687 (7th Cir. 2000).* Accordingly, the Court denies the motion to dismiss Count II.

## III. Civil Assault (Count III)

In Count III, Plaintiff claims civil assault against both Defendants. Plaintiff [*12] alleges that O'Shea "made an intentional, unlawful offer of corporal injury by force to Plaintiff under circumstances which create a well-founded fear of imminent peril to Plaintiff coupled with O'Shea's apparent present ability to effectuate the injury." (R. 1-1, Pl's Comp. at P 69.) Defendants argue that Plaintiff has pled himself out of court by stating facts in his complaint that even if true do not establish a claim for assault. The Court disagrees.

Viewing the complaint in the light most favorable to the Plaintiff, the Court cannot conclude that no jury would find Defendants' actions sufficient to establish an assault cause of action. As Defendants point out, the critical question is whether the totality of the circumstances - words, past conduct, and surrounding circumstances - can support a well-founded fear of imminent peril during the alleged instance of assault. (R. 6-1, Def. Memo in Support of Mot. to Dismiss P 9). Count III stands.

## IV. Tortious Investigation, Supervision & Retention (Count IV)

### A. Tortious Investigation

Plaintiff premises Count IV on a claim for tortious investigation, supervision, and retention. In essence, Plaintiff alleges that Siebel's [*13] investigation of him was a complete sham. [HN10] Illinois, however, does not recognize a cause of action for negligent or tortious investigation. *Jones v. Britt Airways, Inc., 622 F. Supp. 389, 394 (N.D. Ill. 1985).* [HN11] Federal courts have no power to create state law. *Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087, 1093 (7th Cir. 1999).* Plaintiff's assertion that the Court can equate negligent investigation with "negligent undertaking" under Illinois common law is without merit. [HN12] A "negligent undertaking" claim in Illinois concerns primarily voluntary undertakings that result in bodily harm to a plaintiff. *Kohn v. Laidlaw Transit, Inc., 347 Ill. App.3d 746, 755, 283 Ill. Dec. 598, 605, 808 N.E.2d 564, 571 (Ill. App. Ct. 2004).* Count IV does not allege facts to support a "negligent undertaking."

### B. Tortious Supervision and Retention

Plaintiff's complaint alleges "from the start of

Plaintiff's employment with Siebel through Siebel's investigation of O'Shea to the present, Siebel knew or should have known that O'Shea had a propensity for engaging in the types of wrongful and violent conduct described hereinabove. . ." (R 1-1, Pl's [*14] Comp. P 73.) Defendants assert that because Plaintiff made Siebel aware of O'Shea's unfitness after Plaintiff's injury occurred, Plaintiff has in effect shown that Siebel had no knowledge of O'Shea's unfitness before the injury. Defendants' argument is unpersuasive. Plaintiff can assert that he informed Siebel of O'Shea's misconduct while still maintaining that Siebel knew of should have known of O'Shea's unfitness. Plaintiff has properly put Defendants on notice that it is his intent to show that Siebel should have known about O'Shea's behavior and his propensity to engage in wrongful conduct. Accordingly, the Court grants the motion to dismiss the tortious investigation portion of Count IV and denies the tortious supervision and retention portions.

### V. Breach of Contract and the Covenant of Good Faith and Fair Dealing [1] (Count V)

> 1    Plaintiff admits that he is not bringing a separate tort claim for breach of covenant of good faith and fair dealing. (R. 11-1, Pl's. Memo in Opp. of Mot to Dis. P 11, n. 4.) Therefore, the Court need not address whether this claim is proper under Illinois law.

[*15] [HN13] To prevail on a breach of contract claim under Illinois law, a plaintiff must establish (1) the existence of a valid and enforceable contract, (2) his own performance under the terms of the contract, (3) a breach of the contract by the defendant, and (4) an injury suffered as a result of the defendant's breach. *Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302, 311 (N.D. Ill. 1995); Aardvark Art, Inc. v. Lehigh/Steck-Warlick, Inc., 284 Ill.App.3d 627, 220 Ill.Dec. 259, 672 N.E.2d 1271, 1275 (Ill. App. Ct. 1996).* [HN14] Federal court is a notice pleading jurisdiction, therefore, complaints need not contain elaborate factual recitations. *Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994).*

Plaintiff alleges that Siebel and Plaintiff entered an employment contract and agreed to abide by certain rules, policies, and procedures. (R 1-1, Pl's Comp. PP 7-15.) Plaintiff also alleges that he complied with the rules and regulations set forth by Siebel. (*Id.* at P 78.) Plaintiff further alleges that Siebel breached that contract and

Plaintiff suffered as a result. (*Id.* at PP 79-80.) These allegations [*16] sufficiently state a claim.

Although Defendants urge the Court to consider statements in its employment handbook, the Court cannot consider such materials on a *Rule 12(b)(6)* motion. *See Albany Bank & Trust Co. v. Exxon Mobil Corp., 310 F.3d 969, 971 (7th Cir. 2002)* [HN15] ("documents that are neither included in the Plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss.") The Court also notes that the handbook is dated June 15, 2004 - more then one year after Plaintiff alleges Defendants terminated him. The Court denies the motion to dismiss Count V.

### VI. Intentional Infliction of Emotional Distress (Count VI)

Plaintiff alleges that O'Shea's conduct and Siebel's acquiescence of that conduct inflicted severe emotional distress on Plaintiff. Defendants argue that Plaintiff's allegations, even if true, do not rise to the objective standard necessary to sustain a claim of intentional infliction of emotional distress ("IIED") under Illinois law. The Court agrees with Defendants.

[HN16] To state a cause of action for IIED, a plaintiff must plead: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to [*17] inflict severe emotional distress or knew there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct caused severe emotional distress. *See Honaker v. Smith, 256 F.3d 477, 490 (7th Cir. 2001).* Recovery under this theory does not extend to conduct which merely involves insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *McGrath v. Fahey, 126 Ill.2d 78, 86, 127 Ill. Dec. 724, 533 N.E.2d 806, 809 (Ill. 1988).* With respect to the severity of Plaintiff's distress, "the law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Public Fin. Corp. v. Davis, 66 Ill.2d 85, 90, 4 Ill. Dec. 652, 360 N.E.2d 765, 767 (Ill. 1976),* quoting *Restatement (Second) of Torts § 46, comment j* (1965).

[HN17] The Seventh Circuit has held that even with liberal notice pleading standards, Plaintiff must show that Defendants' actions were objectively outrageous and the harm caused was very severe to survive a motion to dismiss. *Schroeder v. Lufthansa German Airlines, 875 F.2d 613, 623 (7th Cir. 1989)* [*18] (holding that

removing an innocent victim from her seat on a plan; confining her to the cockpit; and accusing her of being a terrorist was not outrageous enough to sustain a cause of action for IEHD)*Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993)* (conduct not extreme and outrageous where plaintiff was not permitted to supervise white employees; was reprimanded and falsely accused of poor performance; was excluded from office activities and decisions; was forced out of a management position and not given a promised promotion; and had her calls monitored and her car vandalized). In a similar case, a defendant fired a plaintiff based on an erroneous report that he had once been convicted of a crime and subsequently repeated the false information to third parties. *Socorro v. IMI Data Search, Inc., 2003 U.S. Dist. LEXIS 7400, No. 02 C 8120, 2003 WL 1964269, at *1 (N.D. Ill. April 28, 2003).* The court granted the motion to dismiss because the conduct involved did not rise to the level of outrageous conduct necessary to state a claim. *Id. 2003 U.S. Dist. LEXIS 7400, at *5.*

While Defendants' actions in blocking Plaintiff's transfers, screaming at Plaintiff, and unfairly terminating his [*19] employment are, if true, deplorable, they do not rise to the level of outrageous conduct required by this tort. *See Schwartz v. Home Depot U.S.A., Inc., 2000 U.S. Dist. LEXIS 17744, No. 00 C 5282, 2000 WL 1780245, at *5 (N.D. Ill. Dec. 4, 2000)* (pattern of discrimination, failure to promote, and retaliation fell within the "unavoidable aspects of employment relationship" that

does not constitute extreme and outrageous conduct), citing *Van Stan v. Fancy Colours & Co., 125 F.3d 563, 567 (7th Cir. 1997); see also Mustari v. New Hope Acad., 2004 U.S. Dist. LEXIS 11780, No. 03 C 4507, 2004 WL 1375530 (N.D. Ill. June 21, 2004).* [HN18] While losing one's job and having to relocate to find new employment is stressful, it alone does not rise to the level of severe emotional harm. Illinois has consistently denied claims premised on facts stronger than what Plaintiff has pled in this case. *See, e.g., Miller v. Equitable Life Assurance Soc'y, 181 Ill.App.3d 954, 957, 130 Ill. Dec. 558, 537 N.E. 2d 887, 889 (Ill. App. Ct. 1989).* Accordingly, the Court grants Defendants' motion to dismiss Count VI.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. It is granted [*20] with respect to Counts IV (tortious interference) and VI. It is denied with respect to Counts I, II, III, IV (tortious supervision and retention), and V.

Dated: November 4, 2004

ENTERED

AMY J. ST. EVE

United States District Court Judge

# TAB L

LEXSEE 2008 U.S. DIST. LEXIS 32042

**GLADYS ALCAZAR-ANSELMO, Plaintiff, v. CITY OF CHICAGO, a Municipal Corporation, and NORMA REYES, Individually and in her Official Capacity, Defendants.**

**07 C 5246**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2008 U.S. Dist. LEXIS 32042*

**April 18, 2008, Decided**
**April 18, 2008, Filed**

**COUNSEL:** [*1] For Gladys Alcazar-Anselmo, Plaintiff: Arthur R. Ehrlich, LEAD ATTORNEY, Jonathan C. Goldman, Goldman & Ehrlich, Chicago, IL; Elliot S. Richardson, LEAD ATTORNEY, Rachelle M. Sorg, Horwitz Richardson & Baker, LLC, Chicago, IL.

For City of Chicago, a Municipal Corporation, Norma Reyes, individually and in her Official Capacity, Defendants: Robert Charles Rutherford, LEAD ATTORNEY, Meghan Kelley Kennedy, City of Chicago (30 N LS), Chicago, IL; Kathleen Veronica Crowe, City of Chicago, Law Department, Chicago, IL.

**OPINION BY:** Wayne R. Andersen

**OPINION**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the court on defendants' motion to dismiss [18] defendant Norma Reyes both in her individual and official capacity and to dismiss Count III of the complaint pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*. For the following reasons, the motion is granted.

**BACKGROUND**

Plaintiff Gladys Alcazar-Anselmo has filed a three-count complaint against defendants City of Chicago and Norma Reyes, both individually and in her official

capacity, alleging a violation of the Family Medical Leave Act of 1993 ("FMLA") based on the denial of a request for leave, a violation of FMLA for retaliatory discharge, and [*2] intentional infliction of emotional distress. Specifically, plaintiff seeks compensatory and punitive damages, along with reinstatement of her position with back pay and other relief.

Plaintiff bases her complaint on the following allegations: Plaintiff was employed by the City of Chicago from about October 1997 through May 2007. During all relevant times, Norma Reyes was plaintiff's supervisor. Plaintiff alleges that both defendants qualify as an "employer" under the FMLA. Sometime before March 2007, plaintiff alleges that she submitted a request for leave and was granted leave under the FMLA. In March 2007, plaintiff requested additional leave under the FMLA to undergo further treatment related to her initial request. Defendants denied the request for additional leave and subsequently terminated plaintiff's employment.

In Count I, plaintiff alleges that defendants violated the FMLA by denying her second request for leave. In Count II, plaintiff alleges defendants violated the FMLA by discharging her in retaliation for exercising her rights under the FMLA. Finally, in Count III, plaintiff alleges that defendants engaged in extreme and outrageous conduct beyond the bounds of decency, [*3] and as a result, she suffered severe emotional distress and mental anguish.

Defendants have filed a motion to dismiss with respect to the claims against defendant Reyes, both individually and in her official capacity, as well as the claim for intentional infliction of emotional distress claim. Defendants maintain that Reyes should be dismissed in both her individual and official capacities because plaintiff has failed to adequately plead individual liability under the FMLA, and the claim against Reyes in her official capacity is duplicative with the claim against the City of Chicago. Defendants also contend that the intentional infliction of emotional distress claim should be dismissed because the Illinois Local Governmental and Governmental Employees Tort Immunity Act shields defendants from liability, and additionally, defendants claim that plaintiff has failed to adequately state a claim for intentional infliction of emotional distress under Illinois law.

Defendants also have moved to strike plaintiff's request for punitive damages. In plaintiff's response to defendants' motion to dismiss, she agreed to withdraw her claim for punitive damages, so the court will not address that claim.

**STANDARD [*4] OF REVIEW**

For a *Rule 12(b)(6)* motion to dismiss, a complaint will not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim entitling him to relief. *See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*; *Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994)*. All well-pleaded facts will be taken as true and all reasonable inferences shall be drawn in the plaintiff's favor. *See Cole v. U.S. Capital, 389 F.3d 719, 724 (7th Cir. 2004)*.

**DISCUSSION**

Defendants first claim that Reyes should be dismissed from this action in her individual capacity because plaintiff has failed to allege any action on Reyes' part. Though the issue of individual liability has not yet been addressed by the United States Supreme Court or the Seventh Circuit, courts in this district generally agree that individuals can be held liable under the FMLA. *See Smith v. Univ. of Chicago Hosp., 2003 U.S. Dist. LEXIS 20965, 2003 WL 22757754, at *6 (N.D. Ill. Nov. 20, 2003)*. To determine whether an individual is liable as an employer under the FMLA, courts look to the Fair Labor Standards Act ("FLSA") because it defines the term

"employer" in almost identical language to the [*5] FMLA. *Id.* Under the FLSA, a person is considered an "employer" and subject to individual liability if two conditions are met: (1) the individual had supervisory authority over the plaintiff; and (2) the individual was at least partly responsible for the alleged violation. *See Wilson v. Advocate Health and Hosp. Corp., 2006 U.S. Dist. LEXIS 45283, 2006 WL 1749662, at *2 (N.D. Ill. June 21, 2006)*.

Defendants concede that plaintiff satisfied the first prong by alleging that Reyes was plaintiff's supervisor. However, defendants move to dismiss Reyes in her individual capacity because plaintiff fails to allege that Reyes specifically was responsible for the alleged actions. Stating, as plaintiff does in her complaint, that "defendants" are responsible for the actions at issue is not sufficient to withstand a motion to dismiss with respect to an individual defendant. *See Evans v. Henderson, 2000 U.S. Dist. LEXIS 11907, 2000 WL 1161075, at *3 (N.D. Ill. August 16, 2000)*. Since plaintiff fails to allege that Reyes specifically committed any of the acts in question, defendants' motion is granted with respect to Reyes as an individual, and Reyes is dismissed from the action in her individual capacity.

Defendants next argue that Reyes also should be dismissed [*6] in her official capacity, as well, because naming both Reyes in her official capacity and the City of Chicago as defendants is redundant. Allowing a plaintiff to sue both an individual in her official capacity and the government entity that employs her allows "the plaintiff to sue the City twice for the same set of allegations." *Tabor v. Chicago of Chicago, 10 F. Supp. 2d 988, 991 (N.D. Ill. 1998)*. Hence, a claim against Reyes in her official capacity should be treated as a claim against the City of Chicago. *See Kentucky v. Graham, 473 U.S. 159, 165-166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)*. Thus, the claim against Reyes in her official capacity is redundant with the claim against the City of Chicago, so the claim against Reyes in her official capacity is dismissed.

Defendants next claim that plaintiff's claim for intentional infliction of emotion distress should be dismissed because the Tort Immunity Act immunizes defendants from liability, and in addition, plaintiff has failed to adequately plead a claim for intentional infliction of emotional distress under Illinois law. The court need not address the issue of the Tort Immunity Act

2008 U.S. Dist. LEXIS 32042, *6

because we agree with defendants that plaintiff has failed to adequately state [*7] her claim for intentional infliction of emotional distress.

Federal courts in this district routinely have held that, even when a plaintiff is entitled to leave under the FMLA, denying an employee's request for leave or discharging an employee for requesting leave, is not egregious enough conduct to be considered extreme and outrageous. *See Diemer v. Fraternal Order of Police, 2006 U.S. Dist. LEXIS 19605, 2006 WL 862866, at *2-3 (N.D. Ill. March 28, 2006); Lozano v. Kay Mfg. Co., 2004 U.S. Dist. LEXIS 12948, 2004 WL 1574247, at *2 (N.D. Ill. July 12, 2004).* Plaintiff's complaint alleges nothing more than a violation of FMLA as the basis for her intentional infliction of emotional distress claim. Though plaintiff attempts to claim more than an FMLA violation in her response to defendants' motion to dismiss, the court may only evaluate those claims pleaded in the complaint itself. *See Hill v. Tr. Of Ind. Univ., 537 F.2d 248, 251 (7th Cir. 1976).* Since plaintiff's complaint alleges a claim for intentional infliction of emotional distress based only on the alleged FMLA violation, plaintiff's claim for intentional infliction of emotional distress must be dismissed.

**CONCLUSION**

For the reasons set forth in the court's Memorandum, Opinion and Order, [*8] defendants' motion to dismiss [18] is granted. Defendant Norma Reyes is dismissed as a defendant in this case, and Count III also is dismissed. Plaintiff shall file an amended complaint to reflect the court's ruling on or before Friday, May 9, 2008.

It is so ordered.

/s/ Wayne R. Andersen

Wayne R. Andersen

United States District Court

Dated: April 18, 2008

# TAB M

LEXSEE 2006 U.S. DIST. LEXIS 19605



Analysis
As of: May 01, 2008

**JULIE E. DIEMER, Plaintiff, v. FRATERNAL ORDER OF POLICE, Defendant.**

**Case No. 05 C 7179**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2006 U.S. Dist. LEXIS 19605*

**March 28, 2006, Decided**
**March 28, 2006, Filed**

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part *Diemer v. FOP, 2007 U.S. Dist. LEXIS 32271 (N.D. Ill., Apr. 27, 2007)*

**COUNSEL:** [*1] For Julie E. Diemer, Plaintiff: Sally A. Comin, Abrahamson Vorachek & Levinson, Chicago, IL.

For Fraternal Order of Police Chicago Lodge No. 7, Defendant: James J. Convery, Laner, Muchin, Dombrow, Becker, Chicago, IL.

**JUDGES:** Virginia M. Kendall, United States District Judge.

**OPINION BY:** Virginia M. Kendall

**OPINION**

Judge Virginia M. Kendall

MEMORANDUM OPINION AND ORDER

Plaintiff Julie E. Diemer ("Plaintiff") filed suit against defendant Fraternal Order of Police Chicago Lodge 7 ("Defendant") alleging that Defendant fired her due to her pregnancy and her gender in violation of Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Disability Act ("PDA") and the Civil Rights

Act of 1991, *42 U.S.C. § 2000e et seq.* Count II of her Complaint alleges intentional infliction of emotional distress ("IIED") in violation of Illinois state law. Defendant moved to dismiss Count II of the Complaint alleging that the pendant state court claim of IIED is preempted by the Illinois Human Rights Act ("IHRA") and that Plaintiff has failed to allege facts that state a claim for IIED. The Court finds that course of conduct alleged by Plaintiff in Count II of the Complaint [*2] is inextricably linked to the civil rights claim and is therefore preempted by the IHRA. Further, the Court finds that, even if the IHRA did not preempt the claim, the Plaintiff has not alleged facts that establish extreme and outrageous conduct. Count II of the Complaint is therefore dismissed for the following reasons.

Factual Background

This Court will not dismiss a claim for failure to state a claim unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984).* As it is required to do, the Court therefore takes all allegations in the complaint as true, and draws all reasonable inferences in the light most favorable to the plaintiff. *Pickrel v. City of Springfield, 45 F.3d 1115, 1117 (7th Cir. 1995).* The following facts, therefore, have been taken from the Plaintiff's Complaint.

Case 3:08-cv-50019    Document 25-5    Filed 05/02/2008    Page 16 of 23

Page 2
2006 U.S. Dist. LEXIS 19605, *2

Plaintiff was hired by the Defendant as the sole female staff attorney in July 2003. Cpt at P 6. In September of 2004, Plaintiff s job performance was reviewed and she was given a pay increase for her performance. *Id.* at P 8. Although she had learned [*3] that she was pregnant in July 2004, she had not disclosed that information to her employer at the time of her performance review. *Id.* at P 7. Immediately after her performance review, she announced to Defendant that she was pregnant and that she was taking off twelve weeks of work pursuant to the Family and Medical Leave Act, *29 U.S.C. § 2601 et seq. Id.* at P 9. Shortly after making this announcement, Plaintiff began to be treated differently by Defendant, specifically "inappropriate and unlawful comments" were made to her about her condition. *Id.* at P 10. On November 2, 2004, Defendant terminated Plaintiff one week before her first mortgage was due on a new home that she had just purchased. *Id.* at P 11. Shortly thereafter, Plaintiff alleges that Defendant hired a less qualified male staff attorney to replace her. *Id.* at P 12.

Based on this conduct, Plaintiff alleges in Count I that Defendant has violated her civil rights in firing her when she was pregnant. She also alleges in Count II of her Complaint that Defendant inflicted extreme emotional distress on her on the day that she was terminated because Defendant knew that she was five months [*4] pregnant and that other employers are unwilling to hire pregnant women, that she had just purchased a home and had a mortgage payment due, and that she was required to move her belongings out of the office by the next morning in spite of her inability to move heavy items due to her pregnancy. *Id.* at P 19. This conduct, she alleges went "beyond all possible bounds of decency." *Id.* at P 8

Illinois Human Rights Act Preemption

Defendant moves to dismiss Count II claiming that the IHRA preempts Plaintiff's claim. The IHRA divests courts of jurisdiction over "the subject of an alleged civil rights violation other than set forth in [the] Act." *775 Ill. Comp. Stat. 5/8-111(C).* Gender discrimination is included within the statute's definition of "civil rights violation." *775 Ill. Comp. Stat. 5/2-102(A); 103(Q).* The IHRA deprives courts of jurisdiction over claims that constitute civil rights violations and over any other claim that is "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Maksimovic v. Tsogalis, 177 Ill. 2d 511, 687 N.E.2d 21, 23, 227 Ill. Dec. 98 (Ill. 1997).* [*5]

The Seventh Circuit further has interpreted Illinois law to mean that state law tort claims that depend on or are inextricably linked to civil rights violations are preempted by the IHRA. *See, e.g. Krocka v. City of Chicago, 203 F.3d 507 (7th Cir. 2000); Garcia v. Village of Mount Prospect, 360 F.3d 630 (7th Cir. 2004).*

Plaintiff alleges in Count II that the actions that Defendant took on the day that she was fired, specifically, that they chose to fire her when she was pregnant, when she had a new mortgage to pay, and when she would be required to remove her belongings while being pregnant constitute intentional infliction of emotional distress. Those allegations are merely the details of her first claim in Count I that she was discriminated against due to her gender and pregnancy. Without the gender and pregnancy discrimination claim in Count I, Plaintiff would not be claiming that she was treated in the manner that she alleges in Count II. Without that claim, her allegations in Count II would not be actionable. *See accord Packard v. TCF Nat'l Bank, 86 Empl. Prac. Dec. (CCH) P42034, 2005 U.S. Dist. LEXIS 11744 (N.D. Ill May 31, 2005)*(Alleged sham investigation [*6] into Plaintiff's termination inextricably linked to civil rights claim is preempted by IHRA); *Coambes v. Smurfit-Stone Container Corp., 2004 U.S. Dist. LEXIS 25877 (N.D. Ill December 23, 2004)*(Pressure placed on senior sales staff over age 50 inextricably linked to age discrimination claim is preempted by IHRA). Therefore, Plaintiff's claim in Count II is inextricably linked to the civil rights claim and is preempted by IHRA.

Intentional Infliction of Emotional Distress

Even if this Court were to have found that the claim is not preempted, Plaintiff must still plead facts that Defendant's conduct was extreme and outrageous and that Defendant intended to cause her to suffer extreme emotional distress and that she in fact suffered such emotional distress. *See McGrath v. Fahey, 126 Ill.2d 78, 86, 533 N.E.2d 806, 127 Ill. Dec. 724 (1998).*

To establish extreme and outrageous conduct, the plaintiff must allege more than "mere insult, indignities, threats, annoyances, petty oppression or trivialities." *Adan v. Solo Cup, Inc., 2001 U.S. Dist. LEXIS 12726, * 10 (Aug. 17, 2001)* (citing *Pub. Fin. Corp. v. Davis, 66 Ill.2d 85, 89, 4 Ill.Dec. 652, 360 N.E.2d 765 (1997).* [*7] "Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency,

and to be regarded as intolerable in a civilized community." Id. (quoting *Kolegas v. Heftel Broad. Corp., 154 Ill.2d 1, 21, 180 Ill.Dec. 307, 607 N.E.2d 201 (1992))*. Behavior that would not normally be considered outrageous may become actionable if the defendant knows that the plaintiff is particularly susceptible. *McGrath, 126 Ill.2d at 89-90.*

In the allegations set forth in Count II, however, Plaintiff cites to basic actions that every employer must make in discharging an employee, such as requiring the employee to clear out his belongings from the workplace, and then concludes that those actions were done "in a punitive manner to maximize emotional distress." Even with liberal pleading standards, Plaintiff has failed to allege facts that support her conclusion. Plaintiffs conclusions do not alter the bare facts which set forth a routine employment issue. *See Graham v. Commonwealth Edison Co., 318 Ill. App. 3d 736, 746, 742 N.E.2d 858, 252 Ill. Dec. 320 (Ill. App. 2000) citing Vickers v. Abbott Laboratories, 308 Ill.App.3d 393, 410, 241 Ill.Dec. 698, 719 N.E.2d 1101 (1999)* [*8] (If daily stresses from routine employment issues are actionable,

"nearly every employee would have a cause of action."). Alleging the outrageous conduct conclusions but not facts that inform how a routine office practice of clearing out one's personal belongings from the workplace upon discharge from employment are factually insufficient to claim that an employer's actions are extreme and outrageous. *See Packard* at * 4 (Plaintiff's allegations that employer originally told him that he was fired and then later that he resigned insufficient to claim intentional infliction of emotional distress).

*Conclusion*

Based on the foregoing, Defendants' motion to dismiss Count II is granted with prejudice.

So ordered.

Virginia M. Kendall, United States District Judge

Northern District of Illinois

Dated: March 28, 2006

# TAB N

LEXSEE 2004 U.S. DIST. LEXIS 12948



Analysis
As of: May 01, 2008

### RODRIGO LOZANO, Plaintiff, v. KAY MANUFACTURING COMPANY, Defendant.

### No. 04 C 2784

### UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### *2004 U.S. Dist. LEXIS 12948; 10 Wage & Hour Cas. 2d (BNA) 62*

### July 9, 2004, Decided
### July 12, 2004, Docketed

**SUBSEQUENT HISTORY:** Summary judgment denied by *Lozano v. Kay Mfg. Co., 2005 U.S. Dist. LEXIS 26930 (N.D. Ill., Nov. 3, 2005)*

**DISPOSITION:**     [*1] Motion to dismiss granted. Plaintiff's claims dismissed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant employer, alleging violations of the Americans with Disabilities Act (ADA), *42 U.S.C.S. § 12101 et seq.*; the Family Medical Leave Act (FMLA), *29 U.S.C.S. § 2601 et seq.*; and Illinois tort law. The employer moved pursuant to *Fed. R. Civ. P. 12(b)(6)* to dismiss all of the claims asserted against it.

**OVERVIEW:** While working for the employer, the employee developed a condition in his right hand that made it difficult for him to operate the manual machinery. The employee told the employer about his medical condition and asked that he be allowed to work exclusively on automatic machines. The employer refused his request, failed to offer him medical leave, and terminated him for failing to meet its production standards. The employee sued. Each of his claims was dismissed under *Fed. R. Civ. P. 12(b)(6)*. The employee

did not allege that he had filed an administrative complaint against the employer and received a right-to-sue letter from the Equal Employment Opportunity Commission before filing suit, as required by *42 U.S.C.S. § 12117* for his ADA claim. The employee did not allege any of the elements required by *29 U.S.C.S. §§ 2611, 2612* and *2615* for his FMLA claim. To the extent the employee's intentional infliction of emotional distress (IIED) claim was based on the alleged disability discrimination, it was preempted, *775 Ill. Comp. Stat. 5/8-111(c)*. Finally, the employer's failure to give the employee medical leave did not reach the level of outrageousness required to state an IIED claim.

**OUTCOME:** The court granted the employer's motion to dismiss.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] On a *Fed. R. Civ. P. 12(b)(6)* motion to dismiss, the court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. No claim will be dismissed

2004 U.S. Dist. LEXIS 12948, *1; 10 Wage & Hour Cas. 2d (BNA) 62

unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

*Civil Procedure > Justiciability > Exhaustion of Remedies > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Enforcement*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > General Overview*
[HN2] The Americans with Disabilities Act of 1990, *42 U.S.C.S. § 12101 et seq.*, makes filing a charge of discrimination with the Equal Employment Opportunity Commission and receiving a right-to-sue letter from it prerequisites to filing suit. *42 U.S.C.S. § 12117.*

*Civil Procedure > Justiciability > Exhaustion of Remedies > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Enforcement*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > General Overview*
[HN3] See *42 U.S.C.S. § 12117.*

*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act*
*Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions > Serious Health Conditions*
[HN4] The Family Medical Leave Act of 1993 (FMLA), *29 U.S.C.S. § 2601 et seq.*, entitles an eligible employee to up to 12 workweeks of leave if, among other reasons, a serious health condition makes the employee unable to perform the functions of his position. *29 U.S.C.S. § 2612(a)(1)(D).* To state an FMLA claim, a plaintiff must allege that: (1) he is an eligible employee, i.e., that he was employed for at least 12 months by the employer and worked at least 1,250 hours for the employer during the 12-month period preceding his leave request, *29 U.S.C.S. § 2611(2)* and *29 U.S.C.S. § 2612(a)(1)*; (2) the employer is covered by the statute, i.e., that the employer is engaged in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year, *29 U.S.C.S. § 2611(4)*; (3) he was entitled to leave because he had a

serious health condition that made him unable to perform the functions of his position, *29 U.S.C.S. § 2612(a)(1)(D)*; and *(4)* the employer was aware of his need for leave but refused to provide it, *29 U.S.C.S. § 2615(a)(1)* and 29 C.F.R. §§ 825.302-03.

*Administrative Law > Separation of Powers > Primary Jurisdiction*
*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > General Overview*
*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements*
[HN5] To the extent that an Illinois plaintiff's intentional infliction of emotional distress claim is grounded in the defendant employer's alleged disability discrimination, it is preempted by the Illinois Human Rights Act, which vests the Illinois Human Rights Commission with exclusive jurisdiction over alleged civil rights violations. *775 Ill. Comp. Stat. 5/8-111(C).*

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*
*Torts > Procedure > Preemption > General Overview*
[HN6] See *775 Ill. Comp. Stat. 5/8-111(C).*

*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*
[HN7] An Illinois employer commits a civil rights violation when, among other things, it discharges an employee on the basis of unlawful discrimination. *775 Ill. Comp. Stat. 5/2-102(A).* "Unlawful discrimination" includes discrimination against a person because of his handicap. *775 Ill. Comp. Stat. 5/1-103(Q).*

*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*
*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Defenses*
*Torts > Procedure > Preemption > General Overview*
[HN8] Refusal to provide medical leave is not conduct

Case 3:08-cv-50019    Document 25-5    Filed 05/02/2008    Page 21 of 23

Page 3

2004 U.S. Dist. LEXIS 12948, *1; 10 Wage & Hour Cas. 2d (BNA) 62

within the scope of the Illinois Human Rights Act. Thus, an intentional infliction of emotional distress claim based on such conduct would be preempted only if it were so "inextricably linked" to the disability discrimination claim that there was no independent basis for it.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements*

[HN9] To state a viable intentional infliction of emotional distress claim, an Illinois plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to cause plaintiff severe emotional distress or knew that such distress was substantially certain to result; and (3) plaintiff did, indeed, suffer extreme emotional distress. Moreover, the first and last elements are satisfied only if the challenged conduct goes beyond all possible bounds of decency and the resulting distress is so severe that no reasonable person could be expected to endure it.

**COUNSEL:** For RODRIGO E LOZANO, plaintiff: Glenn W Kuchel, Law Offices of Glenn W. Kuchel, Hammond, IN.

For KAY MANUFACTURING COMPANY, an Illinois Corporation, defendant: Michael G. Cleveland, Edward George Renner, Katherine M.L. Pratt, Vedder, Price, Kaufman & Kammholz, P.C., Chicago, IL.

**JUDGES:** Paul E. Plunkett, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Paul E. Plunkett

**OPINION**

*MEMORANDUM OPINION AND ORDER*

Rodrigo Lozano has sued Kay Manufacturing Company for its alleged violations of the Americans with Disabilities Act ("ADA"), *42 U.S.C. § 12101, et seq.,* the Family Medical Leave Act ("FMLA"), *29 U.S.C. § 2601, et seq.* and state law. Kay has filed a *Federal Rule of Civil Procedure ("Rule") 12(b)(6)* motion to dismiss all of the claims asserted against it. For the reasons set forth below, the motion is granted.

*Facts*

In February 1999, plaintiff [*2] started to work for Kay as a machinist, operating machines that modify metal pieces according to customer specifications. (Compl. PP3, 5.) Plaintiff's job required him to insert metal parts into the clamp or "chuck" of a machine and tighten the chuck around the parts. (*Id.* P5.) Plaintiff worked on both manual and automatic chuckers, which differ only in the amount of force the machinist is required to exert to operate them. (*Id.* P6.) As the name implies, the automatic chuckers require far less manual grasping and applied force than do the manual chuckers. (*Id.*)

At some point, plaintiff developed ulnar neuropathy in his right hand, which made it difficult for him to operate the manual chuckers and to meet Kay's production standards. (*Id.* PP7, 9.) Plaintiff told Kay about his medical condition and asked that he be allowed to work exclusively on the automatic machines. (*Id.* PP7, 8.) Kay refused his request, failed to offer him medical leave and terminated him for failing to meet its production standards. (*Id.* PP8, 10-11.)

*The Legal Standard*

[HN1] On a *Rule 12(b)(6)* motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, [*3] drawing all reasonable inferences in plaintiff's favor. *Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992).* No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984).*

*Discussion*

In Count I of his complaint, plaintiff alleges that Kay terminated him in violation of the ADA. [HN2] That statute makes filing a charge of discrimination with the EEOC and receiving a right to sue letter from it prerequisites to filing suit. [HN3] *See 42 U.S.C. § 12117* (stating that "the . . . procedures" applicable to *Title VII* claims apply to ADA claims); *Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992)* (noting that filing a timely EEOC charge and receiving a right to sue letter are prerequisites to *Title VII* suit). Plaintiff does not allege that he satisfied either of those requirements. Thus, his ADA claim must be dismissed.

2004 U.S. Dist. LEXIS 12948, *3; 10 Wage & Hour Cas. 2d (BNA) 62

In the second count of his complaint, plaintiff alleges that Kay violated the FMLA. [HN4] That statute entitles an [*4] eligible employee to up to twelve workweeks of leave if, among other reasons, "a serious health condition . . . makes the employee unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D). To state an FMLA claim, plaintiff must allege that: (1) he is an eligible employee, *i.e,* that he was employed for at least twelve months by Kay and worked at least 1,250 hours for Kay during the twelve-month period preceding his leave request (29 U.S.C. §§ 2611(2),2612(a)(1)); (2) Kay is an employer covered by the statute, that is, Kay is "engaged in . . . an[] industry or activity affecting commerce [and] employed 50 or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year" (29 U.S.C. § 2611(4)); (3) he was entitled to leave because he had "a serious health condition that made [him] unable to perform the functions of [his] position" (29 U.S.C. § 2612(a)(1)(D)); and (4) Kay was aware of his need for leave but refused to provide it (29 U.S.C. § 2615(a)(1); 29 C.F.R. §§ 825.302-03 [*5] .). Plaintiff has not alleged any of these elements. Consequently, his FMLA claim must be dismissed.

In the last count of his complaint, plaintiff alleges that Kay's actions constitute intentional infliction of emotional distress ("IIED") under Illinois law. [HN5] To the extent plaintiff's IIED claim is grounded in Kay's alleged disability discrimination, it is preempted by the Illinois Human Rights Act ("IHRA"), which vests the Illinois Human Rights Commission with exclusive jurisdiction over "alleged civil rights violation[s]." 775 ILL. COMP. STAT. 5/8-111(C) [HN6] ("No court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). [HN7] An employer commits a civil rights violation when, among other things, it discharges an employee "on the basis of unlawful discrimination." 775 ILL. COMP. STAT. 5/2-102(A). "Unlawful discrimination" includes "discrimination against a person because of his . . . handicap." 775 ILL. COMP. STAT. 5/1-103(Q). Thus, we have no jurisdiction over plaintiff's IIED claim if it is based on Kay's alleged discrimination [*6] against him because of his disability.

If, however, the IIED claim is premised solely on Kay's refusal to provide plaintiff medical leave, it escapes preemption. [HN8] As Kay concedes, refusal to provide medical leave is not conduct within the scope of the

IHRA. (*See* Def.'s Mem. Supp. Mot. Dismiss at 6 n.3.) Thus, an IIED claim based on such conduct would be preempted only if it were so "inextricably linked" to the disability discrimination claim that there was no independent basis for it. *Maksimovic v. Tsogalis, 177 Ill. 2d 511, 687 N.E.2d 21, 23, 227 Ill. Dec. 98 (Ill. 1997).* It is not. Whether Kay was justified in terminating plaintiff and whether it was justified in refusing to provide him medical leave are two distinct questions. Because the medical leave IIED claim could exist even in the absence of the disability discrimination claim, it is not preempted by the IHRA.

The fact that the claim is not preempted does not, however, mean that it is viable. [HN9] To state a viable IIED claim, plaintiff must allege that: (1) Kay's conduct was extreme and outrageous; (2) Kay intended to cause plaintiff severe emotional distress or knew that such distress was substantially certain [*7] to result; and (3) plaintiff did, indeed, suffer extreme emotional distress. *Public Fin. Corp. v. Davis, 66 Ill. 2d 85, 360 N.E.2d 765, 767, 4 Ill. Dec. 652 (Ill. 1976).* Moreover, the first and last elements are satisfied only if the challenged conduct "go[es] beyond all possible bounds of decency" and the resulting distress is "so severe that no reasonable [person] could be expected to endure it." *Id.* (internal quotation marks and citations omitted); *see, e.g., Pavilon v. Kaferly, 204 Ill. App. 3d 235, 561 N.E.2d 1245, 1251-52, 149 Ill. Dec. 549 (Ill. App. Ct. 1990)* (upholding IIED claim asserted against defendant who knew plaintiff was susceptible to emotional distress, repeatedly propositioned her and offered her money for sex, fired her when she refused his advances, threatened to kill and rape her, harassed her family and psychotherapist, threatened to challenge custody of her child, and harassed her new employer with letters, phone calls and spurious complaints to government officials). Kay's alleged failure to provide plaintiff medical leave does not rise to the level of outrageousness required to state an IIED claim.

### Conclusion

[*8] For the reasons stated above, Kay's motion to dismiss is granted. Plaintiff's intentional infliction of emotional distress claim grounded in disability discrimination, which is preempted by the IHRA, is dismissed for lack of jurisdiction. The remaining claims are dismissed with leave to amend. Plaintiff has twenty-one days from the date of this Memorandum Opinion and Order to file an amended complaint, if he

2004 U.S. Dist. LEXIS 12948, *8; 10 Wage & Hour Cas. 2d (BNA) 62

can do so and remain in compliance with *Rule 11.*

    Paul E. Plunkett

**UNITED STATES DISTRICT JUDGE**

**DATED: JUL 9 2004**