IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| DEBRA GRAHAM, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:08-cv-50019 |
| | ) | |
| v. | ) | Judge Fredrick J. Kapala |
| | ) | Magistrate Judge Michael Mahoney |
| RYAN INTERNATIONAL AIRLINES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
CLAIMS FIVE THROUGH TEN OF PLAINTIFFS' COMPLAINT**

**INTRODUCTION**

Throughout their Response, Plaintiffs sidestep Ryan's arguments, and ultimately fail to meet them head on. Instead, Plaintiffs attack arguments that Ryan did not make, cite decisions that are simply inapposite, and distinguish cases on grounds that are not relevant. When the dust settles, however, no amount of mischaracterization of Ryan's arguments and citations to irrelevant decisions can change the fact that Plaintiffs' Fifth through Tenth Claims fail as a matter of law.

Seeking to save their Sixth Claim (for Fair Labor Standards Act ("FLSA") overtime pay), Plaintiffs argue that the FLSA's common carrier by air exemption does not apply to them because their work is only "tangentially" related to air transportation. But the only case that Plaintiffs cite for this proposition actually confirms that their job duties are integral to Ryan's air transportation activities. Thus, Plaintiffs' FLSA overtime claims fail and so do their collective action allegations.

Turning to their Ninth Claim (for FLSA retaliation), Plaintiffs contend that the claim is actionable because they need not show that their "good faith" belief that they were complaining

of an FLSA violation has any actual basis in the FLSA. Plaintiffs' contention is contrary to Seventh Circuit law. Moreover, Plaintiffs' belief could not have been "reasonable" because the FLSA itself and readily accessible research materials made clear that Plaintiffs were exempt from FLSA overtime provisions. In short, Plaintiffs fail to state a claim for FLSA retaliation.

Plaintiffs' attempts to resuscitate their Fifth, Seventh and Eight Claims (for overtime pay under the Illinois Minimum Wage Law ("IMWL"), *quantum meruit* and unjust enrichment theories) fare no better. In its opening Memorandum of Law, Ryan argued that applying state overtime wage laws to the FLSA exempt employees of a heavily federally regulated industry interferes with congressional intent. Thus, the application of the IMWL here is preempted and the *quantum meruit* and unjust enrichment claims (left with no legal basis) fail as a result. Plaintiffs respond by setting up and knocking down arguments that Ryan never made. Having so spent their Response, Plaintiffs never address the merits of Ryan's actual argument.

Finally, in attempt to save their Tenth Claim for intentional infliction of emotional distress ("IIED"), Plaintiffs cite distinguishable and inapposite case law, conclusorily (and wrongly) assert that their weak allegations meet the federal "notice" pleading standard for IIED, and ultimately claim that the Court should allow them to amend their Complaint to address their pleading deficiencies. Plaintiffs' IIED allegations simply fail to state a claim, and any amendment would be futile.

In short, the Court should grant Ryan's Motion and dismiss claims Five through Ten with prejudice.

### ARGUMENT

**I.    PLAINTIFFS MISSTATE THE RULE 12(B)(6) PLEADING STANDARD.**

Throughout their Response, Plaintiffs ask this Court to excuse the legal deficiencies in their claims because of the liberal "notice pleading" standard in federal court. Citing *Conley v.*

*Gibson*, 335 U.S. 41, 45-46 (1957), Plaintiffs assert that "[d]ismissal is proper only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (Pl. Resp. at 2-3.) Plaintiffs' contention is outdated and wrong. The Supreme Court recently "retired" that phrase from *Conley* as "best forgotten as an incomplete, negative gloss on an accepted pleading standard," and clarified that the *Conley* court "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic v. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (emphasis added). As the Seventh Circuit has recently emphasized, therefore, "allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic*, 127 S. Ct. at 1965, n.14 (internal citations omitted)). Such is the case here.

## II.    ALL OF PLAINTIFFS' FLSA CLAIMS SHOULD BE DISMISSED.

### A.    Plaintiffs' Own Allegations Establish That Their Work Is Related To Air Transportation And They Are Exempt From FLSA Overtime Pay.

Plaintiffs do not dispute that the first two requirements for exemption from overtime pay under FLSA Section 213(b)(3) are met because Ryan is a common carrier by air engaged in interstate or international air transportation. (Doc. # 41, Plaintiffs' Response to Defendant's Motion to Dismiss ("Pl. Resp.") at 3.) Instead, citing to a single case, *Slavens v. Scenic Aviation, Inc.*, No. 99-4197, 2000 U.S. App. LEXIS 17412 (10th Cir. Jul. 18, 2000), Plaintiffs contend that the third prong of the common air carrier exemption is not met because their "jobs were remote from the air transport business." According to Plaintiffs, they were "not involved in flight operations, were not in flight maintenance," rather, they were "tangantaly [sic] related to the Defendant's air business as office staff." (*Id.*)

3

Far from supporting Plaintiffs' argument, *Slavens* forecloses it. Like Plaintiffs here, the plaintiff in *Slavens* argued that he was not exempt from the FLSA "because he had no day-to-day responsibilities over any pilots or airplanes, nor any knowledge of when various flights were taking place, his duties were tenuous, negligible, and remote with respect to [the employer's] transportation activities." *Id.* at *7. The Tenth Circuit disagreed, finding that Slavens' support functions, such as evaluating the qualifications of personnel, establishing protocols and procedures, informing hospitals of the company's services, and resolving personnel disputes, were integral to the company's air ambulance services, from which it derived almost all of its revenue. *Id.* at *7-8.

The same is true here. Plaintiff Graham alleges that she "was employed by Ryan as a Payroll Accountant at the Ryan worldwide headquarters in Rockford, Illinois" (Am. Compl. ¶ 17), and that her "job duties and responsibilities were [sic] principally and overwhelmingly involved inputting of data into the payroll system to result in payment of the Ryan payroll to its employees." (Am. Compl. ¶ 38.) Plaintiff Hindes alleges that she "was employed by Ryan as a Manager, HR – Compliance at the Ryan worldwide headquarters in Rockford, Illinois" (Am. Compl. ¶ 18), and that her "job duties and responsibilities were principally and overwhelmingly overseeing but not controlling the drug testing program for Ryan employees." (Am. Compl. ¶ 77.) Just as in *Slavens*, therefore, Plaintiffs' "support functions" were integral to the employer's air transportation services, because Ryan could not have continued to operate flights without its employees being paid as a result of Graham's work, or without its drug testing program being overseen by Hindes.[1]

---

[1] The Omnibus Transportation Employee Act of 1991, 49 U.S.C. § 31301 *et seq.* requires drug and alcohol testing of safety-sensitive transportation employees in aviation and other transportation industries.

As a last resort, Plaintiffs claim that the question of whether their alleged job duties are related to Ryan's air transportation activities is "one for a Summary Judgment after discovery." (Pl. Resp. at 3.)  No amount of discovery can save Plaintiffs' FLSA overtime claims because each Plaintiff has pled facts that conclusively establish that her work was integral to Ryan's air transportation activities.  A plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits."  *Tamayo v. Blagojevich*, No. 07-2975, 2008 U.S. App. LEXIS 11244, at *26 (7th Cir. May 27, 2008) (copy attached at Tab A hereto); *see also Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006) (a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims).  Plaintiffs' FLSA overtime pay claims should be dismissed with prejudice.

  **B. Plaintiffs Admit That If Their FLSA Overtime Pay Claims Fail, So Do Their Collective Action Allegations.**

Plaintiffs concede that if their FLSA overtime claims fail, "clearly the collective action is distinguished."  (Pl. Resp. at 8.)  Nevertheless, plaintiffs ask the Court to deny the motion to dismiss their collective action claims because they may later seek to amend their complaint to allege a class action under the Federal Rules of Civil Procedure.  (Pl. Resp. at 8.)  Plaintiffs' intention to pursue a Rule 23 class action has no bearing on the inappropriateness of their FLSA Section 216(b) collective action allegations in light of their failed FLSA claims.   Plaintiffs' FLSA collective action allegations should be dismissed.

  **C. Plaintiffs' FLSA Retaliation Claims (Ninth Claims) Also Fail As A Matter Of Law.**

Plaintiffs make two arguments to save their FLSA retaliation claim.  First, they argue that the law does not require their belief that they were owed overtime pay to have an actual basis in the FLSA.  Second, they argue that their belief that they were owed overtime pay was objectively reasonable because it was formed after their review of Department of Labor regulations, and

5

because Ryan waited several months to raise the common air carrier exemption as a defense. (Pl. Resp. at 8-10.) Both arguments fail.

Plaintiffs concede that under *Sapperstein v. Hager,* 188 F.3d 852, 857 (7th Cir. 1999), a plaintiff must have a "good faith" belief that the law might be violated to support a retaliation claim. (Pl. Resp. at 8-9.) Nevertheless, Plaintiffs argue that "determination of the validity of the retaliation claim is completely unrelated to the vitality [of the FLSA overtime pay] claim." (Pl. Resp. at 8.) Plaintiffs' statement of the law is contrary to the Seventh Circuit's holding, after *Sapperstein*, that a "good faith" belief requires that the statute actually protect against the activity believed illegal. *See* Def. MOL at 7-8 citing *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 707 (7th Cir. 2000) (employee's subjective belief that he engaged in protected activity not objectively reasonable as sexual orientation is not protected by Title VII).

Plaintiffs fail to explain why the Seventh Circuit's holding in the Title VII context should not apply equally to the FLSA. Plaintiffs argue that application of this rule contravenes the "remedial nature" of the FLSA, which "warrants an expansive interpretation of its provisions." (Pl. Resp. at 9.) But Title VII is no less a remedial statute than the FLSA. *See, e.g., Allen v. Potter*, 115 Fed. Appx. 854, 858 (7th Cir. 2004) (noting the court's obligation to read charitably the allegations of a discrimination charge) *citing Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985) ("The standard is a liberal one in order to effectuate the remedial purposes of Title VII, which itself depends on lay persons, often unschooled, to enforce it provisions."); *Veprinsky v. Flour Daniel, Inc.*, 87 F.3d 881, 888-889 (7th Cir. 1996) (holding that certain post-

termination acts of retaliation are cognizable under Title VII, construing Title VII liberally in keeping with its long recognized remedial purposes and broad sweep.)[2]

Plaintiffs' second argument, that their belief was reasonable because it was formed after reviewing FLSA regulations, and because Ryan waited several months to raise the deficiencies fares no better. (Pl. Resp. at 8-9.) While it is unclear what regulations Plaintiffs read, the statute itself makes crystal clear that the FLSA's overtime provisions do not apply to "any employee of a carrier by air subject to the provisions of Title II of the Railway Labor Act [RLA]." 29 U.S.C. § 213(b)(3)(2000). Moreover, a quick look at the United States Department of Labor's "Handy Reference Guide to the Fair Labor Standards Act" would have revealed to Plaintiffs, who were both in human resources (one in payroll) that "[e]mployees of . . . air carriers, . . ." are exempt from FLSA overtime provisions. See http://www.dol.gov/esa/regs/compliance/whd/hrg.htm.[3]

Furthermore, whether and to what extent Ryan raised a legal defense in its original pleadings has no bearing on whether Plaintiffs' belief in complaining of a non-violation under the FLSA was objectively reasonable. It is Plaintiffs' belief, not Ryan's litigation strategy, that is at issue here. Because Plaintiffs' belief that Ryan was violating the FLSA was not objectively reasonable as a matter of law, Plaintiffs have failed to state a retaliation claim under the FLSA.

---

[2] Plaintiffs' efforts to distinguish *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128 (N.D. Ga. 2004), are equally unavailing. Plaintiffs trumpet that *Burnette* is a summary judgment decision, not a misclassification case, and involved claimed pay for "on-call" time. (Pl. Resp. at 9.) These distinctions have no bearing whatsoever on the proposition for which Ryan cited *Burnette* – that under the FLSA, just as under Title VII, an employee's complaint of FLSA violation must find support in the law, or it cannot be protected activity sufficient to support an FLSA retaliation claim. *Id.* at 1134.

[3] Ready availability of this information distinguishes this case from *Sapperstein*, in which the plaintiff's belief that he was owed overtime was mistaken, because the employer was not subject to its overtime pay provisions because the statute requires that an employer do $500,000 in gross annual sales, and this employer did only $497,253. *See Sapperstein*, 188 F.3d 852 at 854. Plaintiff Sapperstein had no possible way of knowing that his employer's sales fell just below the FLSA's threshold. Here Plaintiffs, both of whom worked in human resources, had only read the statute to find they were exempt.

### III. PLAINTIFFS' STATE LAW OVERTIME CLAIMS SHOULD ALSO BE DISMISSED AS PREEMPTED.

#### A. Plaintiffs Fail To Address Ryan's Core Argument And Instead Make Irrelevant Contentions And Cite Inapposite Cases.

In its original Memorandum of Law, Ryan argued that Plaintiffs' state law claims were preempted by the FLSA because subjecting air carriers to the overtime provisions of the IMWL conflicts with Congress's intent, as expressed in FLSA Section 213(b), that these employees should be exempt from overtime pay, as well as with the broad panoply of federal regulation of airlines and air travel, aimed at providing national uniformity. (Ryan MOL at 9.) Therefore, the IMWL must give way to federal law, and its application here is preempted. (*Id.*)

In their Response, Plaintiffs do not address Ryan's core argument. Instead, they create and then knock down straw men arguments that have no bearing on the issues at hand. First, Plaintiffs misrepresent that, "Defendant [] claims that the RLA completely preempts all Illinois wage laws." (Pl. Resp. at 4.) In fact, as set forth above, Ryan did not argue RLA preemption. (Ryan MOL at 8-10.) Thus, not surprisingly, Plaintiffs rely on cases that are simply inapposite.[4]

---

[4] Plaintiffs cite cases in which RLA (not FLSA and heavy federal regulation) preemption of non-wage and hour laws was at issue. *See, e.g.*, *Atchison, Topeka and Santa Fe Railway Co. v Buell*, 480 U.S. 557, 565-566 (1987) (Pl. Resp. at 5) (RLA did not preempted tort claims under the Federal Employers' Liability Act); *Terminal R. Ass'n of St. Louis v. Brotherhood of Railroad Trainman* (Pl. Resp. at 5-6), 318 U.S. 1 (1943) (RLA did not preempt a state law requiring caboose cars); *Colorado Anti-Discrimination Comm. v. Continental Airlines*, 372 U.S. 714, 722 (1963). (Pl. Resp. at 6) (where, unlike here, it was "not contended . . . that the Colorado statute . . . stands as an obstacle to the full effectiveness of the federal statute," various federal laws, including the RLA (not including the FLSA), did not preempt application of anti-discrimination law to an interstate air carrier; *Miller v. Norfolk and Western Railway Co.* (Pl. Resp. at 6), 834 F.2d 556 (6th Cir. 1987) (RLA did not preempt a defamation claim). Plaintiffs also cite cases in which no preemption arguments were raised at all. *See Edwards v. Jet Blue Airways, Corp.*, 19 Misc. 3d 345, 2008 N.Y. Slip. Op. 28051, 582 N.Y.S.2d 724 (Sup. Ct. NY Feb. 15, 2008) (cited for the unremarkable proposition that the RLA does not preempt state law claims based on independent statutory rights); *Furtado v. Reno Air, Inc.*, (cited in Pl. Resp. at 6) No. CV-N-96-361-DWH(PHA), 1998 U.S. Dist. LEXIS 13486 (D. Nev. June 29, 1998). These cases have no bearing on whether the congressional intent evidenced in FLSA Section 213(b)(3) and heavy regulation of the airline industry is thwarted by applying Illinois overtime laws to employees of common carriers by air.

8

Second, Plaintiffs claim, again incorrectly, that Ryan is arguing that states are not entitled to enact greater protections than those provided by the FLSA. (Pl. Resp. at 3-4 citing FLSA § 18(a).) Ryan made no such argument, and does not dispute that the FLSA's savings clause *generally* allows states to enforce higher wage and hour standards than those of the FLSA. The FLSA's savings clause does not, however, save a state law from preemption where its application thwarts congressional intent. *See R.J. Corman R.R. v. Palmore*, 999 F.2d 149, 151 (6th Cir. 1993) (state overtime statute preempted by federal legislation). Plaintiffs' savings clause argument and the related cases they cite do not address Ryan's core contention, namely, that Illinois law requiring overtime pay for employees of air carriers thwarts congressional intent. (Ryan MOL at 8-10.) *See* Pl. Resp. at 5-6 citing *Williams v. W.M.A. Transit Co.*, 472 F.2d 1258 (D.C. Cir. 1972) (District of Columbia Minimum Wage Act could be applied to bus drivers who were exempt as employees of common motor carriers under the FLSA); *Keeley v. Loomis Fargo & Co.*, 11 F. Supp. 2d 517 (D.N.J. 1998) (FLSA and Federal Motor Carrier Act did not preempt state overtime law).

### B. The Well-Reasoned Case Law That Is On Point Disposes Of Plaintiffs' Claims.

The only case Plaintiffs cite that is arguably on point is the twenty year old decision in *Roig v. Iberia, Lineas Aéreas de España*, 688 F. Supp. 810 (D.P.R. 1988). (Pl. Rep. at 4.) But *Roig* is simply not well reasoned. In less than a page, the *Roig* court conclusorily held that FLSA Section 213(b)(3) did not preempt application of Puerto Rico's state law overtime pay statute to employees of common air carriers because the FLSA's savings clause permits state overtime laws with greater protections than the FLSA. *Id.* at 817-818. The *Roig* court did not consider – much less address – whether (1) the purposes behind FLSA Section 213(b)(3)'s exemption are thwarted when states apply their own overtime laws to the FLSA exempt workers, and (2)

9

whether extensive congressional regulation of the airline industry as a whole is interfered with when each state is allowed to enforce a different overtime wage standard, resulting in a lack of uniformity. *Id.* at 817-818; (Ryan MOL at 8-10).

While these issues were not discussed in the *Roig* opinion, they were discussed in the cases cited by Ryan. *See R.J. Corman R.R. v. Palmore*, 999 F.2d 149, 151 (6th Cir. 1993) (holding that Kentucky statute concerning overtime payments to railway workers was preempted by federal legislation); *Coil v. Jack Tanner Towing Co.*, 242 F. Supp. 2d 555 (S.D. Ill. 2002) (IMWL was preempted by the FLSA and maritime law); (Ryan MOL at 8-10). Plaintiffs' attempts to distinguish these cases, often with a mere sentence or phrase, are unpersuasive. (Pl. Resp. at 6-7.) Frequently, Plaintiffs' distinctions do not even address the propositions for which Ryan cited these cases.[5] Moreover, the fact that a case was decided in a different procedural posture, involved an employer with a CBA, or also discussed RLA preemption (Pl. Resp. at 6-7), does not negate or detract from its reasoning that a state imposing its own overtime wage law to the employees of a heavily federally regulated industry who are exempt from FLSA overtime pay interferes with congressional intent. *See, e.g., Coil*, 242 F. Supp. 2d at 559-560 (while the FLSA savings clause permits states to be more generous, nothing authorizes states to eliminate the seamen exemption); *Fitz-Gerald v. Skywest Airlines, Inc.,* 155 Cal. App. 4th 411, 422 (Cal. App. Sept. 19, 2007) (affirming, as Plaintiffs note, on RLA preemption grounds, but also

---

[5] For example, Plaintiffs seek to distinguish on preemption grounds, cases that Ryan cited for applicability of FLSA Section 213(b)(3), not preemption. *See* Pl. Resp. at 7 citing *Caggianiello v. FSG Privatair, Inc.*, No. 3:03CV1011(AWT), 2007 U.S. Dist. LEXIS 28904, at *3-5 (D. Conn. Aug. 6, 2007); *Verrett v. Sabre Group, Inc.*, 70 F. Supp. 2d 1277, 1283 (N.D. Okla. 1999); *Slavens v. Scenic Aviation, Inc.*, No. 99-4197, 2000 U.S. App. LEXIS 17412, at *5 (10th Cir. Jul. 18, 2000); *Osborne v. Enchantment Aviation, Inc.*, 112 Fed. Appx. 673, 674 (10th Cir. Oct. 12, 2004). Plaintiffs also inexplicably distinguish a case that Ryan did not even cite. *See* Pl. Resp. at 7 *citing Downey v. American Air, Inc.*, No.92-10616MA, 1992 U.S. Dist. LEXIS 17077, 141 L.R.R.M. 2803 (Dist. Mass. 1992).

affirming trial court's ruling that application of California labor law regarding minimum meal and rest breaks would substantially burden interstate commerce).

Plaintiffs' effort to distinguish *R.J. Corman Co.* is particularly unavailing. Plaintiffs reason that in *R.J. Corman*, "while there was no CBA, [the] court found this as an avenue of remedy. Here, the Plaintiffs' [sic] were unable to pursue a CBA." (Pl. Resp. at 6.) In fact, the *R.J. Corman* court rejected that very argument:

> Kentucky responds that by finding its overtime law preempted, we leave plaintiff's employees without any overtime wage protection either in the form of the state statute or a collective bargaining agreement. We do not dispute the truth of this observation, but we do not agree that the employees are left entirely without recourse. Plaintiffs' employees, like all railroad employees, may bargain collectively under the RLA to resolve disagreements in the labor relationship. . . . Indeed . . . wages are supposed to be dealt with by agreement. We conclude this is the sole avenue left available by Congress.

*Id.* at 154. Ryan's employees may also collectively bargain under the RLA for overtime wages.

Ultimately, Plaintiffs rebut arguments that Ryan did not make, and distinguish cases on irrelevant grounds. Plaintiffs simply fail to address Ryan's actual argument, that "application of the IMWL to entitle employees of a common carrier by air to overtime pay would frustrate FLSA Section 213(b)(3)'s exemption for such workers, as well as congress's extensive regulation aimed at subjecting air carriers to uniform standards nationwide." (Ryan MOL at 8-9.) Accordingly, Plaintiffs' Fifth, Sixth and Seventh claims fail to state claims upon which relief can be granted.[6]

---

[6] Plaintiffs fail altogether to address Ryan's argument that Plaintiffs' Sixth and Seventh Claims for *quantum meruit* and unjust enrichment are based on the right to overtime pay under the FLSA and IMWL. And because no such right exists here, those claims in turn fail to state a claim upon which relief can be granted. (Ryan MOL at 10.)

IV. **PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS FAIL AS A MATTER OF LAW.**

    A. **Plaintiffs' Allegations, Under The *Twombly* Pleading Standard, Fail To State A Claim Of IIED.**

In its opening Memorandum of Law, Ryan cited several cases that dismissed IIED claims containing allegations that were similar to or far more egregious than the Plaintiffs' allegations here. (Ryan MOL at 13-15.) Wholly ignoring those cases, Plaintiffs baldly assert that their allegations "are sufficient for 'Notice' pleading standards." (Pl. Resp. at 12.) To the contrary, "it is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that 'raise a right to relief above the speculative level.'" *EEOC v. Concentra Health Serv.,* 496 F.3d at 777 citing *Bell Atlantic*, 127 S. Ct. at 1965, 1968-1969 (internal citations omitted). Here, Plaintiffs' IIED claims are merely speculative.

Citing to *Kolegas v. Hotel Broadcasting Corp.*, Plaintiffs alternatively suggest that the Court should consider "aggravating factors" such as Ryan's position of power over Plaintiffs and Graham's particular susceptibility to emotional distress due to her alleged "serious medical condition," in deciding whether they have adequately pled IIED claims. (Pl. Resp. at 12.) *Kolegas* is easily distinguishable. There, a man, wife and child sued a radio station for IIED where the man called the radio station to promote a benefit for individuals with neurofibromatosis, commonly known as Elephant Man disease. *See* 607 N.E.2d 201, 204-205 (Sup. Ct. Ill. 1992). The radio disc jockeys hung up on him, then proceeded to call his benefit a fake and ridicule his wife and child's medical condition and resulting deformities. *Id.* The *Kolegas* court held that, while normally the comments might be "mere insults" insufficient to state an IIED claim, they did so there because the disc jockeys used their positions of power as communicators to the public at large, and should have know that the wife and child afflicted with

12

neurofibromatosis, and father producing a festival to promote public awareness of the disease, would be particularly susceptible to emotional distress "caused by comments which implied that they were hideous and deformed as a result of their disease." *Id.* at 211-212.

Plaintiffs' allegations here are a far cry from the facts of *Kolegas*. (Pl. Resp. at 12 summarizing IIED allegations.) Indeed, they are less severe even than the allegations in the employment cases cited by Ryan, including those involving FMLA leave, that failed to give rise to IIED claims. (Ryan MOL at 14-15.) Thus, Plaintiffs' IIED claims fail as a matter of law.

B.   **Plaintiff Hindes' IIED Claim Is Preempted To The Extent That It Relies On Allegations Of Racial And Sexual Comments, Which Are Not Illegal But For The IHRA.**

Plaintiffs also misconstrue Ryan's IHRA preemption argument. Ryan does not argue, as Plaintiffs contend, that "Plaintiff is precluded from claiming IIED because this independent tort is pre-empted by the IHRA." (Pl. Resp. at 10.) Nor does Ryan assert that "ALL tort claims are subsumed by the IHRA." (*Id.* at 10.) Rather, Ryan argues that Plaintiff Hindes' IIED claim is preempted to the extent that it relies on allegations of racial and sexual comments (*see* Compl. ¶ 338(b) and (c)) because the alleged conduct is not illegal *but for* the IHRA's prohibition of discrimination in the workplace. (Def. MOL at 11.) *See Spahn v. Int'l Quality Productivity Ctr.*, 211 F. Supp. 2d. 1072, 1074 (N.D. Ill. 2002) (an Illinois state tort claim is preempted by the IHRA where there is no independent basis for the tort claim apart from legal duties created by the IHRA.)

The cases cited by Plaintiffs only buttress Ryan's argument. For example, in *Arnold v. Janssen Pharmaceutica, Inc.*, the court found that the plaintiff's IIED claims (based on allegations that she was denied promotions, had her work product and assignments diverted, was excluded from meetings and job functions, and was subjected to inappropriate comments, gestures, and conduct) were not preempted because the plaintiff's allegations established the

13

elements of IIED independent of any legal duties created by the IHRA. 215 F. Supp. 2d 951, 954, 956 (N.D. Ill. 2002). But, the court dismissed the plaintiff's claims for negligent retention, training and supervision, finding, as Ryan asks the Court to find here, that "to the extent that [plaintiff's] retention, training, and supervising claims are based on the duty not to discriminate, they are preempted by the IHRA." *Id.* at 958.[7] Likewise, here, to the extent that Hindes' IIED claims are based on the duty not to sexually and racially harass or discriminate, they are preempted by the IHRA.

      **C.    Plaintiffs' IIED Claims Are Preempted By The IWCA Because They Have Failed To Sufficiently Allege That Their Injuries Were Not Accidental.**

Plaintiffs claim that their IIED claims are saved from IWCA preemption because their IIED injury was not accidental, in that: (1) the individuals who allegedly intentionally inflicted emotional distress on them (who are unnamed in their Amended Complaint) were the "alter ego" of Ryan, and (2) Plaintiffs repeatedly refer to "Defendant (Ryan Airlines) as the party causing the harm and acting intentionally." (Pl. Resp. at 12-13.) These arguments have no merit.

First, Plaintiffs make this "alter ego" allegation for the first time in their Response. (Pl. Resp. at 12-13.) Plaintiffs cannot amend their complaint in their brief in opposition to a motion to dismiss. *See, e.g., Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Moreover, any amendment to include the phrase "alter ego" would be futile because Plaintiffs

---

[7]    The other cases cited by Plaintiffs are easily distinguishable on the same grounds. (Pl. Resp. at 10.) Whereas Hindes alleges mere sexual and racial "comments," the plaintiffs in those cases alleged physical acts that violated duties independent of those created by the IHRA. *See Spahn*, 211 F. Supp. 2d. at 1077 (plaintiffs alleged "numerous occasions of harmful and offensive touching by their superior"); *Temores v. SG Cowen*, 289 F. Supp. 2d 996, 998 (N.D. Ill. 2003) (plaintiffs alleged that supervisors forcibly held her in order to kiss her, touched her body and repeatedly made sexual advances toward her); *Warnell v. Ford Motor Co.*, No. 98 C 1503, 1998 U.S. Dist. LEXIS 16952, *7, n.2 (N.D. Ill. Oct. 22, 1998) (plaintiffs alleged "a Ford supervisor repeatedly subjected plaintiffs to both verbal and physical confrontation"); *Roberts v. County of Cook*, 213 F. Supp. 2d 882, 884 (N.D. Ill. 2002) (allegations that supervisor, "engaged in a pattern of verbal and physical sexual discrimination."); *Jimenez v. Thompson Steel Col, Inc.*, 264 F. Supp. 2d 693, 696 (N.D. Ill. 2003) (plaintiff alleged that his foreman harassed him through assault, name calling, use of racial slurs, taunting and touching).

have not even identified who the alleged abusive employee is, his or her position in the company, or a basis for holding Ryan responsible for the alleged conduct. *See Cutchin v. Wal-Mart Stores, Inc.*, Nos. 95-2152, 95-2514, 1996 U.S. App. LEXIS 6314, at *5-7 (7th Cir. Mar. 19, 1996) (copy attached at Tab B hereto) (affirming 12(b)(6) dismissal of IIED claim where plaintiff made no allegation the co-worker should be characterized as the alter ego of the company as opposed to a mere supervisor, or that he was especially authorized by Wal-Mart to engage in the alleged conduct).

Second, attributing the alleged acts to "Ryan" does not save Plaintiffs' IIED claims from IWCA preemption. Rather, "to avoid preemption, a plaintiff must prove that his employer committed, commanded, or expressly authorized a supervisor to commit an intentional tort." *See Tessendorf v. Edward Hines Lumber Co.*, 393 F. Supp. 2d 686, 692 (N.D. Ill. 2005) (granting motion to dismiss IIED claim on IWCA preemption grounds where plaintiffs' complaint did not allege that anyone other than Hines (the company) was responsible for their IIED claim, or that Hines directed or authorized a specific co-employee to conduct himself in a discriminatory manner toward plaintiff.[8] No such allegations are present in the Amended Complaint. Thus, Plaintiffs' IIED claims are IWCA preempted as a matter of law.

---

[8] Plaintiffs claim that "the Defendant's cited cases, once again, appear not to support its claims and border on misquotation." (Pl. Res. at 13.) Plaintiffs' pejorative rhetoric is uncalled for, as throughout Ryan's brief, the cases cited consistently support the propositions for which they are cited. In only *one* instance, Ryan cited to a case in error. *See* Ryan MOL at 13 citing *Hangebrauck v. Zenith*, No. 86 C 6956, 1988 U.S. Dist. LEXIS 2400 (N.D. Ill. 1988). Ryan obviously did not intend to mislead Plaintiffs or the court, since it attached a copy of the *Hangebrauck* decision to its Memorandum of Law (at Exh. J). In any event, there is more than ample support for the proposition that where a plaintiff fails to adequately allege that the conduct supporting an IIED claim was intended *by the employer*, the claim is IWCA preempted. *See, e.g.*, *DeFronzo v. Conopco, Inc.*, 357 F. Supp. 2d 1062, 1065 (N.D. Ill. 2005) (granting motion to dismiss IIED claim where plaintiff's allegations that company was aware of abuse, but did nothing, was insufficient to remove the claim from the IWCA's exclusivity provision).

## **CONCLUSION**

For all of these reasons, Ryan respectfully requests that the Court dismiss Plaintiffs' Fifth through Tenth Claims in their entirety, with prejudice.

Dated: June 20, 2008                                     Respectfully submitted,

                                                                          RYAN INTERNATIONAL AIRLINES


                                                                          By:  /s/ Alison B. Willard
                                                                                  One of Its Attorneys

                                                                          Charles C. Jackson
                                                                          Sari M. Alamuddin
                                                                          Alison B. Willard
                                                                          Kirsten M. Evans
                                                                          Morgan, Lewis & Bockius LLP
                                                                          77 West Wacker Drive, Fifth Floor
                                                                          Chicago, Illinois 60601
                                                                          Tel:  (312) 324.1000
                                                                          Fax:  (312) 324.1001

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was electronically filed with the Court this 20th day of June, 2008, which will send a notice of electronic filing to the following counsel of record:

>John C. Ireland
>The Law Office of John C. Ireland
>1921 Charles Lane
>Aurora, Illinois 60505
>attorneyireleand@aol.com

>/s Alison B. Willard
>One of Defendant's Attorneys

1-CH/215067.6