# TAB A

LEXSEE



Analysis
As of: Jun 20, 2008

**JEANNETTE P. TAMAYO, Plaintiff-Appellant, v. ROD R. BLAGOJEVICH, Governor, BRIAN HAMER, sued in his individual and official capacity, ALONZO MONK, sued in his individual capacity, et al., Defendants-Appellees.**

**No. 07-2975**

**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

**2008 U.S. App. LEXIS 11244**

**January 24, 2008, Argued**
**May 27, 2008, Decided**

**PRIOR HISTORY:** [*1]
Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 06 C 3151--Samuel Der-Yeghiayan, Judge.
Tamayo v. Hamer, 2007 U.S. Dist. LEXIS 55277 (N.D. Ill., July 26, 2007)
Tamayo v. Hamer, 2007 U.S. Dist. LEXIS 38962 (N.D. Ill., May 30, 2007)

**DISPOSITION:** AFFIRMED IN PART, REVERSED IN PART, REMANDED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a former employee of the Illinois Gaming Board (IGB), appealed a judgment of the United States District Court for the Northern District of Illinois, Eastern Division, dismissing her action against defendants, the Illinois governor, his chief of staff, the Illinois Department of Revenue (IDOR) and its director, and the IGB, brought under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, and 42 U.S.C.S. § 1983.

**OVERVIEW:** On appeal, the court affirmed the dismissal of the employee's Title VII claims against the IGB because she failed to exhaust her administrative remedies by naming the IGB in her EEOC charge, and her complaint did not allege that she had given the IGB notice of the charge. However, because the Equal Pay Act did not require the filing of a charge with the EEOC, the employee could proceed against the IGB on those claims.

The court also found that the district court properly dismissed the employee's First Amendment claims because her statements were made as an employee, not a citizen. The court otherwise reversed the district court's judgment. The court held that the employee's complaint included enough facts in support of her claims of sex discrimination under Title VII, the Equal Pay Act, and § 1983, as well as a retaliation claim, to survive dismissal. The court also found that the employee's allegations that the IDOR controlled her salary, as well as a number of other personnel decisions of the IGB, were sufficient to suggest that the IDOR functioned as the employee's employer for the purposes of Title VII and the Equal Pay Act to avoid dismissal of the IDOR as a defendant.

**OUTCOME:** The court affirmed the district court's dismissal of the employee's First Amendment claims and her claims against the IGB. The court reversed the district court's dismissal of the employee's remaining claims.

**CORE TERMS:** salary, notice, administrator, sex discrimination, equal pay, retaliation, personnel, qualified immunity, male, sex, conspiracy, survive, sufficient facts, licensing, appointed, pleaded, casino, right to relief, per year, constitutional rights, speculative, promised, failure to state a claim, discrimination claims, job duties, factual allegations, right-to-sue, conclusory, wrongdoing, riverboat

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1]Where a case comes to the court of appeals after the district court dismissed the complaint for failure to state a claim, the court of appeals must take as true the facts alleged in the plaintiff's complaint.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN2]The court of appeals reviews de novo a district court's grant of a motion to dismiss based upon Rule 12(b)(6). A plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2). the court construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN3]A plaintiff alleging employment discrimination under Title VII of the Civil Rights Act of 1964 may allege these claims quite generally. A complaint need not allege all, or any, of the facts logically entailed by the claim, and it certainly need not include evidence. Federal complaints plead claims rather than facts. Indeed, litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's proof leads to windy complaints and defeats the function of Fed. Civ. P. 8.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN4]A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*

[HN5]In each context, the court must determine what allegations are necessary to show that recovery is "plausible." Specific requirements will depend on the type of case. For complaints involving complex litigation, a fuller set of factual allegations may be necessary to show that relief is plausible. The United States Supreme Court in Bell Atlantic wished to avoid the "in terrorem" effect of allowing a plaintiff with a "largely groundless claim" to force defendants into either costly discovery or an increased settlement value. Therefore, if discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Labor & Employment Law > Discrimination > Retaliation > General Overview*
[HN6]A general allegation of retaliation for reporting some unspecified act of discrimination does not provide the necessary notice to the defendant so that it could begin investigating and defending against the employment discrimination claim.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN7]The United States Supreme Court's Bell Atlantic opinion establishes "two easy-to-clear hurdles" for a complaint in federal court: First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. After Bell Atlantic, it is no longer sufficient for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Labor & Employment Law > Discrimination > Gender & Sex Discrimination > General Overview*
*Labor & Employment Law > Discrimination > Racial Discrimination > General Overview*
[HN8]While a complaint must contain something more than a general recitation of the elements of the claim, the minimal pleading standard applies for simple claims of race or sex discrimination. Once a plaintiff alleging illegal discrimination has clarified that it is on the basis of

her race, there is no further information that is both easy to provide and of clear critical importance to the claim.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims***
***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***
***Labor & Employment Law > Discrimination > Gender & Sex Discrimination > General Overview***
[HN9]In order to prevent dismissal under Fed. R. Civ. P. 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.

***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***
***Torts > Negligence > General Overview***
[HN10]Bell Atlantic's explicit praise of Form 9 of the Federal Rules of Civil Procedure illustrates that conclusory statements are not barred entirely from federal pleadings. The United States Supreme Court noted that a complaint of negligence in compliance with Form 9 provides sufficient notice to defendants, even though it alleges only that the defendant, on a specified date, negligently drove a motor vehicle against plaintiff who was then crossing an identified highway. To survive dismissal at this stage, the complaint need not state the respects in which the defendant was alleged to be negligent (i.e., driving too fast, driving drunk, etc.), although such specificity certainly would be required at the summary judgment stage. In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense.

***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***
[HN11]A party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims. A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits. If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief.

***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***
[HN12]Although the court's pleading rules do not tolerate factual inconsistencies in a complaint, they do permit inconsistencies in legal theories.

***Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Coverage & Definitions > General Overview***
***Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Proof > Burdens of Proof > Employee Burdens***
[HN13]To succeed in a Title VII of the Civil Rights Act of 1964 discrimination action, an employee need not show that her sex was the exclusive reason for her employer's actions. She must prove only that sex was a motivating factor.

***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Coverage & Definitions > Employers***
***Labor & Employment Law > Equal Pay > Equal Pay Act > General Overview***
[HN14]Title VII of the Civil Rights Act of 1964 and the Equal Pay Act impose liability upon the complaining employee's "employer." 42 U.S.C.S. § 2000e-2(a); 29 U.S.C.S. § 206(d)(1).

***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview***
***Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > Filing of Charges***
[HN15]Filing an EEOC charge against the defendant is a prerequisite to suit under Title VII of the Civil Rights Act of 1964.

***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Coverage & Definitions > Employers***
***Labor & Employment Law > Equal Pay > Equal Pay Act > General Overview***
[HN16]The Equal Pay Act defines an "employer" as including any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency. 29 U.S.C.S. § 203(d). Title VII of the Civil Rights Act of 1964 defines "employer" as a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person. 42 U.S.C.S. § 2000e(b). The Equal Pay Act expressly contemplates that an employee may have multiple employers. 29 U.S.C.S. § 203(d). Further, multiple entities may be considered an employee's "employer" for the purposes of Title VII liability.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Coverage & Definitions > Employers*

[HN17]Although the courts no longer apply the "integrated enterprise" test in Title VII of the Civil Rights Act of 1964 cases, an affiliated corporation, nevertheless, may be considered an employer under Title VII, in addition to the direct employer, if the affiliate directed the discriminatory act, practice, or policy of which the employee is complaining. A plaintiff presents a question of fact as to whether a party was her employer by submitting evidence that the party determined her salary, even though another entity determined the other aspects of her employment. Courts must look to the "economic realities" of the employment relationship, as well as the degree of control the employer exercises, to determine whether an entity may be considered an employer for the purposes of Title VII liability.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > Filing of Charges*

[HN18]Ordinarily, a party not named as the respondent in an EEOC charge may not be sued under Title VII of the Civil Rights Act of 1964.

*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement > Notice to Employers*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > Filing of Charges*

[HN19]The requirement that a party be named in the EEOC charge is not jurisdictional, and it is subject to defenses such as waiver and estoppel. The purpose of requiring the complaint to match the EEOC charge is to give the employer some warning of the conduct about which the employee is aggrieved and afford the EEOC and the employer an opportunity to attempt conciliation without resort to the courts. Therefore, the courts have recognized an exception to the rule where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings.

*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement > Notice to Employers*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > Filing of Charges*

[HN20]Under Title VII of the Civil Rights Act of 1964, it is the EEOC charge rather than the questionnaire that matters for notice purposes. Assertions in the questionnaire, without more, are not enough to put an employer on notice that it was being charged.

*Labor & Employment Law > Equal Pay > Equal Pay Act > General Overview*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > Filing of Charges*

[HN21]The Equal Pay Act does not require that a plaintiff first submit a charge with the EEOC.

*Civil Rights Law > Immunity From Liability > Defenses*
*Civil Rights Law > Immunity From Liability > Local Officials > Individual Capacity*
*Torts > Public Entity Liability > Immunity > Qualified Immunity*

[HN22]Governmental actors performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The United States Supreme Court articulated a two-part test for determining whether an actor is entitled to qualified immunity: (1) Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? (2) If a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. If either of these prongs is not satisfied, then the individual is entitled to qualified immunity.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Rights Law > Immunity From Liability > Defenses*
*Civil Rights Law > Immunity From Liability > Local Officials > Individual Capacity*
*Torts > Public Entity Liability > Immunity > Qualified Immunity*

[HN23]The pleading standard is no different simply because qualified immunity may be raised as an affirmative defense. Consequently, the rule that qualified immunity must be resolved at the earliest possible stage must be tempered by the notice pleading requirements of Fed. R. Civ. P. 8. Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate. The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.

*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Public Employees*
[HN24]For a government employee's speech to qualify for First Amendment protection, she must have been speaking as a citizen on a matter of public concern. Public employees who speak pursuant to their official duties speak as employees rather than as citizens, and thus, their speech is not protected by the First Amendment regardless of its content. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.

*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Public Employees*
[HN25]Reports by government employees to their superiors concerning alleged wrongdoing in their government office are within the scope of their job duties, and, therefore, the employees are not speaking as private citizens. Similarly, reporting alleged wrongdoing to those with the responsibility for legislative oversight should be governed by the same principle.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN26]A plaintiff cannot rely on "labels and conclusions" in his complaint, and the court is not bound to accept as true a legal conclusion couched as a factual allegation.

*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Public Employees*
[HN27]While Garcetti v. Ceballos explicitly admonishes the courts not to tolerate excessively broad job descriptions that might restrict artificially an employee's First Amendment rights, the courts also are directed to take a "practical" view of whether an employee is speaking as an employee or as a citizen. In taking such a "practical" view, the court must take into account the employee's level of responsibility. An employee with significant and comprehensive responsibility for policy formation and implementation certainly has greater responsibility to speak to a wider audience on behalf of the governmental unit. When a complaint states that the senior administrator of an agency testified before a committee of the legislature charged with oversight of the agency about allegedly improper political influence over that agency, the natural reading of such an allegation is that the official, in so informing the legislators, was discharging the responsibilities of her office, not appearing as "Jane Q. Public." Reporting alleged misconduct against an agency over which one has general supervisory responsibility is part of the duties of such an office.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN28]At a minimum, there must be factual allegations in a complaint that raise a right to relief above the speculative level.

COUNSEL: For JEANNETTE P. TAMAYO, Plaintiff - Appellant: Michael W. Condon, Michael D. Bersani, Jason Rose, HERVAS, CONDON & BERSANI, Itasca, IL.

For ROD R. BLAGOJEVICH, Governor, Defendant - Appellee: Gino L. DiVito, Timothy A. Hudson, TABET, DIVITO & ROTHSTEIN, Chicago, IL USA.

For BRIAN HAMER, sued in his individual and official capacity, ALONZO MONK, sued in his individual capacity, Defendant - Appellees: Kenneth M. Sullivan, SULLIVAN & ASSOCIATES, Chicago, IL.

ILLINOIS DEPARTMENT OF REVENUE, Defendant - Appellee: William M. Walsh, KAKACEK & LINGNER, Chicago, IL USA; Steven J. Rosenberg, Chicago, IL.

For ILLINOIS GAMING BOARD, Defendant - Appellee: Rachel A. Hoover, OFFICE OF THE ATTORNEY GENERAL, Chicago, IL USA.

JUDGES: Before POSNER, RIPPLE and TINDER, Circuit Judges.

OPINION BY: RIPPLE

OPINION

RIPPLE, *Circuit Judge*. Jeannette Tamayo brought this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Equal Pay Act, 29 U.S.C. § 206 et seq.; and 42 U.S.C. § 1983. The district court dismissed [*2] her complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Ms.

Tamayo timely appealed. For the reasons set forth in this opinion, we affirm in part and reverse in part the judgment of the district court.

## I

## BACKGROUND

### A.

[HN1]Because this case comes to us after the district court dismissed the complaint for failure to state a claim, we must take as true the facts alleged in Ms. Tamayo's complaint. *Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 618 (7th Cir. 2007).*

In 1990, in an effort to increase tax and licensing revenue for the state, the Illinois legislature enacted the Riverboat Gambling Act, 230 ILCS 10/1 et seq. In addition to legalizing riverboat gambling operations within the state, the Act established the Illinois Gaming Board ("IGB"), a five-member regulatory and licensing board, whose members are appointed by the Governor and confirmed by the Senate. 230 ILCS 10/1. The IGB is charged with regulating, administering and enforcing the riverboat gambling system. *Id*. It operates under the Illinois Department of Revenue ("IDOR"), an executive agency broadly empowered to oversee the collection of revenue for the state.

Jeannette Tamayo began her work with the IGB [*3] in October 1999, when she was hired as its Deputy Chief Counsel. Her duties included representing the IGB in licensing investigations and enforcement matters and drafting rules for the IGB. Her salary as Deputy Chief Counsel was $ 107,000 per year.

The daily work of the IGB is the responsibility of an Administrator, who is charged with overseeing the agency's operations and maintaining the IGB's records. The Administrator's salary is determined by the IGB, but it is subject to approval by the Director of the IDOR. On July 1, 1999, the IGB appointed Sergio Acosta, a male, as its Administrator. Acosta received a salary of $ 140,000 per year during his tenure as Administrator. In September 2001, Acosta resigned, and the IGB appointed another man, Thomas Swoik, to serve as the Interim Administrator. He also received a salary of $ 140,000. In November of that year, the IGB appointed another male Administrator, Philip Parenti, at a salary of $ 160,000.

In January 2003, Rod Blagojevich became Governor of Illinois. A few months later, in June 2003, Parenti resigned his position as Administrator of the IGB. Soon thereafter, the IGB appointed Ms. Tamayo as its Interim Administrator. She was the [*4] first female ever to hold the position. With this promotion, Ms. Tamayo was promised a salary of $ 160,000 per year, significantly more than she had made in her previous position as Deputy Chief Counsel.

Almost immediately upon assuming the position of Interim Administrator, however, Ms. Tamayo began having significant disagreements with the Governor's office and the IDOR. According to Ms. Tamayo, Governor Blagojevich utilized Alonzo Monk, his Chief of Staff, and Brian Hamer, the Director of the IDOR, in an attempt to take control of the operational, budgetary and personnel decisions of the IGB. Some of their actions allegedly included: attempting to force the IGB to hire, and to pay out of its own budget, personnel who actually worked for the IDOR or the Governor; attempting to assume control of the IGB's administrative hearings; interfering with the established casino bidding process; demanding that the IGB cease its investigation of certain casinos; demanding that it release the confidential financial information of other casinos; and interfering with the IGB's command and control personnel structure. Ms. Tamayo made it known that she objected to these practices; consequently, she [*5] became quite unpopular with the Governor's office and the IDOR. Her complaint alleges that she was warned twice by Mr. Hamer to cooperate.

Ms. Tamayo also had significant disputes with the IGB and IDOR regarding her compensation. Despite the fact that she had been promised an annual salary of $ 160,000 upon assumption of the Interim Administrator position, Ms. Tamayo never saw an increase in her paychecks. During the time that she acted as Interim Administrator, she continued to be paid at her previous salary of $ 107,000 per year. In August 2003, Ms. Tamayo complained to both the IGB and the IDOR that she was not receiving the correct salary; however, her monthly paychecks never increased.

In November and December of 2003, after being paid at the lower Deputy Chief Council salary rate for a number of months, Ms. Tamayo advised the IGB that she believed her lack of compensation was based on the fact that (1) she was a woman, and (2) she was not cooperating with the Governor's office and the IDOR in their attempts to control the IGB. The IGB thereafter attempted to remedy the situation, but its efforts allegedly were stymied by the Governor's office and the IDOR, which controlled the [*6] IGB's personnel and budget. In March 2004, the IGB advised Ms. Tamayo to file a discrimination charge with the EEOC.

On April 6, 2004, Ms. Tamayo took the advice of the IGB and filed a discrimination charge. The charge named the IDOR as her employer. It complained that the IDOR had failed to approve her promised salary increase at least in part because she was a woman, and it alleged gender-based discrimination in violation of Title VII.

Ms. Tamayo immediately informed the IGB of her actions.

On February 24, 2005, Ms. Tamayo publicly testified before the Illinois House Gaming Committee about the Governor and the IDOR's alleged interference with IGB operations, their alleged misuse of public funds and their alleged attempts to influence the outcome of licensing investigations and sales of casinos. In March, after this testimony, the Governor replaced the entire IGB Board with new Commissioners. Ms. Tamayo alleges that, immediately after the new Commissioners were appointed, she began to be excluded from all meetings and activities necessary for the proper performance of her duties as IGB Administrator. On November 4, 2005, Ms. Tamayo was removed officially from the Administrator position. [*7] Her replacement was Mark Ostrowski, a male, and he was paid substantially more than Ms. Tamayo had been paid during her time as Administrator.

After her replacement, Ms. Tamayo returned to her position as Deputy Chief Counsel; however, she was given routine work assignments, banned from important IGB meetings, prohibited from working on any licensing matters and prohibited from attending staff meetings. In effect, she claims, she was ostracized within the agency. Accordingly, she resigned her employment on May 22, 2006; she claims that this resignation constituted a constructive discharge. On March 29, 2006, Ms. Tamayo filed a second charge with the EEOC, again naming the IDOR as the respondent employer, but this time alleging retaliation in violation of Title VII and the Equal Pay Act.[1]

> 1    Ms. Tamayo received a right-to-sue letter from the EEOC regarding her first discrimination charge on March 13, 2006. She received her right-to-sue letter regarding the second charge on July 22, 2006.

**B.**

On June 8, 2006, Ms. Tamayo filed a complaint in the United States District Court for the Northern District of Illinois. The complaint named as defendants the IGB and the IDOR; it also named Governor [*8] Blagojevich, IDOR Director Hamer and Chief of Staff Monk ("the individual defendants") in both their official and their individual capacities. The defendants filed motions to dismiss on numerous grounds. On December 22, 2006, the district court dismissed the claims against the individual defendants in their official capacities with prejudice, and it dismissed the claims against the individual defendants in their individual capacities without prejudice.

On January 15, 2007, Ms. Tamayo filed an amended complaint, the complaint at issue in this appeal. Her complaint alleged six counts, four naming the IDOR and the IGB, and two naming the individual defendants. Against the IDOR and the IGB, she alleged both retaliation and discrimination claims under the Equal Pay Act and Title VII. Against the individual defendants, she alleged violations of the First and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983.

After this amended complaint was filed, the individual defendants moved to dismiss the claims against them based upon qualified immunity. On May 30, 2007, the district court granted their motion. In its view, Ms. Tamayo's complaint established "that her salary dispute involved personal [*9] animosity between her and the individual defendants rather than animosity based on her gender"; therefore, she could not succeed on a sex discrimination claim. R.112 at 11. Additionally, the court concluded that Ms. Tamayo's complaint had not alleged facts sufficient to establish a First Amendment claim. Because her testimony before the state legislature had been given pursuant to her duties as an employee, and not as a citizen, her First Amendment claim could not succeed under Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). Accordingly, the court dismissed Ms. Tamayo's claims against the individual defendants under Federal Rule of Civil Procedure 12(b)(6).

The IDOR then moved to dismiss the claims against it on the ground that the complaint showed that the IGB, not the IDOR, in fact was Ms. Tamayo's employer. On May 30, 2007, the district court granted the IDOR's motion to dismiss under Rule 12(b)(6) as well. It held that Ms. Tamayo had pleaded herself out of court by alleging that she was employed by the IGB, not the IDOR. Additionally, it noted, her allegations established that the IDOR did not have de facto control over her employment, and therefore it could not be considered liable [*10] as her indirect employer.

The court then invited the IGB to file a motion to dismiss Ms. Tamayo's remaining claims, citing the recent Supreme Court ruling in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The IGB complied. Its subsequent motion to dismiss contended that Ms. Tamayo had failed to allege enough facts to show that the actions taken against her were motivated by sex discrimination or retaliation by the IGB, rather than by a political motive.

On July 26, 2007, the district court granted the IGB's motion to dismiss the remaining claims. The court concluded that Ms. Tamayo's complaint had established that her problems were a result of a political power struggle between herself and the Governor's office, and not a re-

sult of discrimination or retaliation on the part of the IGB. It also held that her Title VII claims necessarily failed because she had not properly named the IGB as the respondent in her EEOC charges, a prerequisite to filing suit against it.

After dismissing the claims against each named party, the court entered judgment in favor of the defendants on July 26, 2007. Ms. Tamayo timely appealed.

## II

## ANALYSIS

Ms. Tamayo challenges the dismissal of her complaint. [*11] The defendants maintain that Ms. Tamayo's complaint is infirm on two general grounds: First, they contend that she did not plead *enough* facts regarding her sex discrimination and First Amendment claims to "plausibly suggest" a right to relief; second, they contend that she alleged *too many* facts regarding the actual reasons for her constructive discharge and effectively pleaded herself out of court. For the reasons discussed below, we conclude that Ms. Tamayo alleged sufficient facts in her complaint to prevent dismissal of her sex discrimination and retaliation claims at this stage. On the other hand, we conclude that the district court properly dismissed Ms. Tamayo's First Amendment claims against the individual defendants. We first address Ms. Tamayo's claims involving sex discrimination and retaliation; we then shall turn to her First Amendment claims.

## A.

[HN2]We review de novo a district court's grant of a motion to dismiss based upon Rule 12(b)(6). *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). A plaintiff's complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide the defendant with "fair [*12] notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic*, 127 S. Ct. at 1964. We construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor. *Id.*; *Killingsworth,* 507 F.3d at 618.

We previously have stated, on numerous occasions, that [HN3]a plaintiff alleging employment discrimination under Title VII may allege these claims quite generally. [2] A complaint need not "allege all, or *any*, of the facts logically entailed by the claim," and it certainly need not include evidence. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (quoting *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986)); *see also Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006) ("Federal complaints plead *claims* rather than facts.").

Indeed, "[l]itigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's *proof* leads to windy complaints and defeats the function of [Federal Rule of Civil Procedure] Rule 8." *Bennett*, 153 F.3d at 519.

> 2   *See, e.g., Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006) [*13] ("[A]ll a complaint in federal court need do is state a claim for relief is recite that the employer has caused some concrete injury by holding the worker's religion against him."); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("'I was turned down for a job because of my race' is all a complaint has to say.").

The defendants submit that the Supreme Court's recent decision in *Bell Atlantic*, 127 S. Ct. 1955, 167 L. Ed. 2d 929, dramatically altered the earlier legal landscape. In *Bell Atlantic*, consumers brought a lawsuit against local telephone and internet exchange carriers, alleging that these companies had entered into a conspiracy to violate the antitrust laws. The plaintiffs' complaint alleged facts showing that the companies had engaged in parallel conduct. The complaint then simply asserted that, "upon information and belief," the defendants had "entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets." *Id.* at 1962-63. The United States District Court for the Southern District of New York dismissed the complaint according to Rule 12(b)(6), noting that the facts in the complaint suggested [*14] only that the companies were engaged in parallel conduct--the complaint failed to allege any facts suggesting the existence of an agreement. *Id.* at 1963. The district court noted that parallel conduct alone is no more indicative of a conspiracy than it is indicative of sound business practices. *Id.* Therefore, the court concluded that the complaint had not alleged sufficient facts to survive a 12(b)(6) motion to dismiss. *Id.*

The Second Circuit reversed. Relying on *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), it held that a complaint need not specifically allege any of the antitrust "plus factors," because "to rule that allegations of parallel anticompetitive conduct fail to support a plausible conspiracy claim, a court would have to conclude that there is no set of facts that would permit a plaintiff to demonstrate that the particular parallelism asserted was the product of collusion rather than coincidence." *Bell Atlantic*, 127 S. Ct. at 1963 (quoting *Twombly v. Bell Atl. Corp.*, 425 U.S. 99, 114 (2d Cir. 2005)). Under the Supreme Court's holding in *Conley*, the Second Circuit concluded, mere allegations of parallel conduct sufficed to prevent dismissal at this stage. *Id.*

The Supreme Court [*15] granted certiorari in *Bell Atlantic* "to address the proper standard for pleading an antitrust conspiracy through allegations of parallel conduct." *Id.* The Court acknowledged that, under its prior *Conley* precedent, the complaint had alleged sufficient facts to survive Rule 12(b)(6) dismissal. Nevertheless, the Court reversed the Second Circuit's ruling. Its opinion expressly disavowed the oft-quoted *Conley* standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic, 127 S. Ct. at 1968* (quoting *Conley*, 355 U.S. at 45-46). Instead, it held that allegations of parallel business conduct, along with a bare assertion of conspiracy, are not sufficient to state a claim under the Sherman Act. *Id.* To survive dismissal, the Court concluded, the complaint must allege enough factual matter which, if taken as true, would suggest that an *agreement* had been made. *Id.* at 1965. Allegations of parallel conduct with an assertion of conspiracy "gets the complaint close to stating a claim, but without some further factual enhancement it [*16] stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1966 (internal quotation marks omitted).

Since *Bell Atlantic*, we cautiously have attempted neither to over-read nor to under-read its holding. We have stated that the Supreme Court in *Bell Atlantic* "retooled federal pleading standards," and retired "the oft-quoted *Conley* formulation." *Killingsworth, 507 F.3d at 618-19* (quoting *Bell Atlantic, 127 S. Ct. at 1968* (quoting *Conley*, 355 U.S. at 45-46)). We also have cautioned, however, that *Bell Atlantic* "must not be overread." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.,* 520 F.3d 797, 2008 WL 852586, at *5 (7th Cir. 2008). Although the opinion contains some language that could be read to suggest otherwise, the Court in *Bell Atlantic* made clear that it did not, in fact, supplant the basic notice-pleading standard. *Bell Atlantic, 127 S. Ct. at 1973 n.14* (expressly disclaiming the establishment of any "heightened pleading standard"); *see also Lang v. TCF Nat'l Bank,* 249 Fed. Appx. 464, 2007 WL 2752360, at *2 (7th Cir. 2007) (noting that notice-pleading is still all that is required); *Limestone,* 520 F.3d 797, 2008 WL 852586, at *5 (same). [HN4]A plaintiff [*17] still must provide only "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Lang,* 249 Fed. Appx. 464, 2007 WL 2752360, at *2 (citing *Bell Atlantic,* 127 S. Ct. at 1964) (internal quotation marks and ellipses omitted).

The task of applying *Bell Atlantic* to the different types of cases that come before us continues. [HN5]In each context, we must determine what allegations are necessary to show that recovery is "plausible." *See Limestone,* 520 F.3d 797, 2008 WL 852586, at *5 (noting that specific requirements "will depend on the type of case"). For complaints involving complex litigation--for example, antitrust or RICO claims--a fuller set of factual allegations may be necessary to show that relief is plausible. *Id.* The Court in *Bell Atlantic* wished to avoid the "in terrorem" effect of allowing a plaintiff with a "largely groundless claim" to force defendants into either costly discovery or an increased settlement value. 127 S. Ct. at 1965-66; *see also Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975). Therefore, we have explained, "[i]f discovery [*18] is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim." *Limestone,* 520 F.3d 797, 2008 WL 852586, at *5.

In *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.,* 496 F.3d 773 (7th Cir. 2007), a case decided shortly after *Bell Atlantic*, we were asked to determine the minimum pleading requirements in the Title VII context. There, an employee alleged that he had been discharged from his employment in violation of the retaliation provisions of Title VII. The complaint asserted that the employee had been fired after reporting that his boss was having a sexual relationship with another subordinate and, as a result of that relationship, was favoring her in the workplace. The complaint did not allege that the employee had objected to his boss' conduct because he believed that it was quid-pro-quo sexual harassment; instead, the complaint alleged that the employee had reported his boss for "favoring a paramour." *Id.* at 777. Because employees are protected against retaliation only when they reasonably believe that the activities they oppose violate Title VII, and because [*19] favoring a paramour in the workplace, absent some quid-pro-quo relationship, does not constitute a violation of Title VII, the employee's subsequent report was not protected conduct. *Id.* at 775. Accordingly, the district court dismissed the complaint for failure to state a claim. *Id.* It noted that the facts alleged, although not logically foreclosing the possibility that some other aspect of the employee's report may have been covered under Title VII, did not themselves *suggest* that a violation of Title VII had occurred. *Id.* at 775, 777. On appeal we noted, in *dicta*, that this dismissal "was probably correct," because the plaintiff's actions were "logically consistent with the possibility that the affair was caused by quid-pro-quo sexual harassment, but [did] not *suggest* that possibility any more than money changing hands suggests robbery." *Id.* at 777.

2008 U.S. App. LEXIS 11244, *

The plaintiff then filed an amended complaint, almost identical to the first complaint, but omitting any facts describing the content of the employee's report. Instead, it summarily asserted that the defendant had violated Title VII by "retaliating against [the employee] after he opposed conduct in the workplace that he objectively and [*20] reasonably believed in good faith violated Title VII." *Id.* at 776. Simply removing unfavorable facts, however, did not save the plaintiff's claim. The district court dismissed the complaint again, this time because it alleged too few facts rather than too many. The court noted that the amended complaint offered only conclusory allegations, and it failed to provide the defendants with sufficient notice of the nature of the claim. *Id.* We affirmed, concluding that [HN6]a general allegation of retaliation for reporting some unspecified act of discrimination did not provide the necessary notice to the defendant so that it could begin investigating and defending against the claim. *Id.* at 781.

In *Concentra*, we described [HN7]the Supreme Court's *Bell Atlantic* opinion as establishing "two easy-to-clear hurdles" for a complaint in federal court:

> First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court.

*Id.* at 776 [*21] (internal citations and quotation marks omitted). We further explained that, after *Bell Atlantic*, it is no longer sufficient for a complaint "to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Id.* (citing *Bell Atlantic*, 127 S. Ct. at 1968-69, 1965).

[HN8]Acknowledging that a complaint must contain something more than a general recitation of the elements of the claim, however, we nevertheless reaffirmed the minimal pleading standard for simple claims of race or sex discrimination. *Concentra*, 496 F.3d at 781-82. Reaffirming our prior holdings in *Bennett*, 153 F.3d at 518, and *Kolupa*, 438 F.3d at 714, we noted:

> [O]nce a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim.

Requiring a more detailed complaint in *Bennett* would have replicated the inefficient chase for facts decried in *Bennett* and *Dioguardi*.

*Concentra*, 496 F.3d at 781-82. Even after *Bell Atlantic*, *Concentra* affirmed our previous holdings [*22] that, [HN9]in order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.

Additionally, [HN10]*Bell Atlantic's* explicit praise of Form 9 of the Federal Rules of Civil Procedure illustrates that conclusory statements are not barred entirely from federal pleadings. The Court noted that a complaint of negligence in compliance with Form 9 provides sufficient notice to defendants, even though it alleges only that the defendant, on a specified date, "negligently drove a motor vehicle against plaintiff who was then crossing [an identified] highway." *Bell Atlantic*, 127 S. Ct. at 1977; *see also Iqbal v. Hasty*, 490 F.3d 143, 156 (2d Cir. 2007). To survive dismissal at this stage, the complaint need not state the respects in which the defendant was alleged to be negligent (i.e., driving too fast, driving drunk, etc.), although such specificity certainly would be required at the summary judgment stage. *Bell Atlantic*, 127 S. Ct. at 1977; *Iqbal*, 490 F.3d at 156. In these types of cases, the complaint merely needs to give the defendant sufficient notice [*23] to enable him to begin to investigate and prepare a defense.

With this precedent in mind, we conclude that Ms. Tamayo's complaint included enough facts in support of a claim of sex discrimination under Title VII and the Equal Pay Act to survive dismissal at this stage of the proceedings. She alleged that she is a female. R.76 at P4. She alleged facts regarding her promised and actual salary, as well as the salaries of other similarly situated male employees. *Id.* at PP16-21, 71-74. She stated her belief that she was paid less than the similarly situated male employees *both* "because she was a woman *and* because she was 'not cooperating' with the Governor's Office and the IDOR in their attempts to control the IGB." *Id.* at P34 (emphasis added). She further alleged that she "has been subjected to adverse employment actions by Defendants on account of her gender," *id.* at P83, and she listed specific adverse employment actions. She stated that "Defendants have treated Plaintiff differently than similarly situated male employees and exhibited discriminatory treatment against Plaintiff in the terms and conditions of her employment on account of Plaintiff's gender." *Id.* at P85. Finally, she stated [*24] that she filed two EEOC charges alleging sex discrimina-

tion and that she was issued a right-to-sue notice. *Id.* at PP10-11. These facts certainly provide the defendants with sufficient notice to begin to investigate and defend against her claim. As we explained in *Concentra*, it is difficult to see what more Ms. Tamayo could have alleged, without pleading evidence, to support her claim that she was discriminated against based--at least in part--on her sex.

Similarly, we conclude that Ms. Tamayo's complaint alleged enough facts to state a claim for retaliation. She alleged that she had performed her job satisfactorily at all times. R.76 at P82. She stated that she filed two EEOC charges alleging sex discrimination and that she was issued a right-to-sue notice. *Id.* at PP10-11. She then alleged: "Since Plaintiff began to complain about her lack of equal pay and filing her charge of discrimination with the EEOC, Plaintiff has been subjected to adverse employment actions by Defendants in retaliation for her complaints." *Id.* at P78; *see also id.* at P90 (an almost identical statement, substituting "complain about the sexual discrimination she was experiencing" for "complain about her lack of [*25] equal pay"). The complaint then listed a number of specific adverse employment actions. The defendants were put on notice about the nature of the claims; and, unlike in *Concentra*, Ms. Tamayo did not attempt to obfuscate the facts to avoid dismissal. The allegations in her complaint were sufficient to state a claim of retaliation under the notice-pleading standard outlined in *Bell Atlantic* and *Concentra*.

Finally, we conclude that Ms. Tamayo has alleged sufficient facts regarding her section 1983 sex discrimination claim to survive dismissal at this stage. In addition to the above-mentioned allegations, she specified that "Defendants Blagojevich, Hamer and Monk treated Plaintiff less favorably than such similarly-situated male employees on account of her gender." *Id.* at P97. Despite the individual defendants' contention that Ms. Tamayo failed to allege that they personally had violated her rights, the complaint further alleged that the individual defendants "intentionally engaged in a course of conduct to prevent Plaintiff from being paid the $ 160,000 per year that Plaintiff was told that she would receive." *Id.* at P98. Drawing all inferences in Ms. Tamayo's favor, these allegations [*26] are sufficient to state a claim of sex discrimination under section 1983.

**B.**

Having determined that Ms. Tamayo pleaded sufficient facts to state a claim of discrimination, we must now decide whether she effectively pleaded herself out of court by also including in her complaint additional facts that suggest that the defendants' actions were motivated by a political power struggle rather than by gender-based animus.

Our case law recognizes that [HN11]a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006). A plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Kolupa*, 438 F.3d at 715. If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief. *McCready*, 453 F.3d at 888; *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995).

The district court concluded that Ms. Tamayo pleaded herself out of court by filling twenty-two pages of her complaint with facts showing the political motivations behind her [*27] low pay and constructive discharge. The defendants submit that the district court was correct. They rely upon *Bell Atlantic's* statements that a plaintiff must do more than avoid foreclosing possible bases for relief in her complaint; she must also show that relief actually is plausible. *See Bell Atlantic*, 127 S. Ct. at 1965, 1968-69. In the defendants' view, when Ms. Tamayo voluntarily alleged facts that suggested her ill treatment was for some other, non-discriminatory reason, her pleading burden effectively increased; she then should have alleged additional facts to suggest that her sex discrimination theory was not mere speculation.

Ms. Tamayo undoubtedly did allege a number of facts in support of her First Amendment claim that tend to suggest an alternative, non-gender-related motivation for the defendants' actions; however, this alternative is not mutually exclusive with sex discrimination. Unlike the plaintiffs in *Massey*, 464 F.3d at 650, [3] Ms. Tamayo does not allege any facts that establish an "impenetrable defense" to her sex discrimination claim; she merely alleges facts that ultimately make her success on the merits less likely. Recovery is still *plausible* [*28] under her complaint.

> 3   The plaintiffs in *Massey* alleged fraud in a direct, not derivative, lawsuit. Their complaint, however, plainly stated that the allegedly fraudulent representations were made to the corporation itself, not to the plaintiffs as individual shareholders. Accordingly, the facts alleged in the complaint made recovery in a non-derivative shareholder action impossible. *See Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006).

[HN12]Although our pleading rules do not tolerate factual inconsistencies in a complaint, they do permit inconsistencies in legal theories. *See, e.g., Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805, 119 S. Ct. 1597, 143 L. Ed. 2d 966 (1999). [HN13]To succeed in a

Title VII discrimination action, an employee need not show that her sex was the *exclusive* reason for her employer's actions. She must prove only that sex was a *motivating* factor. *Hossack v. Floor Covering Assocs. of Joliet*, 492 F.3d 853, 860 (7th Cir. 2007); *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). Although the defendants ultimately may be able to prove that they would have engaged in the same conduct based on their political disagreements with Ms. Tamayo, it is not implausible that Ms. Tamayo's [*29] sex also was a motivating factor in their behavior. The complaint certainly shows that the defendants were upset with Ms. Tamayo's failure to cooperate with their policies; however, it leaves open the possibility that, had she been a non-cooperative male, they would not have reacted by blocking her salary increase or ostracizing her in the office. Such a contention may be difficult for Ms. Tamayo to prove; however, that is a question to be confronted later in the litigation when the plaintiff is put to her proof.

**C.**

We next must address the district court's alternative ground for dismissing Ms. Tamayo's claims against the IDOR and the IGB: that Ms. Tamayo's complaint failed for want of an employer. [HN14]Title VII and the Equal Pay Act impose liability upon the complaining employee's "employer." 42 U.S.C. § 2000e-2(a); 29 U.S.C. § 206(l)(1). The IDOR contends that it cannot be held liable because Ms. Tamayo's complaint alleged that the IGB, and not the IDOR, was her employer. Conversely, the IGB asserts that it cannot be held liable because Ms. Tamayo named the IDOR, and not the IGB, as her employer in her EEOC charges. [HN15]Filing an EEOC charge against the defendant is, the IGB notes, a prerequisite [*30] to suit under Title VII. The district court agreed with both the IDOR and the IGB and granted both defendants' motions to dismiss. We first address the IDOR's assertion that it cannot be considered Ms. Tamayo's employer because the IGB, and not the IDOR, actually employed Ms. Tamayo. The IDOR is correct that the complaint alleges that the IGB hired, promoted, demoted and ultimately constructively discharged Ms. Tamayo. Nevertheless, the complaint also asserts that the IDOR, not the IGB, controlled her compensation. Consistent with the Riverboat Gambling Act, the complaint states that the salary of the Administrator was "determined by the IGB and *approved by the Director of the IDOR*." R.76 at P15 (emphasis added); *see also* 230 ILCS 10/5(a)(9). Furthermore, it alleges that the IDOR in fact exercised control over Ms. Tamayo's salary by refusing to authorize her promised raise. Ms. Tamayo's salary is the subject of her Equal Pay Act claim, as well as one of the adverse employment actions alleged in her Title VII claim, and the complaint alleges that the IDOR exer-

cised control over this highly significant aspect of her employment.

The IDOR also is alleged to have exercised at least some [*31] control over the IGB's personnel decisions. Ms. Tamayo's complaint states that the IDOR "sought to require the IGB to hire outside counsel," R.76 at P25, and "sought to cause the IGB to lay off five employees," *id.* at P29. Additionally, she alleges that Mr. Hamer, the Director of the IDOR, "asked her how she, 'as my employee and being paid by us,' would handle his request to discontinue the Isle of Capri investigation." *Id.* at P54. Finally, the complaint asserts that the IGB advised Ms. Tamayo to file an EEOC charge against the IDOR, informing her that it could not do anything to help her because the IDOR "was controlling the personnel and budget." *Id.* at P45. Such allegations, if true, suggest that the IDOR functioned as Ms. Tamayo's employer for the purposes of Title VII and the Equal Pay Act.

Despite these allegations, the defendants contend that Ms. Tamayo's complaint also alleges facts that conclusively show the IDOR was not her employer. They point to her statements, made to Mr. Hamer and others, that the IDOR's attempts to control the IGB were improper; they also highlight the fact that she "told Hamer that the IGB was an independent agency under the law and that she reported [*32] to the IGB and not Hamer, IDOR or the Governor's Office." *Id.* at P38. Particularly at this stage of the proceedings, however, the defendants' contention is without merit. Certainly, Ms. Tamayo has made clear her belief that the IDOR and the Governor's Office should not have exercised any control over her employment. However, her statements that the IDOR *should not* control the IGB do not preclude the possibility of her other allegation: that the IDOR *did in fact* control the IGB's personnel decisions. Similarly, her assertion that the IGB was an independent agency, *id.* at P56, is neither conclusive nor an admission that the IDOR was not also her employer for the purposes of Title VII and the Equal Pay Act.

[HN16]The Equal Pay Act defines an "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. § 203(d). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). The Equal [*33] Pay Act expressly contemplates that an employee may have multiple employers. *See* 29 U.S.C. § 203(d). We have also held that multiple entities may be considered an employee's "employer" for the purposes of Title VII liability. *Worth v. Tyer*, 276 F.3d 249, 259 (7th Cir. 2001) (noting that "any of the Affiliates that possibly

maintained an employment relationship with Worth may be named as a defendant under Title VII"). [HN17]Although we no longer apply the "integrated enterprise" test in Title VII cases, *id.* at 260, we explained in *Worth* that an affiliated corporation nevertheless may be considered an employer under Title VII, in addition to the direct employer, if the affiliate "directed the discriminatory act, practice, or policy of which the employee is complaining." *Id.* at 260; *see also Papa v. Katy Indus., Inc.*, 166 F.3d 937, 941 (7th Cir. 1999) (looking to whether the parent corporation had "directed the discriminatory act"); *EEOC v. Illinois*, 69 F.3d 167, 169 (7th Cir. 1995) (acknowledging that a defendant may be a "de facto or indirect employer" of the plaintiff so far as it "controlled the plaintiff's employment relationship"). In *Heinemeier v. Chemetco, Inc.*, 246 F.3d 1078, 1080, 1083 (7th Cir. 2001), [*34] we held that a plaintiff had presented a question of fact as to whether a party was her employer by submitting evidence that the party determined her salary, even though another entity determined the other aspects of her employment. We explained that courts must look to the "economic realities" of the employment relationship, as well as "the degree of control the employer exercises," to determine whether an entity may be considered an employer for the purposes of Title VII liability. *Id.* at 1082-83; *see also Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1008-09 (7th Cir. 2004) (noting that an employee who worked for the IGB was, for the purposes of Title VII, also an employee of the IDOR).

The IDOR does not dispute that multiple entities may be considered an employer under Title VII and the Equal Pay Act. Instead, it contends that Ms. Tamayo's complaint failed to allege that the IDOR exerted sufficient control over her conditions of employment to be considered an employer. It relies upon *Carver v. Sheriff of LaSalle County, Ill.*, 243 F.3d 379, 382 (7th Cir. 2001), for the proposition that control over the budget alone does not amount to "control" in an employment sense. This case [*35] is distinguishable, however, because the alleged adverse employment action at issue in *Carver* was termination of employment, not unequal pay. Here, Ms. Tamayo alleges that the IDOR controlled her salary--the basis of her alleged adverse employment action--as well as a number of other personnel decisions of the IGB. These allegations are more than sufficient to avoid dismissal of the IDOR as a defendant at this stage of the proceedings.

Having concluded that the IDOR is a proper defendant in this lawsuit, we now turn to the IGB. The district court concluded that Ms. Tamayo's claims against the IGB were improper because she failed to exhaust her administrative remedies against it. [HN18]Ordinarily, a party not named as the respondent in an EEOC charge may not be sued under Title VII. *Olsen v. Marshall &*

*Ilsley Corp.*, 267 F.3d 597, 604 (7th Cir. 2001); *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989). Ms. Tamayo named only the IDOR as the "respondent" in her EEOC filings; therefore, the district court concluded that only the IDOR was put on notice of her complaints, and only the IDOR could be sued as her employer.

[HN19]The requirement that a party be named in the EEOC charge [*36] is not jurisdictional, but is subject to defenses such as waiver and estoppel. *Olsen*, 267 F.3d at 604; *Schnellbaecher*, 887 F.2d at 126. The purpose of requiring the complaint to match the EEOC charge is to "give[] the employer some warning of the conduct about which the employee is aggrieved and afford[] the EEOC and the employer an opportunity to attempt conciliation without resort to the courts." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). Therefore, we have recognized an exception to the rule "where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings." *Schnellbaecher*, 887 F.2d at 126.

Ms. Tamayo contends that the IGB was on notice of her charge, and therefore she should be allowed to proceed in her claims against it. First, Ms. Tamayo submits that she indicated in her charge questionnaire that she was employed by the IGB, placing it on notice of the charge. [HN20]Under Title VII, however, "it is the charge rather than the questionnaire that matters." *Novitsky v. Am. Consulting Eng'rs*, 196 F.3d 699, 702 (7th Cir. 1999); *see also* 42 U.S.C. § 2000e-5(b). [*37] Assertions in the questionnaire, without more, are not enough to put the IGB on notice that it was being charged. Second, Ms. Tamayo invites our attention to the allegation in her complaint that she "immediately advised the IGB" upon filing her charge with the EEOC. R.76 at P46. Although Ms. Tamayo may have notified the IGB that an EEOC charge had been filed against someone, however, her complaint does not allege that she notified the IGB that a charge had been filed against *it*. Indeed, the circumstances alleged in Ms. Tamayo's complaint indicate that the IGB was *not* on notice that it was being charged because the IGB had encouraged her to file a charge against the IDOR to recover her salary. *Id.* at P45. This lack of notice defeats her claim against the IGB here. *See Schnellbaecher*, 887 F.2d at 127 ("Although HSSI had notice of the charges against Baskin, it did not thereby have any notice of any charges against *it*, nor did it have an opportunity to conciliate on its own behalf.").

Accordingly, we conclude that the district court properly dismissed Ms. Tamayo's Title VII claims against the IGB for failure to exhaust administrative remedies. Nevertheless, because [HN21]the Equal Pay

Act does [*38] not require that a plaintiff first submit a charge with the EEOC, _Ledbetter v. Goodyear Tire & Rubber Co., Inc._, 127 S. Ct. 2162, 2176, 167 L. Ed. 2d 982 (2007), she may proceed against the IGB on those claims. Additionally, as the IDOR properly was named as a defendant in this case, she may receive from it any relief to which she is entitled.

**D.**

We now turn to Ms. Tamayo's claims against the individual defendants. [HN22]Governmental actors performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." _Sallenger v. Oakes_, 473 F.3d 731, 739 (7th Cir. 2007) (quoting _Harlow v. Fitzgerald_, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). In _Saucier v. Katz_, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), the Supreme Court articulated a two-part test for determining whether an actor is entitled to qualified immunity: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" (2) "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether [*39] the right was clearly established." _Id._ If either of these prongs is not satisfied, then the individual is entitled to qualified immunity.

The district court concluded, as it had regarding the claims against the IDOR and IGB, that Ms. Tamayo's allegations of sex discrimination by the individual defendants did not include sufficient facts to state a plausible claim under the standard set forth in _Bell Atlantic_. The court emphasized that Ms. Tamayo's complaint itself indicated that the parties' dispute grew out of a political power struggle; therefore, held the court, there had been a nondiscriminatory basis for the individuals' actions. Accordingly, the court concluded that Ms. Tamayo had failed to show that there had been a deprivation of a constitutional right, and it dismissed her complaint against the individual defendants on qualified immunity grounds.

At the Rule 12(b)(6) stage of the proceedings, however, Ms. Tamayo was required only to allege--not prove--the deprivation of a constitutional right. We already have explained that Ms. Tamayo's complaint alleged sufficient facts to state a claim for sex discrimination under _Bell Atlantic_. [HN23]The pleading standard is no different simply [*40] because qualified immunity may be raised as an affirmative defense. _Crawford-El v. Britton_, 523 U.S. 574, 595, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998). Consequently, we have cautioned that the rule that qualified immunity must be resolved at the earliest possible stage, see _Leatherman v. Tarrant County_

_Narcotics Intelligence & Coordination Unit_, 507 U.S. 163, 166, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993); _Mitchell v. Forsyth_, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985), must be tempered by the notice pleading requirements of Rule 8. See _Jacobs v. City of Chicago_, 215 F.3d 758, 765 n.3 (7th Cir. 2000); see also _Alvarado v. Litscher_, 267 F.3d 648, 651-52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity."). In any event, the right to be free from sex discrimination is clearly established. Taking all facts pleaded in Ms. Tamayo's complaint as true, the defendants violated a clearly established constitutional right; therefore, a grant of qualified immunity is inappropriate at this point in the proceedings.

**E.**

Finally, we turn to Count VI of the complaint, a section 1983 [*41] claim alleging that Governor Blagojevich, Mr. Hamer and Mr. Monk impermissibly retaliated against Ms. Tamayo for speaking out against their attempts to control the IGB. The complaint alleged the following facts:

> On February 24, 2005, Plaintiff publicly testified before the Illinois House Gaming Committee about Governor Blagojevich's and IDOR's interference with IGB operations, including the misuse of public funds, hiring unqualified personnel for unnecessary positions, and attempts to influence the outcome of the Isle of Capri licensing investigation, litigation involving Emerald Casino, and the sale of Emerald Casino.

R.76 at P61. Ms. Tamayo then asserted that she had been the subject of retaliation because she had "engaged in speech as a citizen on matters of public concern outside the duties of her employment." _Id._ at P106.

The district court concluded that Ms. Tamayo's First Amendment claim was barred by the Supreme Court's recent decision in _Garcetti v. Ceballos_, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). That decision confirms that, [HN24]for a Government employee's speech to qualify for First Amendment protection, she must have been speaking "as a citizen on a matter of public concern." _Id._ at 418. _Garcetti_ [*42] also makes clear that public employees who speak "pursuant to their official duties" speak as employees rather than as citizens, and thus their speech is not protected by the First

Amendment regardless of its content. *Id.* at 421-22 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."); *see also Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007). Accordingly, if Ms. Tamayo's testimony before the House Gaming Committee was given as part of her official duties, then her speech was not protected by the First Amendment.

At the time that Ms. Tamayo gave the testimony at issue here, she held the position of Interim Administrator, the senior position within the IGB. Ms. Tamayo's testimony was given to the House Gaming Committee, a legislative committee responsible for overseeing the activities of the IGB, and her testimony involved the alleged wrongdoing of public officials in their attempts to encroach on the agency's independence. As the Administrator of the agency, she had a duty to see that the law was administered properly. This responsibility encompassed [*43] a duty to bring alleged wrongdoing within her agency to the attention of the relevant public authorities--here, the House Gaming Committee. Following *Garcetti*, other courts have determined that [HN25]reports by government employees to their superiors concerning alleged wrongdoing in their government office were within the scope of their job duties, and, therefore, the employees were not speaking as private citizens. *See, e.g., Boyce v. Andrew*, 510 F.3d 1333, 1346-47 (11th Cir. 2007) (holding that social workers who complained to their supervisors and their union that the child welfare managers were overworked and endangering children had spoken as employees, not as citizens); *Phillips v. City of Dawsonville*, 499 F.3d 1239, 1241-43 (11th Cir. 2007) (concluding that the City Clerk, whose position gave her control and accountability for city funds, was acting within the scope of her job duties when she reported to the city council that the mayor was improperly charging the city for his personal expenses); *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007) (holding that a community college vice president, whose employment contract was not renewed following her reports of illegal and unethical [*44] conduct by the college president, was not entitled to reinstatement because her allegations fell "squarely within her official job duties"). Similarly, reporting alleged wrongdoing to those with the responsibility for legislative oversight should be governed by the same principle.

Ms. Tamayo cannot escape the strictures of *Garcetti* by including in her complaint the conclusory legal [4] statement that she testified "as a citizen. . . outside the duties of her employment," R.76 at P106. [HN26]A plaintiff cannot rely on "labels and conclusions." *Bell Atlantic*, 127 S. Ct. at 1965. Nor are we "bound to accept as true a legal conclusion couched as a factual allega-

tion." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986). Cases such as the one before us require that we take special care to keep these principles in mind. [HN27]While *Garcetti* explicitly admonishes us not to tolerate "excessively broad job descriptions" that might restrict artificially an employee's First Amendment rights, 547 U.S. at 424, we also are directed to take a "practical" view of whether an employee is speaking as an employee or as a citizen, *id.* In taking such a "practical" view, we must take into account the employee's level of responsibility.   [*45] An employee with significant and comprehensive responsibility for policy formation and implementation certainly has greater responsibility to speak to a wider audience on behalf of the governmental unit. When, as here, a complaint states that the senior administrator of an agency testified before a committee of the legislature charged with oversight of the agency about allegedly improper political influence over that agency, the natural reading of such an allegation is that the official, in so informing the legislators, was discharging the responsibilities of her office, not appearing as "Jane Q. Public." Reporting alleged misconduct against an agency over which one has general supervisory responsibility is part of the duties of such an office. *See Sigsworth v. City of Aurora*, 487 F.3d 506, 511 (7th Cir. 2007); *Spiegla*, 481 F.3d at 966. While it is possible to construct a speculative scenario to the contrary, we cannot adopt such an improbable reading of the complaint without some factual statement to justify indulging in such an assumption. [HN28]At a minimum, there must be factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965.

4   *See,* [*46] *e.g., Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007) (considering, as a matter of law, whether the plaintiff spoke as a citizen or as an employee).

Here, conclusory legal allegations aside, a natural reading of the complaint is that Ms. Tamayo testified before the House Gaming Committee because of the position she held within the agency; she testified about matters within the scope of her job duties as Interim Administrator. Accordingly, we must conclude that Ms. Tamayo's testimony was given as an employee and not as a citizen; therefore, her speech is not protected under the First Amendment.

## Conclusion

Because Ms. Tamayo failed to exhaust her administrative remedies against the IGB, we conclude that the district court properly granted the IGB's motion to dismiss the Title VII claims brought against it. Additionally, we conclude that the district court properly dismissed

2008 U.S. App. LEXIS 11244, *

Ms. Tamayo's First Amendment claims. The remaining counts in the complaint, however, allege facts sufficient to survive dismissal at the Rule 12(b)(6) stage. Accordingly, we reverse the judgment of the district court as to Counts I and III against the IDOR; Counts II and IV against both the IDOR and the IGB; and  [*47] Count V against the individual defendants and remand for further proceedings consistent with this opinion. The parties shall bear their own costs in this appeal.

AFFIRMED IN PART, REVERSED IN PART, REMANDED

# TAB B

LEXSEE



Analysis
As of: Jun 20, 2008

**BILL CUTCHIN, Plaintiff-Appellant, vs. WAL-MART STORES, INC., Defendant-Appellee.**

**Nos. 95-2152, 95-2514**

**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

**1996 U.S. App. LEXIS 6314**

**February 7, 1996, Argued**
**March 19, 1996, Decided**

**NOTICE:**     [*1] RULES OF THE SEVENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**     Reported in Table Case Format at: 79 F.3d 1150, 1996 U.S. App. LEXIS 16720.

**PRIOR HISTORY:**     Appeal from the United States District Court for the Southern District of Illinois. Nos. 94 C 4114 and 94 C 4255. Philip M. Frazier, Magistrate Judge.

**DISPOSITION:**     Judgment affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee filed an action alleging claims stemming from an interrogation that took place regarding his alleged theft, and appealed the judgment of the United States District Court for the Southern District of Illinois, which dismissed three of his claims pursuant to Fed. R. Civ. P. 12(b)(6) and granted summary judgment to defendant former employer on the final claim.

**OVERVIEW:** The former employee was terminated for stealing store merchandise. The former employee filed an action against the former employer, alleging claims stemming from an interrogation that took place regarding the theft. The district court dismissed three claims pursuant to Rule 12(b)(6) and granted summary judgment to

the former employer on the final claim. The court affirmed, finding that the district court properly dismissed the claim for breach of the implied covenant of good faith and fair dealing, which was not the basis of an independent tort and did not apply in employment at-will situations. Given that injuries resulting from negligent torts committed in the work place were "accidental," the claim for negligent infliction of emotional distress was preempted by the Illinois Worker's Compensation Act. The dismissal of the claim of intentional infliction of emotional distress was proper, as was the summary judgment grant on the claim for battery, because the former employee made no allegation that the former employer possessed a specific intent to inflict injury upon him or that the person conducting the interrogation was the "alter-ego" of the former employer.

**OUTCOME:** The court affirmed the judgment dismissing several claims brought by the former employee arising out of his interrogation for an alleged theft from the former employer. The court also granted summary judgment to the former employer on the final claim.

**CORE TERMS:** covenant of good faith, fair dealing, infliction of emotional distress, summary judgment, terminated, alter ego, battery, at-will, package, reasonable expectations, cause of action, properly dismissed, intentionally, merchandise, supervisory, accidental, preempted, inflict, night, shelf, crew

**LexisNexis(R) Headnotes**

1996 U.S. App. LEXIS 6314, *

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Summary Judgment > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN1]The court reviews both the dismissal of a claim pursuant to Fed. R. Civ. P. 12(b)(6) and the grant of summary judgment de novo.

*Contracts Law > Types of Contracts > Covenants*
*Labor & Employment Law > Employment Relationships > At-Will Employment > Exceptions > Implied Contracts*
*Labor & Employment Law > Wrongful Termination > Breach of Contract > Express & Implied Conditions & Covenants*
[HN2]Under Illinois law, the implied covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract. It merely guides the construction of the explicit terms of the agreement. In other words, it does not provide the basis of an independent tort. Moreover, the implied covenant of good faith and fair dealing does not apply in employment at-will situations. The implied covenant of good faith and fair dealing requires a party vested with discretion to exercise that discretion reasonably, with proper motive and in a manner consistent with the reasonable expectations of the parties. Because Illinois law has consistently held that an employee at-will may be terminated for any reason, an employee at-will has no reasonable expectation that he will be terminated only for cause, and the implied covenant of good faith and fair dealing cannot require the parties to exceed that reasonable expectation.

*Governments > Legislation > Statutory Remedies & Rights*
*Torts > Negligence > Actions > Negligent Infliction of Emotional Distress > General Overview*
*Workers' Compensation & SSDI > Remedies Under Other Laws > Common Law*
[HN3]The Illinois Worker's Compensation Act (Act) contains an exclusivity provision dictating that an employee has no common law or statutory right to recover damages from the employer or its agents or employees for accidental injuries incurred in the course of employment. 820 Ill. Comp. Stat. 305/5(a) (1992). Instead, the Act provides the exclusive remedy by establishing liability without fault and by abrogating common-law defenses.

*Workers' Compensation & SSDI > Compensability > Injuries > General Overview*
*Workers' Compensation & SSDI > Remedies Under Other Laws > Common Law*
*Workers' Compensation & SSDI > Remedies Under Other Laws > Exclusivity > Exceptions*
[HN4]The Illinois Worker's Compensation Act (Act) can preempt common law causes of action for injuries intentionally inflicted by co-workers. However, the Act will not bar a cause of action for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or especially authorized by the employer. To state a valid claim against an employer for authorizing the alleged conduct of a co-worker, the employee would have to assert that the employer possessed a specific intent to inflict injury upon him.

**COUNSEL:** For BILL CUTCHIN, Plaintiff - Appellant: Donald V. Ferrell, Thomas J. Foster, JELLIFFE, FERRELL & MORRIS, Harrisburg, IL.

For WAL-MART STORES, INCORPORATED, Defendant - Appellee: William J. Holloway, Alicia Collias Schneider, HINSHAW & CULBERTSON, Chicago, IL. Dawn A. Sallerson, HINSHAW & CULBERTSON, Belleville, IL.

**JUDGES:** Before Hon. WALTER J. CUMMINGS, Circuit Judge, Hon. RICHARD D. CUDAHY, Circuit Judge, Hon. FRANK H. EASTERBROOK, Circuit Judge

**OPINION**

ORDER

Bill Cutchin was accused by personnel of Wal-Mart Stores, Inc. ("Wal-Mart") of stealing store merchandise and was terminated. He brought suit against Wal-Mart alleging a number a claims stemming from an interrogation that took place regarding his alleged theft. The district court dismissed three of his four claims pursuant to Fed. R. Civ. P. 12(b)(6) and [*2] granted summary judgment to Wal-Mart on the fourth. For the following reasons, we affirm those decisions.

**Background**

In November 1992, Cutchin was employed by Wal-Mart as a member of the night maintenance crew at a store located in Carmi, Illinois. He had no employment contract. On November 18, 1992, a security camera filmed him removing a package that appeared to be a pack of cigarettes from underneath a display unit and placing the package in his pocket. Wal-Mart procedures require that merchandise found by the night maintenance crew be placed on a specific shelf to be dealt with upon

arrival of the store's managers. Cutchin neither placed the package on that shelf, nor notified management of what he had found. On November 20, 1992, after management reviewed the videotape, Cutchin was escorted to a small training room at the store where he was questioned by a Wal-Mart internal investigator, Travis Newton. During the questioning, Newton allegedly called Cutchin "a thief," shook his finger at him, and stood close enough to him that he could feel droplets of Newton's saliva. Cutchin was subsequently terminated.

The case originally came before the district court in two separate [*3] complaints. The first alleged negligent and intentional infliction of emotional distress, as well as breach of the implied covenant of good faith and fair dealing. The second alleged assault and battery. The district court dismissed the first complaint pursuant to Fed. R. Civ. P. 12(b)(6) and granted Wal-Mart summary judgment on the second. Cutchin appeals those decisions.

**Discussion**

[HN1]We review both the dismissal of a claim pursuant to Fed. R. Civ. P. 12(b)(6) and the grant of summary judgment de novo. Baxter Healthcare Corp. v. O.R. Concepts, 69 F.3d 785, 787 (7th Cir. 1995); Smith v. Shawnee Library Sys., 60 F.3d 317, 320 (7th Cir. 1995).

The dismissal of plaintiff's claim for breach of the implied covenant of good faith and fair dealing was proper. [HN2]Under Illinois law, "the implied covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract .... [It] merely guides the construction of the explicit terms of the agreement." O.R. Concepts, 69 F.3d at 792. In other words, it does not provide the basis of an independent tort. Moreover, the implied covenant of good faith and fair dealing does not apply in employment [*4] at-will situations, such as here:

The implied covenant of good faith and fair dealing requires a party vested with discretion to exercise that discretion reasonably, with proper motive and in a manner consistent with the reasonable expectations of the parties. Since Illinois law has consistently held that an employee at-will may be terminated for any reason, an employee at-will has no reasonable expectation that he will be terminated only for cause, and the implied covenant of good faith and fair dealing cannot require the parties to exceed that reasonable expectation. Beraha v. Baxter Healthcare Corp., 956 F.2d 1436, 1444-1445.

Cutchin's claim for breach of the implied covenant of good faith and fair dealing was properly dismissed.

With regard to Cutchin's other claims against Wal-Mart, [HN3]the Illinois Worker's Compensation Act ("Act") contains an exclusivity provision dictating that an employee has "no common law or statutory right to recover damages from the employer ... or [its] agents or employees" for accidental injuries incurred in the course of employment. 820 ILCS 305/5(a) (1992). Instead, the Act provides the exclusive remedy by establishing liability [*5] without fault and by abrogating common-law defenses. See Richardson v. County of Cook, 250 Ill. App. 3d 544, 547, 621 N.E.2d 114, 117, 190 Ill. Dec. 245 (1st Dist. 1993). Given that injuries resulting from negligent torts committed in the work place are "accidental," Cutchin's claim for negligent infliction of emotional distress is preempted by the Act and his claim was properly dismissed. See, e.g., Small v. Chicago Health Clubs, Inc., 843 F. Supp. 398, 402-403 (N.D. Ill. 1994) (cause of action for negligent infliction of emotional distress preempted by the Act).

[HN4]The Act can also preempt common law causes of action for injuries intentionally inflicted by coworkers. See, e.g., Juarez v. Ameritech Mobile Communications, 957 F.2d 317 (7th Cir. 1992) (intentional infliction of emotional distress); Rodriguez v. Industrial Commission, 95 Ill. 2d 166, 447 N.E.2d 186, 68 Ill. Dec. 928 (1983) (battery). However, the Act will not bar a cause of action "for injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or especially authorized by the employer." Meerbrey v. Marshall Field & Co., 139 Ill. 2d 455, 464, 564 N.E.2d [*6] 1222, 1226, 151 Ill. Dec. 560 (1990). To state a valid claim against a Wal-Mart for authorizing the alleged conduct of Newton, Cutchin would have had to assert that Wal-Mart "possessed a specific intent to inflict injury upon [him]." Al-Dabbagh v. Greenpeace, 873 F. Supp. 1105, 1112 (N.D. Ill. 1994). Cutchin made no such allegation. Similarly, Cutchin made no allegation that Newton should be characterized as the "alter-ego" of Wal-Mart, as opposed to a supervisory employee. Jablonski v. Multack, 63 Ill. App. 3d 908, 913, 380 N.E.2d 924, 928, 20 Ill. Dec. 715 (5th Dist. 1978) ("The correct distinction to be drawn ... is between a supervisory employee and a person who can genuinely be characterized as the alter ego of the corporation.") (quoting 2A Larson, The Law of Workmen's Compensation, § 68.22). He alleges only that Newton was "in a position of actual or apparent authority over Cutchin" because Newton "had the authority to terminate Cutchin's employment." Even if we assume that allegation is true, it does not follow that Newton was acting as Wal-Mart's "alter ego" when he engaged in the conduct

1996 U.S. App. LEXIS 6314, *

Cutchin alleges, or that he was especially authorized by Wal-Mart to do [*7] so. See *Richardson,* 250 Ill. App. 3d at 548, 621 N.E.2d at 118 ("The mere allegation that defendants were acting within the scope of their authority 'is not equivalent to an allegation that [the employer] expressly authorized [them] to commit the specific acts in question.'") (quoting *Meerbrey,* 139 Ill. 2d at 465, 564 N.E.2d at 1222). Thus the dismissal of Cutchin's claim of intentional infliction of emotional distress was proper, as was the grant of summary judgment to Wal-Mart on his claim for battery.

Judgment affirmed.